IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHIEF HENRY V. TOBIN III,

                    Plaintiff,

       v.

THOMAS P. GORDON, individually and in
his official capacity; SHERRY FREEBERY,
individually and in her official capacity;
COLONEL JOHN L. CUNNINGHAM,
RETIRED, individually; COLONEL DAVID
F. MCALLISTER, individually and in his
official capacity; and NEW CASTLE
COUNTY, a municipal corporation

                   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

    Civil Action No.: 04-1211-MPT

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS

William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
E-mail: wbowser@ycst.com
*Defendants New Castle County, Sherry Freebery,
Thomas P. Gordon, and Colonel David F.
McAllister, each in their official capacities*

Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com
*Attorneys for Defendants Sherry Freebery,
Thomas P. Gordon, and Colonel David F.
McAllister, each in their individual capacity*

Kathleen M. Jennings, Esquire (Bar I.D. 913)
Oberly Jennings & Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
E-mail: kjennings@ojlaw.com
*Attorneys for Defendant Colonel John
Cunningham*

Dated: January 7, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................................ 2

STATEMENT OF FACTS ........................................................................................................... 4

    A.   The Allegedly Protected Activity ................................................................................ 5

    B.   The Subject Matter of the Allegedly Protected Activity ............................................. 6

    C.   The Allegedly Adverse Actions .................................................................................. 7

ARGUMENT ................................................................................................................................ 8

I.     STANDARD OF REVIEW ................................................................................................ 8

    A.   The Standard for Dismissal ......................................................................................... 8

    B.   The Standard for First Amendment Retaliation: Free Speech ..................................... 9

    C.   The Standard for First Amendment Retaliation: Petition .......................................... 10

II.    TOBIN'S SPEECH IS NOT PROTECTED BECAUSE HIS DUTIES AS A
       POLICE OFFICER REQUIRED HIM TO REPORT ILLEGAL ACTIVITY
       AND TO COOPERATE WITH LAW ENFORCEMENT .................................................. 12

    A.   As a Police Officer, Plaintiff Had a Duty to Report Potential
         Criminal Activity and to Cooperate in Any Resulting Criminal
         Investigation ............................................................................................................. 13

         1.   As a Police Officer, Tobin Was Obligated to Report Potential
             Corruption Within the Police Department ............................................................ 13

         2.   As a Police Officer, Tobin Was Obligated to Cooperate with
             External Agencies in Any Investigation That Related to His Report .................... 18

    B.   Plaintiff's Speech Was Made Pursuant to His Job Duties, Even If It
         Was Made Under Compulsion or Made Outside the Chain of
         Command ................................................................................................................... 19

         1.   Plaintiff's Speech, Even If Compelled by Law, Is Unprotected
             Because It Was Made Pursuant to His Duties as a Police Officer ........................ 20

2.  Plaintiff's Speech, Even If Made Outside the Chain of Command, Is Unprotected Because It Was Made Pursuant to His Duties as a Police Officer .................................................................................... 22

C.  The Alleged Speech "Owed Its Existence" to Plaintiff's Employment................................................................................................ 24

III. TOBIN'S COMPELLED SPEECH DOES NOT QUALIFY AS A "PETITION" ELIGIBLE FOR THE PROTECTIONS OF THE FIRST AMENDMENT ......................... 26

A.  Plaintiff Does Not Allege That He Filed a Formal Petition ......................................... 27

B.  Plaintiff's Informal "Petitions" Are Actually Instances of Speech Subject to Dismissal Pursuant to Garcetti .................................................................. 28

C.  Recent Third Circuit Precedent Prohibits the Application of the Petition Clause to Any Speech Plaintiff Was Compelled to Make................................. 30

IV. THE ALLEGATIONS MADE AGAINST DEFENDANTS CUNNINGHAM AND MCALLISTER ARE PLAINLY INSUFFICIENT TO SUSTAIN A COGNIZABLE CLAIM ..................................................................................... 30

V.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................................................................................ 33

A.  Qualified Immunity Is Appropriate Because the Alleged Activities Were Not Protected by the First Amendment ............................................................. 34

B.  Qualified Immunity Is Appropriate Because the Alleged Speech Was Not "Prototypical Protected Speech" Entitled to "Clearly Established" Rights ................................................................................................ 35

1.  Plaintiff's Speech Occurred During a Period When the Law Regarding Employee-Made Speech Was Far from "Clearly Established" ................................................................................................ 37

2.  Plaintiff Did Not Engage In the Type of "Prototypical Public Speech" That Would Have Been "Clearly Protected" by the First Amendment......................................................................................... 38

CONCLUSION .................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton,
    483 U.S. 635 (1987) ........................................................................... 37

Baraka v. McGreevey,
    481 F.3d 187 (3d Cir. 2007) ............................................................. 9

Bartis v. City of Bridgeton,
    No. 06-1574,
    2007 U.S. Dist. LEXIS 36550 (E.D. Mo. May 18, 2007) ................................. 13

Bell Atl. Corp.v. Twombly,
    127 S. Ct. 1955 (2007) ........................................................................ 8

Bennett v. Murphy,
    274 F.3d 133 (3d Cir. 2002) ............................................................. 35

Bevis v. Bethune,
    232 Fed. Appx. 212 (4th Cir. 2007) ................................................. 35

Bland v. Winant,
    No. 04-6091,
    2007 U.S. Dist. LEXIS 31094, (D.N.J. Apr. 27, 2007) ................................. 13, 24

Boykins v. Ambridge Area Sch. Dist.,
    621 F.2d 75 (3d Cir. 1980) ............................................................... 9

Bradley v. James,
    479 F.3d 536 (8th Cir. 2007) ........................................................... 18

Bradshaw v. Twp. of Middletown,
    296 F. Supp. 2d 526 (D.N.J. 2003),
    aff'd, 2005 U.S. App. LEXIS 18622, (3d Cir. N.J. Aug. 29, 2005) ................... 27

Burns v. Borough of Glassboro,
    No. 05-3034-JBS,
    LEXIS 42069 (D.N.J. June 11, 2007) ................................................. 22

Cameron v. Seitz,
    38 F.3d 264 (6th Cir. 1994) ............................................................. 36

Ceballos v. Garcetti,
    361 F.3d 1168 (9th Cir. 2004) ......................................................... 37

Cheek v. City of Edwardsville,
  Consol. No. 06-2210, -2245, -2459
  2007 U.S. Dist. LEXIS 63097, (D. Kans. Aug. 24, 2007)................................................. 23

ChemTech Int'l., Inc. v. Chem. Injection Techs.,
  No. 06-3345,
  2007 U.S. App. LEXIS 21697, (3d Cir. Sept. 10, 2007) ...............................................9, 33

City of Pittsburgh v. W. Penn Power Co.,
  147 F.3d 256 (3d Cir. 1998)............................................................................................ 9

Conley v. Gibson,
  355 U.S. 41 (1957) ........................................................................................................ 8

Connick v. Myers,
  461 U.S. 138 (1983) ...................................................................................................... 11

Cooper v. Cape May County Bd. of Soc. Servs.,
  175 F. Supp. 2d 732 (D.N.J. 2001)...........................................................................27, 28

Crossin v. City of Athens,
  No. 06-3014,
  2007 U.S. Dist. LEXIS 46585, (C.D. Ill. June 27, 2007) ................................................. 38

Deprado v. City of Miami,
  446 F. Supp. 2d 1344 (2006)......................................................................................... 20

Devlin v. Blackmon,
  No. 05-6081,
  2007 U.S. Dist. LEXIS 46645, (E.D. Pa. June 26, 2007)................................................. 17

Evancho v. Fisher,
  423 F. 3d 347 (3d Cir. 2005).................................................................................30, 32, 33

Foraker v. Chaffinch,
  501 F. 3d 231 (3d Cir. 2007)..................................3, 4, 9, 11, 12, 19, 20, 22, 24, 30, 34, 39

Garcetti v. Ceballos,
  D.C. No. CV-00-1106-AHV (C.D. Cal. 2002) ................................................................. 37

Garcetti v. Ceballos,
  126 S. Ct. 1951 (2006).... 2, 3, 4, 9, 10, 11, 12, 15, 17, 18, 19, 20, 21, 24, 26, 28, 29, 34, 37

Grant v. City of Pittsburgh,
  98 F.3d 116 (3d Cir. 1996)............................................................................................ 36

Green v. Barrett,
  226 Fed. Appx. 883 (11th Cir. 2007) ...................................................................21, 35, 38

Harlow v. Fitzgerald,
   457 U.S. 800 (1982) ................................................................... 35

Hartwell v. City of Montgomery,
   487 F. Supp. 2d 1313 (M.D. Ala. 2007) ...................................................36, 40

Heller v. Fulare,
   No. 03:2004-265,
   2007 U.S. Dist. LEXIS 43325, (W.D. Pa. June 14, 2007).............................. 18, 20, 21, 22

Hill v. Borough of Kutztown,
   455 F.3d 225 (3d Cir. 2006)..........................................................9, 10

Hong v. Grant,
   No. 06-0134,
   2007 U.S. Dist. LEXIS 70486, (C.D. Cal. Sept. 19, 2007) ............................. 10

Hope v. Pelzer,
   536 U.S. 730 (2002) ................................................................... 36

Houlihan v. Sussex Tech. Sch. Dist.,
   461 F. Supp. 2d 252 (D. Del. 2006) ................................................... 9

Hynson v. City of Chester,
   827 F.2d 932 (3d Cir. 1987)........................................................... 34

Johnson v. George, No. 05-157-MPT,
   2007 U.S. Dist. LEXIS 42465, (D. Del. June 11, 2007)................................. 10

Jones v. Del. State Police, No. 02-1637-KAJ
   2006 U.S. Dist. LEXIS 46944, (D. Del. July 11, 2006) ................................ 32

Joynes v. Meconi,
   No. 05-332-GMS,
   2006 U.S. Dist. LEXIS 71296, (D. Del. Sept. 30, 2006)...............................32, 33

Kasak v. Village of Bedford Park,
   No. 06-5119,
   2007 U.S. Dist. LEXIS 70281, (N.D. Ill. Sept. 18, 2007) ............................. 22, 24, 26, 38

Larsen v. Senate of the Commonwealth,
   154 F.3d 82 (3d Cir. 1998).............................................................. 35

Maras-Roberts v. Phillippe,
   No. 05-1148-SEB-JMS
   2007 U.S. Dist. LEXIS 31661, (S.D. Ind. Apr. 27, 2007).....................................15, 25, 39

McDonald & Schalk v Gallemore,
  906 F.2d 491 (10th Cir. 1990) (*per curiam*) .................................................... 11

McGovern v. City of Jersey City,
  No. 98-5186-JLL,
  2007 U.S. Dist. LEXIS 72591, (D.N.J. Sept. 28, 2007) ................................7, 36

McKee v. Hart,
  436 F.3d 165 (3d Cir. 2006).......................................................................7, 36

