### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CHIEF HENRY V. TOBIN, III** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A.No. 04-1211-\*\*\*** |
| | : | |
| **THOMAS P. GORDON, individually and in his** | : | |
| **official capacity; SHERRY FREEBERY,** | : | |
| **individually and in her official capacity;** | : | |
| **COLONEL JOHN L.CUNNINGHAM,** | : | |
| **RETIRED, individually; COLONEL DAVID F.** | : | |
| **MCALLISTER, individually and in his official** | : | |
| **capacity: and NEW CASTLE COUNTY, a** | : | |
| **municipal corporation,** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**CHERYL A. HERTZOG, ESQ.**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com

**LAW OFFICE OF JOHN M. LaROSA**
**JOHN M. LaROSA, ESQ. (#4275)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801-3707
(302) 888-1290
JLR@LaRosaLaw.com

Attorneys for Plaintiff

Dated: February 7, 2008

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.    Gordon and Freebery's Total Control of the County Government
        and the Police Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.    Defendants' Policy of Retaliation Against Their Opponents
               in the NCCPD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    D.    Defendants' Illegal Election Schemes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    E.    The Form of Plaintiff's Protected Speech and Petitioning . . . . . . . . . . . . . . . . 3

        1.    Meeting With the FBI, IRA and U.S. Attorney . . . . . . . . . . . . . . . . . . . 3

               a.    This Was Not Required by Plaintiff's Job Duties . . . . . . . . . . . . 3

               b.    Defendants' Knowledge of and Anger About This Meeting . . . . . 3

        2.    Testifying Truthfully Before a Grand Jury . . . . . . . . . . . . . . . . . . . . . . . 4

               a.    This Was Not Required by Plaintiff's Job Duties . . . . . . . . . . . . 4

               b.    Defendants' Knowledge of and Anger About This Testimony . . . 4

        3.    Follow-Up Statement to the FBI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

               a.    This Was Not Required by Plaintiff's Job Duties . . . . . . . . . . . . 4

               b.    Defendants' Knowledge of and Anger About This Statement . . . . 4

    F.    The Content of Plaintiff's Protected Speech and Petitioning . . . . . . . . . . . . . . 4

        1.    Illegal Use of On-Duty Police Officers in the 1996 Campaign . . . . . . . . 5

               a.    Defendants' Knowledge of and Anger About This Speech
                    and Petitioning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2.    Freebery and Cunningham's Cover-Up of Her Son's Hit-and-Run Accident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    a.    Defendants' Knowledge of and Anger About This Speech and Petitioning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

G.    Defendants Retaliate Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    1.    Denial of Two Promotions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    2.    Freezing of the Promotion List To Deny Plaintiff Promotion . . . . . . . . . 6

    3.    Lowering Plaintiff's Promotion Ranking on the New List . . . . . . . . . . . 6

    4.    Transfer to Southern Patrol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    5.    Defendants' Personal Involvement in the Retaliatory Conduct . . . . . . . . 6

        a.    Gordon and Freebery . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        b.    Cunningham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        c.    McAllister . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards . . . . . . . . 8

        1.    Fair Notice is All That Is Required . . . . . . . . . . . . . . . . . . . . . . 8

            a.    The Supreme Court's Illustration of Fair Notice . . . . . . . 9

            b.    This Simplified Pleading System Is Intended to Focus Litigation on the Merits of a Claim . . . . . . . . . . . . 9

        2.    A Plaintiff Need Not Plead Facts to Match the Evidentiary Elements of His Legal Theory . . . . . . . . . . . . . . . . . . . . . . . 10

        3.    A Plaintiff Need Not Plead a Legal Theory At All . . . . . . . . . . 11

        4.    All a Complaint Must Do is State the Conduct, Time, Place and Persons Responsible . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5.      These "Extremely Lenient" Pleading Standards Apply In the Civil Rights Context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.    Rule 12(b)(6) Motion to Dismiss Standards . . . . . . . . . . . . . . . . . . . . . . . 13

D.    If a Complaint Fails to State a Claim, the District Court Must Allow Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.    The Rule 12(b)(6) Standard of Review When a Complaint Is Silent On Whether a Plaintiff Was Speaking as a Citizen or As An Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.    PLAINTIFF HAS APPROPRIATELY PLED THE CONDUCT, TIME, PLACE AND PERSONS INVOLVED IN HIS CLAIM TO PLACE DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST THEM . . . . . . . . 15

A.    The Core of Operative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.    The Many Legal Claims That Flow From These Facts . . . . . . . . . . . . . . 15

1.      Free Speech Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

a.      Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

b.      The Conduct, Time, Place and Persons Responsible . . . . 16

2.      Petition Clause Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

a.      Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

b.      The Conduct, Time, Place and Persons Responsible . . . . 17

III.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . . 17

A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    The Facts Show that Defendants Violated Plaintiff's Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.    Plaintiff's Rights Were Clearly Established . . . . . . . . . . . . . . . . . . . . . . 18

D.    Plaintiff's Long Established Right Against Free Speech Retaliation . . . 21

1.      Garcetti Does Not Impact Any of This Long Established Law . . 24

a.      Speech to Outside Government Agencies Has Long Received Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

(1).   And Speech to Outside Government Agencies Remains Protected Even After Garcetti . . . . . . . . 25

b.      Subpoeaned Testimony Also Has Long Received Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

(1).   And Subpoeaned Testimony Remains Protected Even After Garcetti . . . . . . . . . . . . . . . 28

(2).   The Defense Claim . . . . . . . . . . . . . . . . . . . . . . . 29

(a).   This Defense Interpretation Violates Garcetti's Express Admonitions . . . . . . . 31

(b).   The Garcetti Court Warned Against the Same Overbroad Interpretation of Job Duties Urged by the Defense . . . . . . . . . . . . . . . . . . . . . . . . . . 32

(c).   The Garcetti Court Also Explained That Speech Related to the Workplace is Still Protected . . . . . . . . . . 33

2.      Free Speech Claims Have Survived Garcetti . . . . . . . . . . . . . . 34

E.      Plaintiff's Long Established Right Against Petition Clause Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

1.      Garcetti Does Not Apply to the Petition Clause . . . . . . . . . . . . 36

2.      The Petition Clause Also Protects Informal Petitions To Non-Judicial Bodies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

3.      Petitions to All Branches of Government - Including Federal Agencies - Receive Protection . . . . . . . . . . . . . . . . . . . . . . . . . 37

4.      None of Plaintiff's Petitions Were Made Under Compulsion . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc., 263 F.3d 239 (3d Cir. 2001) . . . . . . . . . 36

Abbatiello v. County of Kauai, 2007 WL 473680 (D.Hawaii Feb. 7, 2007) . . . . . . . . . . . . 26,32

Al Makaaseb General Trading Co. v. U.S. Steel International, Inc., 412 F.Supp.2d 485
    (W.D.Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Anderson v. Creighton, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Assaf v. Fields, 178 F.3d 170 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997) (en banc) . . . . . . . . . . . . . . . . . 34

Baldassare v. State of N.J., 250 F.3d 188 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

Barber v. Louisville and Jefferson County Metro. Sewer Dist., 2006 WL 3772206
    (W.D.Ky. Dec. 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Barclay v. Michalsky, 451 F.Supp.2d 386 (D.Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Batt v. City of Oakland, 2006 WL 1980401 (N.D.Cal. July 12, 2006) . . . . . . . . . . . . . . . . . . 32

BE & K Construction Co. v. NLRB, 536 U.S. 516 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,15

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bennett v. Murphy, 120 Fed.Appx. 914 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,22-23

Benoit v. Bd. of Comm'rs of the New Orleans Levee Dist., 459 F.Supp.2d 513
    (E.D.La. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Bhd. of R.R. Trainmen v. Va. Ex Rel. Va. State Bar, 377 U.S. 1 (1964) . . . . . . . . . . . . . . . . . 36

Bibbins v. City of Baton Rouge, 489 F.Supp.2d 562 (M.D.La. 2007) . . . . . . . . . . . . . . . . . . . 12

Bieregu v. Reno, 59 F.3d 1445 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,36

Biggs v. Village of Dupo, 892 F.2d 1298 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Black v. Columbus Public Schools, 2006 WL 2385359 (S.D.Ohio Aug. 17, 2006) . . . . . . . . . 31

Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . 12,16

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Briscoe v. LaHue, 460 U.S. 325 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir. 1988) . . . . . 36-37

Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) . . . . . . . . . . . . . . . 36-37

Casey v. West Las Vegas Ind. Sch. Dist., 473 F.3d 1323 (10th Cir. 2007) . . . . . . . . . . . . . . . 25

Cheek v. City of Edwardsville, Kansas, 2006 WL 2802209 (D.Kan. Sept. 29, 2006) . . . . . 31-32

City of San Diego v. Roe, 543 U.S. 77 (2004) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Compaq Computer Corp. v. Inacom Corp., 2001 WL 789408
        (D.Del. July 12, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,15-16

Connecticut General Life Insur. Co. v. Universal Insur. Co., 838 F.2d 612
        (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Crawford-El v. Britton, 523 U.S. 574 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

DeLuzio v. Monroe County, 2006 WL 3098033 (M.D.Pa. Oct. 30, 2006) . . . . . . . . . . . . . . . 31

Deprado v. City of Miami, 446 F.Supp.2d 1344 (S.D.Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . 31

Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11-13,16

F.O.P., Lodge No. 5 v. City of Phila., 812 F.2d 105 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . 25

Fairley v. Fermaint, 482 F.3d 897 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,29

Ferrone v. Onorato, 439 F.Supp.2d 442 (W.D.Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . 11

Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . 17,26,30-31,33,36-37

Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . passim

Garrity v. New Jersey, 385 U.S. 493 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410 (1979) . . . . . . . . . . . . . . . . . . . . 33-34

Good v. Dauphin County, 891 F.2d 1087 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Green v. Barrett, 226 Fed.Appx. 883 (11th Cir. 2007) (per curiam) . . . . . . . . . . . . . . . . . . . . . 30

Green v. Phila. Hous. Auth., 105 F.3d 882 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hall v. Pa. State Police, 570 F.2d 86 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,16

Hancock v. Washington, 2007 WL 1367600 (W.D.Wash. May 7, 2007) . . . . . . . . . . . . . . . . . 25

Hare v. Zitek, 414 F.Supp.2d 834 (N.D.Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Hare v. Zitek, 2006 WL 2088427 (N.D.Ill. July 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Herr v. Pequea Township, 274 F.3d 109 (3d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36-37

Hicks v. Finney, 770 F.2d 375 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . 14,16,30,36

Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Hope v. Pelzer, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hoppe v. White, 2007 WL 1141589 (C.D.Ill. April 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 29

In re Freebery, 930 A.2d 928 (Del. 2007) (Table) (text on Westlaw
    at 2007 WL 2703156) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jackson v. Jimino, 506 F.Supp.2d 105 (N.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Johnston v. Harris County Flood Control Dist., 869 F.2d 1565 (5th Cir. 1989) . . . . . . . . . . . . 27