McLaughlin v. Watson,
  271 F.3d 566 (3d Cir. 2001)........................................................................ 36

Montgomery v. Miss.,
  498 F. Supp. 2d 892 (S.D. Miss. 2007) ........................................................... 15

Morris v. Crow,
  142 F.3d 1379 (11th Cir. 1998)..................................................................... 21

Ober v. Miller,
  No. 04-1669,
  2007 U.S. Dist. LEXIS 93236, (M.D. Pa. Dec. 18, 2007)................................... 10

Pagani v. Meriden Bd. of Educ.,
  No. 05-1115,
  2006 U.S. Dist. LEXIS 92267, (D. Conn. Dec. 19, 2006)................................... 23

Paola v. Spada,
  498 F. Supp. 2d 502 (D. Conn. 2007)........................................................13, 25

Papasan v. Allain,
  478 U.S. 265 (1986) .................................................................................. 33

Perna v. Twp. of Montclair,
  No. 05-4464,
  2006 U.S. Dist. LEXIS 70518, (D.N.J. Sept. 28, 2006) ................................... 10

Phillips v. City of Dawsonville,
  No. 06-16031,
  2007 U.S. App. LEXIS 21730, (11th Cir. Sept. 11, 2007) ................................ 37

Pottorf v. City of Liberty,
  No. 06-0246-W-NKL,
  2007 U.S. Dist. LEXIS 70803, (W.D. Mo. Sept. 24, 2007) ............................... 21

Richards v. City of Lowell,
  472 F. Supp. 2d 51 (D. Mass 2006).............................................................. 26

San Filippo v. Bongiovanni,
    30 F.3d at 439-40 (3d Cir. 1994)
    cert. denied, 513 U.S. 1082 (1995).................................................................................. 10

Saucier v. Katz,
    533 U.S. 194 (2001) ...................................................................................................... 35

Savokinas v. Pittston Twp.,
    No. 06-00121,
    2007 U.S. Dist. LEXIS 66979, (M.D. Pa. Sept. 11, 2007) .................................................. 8

Schuster v. Henry County, Ga.,
    No. 05-239-TWT,
    2007 U.S. Dist. LEXIS 41780, (N.D. Ga. June 7, 2007)................................................... 23

Sherwood v. Mulvihill,
    113 F.3d 396 (3d Cir. 1997)........................................................................................... 34

Siegert v. Gilley,
    500 U.S. 226 (1991) ...................................................................................................... 35

Sigsworth v. City of Aurora,
    497 F.3d 506 (7th Cir. 2007)......................................................................................... 14

Spiegla v. Hull,
    481 F.3d 961 (7th Cir. 2007)................................................................... 14, 16, 17, 38, 39

Tropiano v. Pa. State Police,
    No. 06-1569,
    2006 U.S. Dist. LEXIS 50312, (E.D. Pa. July 24, 2006)................................................... 31

Vose v. Kliment,
    No. 07-1792,
    2007 U.S. App. LEXIS 25136, (7th Cir. Oct. 26, 2007) ................................ 14, 15, 16, 17

Weisbarth v. Geauga Park Dist.,
    No. 06-4189,
    2007 U.S. App. LEXIS 20261, (6th Cir. Aug. 24, 2007) .................................................. 22

Williams v. Riley,
    481 F. Supp. 2d 582 (N.D. Miss. 2007)....................................................................10, 14

Wilson v. Layne,
    526 U.S. 603 (1999) ...................................................................................................... 36

WMX Techs., Inc. v. Miller,
    197 F.3d 367 (9th Cir. 1999)......................................................................................... 11

Young v. New Sewickley Twp.,
   160 Fed. Appx. 263 (3d Cir. 2005) .................................................................. 7

**Statutes**

11 Del. C. § 8302(a) ................................................................................... 14

9 Del. C. § 1331(a) ..................................................................................... 14

**Other Authorities**

Fed. Crim. R. Proc. 6(e) ............................................................................. 40

Fed. R. Civ. P. 12(b)(6) .............................................................................. 9

**Constitutional Provisions**

42 U.S.C. § 1983 ........................................................................................ 1

U.S. Const. amend. I................................................................................1, 10

U.S. Const. amend. I, cl. 6 ........................................................................ 11

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Henry V. Tobin III filed the present matter in this Court on September 2, 2004.[1] Former District Court Judge Jordan stayed the case on December 15, 2004.[2] Plaintiff amended his complaint while the case was stayed.[3]

The Amended Complaint names Thomas P. Gordon, Sherry Freebery, and Colonel David F. McAllister as defendants in their individual and official capacities. Colonel John L. Cunningham is named as a defendant only in his individual capacity (with Gordon, Freebery, and McAllister, collectively, the "Individual Defendants"). New Castle County ("NCC"), is also a named defendant.

Plaintiff's two Counts assert claims of First Amendment retaliation.[4] The factual allegations presented in the Amended Complaint arise from Plaintiff's employment as a sworn police officer with the NCC Police Department ("NCCPD"). Count I is based on the Free Speech Clause[5] and Count II is based on the Petition Clause.[6]

Defendants jointly filed a Motion to Dismiss in which they seek dismissal of Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, alternatively, on the grounds of qualified immunity as to the Individual Defendants. This is Defendants' Opening Brief in Support of Their Motion.

---

[1] (D.I. 1).

[2] (D.I. 12).

[3] (D.I. 14).

[4] U.S. Const. amend. I; 42 U.S.C. § 1983; (D.I. 14 at ¶¶142-47).

[5] (D.I. 14 at ¶¶142-44).

[6] (D.I. 14 at ¶¶145-47).

## SUMMARY OF THE ARGUMENT

Plaintiff's Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, the doctrine of qualified immunity. On the face of the pleadings, it is clear that:

1.    Count I of Plaintiff's Amended Complaint, which alleges free-speech retaliation, is governed by the United States Supreme Court's decision in <u>Garcetti v. Ceballos</u>.[7]

a.    <u>Garcetti</u> holds that speech made pursuant to a public employee's job duties does not invoke constitutional protections.

b.    Each of the three alleged instances of speech were made in Plaintiff's capacity as a police officer cooperating with federal law-enforcement agencies in a criminal investigation. Speech made in furtherance of a criminal investigation falls squarely within the job duties of an NCCPD police officer.

c.    As a police officer, Plaintiff had a duty to report suspected criminal activity or corruption. This duty is even more compelling where, as here, he alleges that the corruption involved other members of the NCCPD.

d.    Once Plaintiff reported his suspicions, his duties as a police officer required him to cooperate with law enforcement during its subsequent, related investigation.

e.    That Plaintiff may have been compelled to cooperate in the investigation does not affect the fact that his duty to speak was derivative of his employment. Employee speech made under the force of subpoena is not transformed into citizen speech by the mere fact that the speech may have been compelled.

---

[7] 126 S. Ct. 1951 (2006).

f.    Plaintiff's speech "owed its existence" to his job as a police officer. But for his employment as a sworn officer in the NCCPD, Plaintiff could not have had access to the information about which he spoke. This inevitable connection further demonstrates that the application of <u>Garcetti</u> bars Plaintiff's claims.

2.    Count II of Plaintiff's Amended Complaint, which asserts a claim under the Petition Clause of the First Amendment, similarly fails as a matter of law.

a.    First, Plaintiff fails to allege that he engaged in any expressive activity that constitutes a formal petition as required to qualify for the protections of the Petition Clause.

b.    To the extent that Plaintiff alleges that he engaged in expressive activity, that activity can be characterized only as speech, to be analyzed under the <u>Garcetti</u> standard set forth above.

c.    Plaintiff's assertion that he was compelled to speak by the FBI and, later, by subpoena, also fails to state a claim as a matter of law. In its recent decision in <u>Foraker v. Chaffinch</u>, the Third Circuit held that, "Statements made under compulsion do not comport with the basic principle of freedom underlying the Petition Clause."[8] Any speech that Plaintiff claims he was compelled to make does not, as a matter of law, qualify for constitutional protection under the First Amendment.

3.    Alternatively, Plaintiff's claims against Defendants Cunningham and McAllister are also subject to dismissal pursuant to Rule 12(b)(6). The Amended Complaint fails to allege any wrongdoing by either of these Individual Defendants. Neither Cunningham nor McAllister had been personally identified as having made the decision not to promote Plaintiff. In fact, the allegations contained in the Amended Complaint would, if true, make it factually impossible for

---

[8] 501 F.3d 231, 237 (3d Cir. 2007).

both defendants to have been involved in the claimed adverse actions. Cunningham and McAllister, therefore, should be dismissed from the matter.

       4.      Alternatively, all of the Individual Defendants are entitled to dismissal pursuant to the doctrine of qualified immunity. The procedural history of the <u>Garcetti</u> case shows that Plaintiff's speech occurred during a period when the law was far from "clearly established." And the recent <u>Foraker</u> decision demonstrates that the law regarding compelled speech in the context of the Petition Clause was similarly unsettled. The law in both areas was and remains unsettled in the courts and subject to debate by reasonable officials.

           a.  Plaintiff's right to secretly provide information about the activities of his co-workers and supervisors during working time and his right to testify about that information were not "clearly established" in 2003 or 2004. And his activities did not involve the "prototypical public speech" that might have been clearly protected by the First Amendment.

           b.  Therefore, even if Plaintiff's rights were violated, the Individual Defendants are immune from suit pursuant to the qualified-immunity doctrine.

## STATEMENT OF FACTS[9]

Plaintiff Henry V. Tobin is the Chief of the Middletown Police Department.[10] Plaintiff was a police officer in the NCCPD at all times relevant to this action.[11] Both Counts of Plaintiff's Amended Complaint are grounded in the same alleged protected activity and the same alleged adverse actions.

---

[9] For the limited purposes of this Motion, Defendants take all facts and allegations directly from the Amended Complaint. Defendants do so in compliance with Rule 12(b)(6) but make no representation as to the validity of any portion of Plaintiff's allegations.

[10] (D.I. 14 at ¶3).

[11] (D.I. 14 at ¶3).

### A. The Allegedly Protected Activity

Plaintiff claims that he engaged in three instances of protected speech on October 18, 2002, on December 11, 2002, and sometime in February 2003. Plaintiff claims that the first instance of allegedly protected speech took place at "a meeting at a secret location" with representatives of the U.S. Attorneys' Office (the "AG's Office"), the Federal Bureau of Investigation ("FBI"), and the Internal Revenue Service ("IRS") (collectively, the "Agencies"), on October 18, 2002.[12] And at that "secret" meeting, Plaintiff claims he reported the activities of his co-workers and supervisors in the NCCPD during working time. He claims that he reported internal criminal activity and "misuse" of NCCPD resources.[13] In short, Plaintiff claims to have reported corruption in the police department.