Kirkpatrick v. Merit Behavioral Care Corp., 128 F.Supp.2d 186 (D.Vt. 2000) . . . . . . . . . . 11-12

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lewis v. Casey, 518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,36

Losch v. Borough of Parkesburg, Pa., 736 F.2d 903 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . 36-37

Maloney v. Gordon, 2004 WL 1043202 (D.Del. May 4, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 22

Mariana v. Fisher, 338 F.3d 189 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36-37

McAuliffe v. City of New Bedford, 29 N.E. 517 (Mass. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . 21

McDonald v. Smith, 472 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36-37

McLaughlin v. Pezzolla, 2007 WL 676674 (N.D.N.Y. Feb. 28, 2007) . . . . . . . . . . . . . . . . . . . 25

Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Moore v. Gabriel, 2007 WL 917291 (M.D.Ga. March 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . 32

Morales v. Jones, 494 F.3d 590 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

Morales v. Jones, 2008 WL 59370 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . 34

NAACP v. Button, 371 U.S. 415 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712 (1996) . . . . . . . . . . . . . . . . . . . 21

Paff v. Kaltenback, 204 F.3d 425 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phillips v. County of Allegheny, – F.3d –, 2008 WL 305025 (3d Cir. 2008) . . . . . 8-11,13-14,16

Pickering v. Bd. of Educ., 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,33-35

Porter v. Intermediate Unit, 2007 WL 2597911 (W.D.Pa. Sept. 5, 2007) . . . . . . . . . . . . . . 25,33

Price v. Carroll, 2008 WL 170530 (D.Del. Jan. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . 12-13,16

Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Relational Funding Corp. v. TCIM Services, Inc., 2002 WL 655479
    (D.Del. April 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rohrbough v. Univ. of Colo. Hosp. Auth., 2006 WL 3262854 (D.Colo. Nov. 9, 2006) . . . . . . . 32

San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 17,35-37

Sassi v. Lou-Gold, 2007 WL 635579 (S.D.N.Y. Feb. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . 26

Saucier v. Katz, 533 U.S. 194, 201 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shoemaker v. Allender, 520 F.Supp. 266 (E.D.Pa. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

Skrutski v. Marut, 2006 WL 2660691 (M.D.Pa. Sept. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . 32

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Springer v. Henry, 2002 WL 389136 (D.Del. March 11, 2002) . . . . . . . . . . . . . . . . . . . . . . 35

Springer v. Henry, 2004 WL 2127172 (D.Del. Sept. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . 35

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir. 1989) . . . . . . . . . . . . . . . . . 20

Swartzwelder v. McNeilly, 297 F.3d 228 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 8-10,15-16

Taylor v. Town of Freetown, 479 F.Supp.2d 227 (D.Mass. 2007) . . . . . . . . . . . . . . . . . . . . . 32

Thomas v. Ind. Township, 463 F.3d 285 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Thompson v. City of Tucson Water Dept., 2006 WL 3063500
    (D.Ariz Oct. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tillman v. Pepsi Bottling Group, Inc., 2005 WL 2127820 (D.Del. Aug. 30, 2005) . . . . . . . . . . 8

Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. v. Kemp, 365 F.Supp.2d 618 (E.D.Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S. v. Lanier, 520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

U.S. v. Smith, 776 F.2d 1104 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United Artists Theatre Circuit, Inc. v. Twp. Of Warrington, 316 F.3d 392
        (3d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United Mine Workers of America v. Ill. State Bar Ass'n, 389 U.S. 217 (1967) . . . . . . . . . . . . 36

Walters v. County of Maricopa, Ariz., 2006 WL 2456173 (D.Ariz. Aug. 22, 2006) . . . 25-26,33

We, Inc., v. City of Phila., 174 F.3d 322 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Weston v. Pa., 251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10,13,16

White v. Nicholls, 44 U.S. 266 (1845) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Williams v. Hepting, 844 F.2d 138 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Wilson v. Layne, 526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20

Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Zamboni v. Stamler, 847 F.2d 73 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Constitution, Statutes, and Rules

U.S.Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 1512(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 1512(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 U.S.C. § 1985(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 U.S.C. § 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed.R.Civ.P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Civ.P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,13,16

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF THE PROCEEDING

This case was filed on September 2, 2004.  (D.I. 1).  Following defense representations that any further proceedings would prejudice their Fifth Amendments rights against self-incrimination in the criminal cases against them (D.I. 8-9), this action was stayed on December 15, 2004.  (D.I. 12).  A First Amended Complaint was filed on July 24, 2007.  (D.I. 14).  The three year stay was lifted on December 13, 2007.  (D.I. 21).  Defendants then moved to dismiss the case, asserting issues that should have been briefed three years ago.  (D.I. 22-23).

This is plaintiff's Answering Brief in opposition to defendants' Motions to Dismiss.

## SUMMARY OF THE ARGUMENT

1.  Under long established notice pleading standards, plaintiff has appropriately pled the conduct, time, place and persons involved in his claim to place the defendants on notice of the claims against them.

2.  It has long been clearly established that defendants could not retaliate against whistleblowing police officers who go outside the chain of command to report corruption to the FBI, IRS, U.S. Attorney and a federal grand jury.

## STATEMENT OF FACTS

**A.  Plaintiff.**   At the time this case was filed, plaintiff was a decorated and high achieving Lieutenant and 28 year veteran of the NCCPD.  He had a spotless record and was a diligent employee who had always performed his job in an exemplary manner.  During the many years that passed while this case was stayed, plaintiff retired from the NCCPD and became Chief of the Middletown Police Department. (First Amended Compl. ¶¶ 3, 88-93).

**B.  Defendants.**  Defendant Gordon was the County Executive of NCC.  He is a convicted criminal who pled guilty to committing crimes while holding public office.  (¶ 4).  Defendant Freebery was the Chief Administrative Officer of NCC.  She also is a convicted

1

criminal who has pled guilty to committing crimes of dishonesty and deception while holding

public office. (¶¶ 5, 42). Defendant Cunningham was the Colonel of the NCCPD. Like the other

defendants, he also is a convicted criminal, having pled guilty to committing crimes while

serving as the highest ranking police officer in NCC. (¶ 6). Defendant McAllister is the former

Colonel of the NCCPD and is the only defendant without a criminal conviction on his record. (¶

7). Notably however, his initials are found in a federal criminal indictment as committing illegal

acts on behalf of his fellow defendants. (¶ 12).

**C.  Gordon and Freebery's Total Control of the County Government and the Police**

**Department**. Defendants Gordon and Freebery totally control each and every aspect of NCC

government. They intentionally created an atmosphere of intimidation so that county employees

would comply with their orders and directions, even if unlawful. These defendants also

exercised total control over the NCCPD, from personnel and promotion decisions down to the

most minute detail of day to day operations. Defendants Cunningham and McAllister regularly

committed illegal acts on their behalf out of fear of the consequences of refusing their illegal

requests. (¶¶ 9-13, 82-83).

**1.  Defendants' Policy Of Retaliation Against Their Opponents in the**

**NCCPD.** Defendants had a policy, practice and custom of retaliating against their opponents

within the NCCPD. (¶ 9).

**D.  Defendants' Illegal Election Schemes.** In 1996, Gordon and Freebery began their

illicit quest to gain complete and total control over County Government so that they could use it

for their illegal ends. At the time, Gordon was the recently retired Chief of the NCCPD and was

running for County Executive. Freebery was his successor and the then current Chief of the

NCCPD who would soon become Gordon's second in command in County Government. (¶¶ 14-

15).

To accomplish these goals, beginning in 1996 and continuing through the 2002 elections, defendants abused their positions and, in violation of 15 Del.C. § 8012(d) and 15 Del.C. § 8002(6)(f), repeatedly and illegally forced numerous police officers, police academy recruits and other county employees to work on political campaigns on County time.  These campaigns included those of defendants themselves, as well as the campaigns of other powerful state and local politicians.  Defendants also forced other County employees to work on political campaigns and engage in other political activities on the clock, all in violation of state law.  Defendants also ordered police officers to engage in numerous illegal activities on their behalf.  In sum, defendants Gordon and Freebery: (1) illegally converted and stole NCC resources and used them to support political campaigns; (2) illegally forced numerous county police officers, police recruits and other county employees to campaign for politicians during working hours; and (3) illegally forced numerous Executive Assistants to work more than 900 hours on political campaigns, also during working hours.  (¶¶ 15-16f, 10-12, 31).  Defendants and their minions subsequently pled guilty to many of these crimes.  (¶¶ 16a-16f, 4-6).

**E.  The Form of Plaintiff's Protected Speech and Petitioning.**

**1.  Meeting with the FBI, IRS and U.S. Attorney.**  On October 18, 2002, plaintiff attended a meeting at a secret location with representatives of the FBI, IRS and the U.S. Attorneys' Office to blow the whistle on defendants' illegal conduct.  (¶ 17).

**a.  This Was Not Required by Plaintiff's Job Duties.**  As was specifically pled in the Complaint, plaintiff attended and spoke out at this meeting "in his private capacity as a concerned citizen."  (¶¶ 17, 23-25, 65-65a).

**b.  Defendants' Knowledge of and Anger About This Meeting.**

3

Defendants eventually became aware of plaintiff's meeting with the FBI, IRS and U.S. Attorney's Office and were very angered and antagonized by it.  (¶¶ 75, 20, 19, 119-20).

      **2.  Testifying Truthfully Before a Grand Jury.**  Shortly thereafter, plaintiff was served with a subpoena to testify before a federal grand jury investigating defendants' abuse of power and illegal conduct.   On December 11, 2002, plaintiff appeared and testified truthfully before the grand jury about defendants' many illegal deeds.  (¶¶ 18-20).

      **a.  This Was Not Required by Plaintiff's Job Duties.**  As was specifically pled in the Complaint, plaintiff testified before the grand jury "in his private capacity as a concerned citizen."  (¶¶ 20, 23-25, 65-65a).

      **b.  Defendants' Knowledge of and Anger About This Testimony.** Defendants were aware of plaintiff's grand jury testimony and were very angered and antagonized by it.  (¶¶ 19, 75, 20, 119-20).

      **3.  Follow-Up Statement to the FBI.**  On February 3, 2003, plaintiff spoke by telephone with the FBI and gave them additional information about defendants' illegal actions. (¶¶ 21-22).

      **a.  This Was Not Required by Plaintiff's Job Duties.**  As was specifically pled in the Complaint, plaintiff spoke with the FBI "in his private capacity as a concerned citizen."  (¶ 23-25, 65-65a).

      **b.  Defendants' Knowledge of and Anger About This Statement.** Defendants were aware of plaintiff's statement to the FBI and were very angered and antagonized by it.  (¶¶ 75, 20, 19, 119-20).