Plaintiff claims that the second instance of alleged speech occurred on December 11, 2002, when he testified before the grand jury. His appearance before the grand jury was compelled by subpoena.[14] And he claims that he testified about the corruption he reported to the Agencies two months earlier.[15]

Plaintiff's third instance of alleged speech occurred on February 3, 2003. He alleges that he received a telephone call from the FBI and was asked to provide "additional information and clarification of his grand jury testimony."[16] He claims that he complied with the FBI's request.

Plaintiff relies on the same factual allegations to support his Petition Claim. Plaintiff alleges that he "spoke out to the U.S. Attorney's Office, the FBI and the I.R.S., and likewise

---

[12] (D.I. 14 at ¶¶13, 17).

[13] (D.I. 14 at ¶¶13, 17, 27).

[14] (D.I. 14 at ¶18).

[15] (D.I. 14 at ¶20).

[16] (D.I. 14 at ¶¶21-22).

petitioned them for a redress of grievances."[17]  He also alleges that he attended a "secret

meeting," "spoke out," and made "oral and/or recorded statements," all of which related to the

alleged corruption in the NCCPD.[18]  Plaintiff does not allege that he filed any formal petition for

redress, such as a lawsuit or grievance.

### B.  The Subject Matter of the Allegedly Protected Activity

Plaintiff claims that he engaged in protected activity by reporting alleged corruption in

the NCCPD to the Agencies.  Generally, Plaintiff asserts that he provided information that

Defendants used NCCPD resources for personal political gain.[19]  Specifically, Plaintiff claims

that he reported Defendants' involvement in the following acts of misconduct:

- The "cover-up" of a hit-and-run accident involving Defendant Freebery's son;[20]
- The use of police officers for non-police matters, including campaign and election matters during working time, causing them to forgo their job duties;[21]
- The personal use of NCCPD computers;[22]
- The use of a restricted-access NCCPD database;[23] and
- The attempted bribe of a member of the police officers' union.[24]

Plaintiff claims that he had access to information about Defendants' conduct as a result of

his employment as a police officer in the NCCPD.  For example, Plaintiff was the Shift

---

[17] (D.I. 14 at ¶23); see also (D.I. 14 at ¶24) ("Through his oral and/or recorded statements at the secret meeting, in his grand jury testimony, and in the FBI phone call, [plaintiff]. . . exercised his First Amendment right . . . to petition government for a redress of grievances.").

[18] (D.I. 14 at ¶¶23, 24).

[19] (D.I. 14 at ¶27).

[20] (D.I. 14 at ¶¶33-65a).

[21] (D.I. 14 at ¶¶15, 16F).

[22] (D.I. 14 at ¶¶16A-B).

[23] (D.I. 14 at ¶16C).

[24] (D.I. 14 at ¶16E).

Commander on duty on the night of the accident.  Plaintiff claims that he responded in accordance with his job duties by telling his reporting officers to "uphold the law" and investigate without giving special favors.[25]

### C.  The Allegedly Adverse Actions

Plaintiff's claimed adverse employment actions are somewhat unclear as presented in the Amended Complaint.  Initially, Plaintiff alleges that he was denied a promotion to Captain three times and was transferred to a "less desirable position" in the NCCPD's Middletown Unit.[26]

The transfer is mentioned only once in the Amended Complaint without any supporting facts or context.[27]  Such a bare and conclusory allegation cannot, as a matter of law, constitute an actionable adverse action.[28]  "Plaintiff was not demoted, his pay and seniority were not affected, and he was not transferred to a dangerous" unit.[29]  Plaintiff has not alleged any facts that could indicate that this transfer would "deter a person of ordinary firmness from exercising his or her First Amendment rights.[30]

Further, the allegations in the Amended Complaint reveal that there are two, not three, promotions at issue.  Plaintiff alleges that he was passed over for promotion in May 2003 and May 2004.[31]  Two promotions were made simultaneously in May 2003.  Plaintiff could not have

---

[25] (D.I. 14 at ¶43).

[26] (D.I. 14 at ¶¶1, 116).

[27] (D.I. 14 at ¶116).

[28] See Young v. New Sewickley Twp., 160 Fed. Appx. 263, 266 (3d Cir. 2005) (explaining that "a district court is not required to credit a 'bald assertion' when deciding a motion to dismiss).

[29] McGovern v. City of Jersey City, No. 98-5186-JLL, 2007 U.S. Dist. LEXIS 72591, at *25 (D.N.J. Sept. 28, 2007).

[30] Id. at *14 (citing McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); see also Brennan v. Norton, 350 F.3d at 419 (indicating that to establish a First Amendment retaliation claim, the alleged retaliatory acts must be more than de minimis or trivial).

[31] (D.I. 14 at ¶¶94, 113).

accepted two Captain positions simultaneously.  Thus, only one is relevant to his claims.

Though not dispositive, it is worth noting that the earliest allegedly adverse actions occurred three months after the last instance of allegedly protected speech.[32]  During the intervening three months between the final instance of speech and the first claimed adverse action, Plaintiff received a favorable performance review.[33]  He also received a favorable review prior to the second alleged adverse action.[34]  And, most significantly, Plaintiff subsequently became Chief of the Middletown Police Department.[35]

## ARGUMENT

I.    STANDARD OF REVIEW

### A. The Standard for Dismissal

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim.[36]  Dismissal is appropriate if, accepting as true all of the facts alleged in the Amended Complaint, Plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face."[37]  As a result of the United States Supreme Court's decision in Bell Atlantic Corp. v. Twombly, Plaintiff must now "nudge his claims across the line from conceivable to plausible to avoid dismissal thereof."[38]

The Court need not assume that Plaintiff can prove facts that are not alleged in the

---

[32] (D.I. 14 at ¶21).

[33] (D.I. at ¶88).

[34] (D.I. 14 at ¶89).

[35] (D.I. 14 at ¶3).

[36] Fed. R. Civ. P. 12(b)(6).

[37] Bell Atl. Corp.v. Twombly,  127 S. Ct. 1955 (2007), (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[38] Savokinas v. Pittston Twp., No. 06-00121, 2007 U.S. Dist. LEXIS 66979, at *5 (M.D. Pa. Sept. 11, 2007).

Amended Complaint.[39]  Nor must the Court consider or regard as true "unsupported conclusions

or unwarranted inferences."[40]  Further, the Court is not required to credit "legal conclusions

draped in the guise of factual allegations."[41]  Therefore, Plaintiff's First Amendment claims are

subject to dismissal unless he alleges that each Defendant was personally involved in the alleged

wrongful action and identifies the "conduct, time and place" of the alleged violations.[42]

### B.  The Standard for First Amendment Retaliation: Free Speech

Count I of the Amended Complaint alleges a retaliation claim brought pursuant to the

Free Speech Clause of the First Amendment.[43]  In Garcetti v. Ceballos, the United States

Supreme Court significantly limited the protections available to public-employee speech.[44]  In

accordance with Garcetti, to withstand the present Motion, Plaintiff must sufficiently allege that

(1) the speech at issue is protected by the First Amendment; and (2) the protected speech was a

substantial factor in the alleged retaliatory action.[45]  A public employee's speech is considered

protected activity only when (1) he is speaking as a citizen; (2) about a matter of public concern;

and (3) the employer did not have a sufficient justification for its actions.[46]

Unlike citizen speech, speech made pursuant to a public employee's job duties does not

---

[39] See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998).

[40] Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007).

[41] ChemTech Int'l., Inc. v. Chem. Injection Techs., No. 06-3345, 2007 U.S. App. LEXIS 21697, at *3-4 (3d Cir. Sept. 10, 2007).

[42] Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980).

[43] U.S. Const. amend. I.

[44] 126 S. Ct. 1951 (2006); Foraker, 501 F.3d at 241 (noting that the Court's decision narrowed the scope of First Amendment claims for public employees).

[45] Houlihan v. Sussex Tech. Sch. Dist., 461 F. Supp. 2d 252, 259 (D. Del. 2006) (citing Hill v.Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006.

[46] Garcetti, 126 S. Ct. 1951, 1958 (2006).

receive constitutional protection.[47]  The First Amendment "does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."[48] "And an employee's official duties are construed broadly."[49]   Thus, the dispositive question is whether Plaintiff was speaking in his capacity as a police officer when he allegedly reported potential corruption in the NCCPD and cooperated with the Agencies during a related criminal investigation.[50]  This is a question of law, properly decided by the Court in a Motion to Dismiss.[51]

### C.  The Standard for First Amendment Retaliation: Petition

The Petition Clause of the First Amendment protects a public employee who petitions the government through formal mechanisms.[52]  The purpose of filing a "petition" is to ask the "government to fix what, allegedly, government has broken or has failed in its duty to repair."[53] Thus, to qualify for the protections of the Petition Clause, Plaintiff must have "actually voice[d] a grievance regarding a particular governmental action which had taken place or ask the government to fix a particular ongoing problem."[54]

---

[47] Id. at 1961.

[48] Johnson v. George, C.A. No. 05-157-MPT, 2007 U.S. Dist. LEXIS 42465, at *12 (D. Del. June 11, 2007) (quoting Garcetti, 126 S. Ct. at 1954).

[49] Hong v. Grant, No. 06-0134, 2007 U.S. Dist. LEXIS 70486, at *18 (C.D. Cal. Sept. 19, 2007).

[50] Ober v. Miller, No. 04-1669, 2007 U.S. Dist. LEXIS 93236, at *31 (M.D. Pa. Dec. 18, 2007) (dismissing claim based on a memorandum that alleged corruption in the police department because the plaintiff was acting in his capacity as a police officer).

[51] Hill, 455 F.3d at 241 (finding that whether speech is "protected" is a question of law for the court); Williams v. Riley, 481 F. Supp. 2d 582 (N.D. Miss. 2007) (granting Motion to Dismiss pursuant to Garcetti).

[52] U.S. Const. amend. I, cl. 6; San Filippo v. Bongiovanni, 30 F.3d at 439-40, 440 n.18, & 442-43 (3d Cir. 1994), cert. denied, 513 U.S. 1082 (1995).

[53] Id. at 442.

[54] Perna v. Twp. of Montclair, No. 05-4464, 2006 U.S. Dist. LEXIS 70518, at *24-25 (D.N.J. Sept. 28, 2006) (dismissing the plaintiff's Petition claim where the purpose of her letter was to warn government officials about the possibility of suit but did not request that any specific action be taken).

And the request must have been in the form of a formal petition. [55]  "Formal petitions are defined by their invocation of a formal mechanism of redress" such as "lawsuits, grievances, and workers' compensation claims."[56]  Informal conduct, such as "letters, phone calls, memorandum, and meetings" do not fall within the protections of the Petition Clause. [57]

If no formal petition was made, the conduct is considered expressive activity "properly analyzable" under the traditional "rubric applicable to speech."[58]  Therefore, informal "petitions," i.e., speech, must survive the Garcetti analysis set forth above.  But regardless of the outcome of a Garcetti analysis, Plaintiff "cannot seek solace in the Petition Clause" so long as his request was made "through informal channels."[59]

Even petitions made through formal mechanisms will not always qualify for the protections of the First Amendment.  As the Third Circuit explained earlier this year, "[s]tatements made under compulsion do not comport with the basic principle underlying the Petition Clause."[60]  Thus, where a plaintiff is "ordered" or otherwise compelled to make the speech at issue, "those statements do not fall within the constitutional protections for petitions to the government."[61]

---

[55] Id.