      **F.  The Content of Plaintiff's Protected Speech and Petitioning.**  At his secret meeting with the FBI, IRS and U.S. Attorneys' Office, in his Grand Jury testimony and in his follow-up

discussion with the FBI, plaintiff blew the whistle about defendants' misconduct as outlined below.  (¶¶ 27, 33).

      **1.  Illegal Use of On-Duty Police Officers in the 1996 Campaign.**  Plaintiff reported that defendants Gordon and Freebery had illegally forced numerous police officers to work on political campaigns during the 1996 election.  For example, plaintiff explained how Freebery had shut down the Detective Division for an entire day and forced the Detectives to instead hand out campaign literature.  Plaintiff also explained that Gordon and Freebery had forced him to recruit 25 NCC police officers to campaign, on duty, for Gordon's election to County Executive.  (¶¶ 27-32).

      **a.  Defendants' Knowledge of and Anger About This Speech and Petitioning.**  Defendants were aware of the content of plaintiff's speech and petitioning to the FBI, IRS, U.S. Attorney and Grand Jury and were very angered and antagonized by it.  (¶¶ 75, 20, 19, 119-20).

      **2.  Freebery and Cunningham's Cover-Up of Her Son's Hit-and-Run Accident.**  Plaintiff also blew the whistle about a 2001 incident where Freebery and Cunningham ordered the cover-up of a hit-and-run car accident involving Freebery's son.  The crimes committed by her son during the hit-and-run and its aftermath included: leaving the scene of an accident, failure to report an accident, driving under the influence, reckless driving and destruction of evidence.  (¶¶ 33-64). However, due to Cunningham and Freebery's actions, the investigation was terminated and her son was never arrested or prosecuted.  (¶¶ 46, 54, 57-58, 62).

      **a.  Defendants' Knowledge of and Anger About This Speech and Petitioning.**  Defendants were aware of the content of plaintiff's speech and petitioning to the

FBI, IRS, U.S. Attorney and Grand Jury and were very angered and antagonized by it.  (¶¶ 75, 20, 19, 119-20).

    **G.  Defendants Retaliate Against Plaintiff.**  In keeping with their well known policy of retaliation against all who opposed them (¶ 9), defendants then retaliated against plaintiff. (¶¶ 107, 94-116).

        **1.  Denial of Two Promotions.**  In May 2003, defendants denied plaintiff two promotions to Captain, despite the fact he was ranked first as most qualified for promotion among all applicants on the oral board, and despite the NCCPD's historical practice of promoting candidates in the order in which they were ranked on the oral board.  (¶¶ 76-107).

        **2.  Freezing of the Promotion List to Deny Plaintiff Promotion.**  Subsequently, in December 2003, two more vacancies for Captain arose.  However, to prevent plaintiff from receiving those promotions, defendants froze the promotion list and refused to post the vacancies.  Defendants waited until plaintiff's promotion eligibility expired on March 19, 2004, before filling these positions.  (¶¶ 108-114).

        **3.  Lowering Plaintiff's Promotion Ranking on the New List.**  Then in April 2004, without justification defendants lowered plaintiff's promotion ranking on the new list to fourth.  (¶ 112).

        **4.  Transfer to Southern Patrol.**  Then in May 2004, "in a specific attempt to scare plaintiff into silence," defendants transferred plaintiff to Southern Patrol where he commanded 175 fewer police officers than he had in his previous position.  (¶¶ 115-116).

        **5.  Defendants' Personal Involvement in the Retaliatory Conduct.**  The Complaint also pleads that each defendant was personally involved in the retaliatory actions taken against plaintiff.

**a. Gordon and Freebery.**  Defendants Gordon and Freebery made all the personnel and promotion decisions in the NCCPD and, when they so choose, also exercised total control over day to day operations.  (¶ 9).  Together with the Chief of the NCCPD, they made all of the personnel and promotion decisions affecting plaintiff.  (¶¶ 82-84, 107, 109, 111-13, 115).

**b. Cunningham.**  Defendant Cunningham was the Colonel of the NCCPD until June 2003 and is sued for actions he took against plaintiff prior to his retirement. (¶ 6).  Cunningham, and the other defendants (other than McAllister),[1] were involved in the decision not to promote plaintiff to the first two vacancies. (¶¶ 82-84, 107).

**c. McAllister.**  Defendant McAllister succeeded Cunningham as Colonel in July 2003, and is sued for actions he took against plaintiff after that time. (¶ 7).   He, Gordon and Freebery froze the promotion list in December 2003, denied plaintiff the next promotions in March 2004, lowered plaintiff's promotional ranking and transferred plaintiff to Southern Patrol. (¶¶ 82-84, 107, 109, 111-13, 115).[2]

## ARGUMENT

**I.    STANDARD OF REVIEW.**

**A. Introduction.**  The defense motion betrays a fundamental misunderstanding of the procedural posture of this case as well as the standard of review under which the Complaint must be examined.  We are not in any post-trial briefing stage of the case, analyzing the most minute detail of evidence in a trial record.  Cf. Fed.R.Civ.P. 59.  We are not at the summary judgment stage, scouring the discovery record for evidence to match the prongs of our legal theories.  Cf.

---

[1]  As noted in the First Amended Complaint, McAllister is only being sued for his actions after he assumed command in July 2003. (¶ 7)

[2]  Accordingly, the record makes clear that plaintiff adequately pled personal involvement of the individual defendants.

Fed.R.Civ.P. 56.  Instead, we are at the motion to dismiss stage under Rule 12(b)(6) where Rule

8(a)(2)'s notice pleading standards apply.  As our District has repeatedly explained, "[w]hen

deciding a motion to dismiss for failure to state a claim, one must read Fed.R.Civ.P. 12(b)(6) in

conjunction with Fed.R.Civ.P. 8(a), which establishes the requirements for adequately pleading a

claim in federal court."  Tillman v. Pepsi Bottling Group, Inc., 2005 WL 2127820, *6 (D.Del.

Aug. 30, 2005); Relational Funding Corp. v. TCIM Services, Inc., 2002 WL 655479, *3 (D.Del.

April 18, 2002).  In a comprehensive recent opinion, the Third Circuit recognized the same.

Phillips v. County of Allegheny, – F.3d –, 2008 WL 305025, *3-7 (3d Cir. 2008).  Reading Rule

12 in conjunction with Rule 8 is fatal to the defense claim that plaintiff has not adequately pled

the elements of his legal theories.

### B.  Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards.

**1.  Fair Notice is All That is Required.**  For more than fifty years, the United

States Supreme Court has repeatedly and explicitly rejected the heightened pleadings standards

defendants seek to foist upon the Court and instead unanimously has reaffirmed its long time

holding that Fed.R.Civ.P. 8(a)(2) indeed means what it very clearly says and that the Complaint

must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002); accord Bell Atlantic

Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007); Leatherman v. Tarrant County Narcotics

Intelligence and Coordination Unit, 507 U.S. 163, 165-68 (1993);  Evancho v. Fisher, 423 F.3d

347, 351-353 (3d Cir. 2005).  The Third Circuit has explained that this is an "extremely lenient"

standard.  Weston v. Pa., 251 F.3d 420, 430 (3d Cir. 2001).  As the Court recently noted, motion

to dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right."

Phillips, 2008 WL 305025, *7.  The same Court recently warned against taking "an unduly

crabbed reading of [a plaintiff's] complaint."  Id. at *9.

      **a.  The Supreme Court's Illustration of Fair Notice.**  The nature and
extent of these "extremely lenient," id., standards of notice pleading are best illustrated by review
of the example cited by the Supreme Court itself in the context of addressing a Rule 12(b)
motion to dismiss.  In Swierkiewicz, the Court explained that Rule 8(a)'s simplified notice
pleading standards are "exemplified by the Federal Rules of Civil Procedure Forms" which are
"sufficient under the rules" in all respects.  534 U.S. at 513 n.4; accord Fed.R.Civ.P. 84.  The
Supreme Court looked to Form 9, which sets forth a form complaint for negligence which states
in relevant part:

> On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts,
> defendant negligently drove a motor vehicle against plaintiff who was then crossing said
> highway.

Swierkiewicz, 534 U.S. at 513 n.4.  Under Rule 8(a)'s notice pleading standard, this one sentence
allegation on liability is sufficient to withstand a Rule 12(b) motion to dismiss.  Id.  In the same
way, the first paragraph of plaintiff's Complaint herein is itself sufficient to withstand the
defense motion.  It states:

> Plaintiff reported to federal prosecutors, law enforcement officials and the grand
> jury alleged wrongdoing in November 2001 by defendant Freebery who abused her
> authority to protect her son from an ongoing criminal investigation into a hit-and-run
> motor vehicle offense.  He also reported that while she was County Police Chief
> defendant Freebery shut down the Police Department's entire Detective Division for a full
> work day and forced a majority of detectives while on duty to campaign in 1996 for State
> Senator Thomas Sharp and for defendant Gordon who was campaigning for election to
> County Executive.  As a result plaintiff three times has been denied promotion to the rank
> of police Captain.

(¶ 1).  These allegations alone are sufficient to withstand the defense motion.

      **b.  This Simplified Pleading System is Intended to Focus Litigation on
the Merits of a Claim.**  As the Swierkiewicz Court explained, "[i]f a pleading fails to specify the

allegations in a manner that provides sufficient notice," 534 U.S. at 514, rather than move to dismiss as occurred Swierkiewicz, id. at 508 n.1, the proper approach is to instead "move for a more definite statement under Rule 12(e) before responding." Id. at 514. Once the defendant is on notice of the claims against them, "claims lacking merit may be dealt with through summary judgment under Rule 56." Id.

As the Supreme Court explained, this is the proper approach because the "liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." Id. Notice pleading "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512.

**2. A Plaintiff Need Not Plead Facts to Match The Evidentiary Elements of His Legal Theory.** As the Third Circuit held just two weeks ago, "[s]tandards of pleading are not the same as standards of proof." Phillips, 2008 WL 305025, * 18. As the same Court has previously explained, "[c]omplaints need not plead law or match facts to every element of a legal theory." Weston, 251 F.3d at 429. In our District's words, "the federal rules do not require the plaintiffs to plead law or match facts to every element of a legal theory." Compaq Computer Corp. v. Inacom Corp., 2001 WL 789408, *3 (D.Del. July 12, 2001) (internal punctuation omitted). The Supreme Court has held the same. See Swierkiewicz, 534 U.S. at 511-12 (rejecting the defense claim that a plaintiff need even plead the elements of a prima facie employment discrimination claim, because that is an evidentiary standard, not a pleading standard).[3] In the same way, plaintiff is not required to plead each prong of any relevant

---

[3] Notably, in Twombly, 127 S.Ct. at 1973, the Supreme Court declined to overrule Swierkiewicz and its application in the civil rights context. In so holding, the Court explained that Swierkiewicz reaffirmed the longstanding rules of pleadings by rejecting the use of

evidentiary paradigms required to prove his case.  Rather than plead evidentiary elements, the Third Circuit has "held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."  Evancho, 423 F.3d at 353.  In other words, all that is required is fair notice of the claim asserted, which as the defense statement of facts reveals, the Complaint clearly and abundantly provides.