[56] Foraker, 501 F.3d at 236; see also Connick v. Myers, 461 U.S. 138, 154 (1983).

[57] WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (cited in Foraker, 501 F.3d at 236).

[58] McDonald & Schalk v Gallemore, 906 F.2d 491 (10th Cir. 1990) (per curiam) (followed by Foraker, 501 F.3d at 237).

[59] Foraker, 501 F.3d at 237-38 (dismissing the plaintiffs' petition claims because their complaints were informal ones and were not, therefore, protected by the right to petition).

[60] Id. at 238.

[61] Id.

## II.   TOBIN'S SPEECH IS NOT PROTECTED BECAUSE HIS DUTIES AS A POLICE OFFICER REQUIRED HIM TO REPORT ILLEGAL ACTIVITY AND TO COOPERATE WITH LAW ENFORCEMENT

Plaintiff was acting in his official capacity as a police officer when he provided information to the Agencies and testified before the grand jury. Plaintiff claims that his speech was made as part of "an ongoing federal criminal investigation."[62] The target of the investigation included, according to Plaintiff, potentially "unlawful conduct,"[63] "criminal objectives,"[64] and "illegal behavior" within the NCCPD by NCCPD officials involving NCCPD employees and resources.[65] In short, Plaintiff alleges that he cooperated with law enforcement during an investigation into possible corruption in the NCCPD.[66]

When Plaintiff reported criminal activity in the police department, he was acting pursuant to his duties as a police officer. His subsequent cooperation with the Agencies during the investigation that resulted from his report was similarly pursuant to his job duties. As a police officer, Plaintiff was "expected, pursuant to his job duties," to report corruption in the NCCPD.[67]

During each of the alleged instances of speech, Plaintiff was acting in his capacity as a police officer in the NCCPD. Speech made in the context of Plaintiff's employment is unprotected by the First Amendment.[68] Because none of the instances of speech alleged in the Amended Complaint constitutes constitutionally protected speech, Count I of Plaintiff's

---

[62] (D.I. 14 at ¶17).

[63] (D.I. 14 at ¶¶20, 27).

[64] (D.I. 14 at ¶13).

[65] (D.I. 14 at ¶¶17-18); see also (D.I. 14 at ¶31) (alleging Plaintiff provided information about conduct that was "in clear violation of state law as set forth in [the Delaware Code]").

[66] Indeed, Plaintiff goes so far as to cite the criminal indictment of some of the Individual Defendants (the "Indictment"), in his Amended Complaint. He even lifts paragraphs directly from the Indictment and inserts them as allegations into his pleading. (D.I. 14 at ¶¶15; 16A-F).

[67] Foraker, 501 F.3d at 241.

[68] See Garcetti, 126 S. Ct. at 1958-61.

Amended Complaint must be dismissed.

### A. As a Police Officer, Plaintiff Had a Duty to Report Potential Criminal Activity and to Cooperate in Any Resulting Criminal Investigation

Police officers have a duty to report actual or potential criminal activity. If their report results in a subsequent investigation, police officers are duty-bound to cooperate in the investigatory effort, as well. The duties to report crime and to cooperate in criminal investigations are derived directly from the very essence of a police officer's job. Together, they constitute two of the most fundamental duties inherent to the position. Therefore, Plaintiff's speech to the Agencies and before the grand jury, when he allegedly reported corruption in the NCCPD, was made exclusively in the context of his employment and is ineligible for protection under the First Amendment.

#### 1. As a Police Officer, Tobin Was Obligated to Report Potential Corruption Within the Police Department

"Investigating and reporting crime are the core functions of a police officer."[69] And "all police have a duty to report potential crimes" as a matter of law.[70] When the accused wrongdoers include fellow law-enforcement officers, the duty to report is even more compelling. In fact, as one federal court has stated, "it is *unquestionably* part of an officer's official duty to report unlawful activity of other officers."[71]

Plaintiff's duty to report crime arises directly from his employment as a sworn police officer in the NCCPD.[72] Citizens do not have a duty to report criminal conduct. Consequently,

---

[69] Bland v. Winant, No. 03-6091-SRC, 2007 U.S. Dist. LEXIS 31094, at *13 (D.N.J. Apr. 27, 2007).

[70] Paola v. Spada, 498 F. Supp. 2d 502, 509 (D. Conn. 2007); see (D.I. 14 at ¶ 43) (stating that Plaintiff, as a police officer, had an affirmative duty to "uphold the law").

[71] Bartis v. City of Bridgeton, No. 06-1574, 2007 U.S. Dist. LEXIS 36550, at *13 (E.D. Mo. May 18, 2007) (emphasis supplied) (citing Williams, 481 F. Supp. 2d at 584)

[72] See 9 Del. C. § 1331(a) (NCC police officers are charged with the duty to maintain and preserve "the peace and good order" of the County and are directed to "suppress all acts of violence, and enforce all

if Plaintiff suspected that there were ongoing "illegalities" in the NCCPD as he alleges, his duties as a police officer required him to report his suspicions.[73]

The several courts that have analyzed this issue also have reached the logical conclusion that police officers have a duty to report criminal activity.[74]  One such case involved a police officer who reported that a fellow officer had beaten an inmate.[75]  The court held that, as a police officer, the plaintiff had a duty to report unlawful activity.[76]  Because he spoke pursuant to a job-related duty, his speech was unprotected and his claims were dismissed.[77]

The Seventh Circuit has reached the same conclusion in at least three cases.  In Sigsworth v. City of Aurora, the plaintiff-police detective worked on a cooperative task force with federal agencies.[78]  He reported that other officers on the task force leaked information about an impending raid, thereby causing the operation to be unsuccessful.

The plaintiff argued that he was acting outside the scope of his employment when reporting the conduct.  But the court disagreed.  The plaintiff was "doing what *was expected of him* as a member of the task force.  He reported that other officers broke the law and, according to him, jeopardized the success of the operation."[79]  The "expected speech" of a police officer, who is duty-bound to report the unlawful conduct of other officers, is not the speech of a citizen.

---

laws relating to the safety of persons and property"); 11 Del. C. § 8302(a) (officers are also charged with the duty to "be conservators of the peace" throughout the County).

[73] Bartis, 2007 U.S. Dist. LEXIS 36550, at *13.

[74] See, e.g., Sigsworth v. City of Aurora, 497 F.3d 506 (7th Cir. 2007); Spiegla v. Hull, 481 F.3d 961 (7th Cir. 2007); Vose v. Kliment, No. 07-01792, 2007 U.S. App. LEXIS 2536 (7th Cir. Oct. 26, 2007).

[75] Williams, 481 F. Supp. 2d at 584.

[76] Id.

[77] Id.

[78] 497 F.3d 506.

[79] Id. at 511.

Vose v. Kliment also involved alleged corruption in the police department.[80]  The

plaintiff, a supervisor in the narcotics unit, suspected corruption in the major-case unit.  He

investigated, reported his suspicions, and later cooperated in the resulting investigation.[81]

In finding that the plaintiff's speech was unprotected, the court paid particular attention to

the potential benefits the plaintiff stood to realize.[82]  If the plaintiff's claims were true, the

misconduct could directly impede the performance of his unit, which, as a supervisor, he had a

duty to operate effectively.  He also had a duty to make sure that his unit's investigations were

not compromised by corruption elsewhere in the police department.

It was to the plaintiff's advantage to speak out.  Through his report, the plaintiff sought to

eliminate the perceived corruption and to prevent it from negatively affecting his unit.  The

general citizenry would not have been similarly affected by the corruption.  Nor could non-police

citizens have realized the same benefits realized by the plaintiff in his role as a sworn police

officer.

Here, Plaintiff similarly claims that the alleged corruption interfered with the ability of

officers under his supervision to effectively perform their job duties.[83]  Consequently, it was to

Plaintiff's advantage to stop conduct that interfered with his ability to perform his job duties.[84]

Speech that would benefit Plaintiff in his capacity as a police officer, then, was made pursuant to

---

[80] 2007 U.S. App. LEXIS 25136, at *14-15.

[81] Id. at *14.

[82] Id.

[83] (D.I. 14 at ¶¶15, 1) (alleging Defendants' conduct interfered with the proper operations of the NCCPD); (D.I. 14 at ¶85) (alleging Plaintiff held a supervisory position since 1989).

[84] See Maras-Roberts v. Phillippe, 05-1148-SEB-JMS, 2007 U.S. Dist. LEXIS 31661, at *21 (S.D. Ind. Apr. 27, 2007) (finding it relevant to the Garcetti analysis that the plaintiff stood to benefit professionally from her speech but, per Garcetti, "immaterial whether [she] experienced some personal gratification from the speech"); Montgomery v. Miss., 498 F. Supp. 2d 892, 914 (S.D. Miss. 2007) ("An employee's speech may contain an element of personal interest and still qualify as speech on a matter of public concern.").

the duties of his employment.[85]

In <u>Vose</u>, the plaintiff tried to avoid the impact of the court's "benefits" analysis by arguing that he had gone above and beyond his job duties. He claimed that he had no duty to independently investigate and report suspected corruption. Especially, he argued, given the fact that the corruption was in a different unit over which he had no supervisory responsibilities.[86] He claimed that his extra efforts converted his report to the speech of a concerned citizen.

The court was unpersuaded. The citizen-employee analysis is not determined by "core duties" alone.[87] There was no dispute that the officer had gone above and beyond his routine duties by investigating and reporting suspected corruption outside his unit.[88] But this fact alone did not convert his speech into the speech of a citizen.[89] A police officer would be far more likely to have a duty to report corruption in the police department than would the average citizen.

The Seventh Circuit also found a duty to report internal corruption in <u>Spiegla v. Hull</u>.[90] The plaintiff, a corrections officer, was terminated after she reported that her supervisor had breached prison security policies.[91] Undoubtedly, there were prison rules regarding security. As a corrections officer, the plaintiff was paid to enforce those rules and to keep the prison secure.[92] By reporting a potential security breach, the plaintiff was executing her job duties. Her speech, then, was made in her capacity as an employee.[93]

---

[85] See <u>Vose</u>, 2007 U.S. App. LEXIS 2536 at *15.

[86] <u>Id.</u>

[87] <u>Id.</u> at *15.

[88] <u>Id.</u> at *14-15.

[89] <u>Id.</u> at *15.

[90] 481 F.3d 961 (7th Cir. 2007).

[91] <u>Id.</u> at 966.

[92] <u>Id.</u>

[93] <u>Id.</u> at 965.