   **3.  A Plaintiff Need Not Plead a Legal Theory At All.**  In the same way, "Rule 8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief sought on the facts alleged." Compaq, 2001 WL 789408, *3; accord Kirkpatrick v. Merit Behavioral Care Corp., 128 F.Supp.2d 186, 191 (D.Vt. 2000).  As the Third Circuit has explained, "[u]nder the federal rules, as long as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a remedy."  Bechtel v. Robinson, 886 F.2d 644, 649 (3d Cir. 1989).[4]  This is because a "pleading is a vehicle to facilitate a proper decision on the merits and not a game of skill in which one misstep by counsel may be decisive." Id.  As one court has explained,

> a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.

Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992) (internal punctuation omitted). In light of this, it is not surprising that "claims need not specify in exact detail every possible

---

"heightened pleading standard[s]" in civil rights cases.  Id.  As the Third Circuit recently explained, even after Twombly, "the notice pleading standard of Rule 8(a)(2) remains intact." Phillips, 2008 WL 305025, *5.

  [4]  Accord Al Makaaseb General Trading Co. v. U.S. Steel International, Inc., 412 F.Supp.2d 485, 500 (W.D.Pa. 2006); see Connecticut General Life Insur. Co. v. Universal Insur. Co., 838 F.2d 612, 622 (1st Cir. 1988) ("Under Rule 8 ... [it] is not necessary to set out the legal theory on which the claim is based."); Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir.1991) (federal pleading is by statement of claim, not by legal theory).

theory of recovery, so long as they give fair notice of the claims to the defendants." Bibbins v. City of Baton Rouge, 489 F.Supp.2d 562, 577 (M.D.La. 2007). Key here is fair notice of the claim. The legal theories themselves may change or develop during the discovery process as the facts play out. "The legal theories upon which a plaintiff will rely at trial may be developed during the discovery process, refined at pretrial conferences, and tested by motion for summary judgment." Kirkpatrick, 128 F.Supp.2d at 191.

**4. All a Complaint Must Do is State the Conduct, Time, Place and Persons Responsible.** As stated above, rather than plead specific facts and legal theories, the Third Circuit has repeatedly "held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho, 423 F.3d 347; see, e.g. Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978); Price v. Carroll, 2008 WL 170530, *9 (D.Del. Jan. 17, 2008).

In Hall, the Third Circuit reversed the district court's Rule 12(b)(6) dismissal of a civil rights complaint. 570 F.2d at 88. The Court held that the complaint was sufficient to withstand the 12(b)(6) attack because -

> the plaintiff has alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials).

Id. at 89. As a result, the Court held that the complaint "is sufficiently precise to give notice of the claims asserted and withstand the defendants' challenge to its filing." Id. Similarly, in Boykins, the Third Circuit affirmed this precedent, holding that a civil rights complaint which alleged the conduct (racially motivated expulsion from the drill team), the time (1975), the place (Ambridge Area School District high school) and the persons responsible (the coach and school administrators), was legally sufficient and that "no more is required." 621 F.2d at 80. This is

12

still the law today.  <u>See</u> <u>Evancho</u>, 423 F.3d 347 (citing <u>Hall</u> and <u>Boykins</u>); <u>Price</u>, 2008 WL

170530, *9 (same).  Accordingly, as the <u>Evancho</u> opinion makes clear, to provide fair notice

under Rule 8(a), a civil rights complaint merely must state the "conduct, time, place and persons

involved.  423 F.3d at 553.

**5.  These "Extremely Lenient" Pleading Standards Apply in the Civil Rights**

**Context.**  As the Third Circuit has explained, "[d]iscrimination and other civil rights claims are

clearly subject to notice pleading."  <u>Weston</u>, 251 F.3d at 429.  Just two weeks ago, our Circuit

applied these notice pleading standards in the civil rights context.  <u>See</u> <u>Phillips</u>, 2008 WL

305025.  "[I]n federal civil rights cases, a claimant does not have to set out in detail the facts

upon which a claim is based, but must merely provide a statement sufficient to put the opposing

party on notice of the claim."  <u>Weston</u>, 251 F.3d at 428; <u>see</u> <u>Evancho</u>, 423 F.3d at 351-353

(surveying the law and rejecting the defense claim that Rule 8 requires heightened pleadings

standards for civil rights cases).

> The marching orders of the Supreme Court in both <u>Leatherman</u> and <u>Swierkiewicz</u> are
> clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless
> otherwise specified in the Federal Rules or statutory law. There is no federal rule or
> statute that prescribes a heightened pleading standard in § 1983 civil rights actions in
> which the defendant pleads a qualified immunity defense. Hence, we now make clear that
> which was implied in <u>Evancho</u>: a civil rights complaint filed under § 1983 against a
> government official need only satisfy the notice pleading standard of Rule 8(a), regardless
> of the availability of a qualified immunity defense.

<u>Thomas v. Ind. Township</u>, 463 F.3d 285, 295 (3d Cir. 2006).  Once again, notice is the key.

**C.  Rule 12(b)(6) Motion to Dismiss Standards.**  In light of this, defendants clearly

have a substantial burden to carry in seeking dismissal of the Complaint under Fed.R.Civ.P.

12(b)(6).  Courts must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief."  <u>Phillips</u>, 2008 WL 305025, *5.  "While Rule

12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." Id. at *6 (internal punctuation omitted). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. As the Third Circuit explained, motion to dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right." Id. at *7.

**D.  If a Complaint Fails to State a Claim, the District Court Must Allow Amendment.**  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Id. at *17; accord id. at *1. "Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." Id. at *17. The "court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." Id. As our Circuit recently explained, not doing so is reversible error. Id. at *18.

**E.  The Rule 12(b)(6) Standard of Review When a Complaint is Silent On Whether a Plaintiff Was Speaking as a Citizen or as an Employee.**  As the Third Circuit has specifically explained in the 12(b)(6) motion to dismiss free speech Garcetti context, when a plaintiff's complaint is silent on whether the employee was speaking pursuant to his official duties, "we read the complaint to allege that [the plaintiff] was speaking 'as a citizen.'" Hill v. Borough of Kutztown, 455 F.3d 225, 242 (3d Cir. 2006).

## II.    PLAINTIFF HAS APPROPRIATELY PLED THE CONDUCT, TIME, PLACE AND PERSONS INVOLVED IN HIS CLAIM TO PLACE THE DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST THEM.

**A.  The Core of Operative Facts.**  In defendants' own words, the "Counts of Plaintiff's Amended Complaint are grounded in the same alleged protected activity and alleged adverse actions."  (OB at 4).  Plaintiff wholeheartedly agrees.  His claims can be briefly summarized as follows:

> Plaintiff exposed to the FBI, the IRS, the U.S. Attorneys' Office and the grand jury six years worth of defendants' corrupt practices while holding high public office.  His whistleblowing angered and antagonized defendants who in retaliation repeatedly denied him promotion and took other adverse actions against him.

As review of defendants' lengthy brief makes apparent, it is clear that although they do not like or agree with plaintiff's claims, they clearly have "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.

**B.  The Many Legal Claims That Flow From These Facts.**  Although it is not necessary under the standard of review, see Compaq, 2001 WL 789408, *3 ("Rule 8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief sought on the facts alleged."); Bechtel, 886 F.2d at 649 ("[u]nder the federal rules, as long as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a remedy."), given the sheer number of billable hours and taxpayer dollars that went into crafting the defense opening brief in this time of tight County purse strings, plaintiff will briefly touch upon the wide range of legal theories that may be implicated by the undisputed set of factual allegations at issue in this case.

**1. Free Speech Retaliation.**  A public employee's right to be free of retaliation for the exercise of their free speech rights is well recognized.  See, e.g. Springer v. Henry, 435

F.3d 268, 275 (3d Cir. 2006); <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241-42 (3d Cir. 2006). This theory is neither new nor novel.

**a. Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage.** As explained in Argument **I.B.2.** above, a plaintiff is not required to plead the evidentiary elements of his cause of action. <u>See Phillips</u>, 2008 WL 305025, *18 ("Standards of pleading are not the same as standards of proof"); <u>Swierkiewicz</u>, 534 U.S. at 511-12 (a plaintiff need not plead the elements of a prima facie case); <u>Weston</u>, 251 F.3d at 429 ("[c]omplaints need not plead law or match facts to every element of a legal theory."); <u>Compaq</u>, 2001 WL 789408, *4 ("the federal rules do not require the plaintiffs to plead law or match facts to every element of a legal theory."). In the same way, a civil rights complaint will withstand 12(b)(6) attack when it states the conduct, time, place and persons responsible. <u>See Evancho</u>, 423 F.3d at 353; <u>Boykins</u>, 621 F.2d at 80; <u>Hall</u>, 570 F.2d at 89; <u>Price</u>, 2008 WL 170530, *9.

**b. The Conduct, Time, Place and Persons Responsible.** The time frame and conduct at issue involves denying plaintiff at least three promotions (from May 2003 - March 2004) because of his whistleblowing to the FBI, IRS, U.S. Attorney and the grand jury, addressing defendants' corruption of the political process and the police department. (¶¶ 17-64). The place is NCC, Delaware. The persons responsible for all of these actions are Gordon, Freebery, Cunningham and McAllister. (¶¶ 82-84, 107, 109, 111-13, 115). Accordingly, the claim for free speech retaliation is adequately pled, and defendants are on notice of the claims against them.[5]

---

[5] Defendants concede that plaintiff's complaint should survive 12(b)(6) dismissal if this information is alleged. (OB at 9). As noted in the text directly above, this information has been clearly alleged. Additionally, defendants' personal involvement in the adverse actions is specifically alleged and discussed in detail in section **G.5.** of the Statements of Facts above.

  **2. Petition Clause Retaliation.** A public employee's right to be free of retaliation for exercising their petition clause rights is similarly well recognized. See, e.g. San Filippo v. Bongiovanni, 30 F.3d 424, 435-43 (3d Cir. 1994); Foraker v. Chaffinch, 501 F.3d 231, 234-38 (3d Cir. 2007).

  **a. Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage.** As explained above, a plaintiff is not required to plead the evidentiary elements of their cause of action. Instead, a civil rights complaint will withstand 12(b)(6) attack when it states the conduct, time, place and persons responsible.