The Eastern District of Pennsylvania applied the same logical analysis in <u>Devlin v. Blackmon</u>.[94]  Devlin, also a corrections officer, reported that she witnessed other officers smuggle contraband into the prison.[95]  She tried to save her case from dismissal by contending that her report was not about just one isolated incident.  She claimed that her report brought to light "a longstanding pattern of possible illegal activities" that ran rampant throughout the prison system.[96]  Devlin argued that she had performed a public service by reporting the activity.  And, just like the plaintiff in <u>Vose</u>, she claimed that "it was not one of her job duties to ferret out and report corruption in the prison."[97]

Here, again, the court was not persuaded..[98]  Prison rules prohibited contraband.  Plaintiff was paid to enforce prison rules.  Her job duties did not change based on the identity of the individuals who violated those rules or how many violations had occurred.  And even if she had gone "above and beyond" her duties, that alone did not transform the nature of her speech.[99]

Speech made pursuant to a public employee's job duties is not protected by the First Amendment.[100]  This Supreme Court mandate is not to be ignored simply because the purpose or effect of the speech is to expose perceived ongoing corruption by high-ranking officials.

Together, these cases demonstrate that, as a sworn police officer, Plaintiff had an "unquestionable" duty to report suspected unlawful conduct within the police department.  It is further without dispute that Plaintiff had a duty to cooperate with the Agencies.  It is difficult to

---

[94] No. 05-6081, 2007 U.S. Dist. LEXIS 46645 (E.D. Pa. June 26, 2007).

[95] <u>Id.</u> at *2.

[96] <u>Id.</u>

[97] <u>Id.</u>

[98] Id.

[99] <u>See</u> <u>Spiegla</u>, 481 F. 3d at 966.

[100] <u>Garcetti</u>, 126 S. Ct. at 1961.

imagine how it could be contested that police officers are required to cooperate "with all agencies engaged in the administration of justice . . . and [to] provide all the aid and information to which such agencies and departments are entitled."[101]   Accordingly, Plaintiff's report of corruption in the NCCPD was made within the scope of his employment and is not protected by the First Amendment.

> **2.    As a Police Officer, Tobin Was Obligated to Cooperate with External Agencies in Any Investigation That Related to His Report**

A police officer who reports internal corruption does not satisfy his duties with the report alone.  By the nature of his employment, the officer is also obligated to cooperate with law enforcement during any subsequent investigation.  This logical extension was explained by the Eighth Circuit in <u>Bradley v. James</u>.[102]

Bradley, a commissioned police officer, reported unlawful conduct by a fellow officer.[103] During a subsequent investigation into the reported conduct, the plaintiff revealed that, on a separate occasion, the police chief reported for duty intoxicated.[104]  The trial court dismissed the retaliation claim pursuant to <u>Garcetti</u>, and the officer appealed.[105]

The Court of Appeals affirmed, finding that the plaintiff was speaking as a police officer when he reported the actions of the police chief.  The court observed that, "[e]ven assuming Bradley was fired because of his allegations against [the chief], and that his allegations were a matter of public concern, he cannot prevail."[106]  He could not avoid dismissal because, put

---

[101] <u>Heller v. Fulare</u>, No. 3:2004-265, 2007 U.S. Dist. LEXIS 43325, at *22 (W.D. Pa. June 14, 2007).

[102] 479 F.3d 536, 537 (8th Cir. 2007).

[103] <u>Id.</u>

[104] <u>Id.</u>

[105] <u>Id.</u> at 536.

[106] <u>Id.</u> at 539.

simply, "as a police officer, Bradley had an *official* responsibility to cooperate with the investigation."[107]

The principles outlined in the cases above also are present in the case at bar. Plaintiff alleges that his speech to the Agencies was about "defendants' unlawful conduct."[108] He claims that he sought to report "election and campaign irregularities executed through the illegal use of on-duty NCCPD officers to campaign."[109] Plaintiff acknowledges that, as a police officer, he had an official duty to "uphold the law."[110] And he further admits that the letter and spirit of the law must guide his decisions made in the execution of his official duties.[111]

Plaintiff was executing his duties as a police officer when he reported illegal conduct. He was performing his job duties when he cooperated with the Agencies during a criminal investigation into the conduct he claims to have reported. Because Plaintiff was "expected" to engage in this speech due to his position in law enforcement, he "was not speaking as [a] citizen for First Amendment purposes, and the Constitution does not insulate [his] communications from employer discipline."[112]

### B. Plaintiff's Speech Was Made Pursuant to His Job Duties, Even If It Was Made Under Compulsion or Made Outside the Chain of Command

The fact that Plaintiff may have been compelled to report the potentially criminal conduct does not affect the analysis set forth above. The <u>Garcetti</u> decision controls both voluntary and

---

[107] <u>Id.</u> (emphasis supplied, internal quotations omitted).

[108] (D.I. 14 at ¶17).

[109] (D.I. 14 at ¶27).

[110] (D.I. 14 at ¶43).

[111] (D.I. 14 at ¶57).

[112] <u>Foraker</u>, 531 F.3d at 238.

involuntary speech.[113]  First, as shown above, <u>Garcetti</u> provides that a public employee who

voluntarily reports corruption in the workplace does so pursuant to his job duties and is,

therefore, unprotected.[114]  Hence, any claim based upon voluntary speech about internal

corruption is subject to dismissal pursuant to <u>Garcetti</u>.  Second, But involuntary speech, or

speech made under compulsion, also is controlled by constitutional limitations imposed by the

<u>Garcetti</u> decision.[115]

### 1.    Plaintiff's Speech, Even If Compelled by Law, Is Unprotected Because It Was Made Pursuant to His Duties as a Police Officer

Compelled speech cannot be described as "an exercise of free speech." [116]  Thus, any

speech that Plaintiff was compelled to make, including his subpoenaed testimony before the

grand jury, is not protected by the First Amendment.  Any claim that relies on Plaintiff's grand

jury testimony as the underlying protected activity, therefore, should be dismissed.

In <u>Deprado v. City of Miami</u>, the plaintiff-police officer alleged that he was subject to

retaliation for his subpoenaed grand jury testimony.[117]  At the hearing, he testified that members

of the SWAT team had planted evidence after a shooting.[118]  The plaintiff was obligated to report

the incident pursuant to this duties as a law enforcement officer.[119]  And, as a sworn police

officer, the plaintiff certainly had a duty to comply with a lawfully issued subpoena.

Accordingly, the court dismissed the plaintiff's claim, explaining that "his grand jury testimony

---

[113] 126 S. Ct. 1951.

[114] <u>Id.</u>

[115] <u>See</u> <u>Foraker</u>, 501 F.3d at 241 (finding that, even though "giving statements to the State Auditor was not part of their everyday duties," their speech was made pursuant to their job duties because, once they were ordered to report, they "were expected to report truthfully").

[116] <u>Heller</u>, 2007 U.S. Dist. LEXIS 43325, at *23.

[117] 446 F. Supp. 2d 1344 (2006).

[118] <u>Id.</u> at 1345.

[119] <u>Id.</u>

occurred pursuant to his official duties as a police officer . . . and was not speech as a private citizen."[120]

 <u>Green v. Barrett</u> is another instructive case involving subpoenaed speech.[121]  In <u>Green</u>, the plaintiff testified under subpoena about the conditions of the jail where she worked as a supervisor.[122]  Various laws and regulations mandated that the jail's facilities be maintained at a certain minimum standard.[123]  The plaintiff was paid to ensure that the mandated standard was reached.

 The plaintiff testified about the extent to which the standard had been met.[124]  Thus, she testified about information she learned in the course of executing her job duties.[125]  "The fact that the plaintiff made the statements in testimony" did not affect the Eleventh Circuit's analysis.[126]

 Also irrelevant to the analysis was whether the "communicated information" may have been of general interest to the public.[127]  Certainly, the public may have been interested in the conditions of the jail.  But, as a matter of law, compelled speech cannot be said to have been made "for the purpose of raising issues of public concern."[128]  And, in any event, <u>Garcetti</u>

---

[120] <u>Id.</u>  Notably, the court also held that the plaintiff's lateral transfer failed to constitute an adverse employment action to support a First Amendment retaliation claim.  <u>Id.</u> at 1345.

[121] 226 Fed. Appx. 883 (11th Cir. Mar. 14, 2007).

[122] <u>Id.</u> at *1.

[123] <u>Id.</u> at *8.

[124] <u>Id.</u>.

[125] <u>Id.</u>

[126] <u>Id.</u> (<u>citing</u> <u>Morris v. Crow</u>, 142 F.3d 1379, 1383 (11th Cir. 1998)) ("The mere fact that Morris's statements were made in the context of a civil deposition cannot transform them into constitutionally protected speech.").

[127] <u>Id.</u> at *7 (internal quotation omitted).

[128] <u>Pottorf v. City of Liberty</u>, No. 06-0246-W-NKL, 2007 U.S. Dist. LEXIS 70803, at *1 (W.D. Mo. Sept. 24, 2007); <u>Heller</u>, 2007 U.S. Dist. LEXIS 43325, at *23 (finding that the plaintiff's statement was not an "exercise of free speech" because she was ordered to provide it).

prohibits application of the matter-of-public-concern analysis to employee-made speech.[129]

Insofar as Plaintiff alleges that he was speaking at the direction of the Agencies or under the compulsion of subpoena, he was merely executing the duties arising from his employment imposed upon him by the law.[130][131]  It was Plaintiff's duty as a police officer, to uphold and obey the law.[132]  This duty also required him to comply with a lawfully issued subpoena and to cooperate with other law-enforcement agencies in their investigation into potential criminal activity.[133]

Thus, when Plaintiff testified about conduct or conditions in the NCCPD, he did so in his capacity as an employee.  Employee-made speech is unprotected by the First Amendment, even if compelled by subpoena and regardless of whether it related to a matter of public concern.

### 2. Plaintiff's Speech, Even If Made Outside the Chain of Command, Is Unprotected Because It Was Made Pursuant to His Duties as a Police Officer

As shown above, the employee nature of Plaintiff's speech is not affected by the fact that it may have been compelled.  Nor is it affected by the fact that Plaintiff may have spoken outside his chain of command.  In Foraker, the plaintiffs also spoke outside the chain of command when they met with the State Auditor.[134]  The Third Circuit recognized that speaking to the State

---

[129] Foraker, 531 F.3d at 243 ("Before analyzing whether an employee's speech is of public concern, a court must first determine whether the employee was speaking 'as a citizen' or, by contrast, pursuant to his duties as a public employee.").

[130] See, e.g., Weisbarth v. Geauga Park Dist., No. 06-4189, 2007 U.S. App. LEXIS 20261, at *18 (6th Cir. Aug. 24, 2007) (dismissing claim where the plaintiff was compelled to speak to a third party consultant but her speech was still limited to internal department matters); Burns v. Borough of Glassboro, No. 05-3034-JBS, 2007 U.S. Dist. LEXIS 42069, at *21 (D.N.J. June 11, 2007) (holding that the plaintiff's statements to an internal affairs investigator were made in his capacity as a police officer).