  **b. The Conduct, Time, Place and Persons Responsible.** The time frame and conduct at issue involves denying plaintiff at least three promotions (from May 2003 - March 2004) because of his petitions to the FBI, IRS and U.S. Attorney addressing defendants' corruption of the political process and the police department. (¶¶ 17-64). The place is NCC, Delaware. The persons responsible for all of these actions are Gordon, Freebery, Cunningham and McAllister. (¶¶ 82-84, 107, 109, 111-13, 115). Accordingly, the claim for petition clause retaliation is adequately pled, and defendants are on notice of the claims against them.

## III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

  Defendants also assert that they are entitled to qualified immunity because they claim it was not clearly established that they were barred from a continuing campaign of retaliation against plaintiff for his blowing the whistle to the FBI, IRS, U.S. Attorney and the grand jury. As discussed below, they are mistaken.

  **A. Introduction.** Qualified immunity is a two part inquiry. Atkinson v. Taylor, 316 F.3d 257, 261 (3d Cir. 2003). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?" Id.

Next, the court must next decide whether the right allegedly violated was a clearly established one. Wilson v. Layne, 526 U.S. 603, 609 (1999).

   **B. The Facts Show that Defendants Violated Plaintiff's Constitutional Rights.** As explained in Argument II above, the facts as alleged in the Complaint are sufficient to survive the defense motion to dismiss. Accordingly, plaintiff has properly alleged that defendants violated his constitutional rights.

   **C. Plaintiff's Rights Were Clearly Established.** "Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("Bennett I").

> That is, *in the factual scenario established by the plaintiff*, would a reasonable officer have understood that his actions were prohibited. *The focus in this step is solely upon the law*. If it would not have been clear to a reasonable officer what the law required *under the facts alleged*, he is entitled to qualified immunity. If the requirements of the law would have been clear, the officer must stand trial.

Id. at 136-37 (emphasis added)); accord Bennett v. Murphy, 120 Fed.Appx. 914, 916-17(3d Cir. 2005) (Bennett II); Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005); Saucier v. Katz, 533 U.S. 194, 201 (2001). Defendants simply ignore this aspect of the law which analyzes the factual scenario alleged by plaintiff, not one wished for by defendants.

   The prong two question becomes would a reasonable public official be put on notice that the constitutional violation already established under prong one runs afoul of clearly established law.[6]

--------

   [6] The reasonableness of an official's conduct is not a separate question from whether the law was clearly established. Instead, these are two sides of the same coin. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This is because "[i]f the law was clearly established, the immunity

If there was any doubt on what is needed to put a reasonable public official on notice of clearly established law, the short answer is found in the U.S. Supreme Court case of <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002).  <u>Hope</u> held that "officials can still be on notice that their conduct violates established law even in *novel factual circumstances*."  <u>Id.</u> at 741 (emphasis added).  The Supreme Court unanimously agreed on this issue.  <u>Id.</u> at 753-54 (Thomas, J. dissenting with whom Rehnquist, C.J. and Scalia, J. join) (agreeing that "officials can still be put on notice that their conduct violates established law even in novel factual circumstances").  This holding is in accord with a plethora of preexisting Third Circuit and Supreme Court law, discussed in much greater length below, and puts to rest in our present case any conceivable uncertainty regarding the level of factual correspondence needed between the right asserted and prior cases.

Even prior to the <u>Hope</u> decision, the law was the same as is demonstrated by many other Third Circuit and Supreme Court opinions.  "[Q]ualified immunity applies if 'reasonable officials in the defendants' position at the relevant time could have believed, *in light of what was in the decided case law*, that their conduct would be lawful.'"  <u>Doe v. Delie</u>, 257 F.3d 309, 318 (3d Cir. 2001) (emphasis added) (quoting <u>Good v. Dauphin County</u>, 891 F.2d 1087, 1092 (3d Cir. 1989)).  Continuing -

> Thus, having determined that Doe has alleged a violation of a constitutional right, we must determine whether Doe's right [ ] was "clearly established" in a "particularized" sense. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id</u>. *We do not require precise factual correspondence between the right asserted and prior case law.* <u>Good</u>, 891 F.2d at 1092. Whether an official may be protected by qualified immunity turns on the "objective legal reasonableness of the

defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 591 (1998) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982)). In other words, the law presumes that reasonably competent public officials are aware of clearly established law.  Thus if the law is clearly established, a reasonably competent public official would have known of it.  <u>Id.</u>

> action, assessed in light of the legal rules that were clearly established at the time it was
> taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotes omitted). The issue is
> whether, given the established law and the information available to Defendants,
> reasonable [] officials in Defendants' positions could have believed that their conduct was
> lawful.  See Paff v. Kaltenback, 204 F.3d 425, 431 (3d Cir. 2000).

Doe, 257 F.3d at 318 (emphasis added).  The Third Circuit also has explained that the "clearly

established" language test requires "some but not precise factual correspondence and [demands]

that officials apply general, well-developed legal principles." Bennis v. Gable, 823 F.2d 723, 733

(3d Cir. 1987); see also Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)

("the general legal principles governing analogous factual situations, if any, and a subsequent

determination whether the official should have related this established law to instant situations"

are the basis for the court's inquiry); accord Hicks v. Finney, 770 F.2d 375, 380 (3d Cir. 1985).[7]

The Supreme Court in U.S. v. Lanier, 520 U.S. 259, 271 (1997), also stated that a "general

constitutional rule already identified in the decisional law" may give fair warning to a public

official if the rule applies "[w]ith obvious clarity to the specific conduct in question" even though

the specific issue has not been previously addressed.  Finally, in the Third Circuit, a law may be

clearly established even if the Court has not ruled on an issue and even if there is some

disagreement among other Circuits, as long as "[n]o gaping divide has emerged in the

jurisprudence" which would lead a party to "reasonably expect" the Courts in this Circuit to rule

---

[7]  Additionally as indicated by the Supreme Court, all that is required to defeat a qualified
immunity claim is a "consensus of cases of persuasive authority."   Wilson, 526 U.S. at 604.
Note that this says nothing of a consensus of binding authority.  This is the point made as far
back as 1989 by the Third Circuit in Good, 891 F.2d at 1092, that precise factual correspondence
is not needed between the right asserted and prior cases.  "A right may be clearly established
even if there is no 'previous precedent directly in point.'" Leveto v. Lapina, 258 F.3d 156, 162
(3d Cir. 2001)(quoting Good, 891 F.2d at 1092); see also Assaf v. Fields, 178 F.3d 170, 177 (3d
Cir. 1999).  This point was reiterated again by the Third Circuit in 1999, that a court need not
have ruled on a case bearing a "precise factual correspondence" with the one under consideration.
Assaf, 178 F.3d at 177.

other than one way.  <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1459 (3d Cir. 1995) (overruled on other grounds by <u>Lewis v. Casey</u>, 518 U.S. 343 (1996)).

   Thus, government officials will not be granted immunity if they fail to make obvious inferences from a generally established right and apply the right in particular situations.  So it was unreasonable in our case for defendants to believe that they could, for example, maliciously retaliate against plaintiff because he blew the whistle on Gordon and Freebery's illegal use of on-duty police officers in the 1996 political campaign.  Do defendants believe they operate in Soviet Russia or Communist China where elections are normally rigged as a matter of course and whistleblowers can be silenced?  "There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [ ] liability."  <u>U.S. v. Lanier</u>, 520 U.S. at 271 (internal punctuation omitted).

   **D.  Plaintiff's Long Established Right Against Free Speech Retaliation.**  Since <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968), the Supreme Court, Third Circuit and District of Delaware have all made clear that public employees do not surrender their free speech rights by virtue of their public employment.[8]

   For example, in <u>Baldassare v. State of N.J.</u>, 250 F.3d 188 (3d Cir. 2001), the Third Circuit held that a law enforcement investigator who exposed government corruption was

_____

   [8]  Unfortunately, for defendants <u>McAuliffe v. City of New Bedford</u>, 29 N.E. 517 (Mass. 1892) has long since been overruled.  <u>See</u> <u>O'Hare Truck Service, Inc. v. City of Northlake</u>, 518 U.S. 712, 716 (1996) (noting that the Supreme Court has for decades rejected Justice Holmes' then famous aphorism that a policeman "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.").  As the Seventh Circuit has explained, "freedom of speech is not traded for an officer's badge."  <u>Biggs v. Village of Dupo</u>, 892 F.2d 1298, 1303 (7th Cir. 1990).  The Supreme Court has noted the same - "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights."  <u>Garrity v. New Jersey</u>, 385 U.S. 493, 500 (1967).

protected against retaliation.  <u>Id.</u> at 200.  The Court explained that "[d]isclosing corruption, fraud

and illegality in a government agency is a matter of significant public concern."  <u>Id.</u> 196.  Indeed,

as our District already specifically has observed in another case brought by two brave county

employees who, like plaintiff, also were retaliated against by defendants for testifying before the

grand jury about defendants' reign of terror over NCC, this case "involves serious allegations of

public corruption."  <u>Maloney v. Gordon</u>, 2004 WL 1043202, *4 (D.Del. May 4, 2004)(J. Jordan).

"It may be stating the obvious, but it bears emphasis that 'the public has a substantial interest in

the integrity or lack of integrity of those who serve them in public office.'"  <u>Id.</u> (quoting <u>U.S. v.</u>

<u>Smith</u>, 776 F.2d 1104, 1114 (3d Cir. 1985)).

Particularly helpful on the qualified immunity issue is the case of <u>Bennis v. Gable</u>, 823

F.2d 723 (3d Cir. 1987).  There, two police officers claimed they were demoted by the police

chief in retaliation for the exercise of their free speech rights in speaking out in opposition to the

mayor's policies.  <u>Id.</u> at 725-26.  In the subsequent lawsuit, the mayor and police chief claimed

qualified immunity, which was quickly rejected by the Third Circuit.  The Court explained that

> we cannot in good conscience, conclude that in 1982 a reasonably active politician would
> not have believed that it would be impermissible to demote an employee in retaliation for
> his political speech and/or associations.

<u>Id.</u> at 733.[9]  As the Third Circuit explained, it was clearly established <u>in 1982</u> that a public

official could not punish a police officer for exercising his free speech rights.  <u>Id.</u>  To the extent

defendants claim that <u>Bennis</u> was a hybrid speech/association case and is somehow inapplicable,

six years later in the 'pure' speech context, the Third Circuit again stated that the law in this

---

[9]  Of course, defendant Freebery is held to an even higher standard given that she was a
Delaware attorney at the time.  Importantly, the actions at issue in this case took place prior to
her suspension (pending disbarment) from the practice of law by the Delaware Supreme Court
because of her crimes.  <u>See</u> <u>In re Freebery</u>, 930 A.2d 928 (Del. 2007) (Table) (text on Westlaw at
2007 WL 2703156).

regard has been clearly established since 1982.  <u>Zamboni v. Stamler</u>, 847 F.2d 73, 80 n.7 (3d Cir. 1988) (citing <u>Bennis</u>, 823 F.2d at 733); <u>accord</u> <u>Baldassare,</u> 250 F.3d at 201 (noting the same in 2001 in the law enforcement context).