[131] Kasak v. Village of Bedford Park, No. 06-5119, 2007 U.S. Dist. LEXIS 70281, at *28 (N.D. Ill. Sept. 18, 2007).

[132] (D.I. 14 at ¶43).

[133] See Heller, 2007 U.S. Dist. LEXIS 43325, at *22.

[134] Foraker, 501 F.3d at 239.

22

Auditor "was not part of their everyday duties" as police officers.[135]  But, as police officers, they had a duty "to report truthfully" once ordered to report at all.[136]

The same principle holds true where the plaintiff voluntarily chooses to go outside the chain of command instead of being ordered to do so.  In Pagani v. Meriden Board of Education, the plaintiff-teacher reported the conduct of another teacher to the state Department of Children and Families, notwithstanding being warned against it by his supervisor.[137]  When filing his report, the plaintiff "understood he was doing so because, as an educator, he had a duty to do so."[138]

An employee who is ordered by his employer to speak to an outside agency can be subject to discipline without recourse under the First Amendment.  Similarly, an employee who speaks based on a professional duty can be subject to managerial discipline even if his speech was made to someone other than his employer.[139]  Regardless of the forum or motivation, speech made pursuant to duties arising from employment cannot serve as the basis for a First Amendment claim.  As a result, Plaintiff's claims will not be saved by the mere allegation that he spoke to the Agencies instead of reporting his claims within the NCCPD through the chain of command.[140]

---

[135] Id. at 243.

[136] Id. at 241.

[137] No. 05-1115-JCH, 2006 U.S. Dist. LEXIS 92267, at *4 (D. Conn. Dec. 19, 2006).

[138] Id. at *11-12.

[139] See Cheek v. City of Edwardsville, Consol. No. 06-2210, -2245, -2459, 2007 U.S. Dist. LEXIS 63097, at *30 (D. Kans. Aug. 24, 2007) (rejecting the plaintiffs' argument that their speech should be entitled to protection solely because it was made to an outside agency).

[140] See Schuster v. Henry County, Ga., No. 05-239-TWT, 2007 U.S. Dist. LEXIS 41780, at *18 (N.D. Ga. June 7, 2007).

### C.  The Alleged Speech "Owed Its Existence" to Plaintiff's Employment

Some courts, including the Third Circuit, employ a "but for" analysis in making a Garcetti determination.  This analysis focuses on the content of the speech at issue.  But instead of evaluating the public nature of the content, the court looks to the *source* of the content.

In the Third Circuit, the question is whether the speech resulted from some action taken in the course of the plaintiff's employment.[141]  If the plaintiff could not have made the speech "but for" his employment, the speech is unprotected.  Put differently, even if the speech was not made pursuant to the plaintiff's job duties, it remains unprotected so long as it "still owed its existence" to the plaintiff's employment.[142]

In Foraker, the plaintiffs' speech to the Auditor was not required by their job duties.  But they observed the conditions of the firing range during the normal course of their employment.  But for their employment, they would not have had access to the information they later provided to the Auditor.[143]  There was no "relevant analogue to speech made by citizens" because non-police citizens could not have accessed the information about the firing range.  Therefore, citizens could not have engaged in the same type of speech.[144]  Only speech that has a "relevant analogue to speech made by citizens" can qualify for constitutional protection.[145]

When the Third Circuit's analysis is applied to the present case, the dispositive question becomes whether Plaintiff would have had access to the subject matter of his testimony but for

---

[141] Foraker, 501 F.3d at 243 ("[W]hat is dispositive is that the prior statements of [plaintiffs] within the chain of command prompted the order to speak with the State Auditor.  Because the speech that motivated the order [to speak to the Auditor] was within their job duties, the responsibility to respond to the subsequent order was also within the scope of their duties.").

[142] Kasak, 2007 U.S. Dist. LEXIS 70281, at *28 (N.D. Ill. Sept. 18, 2007).

[143] Foraker, 501 F.3d at 241.

[144] See Bland, 2007 U.S. Dist. LEXIS 31094, at *13.

[145] Id. at *14.

his employment with the NCCPD.[146]  Even a cursory look at the content of Plaintiff's alleged speech makes clear that, under the "but-for" analysis, his speech is not protected.  All of Plaintiff's alleged speech related to "corruption" of the NCCPD and, therefore, "arose from information he learned in the course of executing his job duties."[147]

Specifically, Plaintiff claims that he spoke about the attempted "cover-up" of a hit-and-run accident and the use of police officers on political campaigns during working time.[148]  As alleged in the Amended Complaint, Plaintiff was the Shift Commander on duty on the night of the accident.  Plaintiff responded in accordance with his job duties by telling his reporting officers to "uphold the law" and investigate without giving special favors.[149]  Plaintiff would not have had any direct knowledge of the accident "but for" his employment with the NCCPD.

Similarly, Plaintiff could not have known about the activities of fellow officers during working time had Plaintiff himself not been a police officer.  Citizens who were not NCCPD employees would not have had access to the information about how NCCPD police officers spent their working time.  Additionally, Plaintiff could have known about the use of NCCPD computers or the unlawful access of an NCCPD database only as a direct result of his employment.[150]

"But for" Plaintiff's employment with the NCCPD, he would not have been privy to the

---

[146] See Maras-Roberts, 2007 U.S. Dist. LEXIS 31161, at *18 (holding that the fact that the plaintiffs would not have been able to access the judge who fired her nor would she have had access to the information about which she spoke were factors tending to show employee-made speech).

[147] Hong v. Grant, No. 06-0134, 2007 U.S. Dist. LEXIS 70486, at *23-24 (C.D. Cal. Sept. 19, 2007) (holding that the fact that the plaintiff's speech resulted from information he learned in the course of executing his job duties tended to show that it was made in his capacity as an employee).

[148] (D.I. 14 at ¶¶34, 35, 43, 57).

[149] (D.I. 14 at ¶43).

[150] See Paola, 498 F. Supp. 2d. at 508 (whether it was the type of activity engaged in by persons who do not work for the government will determine whether the speech was made in the capacity of an employee or a citizen).

information he claims to have reported to the Agencies and to the grand jury. Once he learned of the information, he had a duty to report it. And by complying with his duty to report the information to the Agencies, he then became duty-bound to cooperate in any subsequent, related investigation. The two duties are inextricably tied to Plaintiff's job duties as a police officer.

> [A]s a practical matter, [Plaintiff] cannot claim that once he reported his suspicions to [the Federal Agencies] . . . his continuing participation in the investigation was independent of his role as [a police officer].
>
> Rather, [his] continuing cooperation . . . was a natural and logical extension of his professional decision to report improprieties at the [NCCPD]. Therefore, although Plaintiff's job description technically may not have included his continued participation in [the] expanding investigation, . . . his agreement to do so occurred within the scope of his employment and did not constitute the kind of activity engaged in by citizens who do not work for the government.
>
> Accordingly, under <u>Garcetti</u>, [Plaintiff] is not entitled to First Amendment protection for any of his communications with [the Federal Agencies]. [151]

Thus, even if Plaintiff was not required to speak to the Agencies, his speech "still owed its existence" to his role as police officer. [152] "But for" his employment, Plaintiff would not have had access to the information about which he spoke. As a result, his speech was made exclusively pursuant to his employment and is, therefore, unprotected by the First Amendment.

## III.    TOBIN'S COMPELLED SPEECH DOES NOT QUALIFY AS A "PETITION" ELIGIBLE FOR THE PROTECTIONS OF THE FIRST AMENDMENT

Count II of Plaintiff's Amended Complaint, which asserts a right-to-petition claim, fails as a matter of law on three separate grounds. First, Plaintiff has failed to allege that he actually filed a "petition," as defined for purposes of First Amendment protection. Second, even if

---

[151] <u>Richards v. City of Lowell</u>, 472 F. Supp. 2d 51, 80 (D. Mass 2006).

[152] <u>Kasak</u>, 2007 U.S. Dist. LEXIS 70281, at *28.

Plaintiff's speech were to be construed as a petition, it "owes its existence" to his role as a police officer and, therefore, is ineligible for First Amendment protection.  Third, to the extent that Plaintiff alleges his speech was compelled by the Agencies or by subpoena, such compelled speech does not qualify for the protections of the Petition Clause.

### A.  Plaintiff Does Not Allege That He Filed a Formal Petition

As an initial matter, Plaintiff has failed to allege that he actually filed a "petition." Instead, the Amended Complaint alleges that Plaintiff "spoke out to the U.S. Attorney's Office, the FBI and the IRS, and likewise petitioned them for a redress of grievances."[153]  It also alleges that Plaintiff attended a "secret meeting," "spoke out," and made "oral and/or recorded statements," all of which related to the alleged corruption in the NCCPD.[154]  None of these activities constitute a formal petition as required to invoke the protections of the Petition Clause.

"Governmental retaliation is not constitutionally actionable" unless the alleged activity is "in the nature of a formal grievance procedure that the Petition Clause is designed to protect."[155] "The Petition Clause [] only applies to petitions in the nature of a lawsuit or grievance."[156]  Here, Plaintiff does not allege that he filed a lawsuit, a grievance, or otherwise submitted a formal petition of redress.  Plaintiff has not alleged the existence of an actionable petition.  Thus, he cannot claim the protections of the Petition Clause.  Count II of Plaintiff's Amended Complaint must be dismissed for failure to state a cognizable claim.

The failure to allege an actionable petition is fatal to Plaintiff's claim and requires

---

[153] (D.I. 14 at ¶23); see also (D.I. 14 at ¶24) ("Through his oral and/or recorded statements at the secret meeting, in his grand jury testimony, and in the FBI phone call, [Plaintiff] . . . exercised his First Amendment right . . . to petition government for a redress of grievances.").

[154] (D.I. 14 at ¶¶23, 24).

[155] Id. (quoting Cooper v. Cape May County Bd. of Soc. Servs., 175 F. Supp. 2d 732, 746 (D.N.J. 2001).

[156] Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526 at 526, 545 (D.N.J. 2003) (internal citations omitted), aff'd, 2005 U.S. App. LEXIS 18622 (3d Cir. N.J., Aug. 29, 2005).

dismissal of Count II of the Amended Complaint as a matter of law.[157]

### B. Plaintiff's Informal "Petitions" Are Actually Instances of Speech Subject to Dismissal Pursuant to <u>Garcetti</u>

Additionally, even assuming *arguendo* that his alleged speech constituted a formal petition, it was nonetheless made pursuant to Plaintiff's job duties as a police officer who is sworn to "uphold the law."[158]  As explained above, speech made pursuant to the speaker's job duties is not protected by the First Amendment.[159]  Similarly unprotected are petitions made by "a government employee performing an official duty rather than a citizen."[160]

In <u>Ober v. Miller</u>, a decision from the Middle District of Pennsylvania issued in December 2007, the plaintiff was a former captain with the State Police.[161]  He prepared a memorandum "that detailed what he believed to be acts of public corruption" committed by the defendants, who were high-ranking officials in the State Police.[162]  Specifically, the memorandum alleged that the defendants had used their power and influence as government officials to provide political support to a state senator to further their own political ambitions.[163]  He also filed multiple suits in federal court and numerous employee grievances.[164]

When he was not awarded a desired promotion, he brought suit asserting a Petition

---

[157] <u>See</u> <u>Cooper</u>, 175 F. Supp. 2d at 746 (dismissing Petition claim because the plaintiff's meeting with union officials was "not in the nature of a formal grievance procedure that the Petition Clause is designed to protect").