More fundamentally - efforts to intimidate or threaten a witness because of their testimony before a grand jury, court or in any other official proceedings have long been crimes under numerous federal laws.  As the Seventh Circuit recently explained in the context of denying a First Amendment retaliation qualified immunity interlocutory appeal arising out of retaliation against prison guards for their court testimony about official misconduct -

> It was clearly established long before the events of which plaintiffs complain that state actors may not assault witnesses in federal litigation.  That's a crime, see 18 U.S.C. § 1512(a)(2), so no public official could think the conduct proper.

<u>Fairley v. Fermaint</u>, 482 F.3d 897, 902 (7th Cir. 2007).  In the same way, attempts to intimidate witnesses, short of physical violence, also are federal crimes.  <u>See</u> 18 U.S.C. § 1512(b). Similarly, defendants' conduct also constitutes obstruction of justice under the federal civil rights statutes.  <u>See</u> 42 U.S.C. §§ 1985, 1986.  Defendants have intimidated, threatened and deterred plaintiff from freely, fully and truthfully testifying before the federal grand jury and have intentionally injured plaintiff by retaliating against him for his truthful testimony.  <u>Id.</u> at § 1985(2).  Defendants also have violated § 1986 by failing to prevent these illegal actions.  Thus, defendants simply cannot hide behind the disingenuous claim that they just did not know it was illegal to retaliate against witnesses in federal grand jury proceedings.  That has long been a federal crime.  No reasonably competent public official could think that defendants' conduct was proper.

Additionally, as the Third Circuit has explained in the First Amendment context, if defendants acted with an intent to stifle plaintiff's First Amendment rights, qualified immunity

must be denied because "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006). Similar to the wrongdoing public official in Monteiro who was "motivated by anger and personal animosity" id. at 405, our record reveals that defendants also were similarly motivated by both anger and antagonism. (¶¶ 75, 20, 19, 119-20). Thus, qualified immunity must be denied because "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." Id. at 404.

Accordingly, defendants cannot claim lack of notice of this clearly established law and all their arguments fail. They must undergo discovery and stand trial for their corrupt actions. It matters not whether any of the other legal theories supporting plaintiff's claim are clearly established. Defendants must stand trial because just this one legal theory was clearly established.

    1. **Garcetti Does Not Impact Any of This Long Established Law.** Contrary to defense pleas, Garcetti does not impact on any of this clearly established law.

    a. **Speech to Outside Government Agencies Has Long Received Protection.** In addition to the case law cited above, it also has long been established that speech by police officers to outside government agencies about police corruption is protected. For example, Shoemaker v. Allender, 520 F.Supp. 266 (E.D.Pa. 1981), is another case remarkably similar to our own. There, an Allentown police officer learned of police corruption in his department and reported his findings to the FBI. Unhappy that the dirty underside of the department was being revealed, the Allentown police chief suspended him. The Eastern District of Pennsylvania held that the First Amendment protected the officer's reports to the FBI because "disclos[ing] confidential information to a federal investigatory agency relating to corruption in

24

the Allentown police department, [is] a matter of grave public importance." Id. at 269.[10]  This is

nothing new.

### (1).  And Speech to Outside Government Agencies Remains

**Protected Even After <u>Garcetti</u>.**  In the same way, numerous courts have held that public

employee speech and whistleblowing to outside government agencies remains protected, even

after <u>Garcetti</u>. <u>See, e.g.</u> <u>Freitag v. Ayers</u>, 468 F.3d 528, 545 (9th Cir. 2006) (speech to California

Inspector General and a State Senator); <u>Casey v. West Las Vegas Ind. Sch. Dist.</u>, 473 F.3d 1323,

1332-33 (10th Cir. 2007) (speech to State Attorney General); <u>Barber v. Louisville and Jefferson

County Metro. Sewer Dist.</u>, 2006 WL 3772206,*4 (W.D.Ky. Dec. 20, 2006) (speech to State

Attorney General); <u>Benoit v. Bd. of Comm'rs of the New Orleans Levee Dist.</u>, 459 F.Supp.2d

513, 518(E.D.La. 2006) (speech to Governor and a U.S. Senator); <u>Porter v. Intermediate Unit</u>,

2007 WL 2597911, *10 (W.D.Pa. Sept. 5, 2007) (speech to State Representative); <u>Hancock v.

Washington</u>, 2007 WL 1367600, *4 (W.D.Wash. May 7, 2007) (speech to State Auditor);

<u>Thompson v. City of Tucson Water Dept.</u>, 2006 WL 3063500 (D.Ariz Oct. 27, 2006) (speech to

fire department); <u>McLaughlin v. Pezzolla</u>, 2007 WL 676674, *6 (N.D.N.Y. Feb. 28, 2007)

(speech to outside government agency); <u>Walters v. County of Maricopa, Ariz.</u>, 2006 WL

---

[10]  <u>See</u> <u>F.O.P., Lodge No. 5 v. City of Phila.</u>, 812 F.2d 105, 116 (3d Cir. 1987) ("There is
obviously a strong public interest in avoiding corruption of the officers who investigate
corruption"); <u>id.</u> ("There is also a strong public interest in assuring the effectiveness of the
officers who investigate vice and corruption"); <u>U.S. v. Kemp</u>, 365 F.Supp.2d 618, 634 (E.D.Pa.
2005) ("Official corruption is a malignant cancer on the body politic, for which prosecution and
publicity are strong cures. Prosecution of public corruption cases must be highly transparent so
that the public will be aware of the governmental transactions at issue, which will allow members
of the public to express opinions and exercise their right to petition and vote based on
conclusions reached from the facts in the public record, regardless of the guilt or innocence of a
particular defendant").  This remains the law today. <u>See</u> <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 126
S.Ct. 1951, 1962 (2006) ("Exposing governmental inefficiency and misconduct is a matter of
considerable significance.").

2456173 (D.Ariz. Aug. 22, 2006) (speech to County Attorney's office);  Sassi v. Lou-Gold, 2007

WL 635579, *3 (S.D.N.Y. Feb. 27, 2007) (speech to City Council).[11]  Moreover, the issue of

police officer speech to the FBI about police corruption has specifically been held to be

protected.  Abbatiello v. County of Kauai, 2007 WL 473680, *5, 10-11 (D.Hawaii Feb. 7,

2007).[12]

> **b.  Subpoenaed Testimony Also Has Long Received Protection.**  As the

Supreme Court has explained, "public policy ... requires that the paths which lead to the

ascertainment of truth should be left as free and unobstructed as possible." Briscoe v. LaHue,

460 U.S. 325, 333 (1983).  "The function of witnesses is fundamental to the administration of

justice" and  "[e]very consideration of public policy requires that they should be as fearless in

testifying as the judge and jury are independent in weighing their testimony." Williams v.

Hepting, 844 F.2d 138, 141 (3d Cir. 1988) (quoting Brawer v. Horowitz, 535 F.2d 830, 837 (3d

Cir. 1976)); see also Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000) ("In order to

---

[11]  Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007), is inapplicable.  While the Third Circuit specifically noted that "giving statements to the State Auditor was not part of [the plaintiffs'] everyday duties," id. at 243, it added that those plaintiffs were admittedly complying with an order from their superiors to speak to the Auditor.  Id.  Moreover, the Court explained that the order itself only came about because of the 'internal' whistleblowing which those plaintiffs were directly required by their job duties to perform.  Id.  This was the dispositive fact. Id.  In our present case, defendants certainly did not order plaintiff to blow the whistle about their misconduct to the federal authorities so that defendants could become acquainted with the inside of a federal prison.  Similarly, plaintiff's speech to the FBI, Grand Jury and others was not the direct result of any 'internal' whistleblowing that he engaged in and which was required by his job duties.  For example, plaintiff did not file an internal affairs charge against then Chief Freebery regarding the campaigning.

[12]  For many pages, defendants confusingly cite internal speech up the police department chain of command cases for the proposition that speech to independent outside agencies is not protected.  (OB at 14-20).  Yet plaintiff did not blow the whistle internally.  He did not report defendants' misconduct to Internal Affairs, to the Detectives Unit or to the Major Crimes unit. Instead, he blew the whistle to numerous outside federal law enforcement authorities and to a federal grand jury.

encourage truthful and uninhibited testimony, the law has long afforded certain protections to witnesses").

In light of this, it is not surprising that the Third Circuit has long held that "court testimony, whether compelled or voluntary, is always a matter of public concern." Swartzwelder v. McNeilly, 297 F.3d 228, 238 (3d Cir. 2002) (citing Green v. Phila. Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1997) (voluntary testimony); Pro v. Donatucci, 81 F.3d 1283, 1291 (3d Cir. 1996) (subpoenaed testimony)).  "[T]he context of a courtroom appearance raises speech to a level of public concern, regardless of its content."  Green, 105 F.3d at 887 (citing Pro, 81 F.3d at 1291). The First Amendment provides protection even when the content of the courtroom speech is "'purely private,' because the form and context of [the] speech [is] of public concern, i.e. an appearance to deliver sworn testimony before an adjudicatory body." Id. at 886.

In Pro, the Third Circuit found that "the public employee's interest in responding to a subpoena and the judicial interest in having state employees respond to subpoenas without fear of employer reprisal" justified the holding that subpoenaed testimony is protected.  Pro, 81 F.3d at 1291.  Similarly, "[t]he goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts as speech 'of public concern.'" Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (quoted in Green, 105 F.3d at 887).  The Third Circuit has justified such holdings because of "[t]he utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony." Green, 105 F.3d at 887.  The "judicial interest in attempting to resolve disputes by arriving at the truth would be in jeopardy." Id.

The interest in guarding the truth seeking function is so weighty that a public employee's appearance as a witness, even in the absence of actual testimony, also is speech on a matter of public concern.  Pro, 81 F.3d at 1291.  In Pro, the Circuit found that even when the witness did not actually testify in the court proceedings, because she was "ready to testify truthfully," she was entitled to First Amendment protection.  Id.[13]

**(1).  And Subpoenaed Testimony Remains Protected Even After Garcetti.**  Post-Garcetti, several courts have had the opportunity to address subpoenaed speech and testimony and the majority have ruled in accord with longstanding prior Third Circuit precedent that testimony remains protected.[14]

Plaintiff is only aware of two reported Circuit decisions on this issue and each holds that subpoenaed testimony remains protected even after Garcetti.  In the context of a police officer plaintiff's subpoenaed deposition testimony about corruption by the police chief, the Seventh Circuit squarely addressed and analyzed this issue, and held that -

> [b]eing deposed in a civil suit pursuant to a subpoena was unquestionably not one of [the plaintiff's] job duties [as a police officer] because it was not part of what he was employed to do.

Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007); see Morales v. Jones, 2008 WL 59370 (2008).  The Seventh Circuit explained that the holding of Garcetti now requires that speech about police corruption in the context of subpoenaed testimony is protected, even though

---

[13] Thus, "even if Garcetti did change the legal landscape, it wasn't decided until May 30, 2006, and the defendants have not explained how it could be used to excuse conduct that happened years earlier, when the constitutional standards were clearly established."  Hare v. Zitek, 2006 WL 2088427, *3 (N.D.Ill. July 24, 2006).  As explained above, Third Circuit precedent has long been clear that testimony receives First Amendment protection.  Defense efforts to cite district court opinions to the contrary from the State of California are unavailing.

[14] As explained below, those that have not have rested their holding on the fact specific state of the evidentiary record detailing the scope of the plaintiffs' job duties in those cases.

"precisely the same speech said" to another police officer in an internal context would not be protected because of <u>Garcetti</u>'s job duties holding.  <u>Id.</u>

   As noted above, in <u>Fairley v. Fermaint</u>, 482 F.3d 897 (7th Cir. 2007), the Seventh Circuit also was squarely faced with a qualified immunity appeal of a First Amendment retaliation case brought by two county jailers.  The plaintiff jailers asserted retaliation against them for their testimony in lawsuits brought by prison inmates.  <u>Id.</u> at 902.  In response, the defendants claimed <u>Garcetti</u> barred the claims and that the law was not clearly established.  <u>Id.</u>  The Seventh Circuit rejected both claims.  <u>Id.</u>  In finding <u>Garcetti</u> inapplicable, the court explained that "[a]ssistance to prisoners and their lawyers in litigation is not part of a guard's official duties."  <u>Id.</u>  As previously noted, the court held that -

> It was clearly established long before the events of which plaintiffs complain that state actors may not assault witnesses in federal litigation.  That's a crime, see 18 U.S.C. § 1512(a)(2), so no public official could think the conduct proper.

<u>Id.</u>  Similarly, in <u>Hare v. Zitek</u>, 414 F.Supp.2d 834 (N.D.Ill. 2005), the court held that a police officer's grand jury testimony about the corrupt actions of his police chief was given "as a citizen of the Village, and not as a disgruntled employee" and so was constitutionally protected.  <u>Id.</u> at 858.  Several months later, the court readdressed the issue of whether that police officer's grand jury speech about police corruption survived <u>Garcetti</u>.  <u>See</u> <u>Hare v. Zitek</u>, 2006 WL 2088427, *3, *6, *8 (N.D.Ill. July 24, 2006).  The court analyzed the issue from multiple angles and ultimately concluded that "<u>Garcetti</u> ... does not apply."  <u>Id.</u> at *6.  Finally, outside of the police officer context, in <u>Hoppe v. White</u>, 2007 WL 1141589, *2 (C.D.Ill. April 17, 2007), the court also held that subpoenaed grand jury testimony reporting government misconduct remains protected even after <u>Garcetti</u>.

   **(2).  The Defense Claim.**  Defendants do not challenge any of the

29

long established and preexisting Third Circuit precedent holding that subpoenaed testimony is protected. Instead, they cite a mere two cases issued after <u>Garcetti</u> in support of their claim.

Initially, <u>Green v. Barrett</u>, 226 Fed.Appx. 883 (11th Cir. 2007) (per curiam), is cited for its two relevant holdings - that courtroom testimony by the Chief Jailer about unsafe conditions in the jail was made pursuant to the jailer's job duties, <u>id.</u> at 886, and that there was conflicting Eleventh Circuit precedent on whether subpoenaed testimony is protected. <u>Id.</u> at 886-87. First, this is an unreported non-precedential opinion which the Eleventh Circuit did not see fit for publication and which was not circulated among that entire court prior to issuance. Second, unlike in some foreign circuits, in the Third Circuit, the law has long been established that subpoenaed testimony receives First Amendment protection. Lastly, and more importantly, as the court in <u>Green</u> noted that plaintiff did not dispute that the only reason she testified was because of her position as jailer, and she did not even contend that the purpose behind her statements was to blow the whistle on wrongdoing. <u>Id.</u> at 886.

As the Third Circuit recently explained, the scope of an employee's job duties is a "fact-intensive ... inquiry." <u>Foraker</u>, 501 F.3d at 240. In our present case however, the factual basis for the motion to dismiss is plaintiff's First Amended Complaint, where it was specifically pled that plaintiff testified before the grand jury "in his private capacity as a concerned citizen" (¶ 20, <u>see</u> ¶ 23-25, 65-65a), and that "none of plaintiff's speech was required by his job duties or responsibilities as a lieutenant in the" NCCPD. (¶ 65a).[15] Accordingly, it is clear that this unreported opinion is distinguishable because there it was undisputed that the plaintiff's speech

---

[15] Even if plaintiff had not specifically alleged this, the Third Circuit has held that in a public employee free speech retaliation case, and in the 12(b)(6) motion to dismiss context, when a plaintiff's complaint is silent on whether the employee was speaking pursuant to his official duties, "we read the complaint to allege that [the plaintiff] was speaking 'as a citizen.'" <u>Hill v. Borough of Kutztown</u>, 455 F.3d at 242.

30

was made pursuant to her job duties.

Finally, defendants also cite <u>Deprado v. City of Miami</u>, 446 F.Supp.2d 1344, 1346-47 (S.D.Fla. 2006), which holds that because the plaintiff in that case was a police officer, he was bound by department and state-wide obligations which impose on all police officers an overbroad and overarching job duty to report police corruption to grand juries.  As explained below, such an overbroad interpretation of the job duties of a police officer violates <u>Garcetti</u>'s express admonition that the scope of an employee's job duties cannot be defined by "excessively broad job descriptions."  <u>Garcetti</u>, 126 S.Ct. at 1961-62.[16]

**(a).  This Defense Interpretation Violates <u>Garcetti</u>'s Express Admonitions.**  The defense claim is dependent upon reading into the job duties of every local police officer an overarching duty to report corruption in all of its forms, not just to their superior officers but to the FBI, IRS, U.S. Attorney and federal grand juries.  Of course, given that most public employers have broad rules on the books generally requiring all employees to report sexual harassment, race discrimination, waste, mismanagement, misconduct, unsafe working conditions, and all other violations of state or federal law, this biased defense-oriented interpretation would ensure that no public employee ever receives First Amendment protection

---

[16]  The defense claim that all speech made under compulsion is required by job duties (OB at 20, 22), misses the point of <u>Foraker</u> where it was the employer and supervisor doing the compelling.  <u>See Foraker</u>, 501 F.3d at 241 ("Price and Warren were likewise expected to report truthfully to the State Auditor upon being ordered to do so.").  <u>Garcetti</u> only addressed job duties not compelled speech.  <u>See</u> 126 S.Ct. at 1960.  Duties arise from many sources, not merely your job.  <u>See, e.g.</u> <u>Black v. Columbus Public Schools</u>, 2006 WL 2385359, *5 n.6 (S.D.Ohio Aug. 17, 2006) (noting that there are sources of duties that an employee may be under - such as moral or professional - that are unrelated to their job); <u>DeLuzio v. Monroe County</u>, 2006 WL 3098033, *7 (M.D.Pa. Oct. 30, 2006) (refusing to equate an admitted moral and ethical obligation to speak with a job duty to do so); <u>Cheek v. City of Edwardsville, Kansas</u>, 2006 WL 2802209, *3 (D.Kan. Sept. 29, 2006) (refusing to equate legal duties imposed by a general statute with job duties).  When a duty arising from a source other than ones job is doing the compelling, it is no longer a job duty doing the compelling.

for whistleblowing.

In the police officer context, numerous courts have rejected the claim that broad generalized rules and regulations impose on all police officers a broad overarching First Amendment job duty to report misconduct.  See Skrutski v. Marut, 2006 WL 2660691, *9 (M.D.Pa. Sept. 15, 2006); Batt v. City of Oakland, 2006 WL 1980401, *4 (N.D.Cal. July 12, 2006); Taylor v. Town of Freetown, 479 F.Supp.2d 227, 237 (D.Mass. 2007); Abbatiello v. County of Kauai, 2007 WL 473680, *10 (D.Hawaii Feb. 7, 2007).

Even outside of the police officer context, numerous courts also already have reviewed and rejected this defense interpretation.  See Barclay v. Michalsky, 451 F.Supp.2d 386, 396 (D.Conn. 2006) (rejecting the claim that a written rule imposing on all employees an affirmative obligation to report all types of misconduct "was particularly within the province of plaintiff's professional duties" for Garcetti purposes); Moore v. Gabriel, 2007 WL 917291, *5 n.5 (M.D.Ga. March 22, 2007) (same); Cheek v. City of Edwardsville, KS, 2006 WL 2802209, *3 (D.Kan. Sept. 24, 2006) (refusing to read broad legal duties imposed under a state statute into an employee's day to day job duties); Rohrbough v. Univ. of Colo. Hosp. Auth., 2006 WL 3262854, *3 (D.Colo. Nov. 9, 2006).

**(b).  The Garcetti Court Warned Against the Same Overbroad Interpretation of Job Duties Urged by the Defense.**  As noted above, the Garcetti Court cautioned that it would not elevate form over substance and allow public employers to gut free speech protections for their employees.

> We reject ... the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. ... The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

32

Garcetti, 126 S.Ct. at 1961-62 (emphasis added); accord Porter, 2007 WL 2597911, *10 ("employers [cannot] insulate themselves from First Amendment retaliation claims by creating excessively broad job descriptions.").  As one court explained in rejecting similar defense efforts to impose an overbroad reading of Garcetti -

> Any attempt to inflate [the plaintiff's] job description so as to include blowing the whistle on other officers would likely exceed the 'practical inquiry' suggested by the Supreme Court.  The Supreme Court's narrow [Garcetti holding] ... should not be read to overrule all First Amendment whistleblower protection cases by generally categorizing whistle blowing as part of employees' employment obligations.

Walters v. County of Maricopa, Ariz., 2006 WL 2456173, *14 (D.Ariz. Aug. 22, 2006).

### (c).  The Garcetti Court Also Explained that Speech Related to the Workplace is Still Protected.

The defense claim that speech related to things plaintiff observed during the course of his job is equally unavailing.  (OB at 24).  First, this was not Garcetti's holding.[17]  Instead, the Garcetti Court took pains to make clear that it was not overruling another long line of precedent holding that speech about the workplace or the speaker's job also is protected.

> The memo [at issue] concerned the subject matter of Ceballos' employment, but this, too, is nondispositive.  The First Amendment protects some expressions related to the speaker's job.  See, e.g.[Pickering, 391 U.S. at 573]; [Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 414 (1979)].  As the Court noted in Pickering: "Teachers are, as a class, the members of the community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." 391 U.S. at 572.  The same is true of many other categories of public employees.