[158] (D.I. 14 at ¶43).

[159] <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1960.

[160] <u>Ober</u>, 2007 U.S. Dist. LEXIS 93236, at *31.

[161] <u>Id.</u> at *1.

[162] <u>Id.</u> at *1.

[163] <u>Id.</u> at *13.

[164] <u>Id.</u> at *31.

Claim.[165]  His claim alleged that he was subject to unlawful retaliation in response to his

memorandum and his various suits and grievances.[166]  The defendants argued for summary

judgment to the extent that the claim was based on the plaintiff's memorandum.  They argued

that the plaintiff "was speaking as a government employee performing an official duty rather

than as a citizen."  The court agreed.[167]

The memorandum, an "informal petition," was analyzed as expressive activity pursuant

to Garcetti.  Ober's memorandum contained allegations of corruption within a police department

similar to the allegations made by the plaintiff in Garcetti.[168]  The court recognized that Ober had

a "duty and oath of office" to report the corruption.[169]

Thus, the plaintiff's actions fell "squarely within the rule announced by the Court in

Garcetti."  Ober drafted the memorandum in furtherance of his official duties, rather than as a

citizen.[170]  Therefore, the memorandum, which did not constitute a "petition" for the purposes of

the Petition Clause, similarly failed when evaluated as speech.

Here, Plaintiff has not asserted that he submitted a formal petition that could be eligible

for the protections of the Petition Clause.  His allegations relate, instead, to basic expressive

activity, i.e., speech.  As explained above, Plaintiff's speech was made pursuant to his duties as a

sworn NCCPD police officer.  Like the plaintiff in Garcetti, Plaintiff's "informal petition"

likewise does not qualify for the protections of the First Amendment.

---

[165] Id. at *39.

[166] Id.

[167] Id. at *31 (citing Garcetti, 126 S. Ct. at 1959-60).

[168] Id. at *32.

[169] Id.

[170] Id.

### C.  Recent Third Circuit Precedent Prohibits the Application of the Petition Clause to Any Speech Plaintiff Was Compelled to Make

Finally, to the extent that Plaintiff alleges that his speech was compelled, either by the Agencies or by subpoena, such compelled speech is ineligible for the protections of the Petition Clause.  In Foraker v. Chaffinch, the Third Circuit unequivocally held that compelled speech does not receive constitutional protection.[171]

In Foraker, the police-officer plaintiffs alleged that, because they were "ordered to cooperate" in the State Auditor's investigation, their speech necessarily triggered the Petition Clause.[172]  This was flatly rejected by the Third Circuit. "[S]tatements made under compulsion do not comport with the basic principles of freedom underlying the Petition Clause."[173]  To the extent that Plaintiff claims that he was compelled to testify before the grand jury or that he was required to cooperate in the Agencies' investigation or risk later consequences, such compelled statements "do not fall within the constitutional protections for petitions to the government."[174]

## IV.    THE ALLEGATIONS MADE AGAINST DEFENDANTS CUNNINGHAM AND MCALLISTER ARE PLAINLY INSUFFICIENT TO SUSTAIN A COGNIZABLE CLAIM

The sustainability of a claim against Individual Defendants Cunningham and McAllister also must be addressed.  Plaintiff names both defendants in the caption of this action but makes no factual allegations about them in the body of the Amended Complaint that could impose legal liability.  Plaintiff's failure to identify the particular involvement of either of the two defendants requires that the claims against them be dismissed.[175]

---

[171] 501 F. 3d at 238.

[172] Id. at 238.

[173] Id. at 237.

[174] Id.

[175] See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("[A]n individual defendant in a civil rights

Plaintiff fails to allege that either Cunningham or McAllister was responsible for the decision not to promote him. To the contrary, Plaintiff specifically alleges that, "[i]n reality," Defendants Gordon and Freebery "made all personnel and promotion decisions for the County Police Department."[176] Even Plaintiff's alternative argument does not identify any wrongdoing by Cunningham or McAllister. Instead, he claims that Defendant Freebery was the true decision maker, stating, "Alternatively, Gordon ratifies, sanctions, approves, acquiesces in, permits, or authorizes Freebery's decision."[177]

Similarly contradictory allegations render Plaintiff's claims factually impossible. For example, the Amended Complaint states that Defendant Cunningham retired from the NCCPD in June 2003.[178] Yet most of the claimed retaliatory acts occurred long after Cunningham's departure.[179]

Defendant Cunningham is mentioned in only three paragraphs of the 147-paragraph complaint.[180] In Paragraph 6, Plaintiff provides the dates of Cunningham's employment with the NCCPD. In Paragraph 10, he alleges that Cunningham "pressured subordinate police officers to work during both working and non-working hours" on political campaigns. Cunningham did so, according to Paragraph 11, because of pressures from Defendant Freebery. This "scant reference" to Cunningham's involvement does not even include an allegation that he was aware that Plaintiff sought promotion to Captain.[181]

---

action must have a personal involvement in the alleged wrongdoing").

[176] (D.I. 14 at ¶¶9, 82).

[177] (D.I. 14 at ¶83).

[178] (D.I. 14 at ¶6).

[179] See (D.I. 14 at ¶¶109, 111-13, 115).

[180] (D.I. 14 at ¶¶6, 10, 11).

[181] See Tropiano v. Pa. State Police, No. 06-1569, 2006 U.S. Dist. LEXIS 50312, at *6-7 (E.D. Pa. July 24, 2006).

Plaintiff's allegations with respect to Defendant McAllister are not even "scant;" they are virtually non-existent. McAllister is mentioned in only a single paragraph, which states that he "was the Colonel of the [NCCPD] from July 29, 2003, to October 19, 2005."[182] And, as with Cunningham, this factual allegation precludes a finding of liability against McAllister. All of Plaintiff's allegedly protected activities occurred in late 2002 and early 2003. At the time of Plaintiff's alleged speech, McAllister was not in a position with decision-making authority.

And, as with Cunningham, Plaintiff fails to allege that McAllister was aware of the claimed protected activity. Plaintiff's failure to allege that either of these two defendants "directed, had knowledge of, or acquiesced in," the promotion decisions requires dismissal of the claims against them as a matter of law.[183] This conclusion is further supported by the allegation that Defendants Gordon and Freebery were the only decision makers and were responsible for "all personnel decisions." Plaintiff's failure to allege that Cunningham and McAllister were the "driving force behind" the relevant decisions requires their dismissal from this action.[184]

The Third Circuit dismissed a claim with similarly sparse allegations in Evancho v. Fisher.[185] There, the state attorney general was named as a defendant but was mentioned in only one paragraph of the complaint.[186] In that paragraph, the plaintiff alleged that the wrongful action "was carried out by underlings reporting directly to the attorney general and/or by the

---

[182] (D.I. 14 at ¶7).

[183] See Jones v. Del. State Police, No. 02-1637- KAJ, 2006 U.S. Dist. LEXIS 46944, at *8-9 (D. Del. July 11, 2006)(dismissing complaint against the former attorney general for the State of Delaware because it contained "absolutely no allegations" against her).

[184] Id. at *10 (internal quotations omitted); see also Joynes v. Meconi, No. 05-332-GMS, 2006 U.S. Dist. LEXIS 71296, at *30-31 (D. Del. Sept. 30, 2006) (dismissing complaint for failure to allege that the individual defendants were involved in the alleged adverse actions).

[185] 423 F.3d at 353.

[186] Id.

attorney general himself."[187]

Here, Plaintiff likewise attempts to combine all of the defendants into a single persona for the purpose of imputing liability. Consequently, he fails to identify each defendant's "personal involvement with particularity," including "the conduct, time, place, and persons responsible" for each alleged violation, as is required.[188] For example, in Paragraph 75 of the Amended Complaint, he states that, "[t]he individual defendants were aware of Tobin's protected speech and petition, . . . and it angered and antagonized them."

Such bloated and muddy statements amount to nothing more than "conclusory, boilerplate language."[189] "Legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."[190] As made clear by the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do."[191] Plaintiff's failure to set forth even the most basic factual allegations of their involvement in the adverse actions requires that Defendants Cunningham and McAllister be dismissed from the claim.

## V. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As set forth in previous section, Plaintiff has failed to allege any wrongdoing by Defendants Cunningham and McAllister. Thus, they should be dismissed outright. In any event,

---

[187] Id. at 350.

[188] Joynes, 2006 U.S. Dist. LEXIS 71296, at *29-30.

[189] Evancho, 423 F.3d at 354-55 (holding that such allegations are insufficient to survive a motion to dismiss).

[190] ChemTech Int'l, Inc. v. Chem. Injection Techs., Inc., No. 06-3345, 2007 U.S. App. LEXIS 21697, at *3-4 (3d Cir. Sept. 10, 2007); see also Papasan v. Allain, 478 U.S. 265, 286 (1986).

[191] Bell Atl. Corp., 127 S. Ct. at 1964-65 (internal citations omitted).

all of the Individual Defendants are exempt from suit by reason of qualified immunity. Plaintiff

has failed to carry his burden to allege that the Individual Defendants violated a clearly

established constitutional right.[192]  Here, the constitutional rights at issue include the right of a

police officer to (1) secretly provide information to external agencies regarding the activities of

other police officers during working time; and (2) testifying about the same information before a

grand jury. As explained above, in accordance with the Garcetti and Foraker precedents,

Plaintiff's alleged activity was unprotected. His constitutional rights, therefore, were not

violated by the Individual Defendants.

      Even if it could be determined that Plaintiff's constitutional rights had been violated, the

doctrine of qualified immunity still requires that the Individual Defendants be dismissed.

Garcetti had not been decided at the time of the promotions at issue. Prior to Garcetti, the law

regarding employee- versus citizen-made speech was far from settled. Further, the Foraker

decision, which was issued just this year, explained the status of compelled speech in the context

of a Petition Clause claim. Thus, at the time of the alleged adverse actions, the Individual

Defendants reasonably could have believed that they were not violating Plaintiff's constitutional

rights.