---

[17]  This also was not the holding of Foraker.   In that case, the Court explained that the plaintiffs' speech to the auditor was not protected because the order from their superiors compelling their reports to the Auditor only came about because of their internal speech (which itself was required by their job duties).  Foraker, 501 F.3d at 243.  Here, plaintiff simply did not speak out internally.  Unlike in Foraker, there is no internal speech analogue which then "promoted the order to speak with the [outside agency]." Id.

<u>Garcetti</u>, 126 S.Ct. at 1959 (emphasis added).[18]  Thus, the fact that Ceballos' speech also addressed aspects of his employment was not dispositive.  Similarly, the fact that plaintiff's speech addressed corruption he witnessed during the course of his employment also is not dispositive.[19]

In <u>City of San Diego v. Roe</u>, 543 U.S. 77 (2004) (per curiam), the Supreme Court again addressed why it is imperative that public employees like plaintiffs be able to speak out about workplace matters without fear of retaliation.  The Court explained that -

> Underlying the decision in <u>Pickering</u> is the recognition that public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public.  Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues.  The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.

<u>Roe</u>, 543 U.S. at 82.  In our present case, as a veteran police officer, plaintiff was in an ideal position to expose corruption in the police department to the FBI, IRS, U.S. Attorney and the grand jury.  Who knows better what ails a police department than a police officer?

**2.  Free Speech Claims Have Survived <u>Garcetti</u>.**  Accordingly, as review of the above law makes it clear, public employee free speech retaliation claims such as plaintiff's

---

[18]  Thus, the defense claim of a 'but for' test, that speech is not protected if the plaintiff learned of it during the course of his employment (OB at 24-25), is mistaken.  The Supreme Court has repeatedly explained and rested its holding on a different basis.

[19]  <u>Cf</u>. <u>Givhan v. Western Line Consol. Sch. Dist.</u>, 439 U.S. 410, 412-13 (1979) (speech by a teacher addressing racially discriminatory policies and practices in her school); <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274,282 (1977) (speech by a teacher addressing new teacher dress code in his school); <u>Pickering</u>, 391 U.S. at 571-72 (speech by teacher about school funding issues); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1202 (3d Cir. 1988) (speech by police department employee addressing race discrimination in the workplace); <u>Azzaro v. County of Allegheny</u>, 110 F.3d 968, 981 (3d Cir. 1997) (en banc) (speech about sexual harassment and gender discrimination in the workplace).

clearly survived Garcetti.  Notably however, the defense claim that there can be no clearly

established public employee free speech law in light of Garcetti is remarkably similar to a

defense claim which Judge Sleet repeatedly has addressed - that there can be no clearly

established public employee free speech law in light of Pickering  v. Bd. of Educ., 391 U.S. 563

(1968).  As Judge Sleet repeatedly explained in rejecting this claim -

> If the court were to accept the defendants' position, qualified immunity could never be
> denied in First Amendment retaliation cases.  This is an extreme result ... one that this
> court will not sanction.

Springer v. Henry, 2002 WL 389136, * 7 (D.Del. March 11, 2002); Springer v. Henry, 2004 WL

2127172, *6 n.9 (D.Del. Sept. 16, 2004).  Post-Garcetti, another federal court has similarly

explained that it was refusing defense invitations to

> transform Garcetti into an impermeable rule that all speech by governmental officials, no
> matter what the facts presented, is fully engulfed by their governmental duties and
> eschewing, under any circumstance, the possibility or the opportunity that on another
> given day they may speak as private citizens on matters that may be relatively close to
> their employment.

Jackson v. Jimino, 506 F.Supp.2d 105, 109 (N.D.N.Y. 2007).[20]

**E.  Plaintiff' Long Established Right Against Petition Clause Retaliation.**  In the

same way, the right to petition has been clearly established for even longer than its better known

cousin, the free speech clause.  A citizen's right to petition the government was part of the

Magna Carta and also was such a well-recognized part of the law that it was included in

Blackstone's famous works.  San Filippo v. Bongiovanni, 30 F.3d 424, 443 and n. 22-23 (3d Cir.

1994).  In the U.S., the right to petition the government has been clearly established under

---

[20]  Defendants have plainly stated this is their intent.  (See OB at 20 - mistakenly claiming
that Garcetti now requires that all voluntary and involuntary and subpoenaed speech by public
employees about workplace corruption is now barred).

35

decades of Supreme Court precedent.[21]  Similarly, the Third Circuit repeatedly and exhaustively

has discussed the right of a public employee to petition the government for redress of

grievances.[22]

      **1.  Garcetti Does Not Apply to the Petition Clause.**  First, the defense claim that

Garcetti applies to the petition clause is clearly wrong.  Looking to the differing histories and

purposes underlying the petition clause versus the free speech clause, the Third Circuit expressly

rejected the defense claim that petition clause claims are governed by Garcetti.  Foraker, 501

F.3d at 237.[23]

      **2.  The Petition Clause Also Protects Informal Petitions to Non-Judicial**

**Bodies.**  Once again, the defense claim that the petition clause only protects "formal petitions"

such as lawsuits, was rejected by the Third Circuit last summer in Foraker.  The Third Circuit

explained that "informal petitions" such as "letters" also receive constitutional protection.  Id.[24]

---

    [21]  See, e.g., NAACP v. Button, 371 U.S. 415, 429-30 (1963); Bhd. of R.R. Trainmen v. Va. Ex Rel. Va. State Bar, 377 U.S. 1, 5 (1964); United Mine Workers of America v. Ill. State Bar Ass'n, 389 U.S. 217, 221-225 (1967); Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-16 (1972); McDonald v. Smith, 472 U.S. 479, 482-85 (1985)

    [22]  See, e.g., Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 909-10 (3d Cir. 1984); Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988); San Filippo, 30 F.3d at 434-43; Bieregu v. Reno, 59 F.3d 1445, 1453 (3d Cir. 1995) (overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 355 (1996)); Anderson v. Davila, 125 F.3d 148, 161-63 (3d Cir. 1997); We, Inc., v. City of Phila., 174 F.3d 322, 326-30 (3d Cir. 1999); A.D. Bedell, 263 F.3d at 250-54; Herr v. Pequea Township, 274 F.3d 109, 115-17 (3d Cir.2001) (abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir.2003)); Mariana v. Fisher, 338 F.3d 189, 197-200 (3d Cir. 2003); Brennan v. Norton, 350 F.3d 399, 417-18 (3d Cir. 2003); Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005); Borough of Kutztown, 455 F.3d at 242 n.24; Foraker, 501 F.3d at 235-38.

    [23]  In his concurring opinion, Judge Greenberg criticized the majority for its holding on this issue.  Id. at 247-49 (Greenberg concurring).

    [24]  Formal petitions received the most analysis in Foraker because the Court there agreed with the district court's finding that the petition at issue in that case - speaking to the State Auditor - qualified as a formal petition.  Id. at 238.

This is not surprising given that both the Supreme Court and Third Circuit previously have held that letters qualify as petitions under the clause.  See, e.g. McDonald v. Smith, 472 U.S. 479 (1985),[25] White v. Nicholls, 44 U.S. 266, 289-91 (1845); Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 156-58 (3d Cir. 1988).

**3.  Petitions to All Branches of Government - Including Federal Agencies - Receive Protection.**  The Supreme Court has long held that "the right to petition extends to *all departments of the Government*."  Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (emphasis added); accord BE & K Construction Co. v. NLRB, 536 U.S. 516, 525 (2002); Mariana v. Fisher, 338 F.3d 189, 199 (3d Cir. 2003).

The right includes petitions to state and federal agencies and officials.  For example, in McDonald v. Smith, the petitions at issue included letters to the Director of the FBI, members of Congress and other government officials.  See 472 U.S. at 481.  Similarly, the petitions at issue in Cal. Motor Transport, were addressed to state and federal agencies.  See 404 U.S. at 511.  In Herr, 274 F.3d at 115, the Third Circuit explained that the right to petition "applies [ ] to petitioning state agencies" and other branches of state government.   Furthermore, in Losch v. Borough of Parkesburg, Pa., 736 F.2d 903 (3d Cir. 1984), a plaintiff petitioned his local police department.  In the subsequent lawsuit, the Third Circuit found in 1984 that it was "clearly established" that he had the right to "petition the government in the manner that he did" and to be free of retaliation for doing so.  Losch, 736 F.2d at 910.   This and the other precedent discussed above "clearly establishes that the submission of complaints and criticisms to nonlegislative and

---

[25]  See Foraker, 501 F.3d at 237 (noting that the petition at issue in McDonald was a letter to the President); San Filippo, 30 F.3d at 439 (same); Ferrone v. Onorato, 439 F.Supp.2d 442, 450 (W.D.Pa. 2006) (noting that the Supreme Court's decision in McDonald "appear[s] to refute [d]efendants' argument that letters cannot be considered petitions under the Petition Clause").

nonjudicial public agencies ... constitutes petitioning activity protected by the petition clause."

Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000).

**4. None of Plaintiff's Petitions Were Made Under Compulsion.** Lastly,

plaintiff simply was not compelled to petition the FBI, IRS and U.S. Attorney and there is no

evidence to the contrary.[26] Instead, as was specifically pled, in petitioning these federal agencies

and authorities, plaintiff "sought to bring to light actual or potential wrongdoing or breach of the

public trust by Gordon and Freebery, and to have those wrongs exposed to the light of day and

corrected by those with authority to do so." (¶ 26). There was no compulsion, just good

citizenship by a concerned citizen. (See ¶¶ 17, 23-25 - all noting that plaintiff spoke "in his

private capacity as a concerned citizen").

### CONCLUSION

Through an onslaught of confusing and misleading factual and legal assertions, the

defendants would have this Court misstate the law governing motions to dismiss, notice pleading

and qualified immunity in the hope that they can avoid their day of reckoning in Court for their

misuse of governmental power to punish plaintiff, who exposed to the FBI, IRS, the U.S.

Attorney and a grand jury their corrupt schemes for local elections and their cover-up of crimes

by a family member. In sum, the defense arguments are totally without merit and are frivolous.

Thus, their motion should be denied.

---

[26] Importantly, plaintiff was subpoenaed to speak before the grand jury, but he has never claimed petition clause protection for his testimony there. Instead, he relies upon the free speech clause.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**CHERYL A. HERTZOG, ESQ.**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com


**LAW OFFICE OF JOHN M. LaROSA**

/s/ John M. LaRosa
**JOHN M. LaROSA, ESQ. (#4275)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801-3707
(302) 888-1290
Dated: February 7, 2008          JLR@LaRosaLaw.com

39

### CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

February 7, 2008, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

William W. Bowser, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Charles E. Butler, Esq.
1224 North King Street
Wilmington, DE 19801

Kathleen M. Jennings, Esq.
Oberly Jennings and Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**

/ Tobin / Briefs / Motion to Dismiss AB.final

40