### A.  Qualified Immunity Is Appropriate Because the Alleged Activities Were Not Protected by the First Amendment

      The Court must make a two-part inquiry in determining whether the Individual

Defendants are entitled to qualified immunity. First, the court must determine whether the

---

[192] See, e.g., Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right"); Hynson v. City of Chester, 827 F.2d 932, 934 (3d Cir. 1987).

alleged conduct violated a constitutional right.[193]  If no constitutional violation is established, the inquiry ends.[194]  If a violation occurred, the court must next ask, "in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited."[195]

The Individual Defendants are exempt from suit under the first prong of the qualified immunity analysis.  As set forth above, the Amended Complaint fails to allege the violation of a constitutional right.  Plaintiff's speech was made in the context of his employment pursuant to his official job duties and, therefore, is unprotected by the First Amendment.

Similarly, none of Plaintiff's activities constituted a formal petition as defined for the purposes of the Petition Clause.  Instead, his alleged "petition" was actually speech, unprotected by the First Amendment.  Accordingly, qualified immunity should be granted to the Individual Defendants.[196]

### B.  Qualified Immunity Is Appropriate Because the Alleged Speech Was Not "Prototypical Protected Speech" Entitled to "Clearly Established" Rights

Even if the court found that a constitutional violation occurred, the second prong of the qualified-immunity analysis still requires dismissal of the Individual Defendants.  If the allegations survive the first prong, the court must next determine whether the right was clearly established at the time of the adverse action.[197]  A constitutional right is clearly established only

---

[193] Siegert v. Gilley, 500 U.S. 226, 232 (1991); Larsen v. Senate of the Commonwealth, 154 F.3d 82, 86 (3d Cir. 1998) ("when a qualified immunity defense is raised a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all").

[194] See Saucier v. Katz, 533 U.S. 194, 201 (2001).

[195] Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[196] See, e.g., Bevis v. Bethune, 232 Fed. Appx. 212, 216 (4th Cir. 2007) (granting qualified immunity where the plaintiff failed to show that he engaged in constitutionally protected speech); Green v. Barrett, 226 Fed. Appx. 883 (11th Cir. 2007) (same).

[197] Larsen, 154 F.3d at 87.

if its contours are sufficiently clear "that a reasonable official would understand that what he is doing violates that right."[198]

In other words, "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."[199]  Thus, this inquiry "must be undertaken *in light of the specific context of the* case, not as a broad general proposition."[200]  "The question of whether a reasonable public official would have known that his or her *specific conduct* violated clearly established rights."[201]  "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized."[202]

Regarding the second prong, the analysis thus turns to whether "the state of law at the time . . . gave the defendants fair warning that their conduct was unconstitutional."[203]  Taking as true the allegations of the Amended Complaint, the relevant time periods include May 2002 and May 2003 when Plaintiff was not promoted.[204]

---

[198] See, e.g., Wilson v. Layne, 526 U.S. 603, 615 (1999) (quotations omitted); McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006).

[199] McKee, 436 F.3d at 171 (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

[200] Id. (quotation omitted) (emphasis in the original) (quoted in McGovern, 2007 U.S. Dist. LEXIS 72591, at *46) (granting qualified immunity because the plaintiff failed to meet his burden where the only case law he cited stood for the proposition that the right to be free from retaliation for filing protected petitions is clearly established); see also Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("in light of pre-existing law, the unlawfulness [of the alleged conduct] must be apparent).

[201] Johnson, 2007 U.S. Dist. LEXIS 42465, at *35 (quoting Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996) (emphasis in original).

[202] Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir. 1994) (internal citations omitted).

[203] Hartwell v. City of Montgomery, 487 F. Supp. 2d 1313, 1330 (M.D. Ala. 2007) (internal citations omitted).

[204] (D.I. 14 at ¶¶94, 113).

    **1.**    **Plaintiff's Speech Occurred During a Period When the Law Regarding Employee-Made Speech Was Far from "Clearly Established"**

Given the procedural history of the <u>Garcetti</u> case, the state of the law regarding employee-speech was far from clearly established at the time of the alleged adverse actions.[205] Ceballos filed his complaint in the United States District Court for the Central District of California alleging unlawful retaliation based on speech he made in March 2000.[206] The defendants appealed the decision of the trial court and the Ninth Circuit heard arguments on June 2, 2003.[207] The decision of the Circuit Court was appealed and the United States Supreme Court granted certiorari. The Supreme Court heard oral arguments on October 12, 2005, and issued its decision on May 30, 2006.[208]

Thus, the state of law regarding employee-made speech has been in flux at least since the trial court dismissed Ceballos' claims in 2002.[209] The protections afforded to employee-made speech were not "sufficiently clear that a reasonable official would understand that what he is doing violates that right," until, at the earliest, the Supreme Court issued its decision in 2006.[210] Plaintiff's alleged speech occurred during this period of transition, prior to the ruling in <u>Garcetti</u>. Thus, reasonable officials could have disagreed on the state of the law, which was unsettled by the courts. The unsettled state of the issue requires a finding of qualified immunity.

---

[205] <u>See</u> <u>Phillips v. City of Dawsonville</u>, No. 06-16031, 2007 U.S. App. LEXIS 21730, at *9 n.3 (11th Cir. Sept. 11, 2007) (granting qualified immunity based on the timing of the <u>Garcetti</u> decision because "the preexisting law at the time of the [adverse] decision was unclear on whether the First Amendment would be violated").

[206] <u>Garcetti</u>, 126 S. Ct. at 1956.

[207] <u>Ceballos v. Garcetti</u>, 361 F.3d 1168 (9th Cir. 2004).

[208] <u>Garcetti</u>, 126 S. Ct. 1951.

[209] <u>Garcetti v. Ceballos</u>, D.C. No. CV-00-1106-AHV (C.D. Cal. 2002).

[210] <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).

     **2.**     **Plaintiff Did Not Engage In the Type of "Prototypical Public Speech" That Would Have Been "Clearly Protected" by the First Amendment**

The <u>Garcetti</u> Court identified examples of the "prototypical public speech" that serves as a foundation for First Amendment rights.[211]  As explained by the Supreme Court, "prototypical public speech" includes expressive activities such as making a public statement, discussing politics with a coworker, or writing a letter to a newspaper or legislator.  These are all activities that citizens can perform as vehicles for their First Amendment rights.[212]  Plaintiff has not alleged that he engaged in any "prototypical public speech" that would have been clearly protected at the time.[213]

Instead, Plaintiff alleges that he attended a "secret" meeting with various federal agencies, testified pursuant to subpoena before a grand jury, and responded to the FBI's later request for clarification of that testimony.  Each of these alleged activities were protected by a shroud of secrecy.

None of Plaintiff's allegations involve speaking to the press or to the public at large. None of the allegations involve any political discussion with other NCCPD officers.  And none of the allegations made in Plaintiff's Amended Complaint involve petitioning the government by writing a memorandum to a legislator.  The absence of any instances of "prototypical" protected speech further demonstrates that the alleged activities would have involved a "a relatively close

---

[211] 126 S. Ct. at 1961 (<u>cited by</u> <u>Foraker</u>, 2007 U.S. App. LEXIS at *34); <u>Kasak</u>, 2007 U.S. Dist. LEXIS 70281, at *29 (relying, in part, on the fact that the plaintiff "did not speak to the newspaper, make a public statement, or even threaten to go to the public" in finding the speech was made pursuant to his employment).

[212] <u>See</u> <u>Green</u>, 472 F.3d at 800-01.

[213] <u>See</u> <u>Crossin v. City of Athens</u>, No. 06-3014, 2007 U.S. Dist. LEXIS 46585, at *16 (C.D. Ill. June 27, 2007) (granting summary judgment to the defendants where the plaintiff's speech "did not amount to the 'prototypical protected speech' identified by the <u>Garcetti</u> Court") (<u>citing</u> <u>Spiegla v. Hull</u>, 481 F.3d 961, 967 (7th Cir. 2007).

case on the question of whether [the plaintiff] spoke as a citizen on a matter of public concern."[214]

The same analysis applies with equal force to Plaintiff's testimony before the grand jury. Certainly, testimony has been treated as protected speech. But the <u>Foraker</u> decision made clear that *compelled* testimony, such as Plaintiff's speech compelled by subpoena, received no protection under the Petition Clause.[215]

Plaintiff's grand jury testimony was subject to prohibitions on disclosure by the prosecutor, grand jurors, and the grand jury stenographer.[216] Yet Plaintiff, who was not bound to confidentiality, freely "reported his participation in the grand jury to the defendants through the chain of command."[217] Grand jury testimony cannot be characterized as the "prototypical" exercise of free speech.[218] Indeed, it was speech made pursuant to the legal requirements imposed upon Plaintiff by subpoena.

In this case, Defendants provide well-supported arguments demonstrating that the speech at issue is employee-made speech unprotected by the First Amendment. The Individual Defendants could not have violated Plaintiff's "clearly established" free-speech rights because, until <u>Garcetti</u> and, later, <u>Foraker</u>, the rights afforded to employee-made speech or compelled

---

[214] <u>See</u> <u>Spiegla</u>, 481 F.3d at 17 (noting that the plaintiff "did not make a public statement, did not discuss politics with co-workers, write a letter to newspapers, or legislators, or otherwise engage in protected speech).

[215] 501 F.3d at 238.

[216] <u>See</u> Fed. Crim. R. Proc. 6(e).

[217] (D.I. 14 at ¶19) (but note that the complaint does not allege that the Individual Defendants ever received the information he provided "through the chain of command.").

[218] <u>See</u> <u>Maras-Roberts</u>, 2007 U.S. Dist. LEXIS 31661, at *21 ("The prosecutor's room is not a public forum . . . such as a town hall; so speech taking place in this room could not easily be equated to a citizen's writing of a letter to the editor of a newspaper").

speech were not "clearly established."[219]  Thus, the Individual Defendants are immune from suit and should be dismissed from this matter.

## CONCLUSION

For the reasons set forth in the brief above, Defendants request that their Motion to Dismiss be granted and Plaintiff's Complaint be dismissed in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser

William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
E-mail: wbowser@ycst.com
*Attorneys for Defendants New Castle County, Sherry Freebery, Thomas P. Gordon, and Colonel David F. McAllister, each in their individual capacity*

CHARLES E. BUTLER, ESQUIRE

/s/ Charles E. Butler

Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com
*Attorneys for Defendants Sherry Freebery, Thomas P. Gordon, and Colonel David F. McAllister, each in their individual capacity*


OBERLY JENNINGS & RHODUNDA, P.A.

/s/ Kathleen M. Jennings

Kathleen M. Jennings, Esquire (Bar I.D. 913)
Oberly Jennings & Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
E-mail: kjennings@ojlaw.com
*Attorneys for Defendant Colonel John Cunningham*

Dated: January 7, 2008

---

[219] See Hartwell, 487 F. Supp. 2d at 1331 (granting qualified immunity because of the uncertainty in the pre-existing First Amendment law and because it was "a relatively close case on the question of whether [the plaintiff] spoke as a citizen on a matter of public concern"); see also, Campbell, 483 F.3d 258 (granting qualified immunity because "the speech at issue in this case falls within the gray area between speech that clearly is a matter of public concern and speech that is not").