IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHIEF HENRY V. TOBIN III,           :
                                    :
          Plaintiff,                :
                                    :
     v.                             :     C.A. No. 04–1211 MPT
                                    :
THOMAS P. GORDON, individually:
and in his official capacity; :
SHERRY FREEBERY, individually :
and in her official capacity; :
COLONEL JOHN L. CUNNINGHAM,    :
RETIRED, individually;        :
COLONEL DAVID F. MCALLISTER,   :
individually and in his       :
official capacity; and        :
NEW CASTLE COUNTY,            :
a municipal corporation,      :
                              :
          Defendants.         :

**PLAINTIFF'S OPENING MEMORANDUM IN SUPPORT OF
HIS MOTIONS FOR REASONABLE ATTORNEYS' FEES AND COSTS OF
THE NEUBERGER FIRM, P.A. AND THE LAW OFFICE OF JOHN M. LaROSA,
PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54**

For the reasons set forth in this Memorandum, the
Declaration of Thomas S. Neuberger, Esquire and exhibits attached
hereto, the Declaration of John M. LaRosa, Esquire and exhibits
attached hereto, the Declaration of William Ewing, Esquire, the
Declaration of Alan B. Epstein, Esquire and exhibit attached
hereto, the Declaration of Karen L. Turner, Esquire and exhibit
attached hereto and the Declaration of Martin D. Haverly,
Esquire, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54,
plaintiff seeks an award of attorneys' fees and costs for the

successful completion of this case.

1.   Section 1988(b) states in pertinent part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of . . . title [42], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. 1988(b).  The Third Circuit has clarified that "although [§ 1988(b)] expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." County of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001)(citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).  Applicable federal law in this Circuit on attorneys' fees also is found in Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001); Lanni v. New Jersey, 259 F.3d 146 (3d Cir. 2001);  Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989); Rode v. Dellaciprete, 892 F.2d 1177 (3d Cir. 1990); and Hughes v. Repko, 578 F.2d 483 (3d Cir. 1978).

2.   The lodestar amount in this case found below is reasonable.  It is supported by the Declaration of Thomas S. Neuberger, Esquire (Exhibit 1, hereinafter "T. Neuberger Decl."), the Declaration of John M. LaRosa, Esquire (Exhibit 2, hereinafter "LaRosa Decl."), the Declaration of William Ewing, Esquire (Exhibit 3, hereinafter "Ewing Decl."), the Declaration

2

of Alan B. Epstein, Esquire (Exhibit 4, hereinafter "Epstein Decl."), the Declaration, of Karen L. Turner, Esquire (Exhibit 5, hereinafter "Turner Decl.") and the Declaration of Martin D. Haverly, Esquire (Exhibit 6, hereinafter "Haverly Decl."). The Declarations sustain the hourly rates requested for attorneys Thomas S. Neuberger, Stephen J. Neuberger, Cheryl A. Hertzog, Raeann C. Warner and John M. LaRosa. The hourly rates are reasonable and customary market rates, as is indicated in the Declarations. The current hourly rates of $450 per hour for Thomas S. Neuberger, $250 per hour for Stephen J. Neuberger, $170 per hour for Cheryl A. Hertzog, $170 per hour for Raeann C. Warner and $250 per hour for John M. LaRosa are reasonable.

3. Plaintiff is entitled to recover his reasonable attorneys' fees and costs because he is the prevailing party pursuant to 42 U.S.C. § 1988. That statute does not provide for the payment of expert witness fees in this § 1983 case; so no such expenses are sought.

4. As is set forth in the Declaration of lead counsel Thomas Neuberger, all services for which compensation is requested were reasonable and necessary to the claims on which plaintiff prevailed. There are no claims on which plaintiff did not prevail. All duplicative, extraneous or unnecessary time also has been eliminated, and billing judgment has been exercised by eliminating approximately 18.5 hours of time.

3

5.  Plaintiff additionally is entitled to the attorneys' fees incurred in preparing and presenting the pending Motions for Attorneys' Fees and Costs.  A supplemental record on those issues will be submitted to the court at the appropriate time on or about June 18, 2008, in connection with Plaintiff's Reply Memorandum in support of the pending Motions.

### I.   THE JUDGMENT FOR PLAINTIFF, THE GOALS OF THIS ACTION AND THE DIFFICULT COURSE OF THE LITIGATION

6.  This case was one in a long difficult series of federal cases involving the corruption of the personnel process in the County police department by the now disgraced former County Executive and his Chief Administrative Officer.  The first case began during the first Gordon administration with then Sergeant (and now Deputy Attorney General) John Downs.  That case was vigorously defended by two law firms under lead counsel Sheldon N. Sandler and C.J. Seitz.  The case ultimately achieved a confidential settlement after protracted litigation.  The next case filed was for then Sergeants Jack Reyes and Tony Hernandez which is awaiting trial.  That case also is defended by two law firms, one from Philadelphia and another from Delaware.  The last public document plaintiff's lead counsel saw regarding the case indicated that over $700,000 had been spent defending the case. Needless to say, the case has been difficult and protracted.

7.  Then three new and separate County police cases began for officers Riddell, Jamison and Tobin.  Each of these cases

4

resulted in separate federal filings against the same group of defendants who had litigated the Downs and Reyes and Hernandez cases.  Based on prior experience with these same defendants, plaintiff's counsel reasonably expected protracted and difficult litigation and extensive briefing at the motion to dismiss and summary judgment stages for these case as well as long trials.

8.  Plaintiff's counsel's expectation was correct for the present Tobin case.  The legal issues, such as qualified immunity, First Amendment protected activity and adverse action were many and complex.  Defendants sought to throw a knock-out punch at plaintiff's First Amended Complaint.  In fact, the defense motion to dismiss brief raised at least twelve issues, among which was that the detailed Complaint and First Amended Complaint lacked specificity – the direct opposite view from the position defendants now have taken in disputing plaintiff's fees for the time spent on drafting the pleadings.  Plaintiff's counsel had anticipated such a defense and accordingly devoted appropriate attention to framing a Complaint and First Amended Complaint which would withstand that defense motion.  Plaintiff's counsel apparently succeeded because after a three year stay of this civil action (which plaintiff strongly opposed) due to the federal criminal prosecution of defendants Gordon and Freebery, their eventual criminal convictions, amendment of the pleadings and the lifting of the stay, the discovery and interviewing of

key liability fact witnesses and obtaining declarations
therefrom, and a motion to dismiss and briefing thereon, the
defendants confessed judgment, and our case ended.

9.    Plaintiff, in whose favor judgment was entered, is the
"prevailing party" in this case.  Because of the protracted delay
in advancing this case because of the criminal charges faced by
two of the individual defendants and the long stay of proceedings
in this case, our client had to get on with his life.  He was
given the opportunity to form the newly created Middletown Police
Department as its chief.  So he shook the dust off his feet and
accepted that position, mooting any injunctive aspects to his
case.  With new full time public duties consuming all his time
and with the offer of a confessed judgment establishing liability
for constitutional violations, our client accepted that
vindication of his claims, ended this case and has devoted his
time to serving the citizens of Middletown in the formation of
their police department and the creation of a lasting foundation
for that public trust.

10.    Any claim by defendants that plaintiff's counsel spent
too much time on the case is without merit because it was
necessary for plaintiff's counsel to interview fact witnesses and
obtain declarations from them to preserve evidence during the
three year stay in this case, and to amend the Complaint and
conduct legal research into the impact of an intervening Supreme

Court opinion which altered the legal landscape of free speech claims, all work billed ultimately contributed to the final result of the case and counsel is exercising billing judgment in making this fee application.

11.  Time billed for interviewing and preparing declarations from Lynda Maloney and Maria Rendina was appropriate to interview crucial fact witnesses.  Despite defendants' contention that plaintiff should have devoted only "minimal efforts" to discovery and fact-finding during the stay (a stay initiated at defendants' explicit request to protect the interests of now confessed and convicted criminals), the reality of litigation is that memories fade over time, and fact witnesses do not live forever.  Therefore, it was necessary for plaintiff's counsel to interview these fact witnesses and obtain declarations from them to preserve evidence during the three year stay in this case.

12.  All work billed ultimately contributed to the final result of the case.  Regarding time spent on services related to the U.S. EEOC charge, plaintiff did file a Charge of Discrimination for the denied promotions which gave rise to his claims.  The County and its Police Department apparently were not represented by counsel at that stage of the litigation.  Nevertheless, that work ultimately contributed to the final result of the case.

13.  Plaintiff's counsel did exercise billing judgment in preparing his fee application.  Specifically, The Neuberger Firm

deleted 3.7 hours for media related activities in this case in the exercise of billing discretion.  Also, the Law Office of John M. LaRosa, only is billing for 138.7 of my 153.5 hours spent on the case.  Plaintiff's counsel does not seek payment for the other 18.5 hours in the exercise of billing discretion.

**B.  <u>Plaintiff Is Entitled To An Award Of Attorneys' Fees.</u>**

14.  The general rule in the computation of fees is that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate based on the prevailing market rates in the relevant community.  <u>City of Burlington v. Dague</u>, 505 U.S. 557, 559-560 (1992); <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984); <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  This is "the lodestar figure" which normally represents the reasonable fee contemplated by § 1988. <u>See Hensley</u>, <u>supra</u>.

15.  Plaintiff meets all the requirements for the recovery of attorneys' fees under 42 U.S.C. § 1988:

– Plaintiff is the prevailing party in his case;

– The attorneys' fees incurred were "reasonably expended" on the case; and

– The attorneys' rates are market rates.

**1.  <u>Plaintiff Is A Prevailing Party.</u>**

16.  A condition precedent to determining the lodestar is a determination under § 1988 whether a plaintiff was a prevailing

8

party, which is self evident, in light of the entry of judgment "in favor of plaintiff and against all defendants in the amount of $25,000 plus attorney fees and costs . . . ." (D.I. 32).  In the First Amended Complaint, plaintiff sought a declaration that his Constitutional rights had been violated and compensatory damages for the violation of his rights to free speech and petition.  (D.I. 14).  The docket reflects an Order for Entry of Judgment for plaintiff in the amount of $25,000 plus reasonable attorneys' fees and costs.  (D.I. 31).  So success was achieved for these goals.

17.  Here, the Supreme Court has adopted what it has termed a "generous formulation," and it has held that parties may be considered "prevailing parties" for attorneys' fees purposes if they succeed on **any significant issue in litigation** that advances all or some of the benefits they seek to achieve.  Hensley, 461 U.S. at 433.  This includes "some relief on [the] merits of the claim[,]" Hewitt v. Helms, 482 U.S. 755, 760 (1987), which "*affects the behavior of the defendant toward the plaintiff[,]*" Rhodes v. Stewart, 488 U. S. 1, 4 (1988)(emphasis in original), and which "changes the legal relationship between [the parties]." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).  All of that has been accomplished herein.

18.  In the present case, there can be no doubt that plaintiff has met the standard for a prevailing party.  He

prevailed on all of his claims, and the relief has affected the behavior of the individual defendants.  Parties are deemed to be prevailing parties for attorneys' fees purposes when they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (citations omitted).  Here, plaintiff is receiving some of the benefits he sought in the Wherefore Clause of his Complaints.  (D.I. 1).  The "actual relief" obtained in this lawsuit thus was "substantial" and "material[ly] alter[ed] the legal relationship [between] the parties" by financially "modifying the defendant[s]'[] behavior in a way that directly benefit[ed] the plaintiff" and the community.  Farrar v. Hobby, 506 U.S. 103, 111–112 (1992).

**2. The Lodestar: The Attorneys' Fees Incurred Were "Reasonably Expended."**

19.  A plaintiff's attorneys' fees may be charged to the defendant if the hours were "reasonably expended on the litigation." Hensley, 461 U.S. at 433.  The calculation of attorney's fees begins with the computation of a "lodestar" representing the product of the reasonable number of hours spent on the case times a reasonable hourly rate. Id.; see also Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167–68 (3d Cir. 1973).  The Supreme Court and the Third Circuit have repeatedly recognized a strong presumption that the lodestar constitutes a reasonable fee in a

civil rights action. <u>City of Burlington v. Dague</u>, 505 U.S. at 560-64; <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986); <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984); <u>Student Pub. Interest Research Group of N.J., Inc. v. AT&T Bell Lab</u>, 842 F.2d 1436, 1453 (3d Cir. 1988); <u>General Instrument Corp. of Del. v. Nu-Tek Elec. & Mfg., Inc.</u>, 197 F.3d 83, 91 (3d Cir. 1999). Adjustments should be made in the lodestar only in "rare, exceptional cases." <u>D'Emanuele v. Montgomery Ward & Co. Inc.</u>, 904 F.2d 1379, 1383 (9th Cir. 1990), overruled on other grounds by <u>Burlington v. Dague</u>, 505 U.S. 557 (1992); <u>Watkins v. Fordice</u>, 7 F.3d 453, 457 (5th Cir. 1993) (the lodestar is presumptively reasonable and "should be modified only in exceptional cases.").

20. In computing the hours component of the lodestar, the fee applicant ordinarily submits contemporaneous time and expense records. <u>See, e.g.</u>, <u>Webb v. Board of Educ.</u>, 471 U.S. 234, 238 n.6 (1985). Here, a day-by-day list of all services rendered in the case is included in the T. Neuberger Declaration and the LaRosa Declaration. As described, all attorney time was adequately documented on contemporaneous time records and entered into computer data bases from which those records carefully were compiled. Moreover, all hours sought to be reimbursed were reasonably expended in every respect.

21. Counsel also are well-qualified, diligent attorneys.

The hours worked by each attorney reflect a sensible division of labor.  (T. Neuberger Decl. ¶ 33).  They spent a reasonable and appropriate amount of time on the case considering it involved the loss of hundreds of thousands of dollars, as is reflected in the time spent on various facets of the case which is set out in the Declaration.  The lodestar is set out below for the various phases of the case.

22.  First, there is the value of the lodestar and time in this case for the Neuberger Firm at the trial court level.

**Total Lodestar Time at Trial Court Level: The Neuberger Firm**

Complaint drafting[1]

Total Hours:     9.1

Telephone conferences and meetings with client, counsel and others[2]

Total Hours:     28.0[3]

Fact investigation[4]

Total Hours:     10.2

Pleadings and document preparation[5]

---

[1]  Time code 160.

[2]  Time codes 70, 110, 120, 790, 800, 810, 830.

[3]  This is the balance after 3.0 hours were eliminated for media related activity.

[4]  Time codes 280, 330.

[5]  Time codes 250, 620, 630, 700.

Total Hours:     5.2[6]

Correspondence and file memos[7]

Total Hours:    11.8[8]

Expert witnesses[9]

Total Hours:      .9

Briefing the stay motion and the motion to dismiss, legal research[10]

Total Hours:    27.9

Settlement efforts[11]

Total Hours:     7.5

Miscellaneous

Total Hours:     4.2

Total Hours for The Neuberger Firm: 104.8

Total Value of 104.8 hours

TSN  49.7 hours[12] @ $450/hour

$      22,365.00

---

[6]  This is the balance after .6 hours were eliminated for media related activity.

[7]  Time codes 310, 420, 430.

[8]  This is the balance after .1 hours were eliminated for media related activity.

[9]  Time code 271.

[10]  Time codes 90, 410.

[11]  Time code 720.

[12]  This is the balance after 3.7 hours were eliminated for media related activity.

```
SJN   50.4 hours @ $250/hour
                                        $         12,600.00

CAH   2.6 hours @ $170/hour
                                        $            442.00

RCW   2.2 hours @ $170/hour             $            374.00
                                              _____
```

Total value of time after exercise of all billing judgment:
The Neuberger Firm

```
                                        $         35,781.00
                                              _____
```

TOTAL VALUE OF TRIAL COURT LODESTAR:     $         35,781.00
The Neuberger Firm

    23. Second, there is the value of the lodestar and time in this case for Law Office of John M. LaRosa at the trial court level.

**Total Lodestar Time at Trial Court Level: Law Office of John M. LaRosa**

Settlement communications

                        Total Hours:   32.8

Complaint preparation (for original and First Amended Complaint)

                        Total Hours:   16.5

Meetings and preparation

                        Total Hours:   15.0

Draft documents

                        Total Hours:   14.2

Factual investigation

|  | Total Hours: | 13.8 |
|---|---|---|

Briefing (opposing Motion to Stay and Motion to Dismiss)

|  | Total Hours: | 12.5 |
|---|---|---|

Telephone calls made

|  | Total Hours: | 12.2 |
|---|---|---|

Memorandums and e-mails

|  | Total Hours: | 6.7 |
|---|---|---|

Telephone calls received

|  | Total Hours: | 4.2 |
|---|---|---|

Legal and factual analysis

|  | Total Hours: | 3.7 |
|---|---|---|

Damages preparation and experts

|  | Total Hours: | 3.1 |
|---|---|---|

Legal research

|  | Total Hours: | 2.3 |
|---|---|---|

Initial consultation

|  | Total Hours: | 1.4 |
|---|---|---|

Total Hours for Law Office of John M. LaRosa:        138.7

Total Value of 138.7 hours

JLR  138.7[13] @ $250/hour

$    34,675.00

---

[13]  This is the balance after 14.8 hours were eliminated for representation before the EEOC, media related activity and other administrative matters.

Total value of time after exercise of all billing judgment:
Law Office of John M. LaRosa

$      34,675.00

_____

TOTAL VALUE OF TRIAL COURT LODESTAR: LAW OFFICE OF JOHN M. LaROSA

$      34,675.00

24.  From the above, it can be seen that a total of 104.8 hours were devoted by the Neuberger Firm and a total of 138.7 hours were devoted by the Law Office of John M. LaRosa for a grand total of 243.5 hours in this case.  In the exercise of billing judgment, 3.7 hours first were subtracted from the Neuberger Firm's higher total of 108.5, leaving a difference of 104.8 hours for which compensation is being sought at normal hourly billing rates.  Also in the exercise of billing judgment, 14.8 hours were subtracted from the Law Office of John M. LaRosa's higher total of 153.5, leaving a difference of 138.7 hours for which compensation is being sought at normal hourly billing rates.  Accordingly, an attorneys' fee award of $35,781.00 for the work of The Neuberger Firm and an attorneys' fee award of $34,675.00 for the work of the Law Office of John M. LaRosa for a grand total fee of $70,456.00 is reasonable and appropriate in this case through February 22, 2008.  Cf. Omari v. Waste Gas Fabricating Co., Inc., 2005 WL 251345, at *4 (E.D.Pa. Apr. 13, 2005)(in an employment case, awarding $73,837.75 in attorneys' fees after judgment for plaintiff of $58,680).

16

25.  The hours spent by counsel were incurred reasonably in a hard fought, difficult case in which the overzealous defense tactics throughout inevitably drove up the hours necessary to prevail, and counsel should recover a fully compensatory fee for all their activities.  Indeed, the Supreme Court has recognized that the degree of a prevailing party's overall success affects the "reasonableness" of a fee award.  Hensley, 461 U.S. at 430.  The "most critical factor is the degree of success obtained."  Id. at 436.  In determining the "reasonableness" of a fee in civil rights cases, the courts have focused on the "results obtained" and whether the prevailing party "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Id. at 434.  That was the case herein with the entry of judgment against all defendants.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435.

### 3.  Counsel's Billing Rates Are Market Rates.

26.  The other principal component of the lodestar approach to determining an attorney's fee is the attorney's hourly rate.

27.  Here, the Third Circuit has held that the current market rate for purposes of an attorney fee award is the rate at the time of the fee petition, not the rate at the time the services were performed.  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).  Here, Thomas S. Neuberger's rate is $450 per hour.  Stephen J. Neuberger's rate is $250 per hour.  Their

17

former associate Cheryl A. Hertzog's rate and their current
associate Raeann C. Warner's rate is each $170 per hour.  (T.
Neuberger Decl. ¶¶ 37, 39).  None of these hourly rates are
unreasonable and the extensive record demonstrates that they are
market rates.

28.  Defendants have not agreed to any of the hourly rates.

29.  The calculation of reasonable fees under § 1988 is
determined by the "prevailing market rates in the relevant
community." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  The
prevailing market rates for attorneys for the successful party
are broadly defined as "those prevailing in the community for
similar services by lawyers of reasonably comparable skill,
experience and reputation." <u>Id.</u> at 895 and n.11.

30.  William Ewing, Esquire; Alan Epstein, Esquire and Karen
Turner, Esquire, have attested to the reasonableness of Thomas S.
Neuberger's hourly rate.

31.  The senior Mr. Neuberger has been practicing law in
Delaware and nationally for 34 years this fall.  He received his
Juris Doctor degree in 1974 from Georgetown University Law
Center.  He was an editor of the *Georgetown Law Journal* and an
associate editor of the *American Criminal Law Review*.  He has a
Master's Degree in Political Science with honors which was
granted in 1973, by the University of Delaware.  He also was
awarded a graduate school teaching assistantship and a National
Science Foundation traineeship.  He received his B.A. degree

magna cum laude in Political Science in 1969 from St. Joseph's University in Philadelphia, Pennsylvania.

32.  From June 1972 through April 1974, he served as a law clerk to the Honorable John H. Pratt, Judge of the United States District Court for the District of Columbia.  He was admitted to the following bars on the dates indicated: the Delaware Supreme Court, 1974; the U.S. District Court for the District of Delaware, 1974; the U.S. Supreme Court, 1978; the Fifth Circuit, 1978; the Third Circuit, 1979; the Ninth Circuit, 1980; the Seventh Circuit, 1985; the Sixth and D.C. Circuits, 1992, and the Fourth Circuit, 1993.  He is a member of the Delaware State Bar Association and the National Employment Lawyers Association.

33.  In January 2005, he was appointed by Chief Judge Anthony J. Scirica of the Third Circuit to a three year term on the 15 person Lawyers Advisory Committee of the Judicial Council of the Third Judicial Circuit, where he recently completed his term.  The committee comments on proposed rules of the Circuit and certain Judicial Council matters and serves as a liaison between the Court and the legal community.

34.  Judge Murray M. Schwartz of the District of Delaware described his legal representation in his federal court as being "of a consistently high quality." Hanshaw v. Delaware Technical and Community College, C.A. No. 74-196 (D. Del. Nov. 5, 1980), slip op., page 12.  Judge Caleb Wright of that court described his legal representation in his court as being "consistently

high," demonstrating "unusual skill . . . speed and efficiency."
<u>Tyler v. Board of Educ.</u>, C.A. No. 80-279 (D. Del. Aug. 7, 1981),
slip op., page 9.  Then Vice-Chancellor (now Justice) Jack B.
Jacobs of the Delaware Court of Chancery described him as highly
qualified, experienced and able.  <u>Mother AUFCMP Church v. The
Conference of African Union</u>, No. 12055 (Del. Ch., April 22,
1992), slip op. at 12.  Judge Sleet of the District of Delaware
has described him as "experienced and sophisticated." <u>Conley v.
Chaffinch</u>, 431 F.Supp.2d 494, 499 (D.Del. 2006).

    35.  He also was selected by his peers in the Delaware Bar
as one of its top 70 attorneys as reported in the <u>Delaware Today</u>
magazine in October 1996; as one of its 100 top attorneys as
reported in November 1999; as one of the top 175 attorneys as
reported in October 2001, and as one of its 75 power attorneys in
November 2004.  For the August or September 2006 issue of that
magazine, he was profiled as the leading civil rights attorney in
Delaware.  He also is listed as one of Delaware's leading
business lawyers in the area of employment and labor law in the
2003-2004 edition of <u>Chambers USA America's Leading Business
Lawyers</u> (2003), at 95, which reports that opponents "concede him
to be an 'able and persuasive adversary' with a string of notable
victories to his name."[14]  Just last year, he was selected to
appear in the <u>Pennsylvania Super Lawyer</u> magazine's 2007 edition

---

    [14]  <u>See</u> www.ChambersandPartners.com.

19

in which he was the subject of a feature article.

36.  He served as an executive committee member of the Center for Law and Religious Freedom of the Christian Legal Society from 1977 to 1981.  He also served as a national vice president of the Christian Legal Society from 1978 to 1981.  The Christian Legal Society is a non-profit corporation, with a nationwide membership, which was founded in 1961, as a professional association of Christian judges, attorneys, law professors and law students.  From 1982 to 1987, he served as a board member and general counsel for The Rutherford Institute (TRI), an international, nonprofit civil liberties organization committed to defending constitutional and human rights.  He also is currently a board member of TRI.  Presently, he also serves as a Board member of the Philadelphia, Pennsylvania chapter of the National Employment Lawyers Association (NELA), which has a nationwide membership.

37.  Since the mid-1970's, he has lectured on topics such as federal practice and procedure, the First Amendment to the United States Constitution, the Civil Rights Acts and recent case developments and has lectured at many national continuing legal education conferences.  For example, every summer, he lectures to legal interns on litigation and civil rights law at The Rutherford Institute and on September 12, 1998, he lectured at the Third Circuit Conference of NELA, on "Summary Judgment in the Third Circuit After `Hicks,' `Sheridan' and `Keller.'"

38.  He has authored or co-authored the following publications:

"The First Amendment Implications of State Regulation of Candidate Political Speech," 14 <u>Saint Louis University Public Law Review</u> 571 (1995).

"Tax Exempt Religious Schools Under Attack: Conflicting Goals of Religious Freedom and Racial Integration," 48 <u>Fordham Law Review</u> 229 (1979).

"Separation of Church and State: Historical Roots and Modern Interpretations," <u>Delaware Lawyer</u> (Spring 1986).

"An Analysis of the Evidentiary Standard Under the Employment Discrimination Statutes," found in <u>Equal Employment Practice Guide</u> (Federal Bar Association, 1978).

"Sex as a Bona Fide Occupational Qualification Under Title VII," 29 <u>Labor Law Journal</u> 425 (July 1978).

"Evidence and Intent in a Fourteenth Amendment Employment Discrimination Case," 29 <u>Labor Law Journal</u> 72 (February 1978).

39.  Some of his more significant constitutional or statutory reported judicial decisions include the following.  Not listed are numerous employment discrimination cases which were settled or many successful six figure damages awards after jury verdicts.

<u>Springer v. Henry</u>, 435 F.3d 268 (3d Cir. 2006) (First Amendment free speech retaliation case – affirming plaintiff's jury verdict on behalf of an independent contractor physician).

<u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061 (3d Cir. 1996) (en banc) (plaintiff's jury verdict and the "pretext only" paradigm for proof of intentional discrimination established).

<u>Chadwick v. Janecka</u>, 312 F.3d 597 (3d Cir. 2002) (federal habeas corpus for civil contemnor).

21

<u>Rappa v. State of Delaware</u>, 18 F.3d. 1043 (3d Cir. 1994) (First Amendment free speech case in which an entire chapter of the Delaware Code was invalidated for infringing political speech).

<u>Presbytery of New Jersey v. Florio</u>, 40 F.3d 1454 (3d Cir. 1994)(free speech of religious institutions and ripeness).

<u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994)(en banc)(qualified immunity and substantive due process).

<u>Acierno v. New Castle County</u>, 40 F.3d 645 (3d Cir. 1994)(preliminary injunctions and irreparable harm).

<u>Scott v. University of Delaware</u>, 68 F.R.D. 606 (D. Del. 1975); 455 F.Supp. 1102 (D. Del. 1978), <u>aff'd</u>, <u>vacated</u>, <u>rem'd</u> 601 F.2d 76 (3d Cir. 1979) <u>cert. denied</u> 444 U.S. 931 (1979) (class action for race discrimination in faculty hiring).

<u>Hugger v. The Rutherford Institute</u>, 63 Fed.Appx. 683 (4th Cir. 2003) (defense of defamation action against a civil rights organization).

<u>May v. Evansville-Vanderburgh School Corp.</u>, 787 F.2d 1105 (7th Cir. 1986)(viewpoint discrimination against religious speech).

<u>Suh v. Immigration and Naturalization Service</u>, 592 F.2d 230 (5th Cir. 1979) (deportation of a foreign investor stopped because of illegal government actions).

<u>DiSabatino v. Salicete</u>, 671 A.2d 1344 (Del. Supr. 1995)(in banc)(Family Court procedures in contempt proceedings declared unconstitutional and revised).

<u>Dobrich v. Walls</u>, 380 F.Supp.2d 366 (D.Del. 2005) (public school board members immune from individual liability for praying before board meetings).

<u>Springer v. Henry</u>, 2002 WL 389136 (D.Del. March 11, 2002) (denying defense motion to dismiss a First Amendment free speech retaliation lawsuit brought by a physician).

<u>Lt. Col. Martha McSally v. Donald Rumsfeld</u>, C.A. No. 01-2481 (D.D.C. Dec. 3, 2001) (action against the Secretary of Defense to enjoin the requirement that female members of the armed services wear the burqua when stationed in Saudi

Arabia).

Liberty University v. The National Collegiate Athletic Association, C.A. No. 95-0046-L (W.D.Va. Sept. 1, 1995)(successful federal action rescinding ban by the NCAA of prayer on the field during football games).

O'Brien v. D.C. Armory Board, C.A. No. 94-1402-SSH (D.D.C. June 27, 1994)(TRO enjoining the World Cup 1994 from interfering with the display of political signs at World Cup soccer finals in a public stadium).

Aubrey v. Cincinnati Reds, 841 F.Supp. 229 (S.D. Ohio 1993) (successful overbreadth attack on prohibition of religious signs at major league baseball games).

Aubrey v. City of Cincinnati, 815 F. Supp. 1100 (S.D. Ohio 1992), dismissed as moot No. 93-4194 (6th Cir. 1995) (permanent injunction against sign regulations which violated freedom of speech).

Walter v. Board of Chosen Freeholders, C.A.No. 91-4370 (D.N.J. August 12, 1992)(Federal injunctive and compensatory relief for violation of the right to distribute religious literature in a public forum).

Thate v. D.C. Armory Board, 804 F. Supp. 373 (D.D.C. 1992), and Stewart v. D.C. Armory Board, 789 F. Supp. 402 (D.D.C. 1992) (TRO, preliminary and permanent injunction permitting the display of religious signs at R.F.K. football stadium).

Mother African Union v. The Conference of African Union, 1992 WL 83518 (Del.Ch., April 22, 1992)(TRO, preliminary, and permanent injunction in a church property dispute).

Tyler v. Board of Educ. of the New Castle County Vocational-Technical Sch. Dist., 519 F. Supp. 834 (D. Del. 1981) (plaintiff's jury verdict because of gender discrimination and a violation of due process).

Wood v. Pursey, C.A. No. 81-C-1282 (E.D. Wis. December 29, 1981) (federal consent judgment limiting the right of the State to license a religious nursing home for the retarded and to inspect it in areas beyond health and safety).

Walker v. First Orthodox Presbyterian Church of San Francisco, 22 F.E.P. Cases 762 (Cal. Super. 1980) (city

ordinance requiring a church to employ gays declared unconstitutional as a violation of the free exercise clause).

Lewis v. Delaware State College, 445 F.Supp. 239 (D. Del. 1978) (right of a public employee to refuse to have an abortion upheld over a threat to dismiss her unless she did).

Stallings v. Container Corp., 75 F.R.D. 511 (D.Del. 1977) (successful race discrimination suit against a private employer).

Keegan v. University of Delaware, 349 A.2d 14 (Del. 1975), cert. denied 424 U.S. 934 (1976) (Amicus curiae, upholding the right of university students to pray on school property over an Establishment Clause challenge).

Hanshaw v. Delaware Technical and Community College, 405 F.Supp. 292 (D. Del. 1975) (a class action for race and gender discrimination in hiring and wages which was settled when policies were changed and a $75,000 fund created).

40.  He has a successful practice in constitutional law, employment discrimination, the tort of childhood sexual abuse and other civil litigation.  Prior to entering solo practice in 1981, and later expanding his firm, he was an associate and then a partner in a medium sized Wilmington, Delaware law firm.

41.  Both Thomas S. Neuberger and William Ewing, Esquire have attested to the reasonableness of Stephen Neuberger's hourly rate.  As discussed below, the State of Delaware has previously agreed to it as well.

42.  After graduation from the University of Delaware with a B.A. degree in history, Mr. Stephen Neuberger worked for The Neuberger Firm for approximately eight months, before enrolling in Temple University Beasley School of Law.  Then he served as

24

the firm law clerk during his three years in law school where he successfully graduated in May of 2003, with a Juris Doctor degree.  There he distinguished himself in trial advocacy, winning the Barrister's Award.  While serving as the firm law clerk, Mr. Neuberger specialized in briefing the areas of free speech and other legal issues in employment and civil rights litigation.  Since that time, he has become the Firm expert in the area of public employee free speech and petition clause retaliation case law.  (T. Neuberger Decl. ¶¶ 22-23).

43.  He was admitted to the following bars on the dates indicated: the Delaware Supreme Court, 2003; the U.S. District Court for the District of Delaware, 2004; the Third Circuit, 2004; the Fourth Circuit, 2004, and the D.C. Circuit, 2004.  He is a member of the Delaware State Bar Association and the National Employment Lawyers Association.  (T. Neuberger Decl. ¶ 23).

44.  As a result of his focused time as a law clerk, the senior Mr. Neuberger considers him to have the experience of an attorney with seven years of litigation experience.  His work product, work ethic, intellect and ability are of the highest rank and quality.  (T. Neuberger Decl. ¶ 24).  Since admission to the Bar some of his more significant constitutional, civil rights and tort judicial decisions include:

E.O.C. v. Hora, Inc., 239 Fed.Appx. 728 (3d Cir. 2007) (reversal of sanctions against a civil rights attorney).

25

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) (First Amendment free speech retaliation case – affirming plaintiff's jury verdict on behalf of an independent contract physician).

Reyes v. Freebery, 141 Fed.Appx. 49 (3d Cir. 2005) (per curiam) (remanding to the district court to explain its restrictions on the public's right of access to judicial records and counsel's First Amendment right to be free of prior restraints).

Hugger v. The Rutherford Institute, 94 Fed.Appx. 162 (4th Cir. 2004) (successful First Amendment defense of civil rights organization sued for defamation by public officials).

Whitwell v. Archmere Academy, Inc., 2008 WL 1735370 (Del.Super. April 16, 2008) (upholding over a due process challenge the constitutionality of the landmark Delaware Child Victim's Act of 2007, which created a two year retroactive statute of limitations window allowing victims and survivors of childhood sexual abuse to hold their abusers and their enablers accountable).

Whitwell v. Archmere Academy, Inc., C.A.No. 07C-08-006 (Del.Super. Feb. 22, 2008) (compelling a priest to answer deposition questions about his sexual abuse of a young boy in Delaware, Pennsylvania and New Jersey, over the priest's Fifth Amendment objections).

Eden v. Oblates of St. Francis DeSales, 2007 WL 4722830 (Del.Super. Dec. 14, 2007) (compelling a priest to answer deposition questions about his sexual abuse of a young boy in Delaware and New Jersey over the priest's Fifth Amendment objections)

Eden v. Oblates of St. Francis DeSales, 2006 WL 3512482 (Del.Super. Dec. 4, 2006) (recognizing repressed memory as a valid means of tolling the statute of limitations in childhood sexual abuse cases).

Adkins v. Rumsfeld, 389 F.Supp.2d 579 (D.Del. 2005) (upholding the First Amendment free speech retaliation claims brought by an Air Force sergeant who was disciplined for speaking out about a tainted anthrax vaccine administered by the Air Force that was poisoning military personnel).

Conley v. Chaffinch, 2005 WL 2678954 (D.Del. March 4, 2005) (First Amendment free speech opinion – denying defense motion to impose a gag order on the plaintiff and her attorneys to prevent them from criticizing misconduct by high government officials).

Bullen v. Chaffinch, 336 F.Supp.2d 357 (D.Del. 2004) (ordering the "instatement" of two state troopers who were illegally denied promotion because of their race).

Bullen v. Chaffinch, 336 F.Supp.2d 342 (D.Del. 2004) (upholding Fourteenth Amendment race discrimination in promotions jury verdict on behalf of two state troopers).

Springer v. Henry, 2004 WL 2127172 (D.Del. Sept. 16, 2004) (upholding First Amendment free speech retaliation jury verdict on behalf of an independent contractor physician).

Maloney v. Gordon, 2004 WL 1043202 (D.Del. May 4, 2004) (in a First Amendment public corruption action, rejecting defense effort to impose umbrella protective order that would seal off judicial records from public access).

45.  More than two years ago in March 2006, as part of the settlement following the State's unsuccessful appeal in the Springer case, the State of Delaware agreed and consented to Stephen Neuberger's hourly rate of $250 following the Third Circuit's decision in Springer v. Henry, 435 F.3d 268 (3d Cir. 2006).  (T. Neuberger Decl. ¶ 41).

46.  Attorney William Ewing also has testified that Stephen's rate is reasonable and within the range of rates prevailing in the community for attorneys of his background, skill, reputation and experience.  (Ewing Decl. ¶ 11).

47.  The senior Mr. Neuberger has personal knowledge that defendants' outside counsel, the major Wilmington, Delaware firm of Young, Conaway, Stargatt & Taylor bills at least $250 per hour for just second year associates in its Labor department, not even

27

considering that such a second year associate may not even have
the equivalent of seven years of litigation experience.  In its
department specializing in the less complex area of bankruptcy
law, that Firm's second year associates bill at an even higher
hourly rate.  Stephen Neuberger has consistently demonstrated
that his ability, skill, experience and reputation is greater
than his peers at major law firms.  For example, he already has
successfully completed three appeals in the Fourth and Third
Circuits after oral argument, garnered one major free speech
decision at the district court level, second-chaired four
significant verdicts following federal court jury trials,
completed successful post-trial briefing and defended the
verdicts in the cases that did not subsequently settle, and
successfully completed intensive sanctions briefing against
opponents in major law firms.  (T. Neuberger Decl. ¶ 40).

48.  Both Thomas S. Neuberger and Martin D. Haverly, Esquire
have attested to the reasonableness of John M. LaRosa's hourly
rate.  (T. Neuberger Decl. ¶ 39 and Haverly Decl. ¶ 9).

49.  After graduation from the University of Delaware with a
B.A. degree in Criminal Justice and a minor in Spanish, Mr.
LaRosa attended Widener University School of Law.  There he
distinguished himself by being selected to be a member of the
*Widener University Law Symposium Journal* through a legal writing
competition in 1997, and serving as a Research Assistant for
Legal Research and Writing Professor Camille Chin from 1997 to

1998.  He graduated law school in 1999, with a Juris Doctor
degree.

50.  From approximately May of 1998 to December of 2000, Mr.
LaRosa also worked for the senior Mr. Neuberger as his law clerk
while enrolled in law school, completing his Delaware
preceptorship requirements under his tutelage and studying for
three state Bar Exams.

51.  Mr. LaRosa was admitted to the following bars on the
dates indicated: the Pennsylvania Supreme Court, 2000; the New
Jersey Supreme Court, 2000; the U.S. District Court for the
District of New Jersey, 2000; the U.S. Court of Appeals for the
Third Circuit, 2001; the U.S. District Court for the Eastern
District of Pennsylvania, 2001, the Delaware Supreme Court, 2002;
the U.S. District Court for the District of Delaware, 2003; and
the U.S. Supreme Court, 2004.  He is a member of the American Bar
Association, the Delaware State Bar Association and the National
Employment Lawyers Association.  He has been practicing law for
eight years.

52.  In January of 2001, he founded his own firm, The Law
Office of John M. LaRosa.  He has a successful practice in
employment, discrimination, civil rights and other civil
litigation, in which he has represented clients throughout the
States of Delaware, Pennsylvania and New Jersey.  During the past
ten years, he has worked with the senior Mr. Neuberger on several
employment, discrimination and civil rights cases.  His work

product, work ethic, intellect and ability are of the highest

rank and quality. Since admission to the Bar, some of his more

significant employment, discrimination and civil rights reported

judicial decisions include:

Plummer v. Ryan,
2008 WL 400195 (Del. Supr. Feb. 15, 2008) (No. 4, 2008)
(defeating town government's appeal to the state Supreme
Court in a breach of employment contract and whistle blower
case).

Ryan v. Plummer,
No. 06C-12-030 WLW (Del. Super. Dec. 18, 2007) (Witham, J.)
(defeating town government's motion for summary judgment in
a breach of employment contract case).

Blozis v. Mellon Trust of Delaware National Association
494 F.Supp.2d 258 (D.Del. 2007) (Robinson, C.J.)
(defeating financial institution-employer's motion for
summary judgment in a retaliation and age discrimination
case).

Farrell v. AstraZeneca Pharmaceuticals, LP,
2005 WL 2122678 (D.Del. Sept. 2, 2005) (No. Civ. A. 04-285-
KAJ) (Jordan, J.)(defeating pharmaceutical-employer's motion
for summary judgment in a Family and Medical Leave Act
case).

Nolan v. Reading Blue Mountain & Northern Railroad Co.,
2005 WL 627981, 95 Fair Empl.Prac.Cas. (BNA) 772 (E.D.Pa.
Mar. 11, 2005) (No. CIV. A. 02-2805) (Tucker, J.)
(defeating transportation-employer's motion for summary
judgment in an age discrimination case).

Pratta v. American General Financial Services, Inc.,
2004 WL 2537081 (D.Del. Nov. 5, 2004) (No. Civ. A. 04-089-
JJF) (Farnan, J.)(defeating consumer lender-employer's
motion to dismiss an age discrimination case from court and
send the dispute to its own arbitrator).

Cuffee v. The Dover Wipes Co.,
334 F.Supp.2d 565, 94 Fair Empl.Prac.Cas. (BNA) 1461 (D.Del.
Sept. 7, 2004) (No. Civ. A. 03-276-SLR) (Robinson, J.)
(defeating two manufacturer-employers' motion for summary
judgment on claims of pay discrimination based on sex and
race).

<u>Parker v. State</u>,
2003 WL 24011961 (Del. Super. Oct. 14, 2003) (No. Civ. A.
99C-07-323-JRJ) (Jurden, J.) (granting nurse's motion to
amend the complaint against a state health department in a
race discrimination case).

53.  The senior Mr. Neuberger is familiar with the hourly
rates charged in many areas, especially Philadelphia and
Wilmington.  He is acquainted with hourly rates charged by other
law firms in Wilmington and in Philadelphia.  In his opinion, the
$250 per hour rate for Stephen Neuberger, the $170 per hour rate
each for Ms. Hertzog and Ms. Warner and the $250 per hour rate
for Mr. LaRosa are not in excess of the usual and customary rates
for Philadelphia or Wilmington attorneys who enjoy comparable
reputations, skill and experience.  (T. Neuberger Decl. ¶ 39).

54.  The market rate is usually the attorney's normal
billing rate for clients who pay on an hourly non-contingent
basis.  <u>See</u> <u>Hensley</u>, 461 U.S. at 431 n.4; <u>Black Grievance Comm.</u>
<u>v. Phila. Elec. Co.</u>, 802 F.2d 648, 652 (3d Cir. 1986), <u>vacated</u>,
483 U.S. 1015 (1987), <u>remanded</u>, 825 F.2d 768, <u>opinion on remand</u>,
690 F.Supp. 1393 (E.D. Pa. 1988).  In <u>Hensley</u>, the Supreme Court
noted that –

> It is intended that the amount of fees
> awarded . . . be governed by the same
> standards which prevail in other types of
> equally complex Federal litigation, such as
> antitrust cases[,] and not be reduced because
> the rights involved may be non pecuniary in
> nature . . . .  In computing the fee, <u>counsel</u>
> <u>for a prevailing party should be paid, as is</u>
> <u>traditional with attorneys compensated by a</u>
> <u>fee-paying client</u> . . . ."

461 U.S. at 431, n.4 (citations omitted)(emphasis added).  The

31

Hensley Court went on to clearly state that attorneys representing successful civil rights litigants should receive the same compensation as those attorneys would receive for handling other matters.

> As nearly as possible, market standards should prevail, for that is the best way of ensuring that competent counsel will be available to all persons with bona fide civil rights claims.  This means that judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil rights cases, both by awarding them market-rate fees, and by awarding fees only for time *reasonably* expended.

Id. at 447 (emphasis added, internal citation omitted); see also Missouri v. Jenkins, 491 U.S. 274, 286 (1989) ("attorney's fee awarded under § 1988 is to yield the same level of compensation that would be available from the market"); Black Grievance Comm., 802 F.2d at 652 ("The historic billing rates set forth in [plaintiff's attorneys'] uncontested affidavits establish marketplace rate."), vacated on other grounds, 483 U.S. 1015 (1987); Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985) ("Since [plaintiff's attorney's] affidavit is uncontradicted, there is no material issue of fact.") , vacated on other grounds, 478 U.S. 1015 (1987) ("we have consistently held that the lodestar calculation must be based on historical time charges for individual attorneys.") Student Pub. Interest Research Group v. AT&T Bell Labs., 842 F.2d 1436, 1445 (3d Cir. 1988)(the Court has "consistently relied on billing rates in

determining market rates" and has only diverged from applying actual billing rates where "billing rates alone fail to tell the full story"); Lawrence v. City of Phila., 700 F.Supp. 832, 836 (E.D. Pa. 1988) ("[a]bsent extraordinary circumstances . . . an attorney's market rate charged to private clients is generally accepted as his reasonable rate for fee awards."); cf. Keenan v. City of Phila., 983 F.2d 459, 475 (3d Cir. 1992) (lower court erred in holding that law firm's method of billing based upon a uniform hourly rate could not be reflective of market rate).

55.    The Neuberger Firm has only one billing rate for its employees which is charged to all hourly clients.  It is $250 per hour for Stephen Neuberger's services.  (T. Neuberger Decl. ¶ 38).  Cf. Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 195 Fed.Appx. 93, 97 (3d Cir. 2007)(holding that 2002 hourly rates of New Jersey attorneys who represented plaintiffs in civil rights litigation ranging between $175 and $550 per hour were reasonable).

### C.    Plaintiff Is Entitled To Reimbursement For Fees And Costs Incurred In The Preparation Of This Fee Motion.

56.    Time spent by attorneys in preparing and presenting a petition for counsel fees also is recoverable.  Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 268 (3d Cir. 2002); Bagby v. Beal, 606 F.2d 411, 415-16 (3d Cir. 1979).  After this Opening Memorandum regarding attorney time through February 22, 2008, counsel will submit a Reply Memorandum and supplemental declarations in this

33

regard to complete the record for attorney time since February 22, 2008.

**D.  Plaintiff Is Entitled To Reimbursement For Reasonable Costs.**

57.  In addition to attorneys' fees, plaintiff is entitled to recover the reasonable costs he incurred during the litigation.  See Abrams, 50 F.3d at 1225.  Section 1988 has been construed to authorize the recovery of a broad range of litigation expenses beyond statutory costs proper to a Bill of Costs.  These are expenses that are normally charged separately to fee-paying clients and that are not part of the office overhead incorporated into the attorney's billing rates.[15]  For private law firms with fee-paying clients, the benchmark is the ordinary practice of that firm with respect to the expenses in question.[16]  These expenses have been properly itemized in the Declaration and total $450.98 for court filing fee, process server fees and telephone conference calls.  The items are set out below:

---

[15]  See Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995); Henry v. Webermeier, 738 F.2d 188, 192 (7th Cir. 1984); Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983); Dowdell v. City of Apopka, 698 F.2d 1181, 1188-92 (11th Cir. 1983); Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir. 1981)(en banc); Northcross v. Board of Educ., 611 F.2d 626, 639 (6th Cir. 1979); Davis v. City and County of San Francisco, 976 F.2d 1536, 1556 (9th Cir. 1992), vacated in part on denial of rehearing, 984 F.2d 345 (9th Cir. 1993).

[16]  See Daly v. Hill, 790 F.2d 1071, 1084 n. 18 (4th Cir. 1986); Boston and Maine Corp. v. Moore, 776 F.2d 2, 11 (1st Cir. 1985); Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 30 (D.C. Cir. 1984).

```
Court Costs and Filing Fees

            8/26/04   CK. #6779                    150.00

Postage, Delivery or Service of Documents, Subpoenas, etc.
D & M Professional Services

            9/30/04   CK. #6812                    175.00

Telephone conference calls

            1/22/08   CK. #7644                     81.60

            3/13/08   CK. #7664                     44.38
                                     _____
                      TOTAL:                      $450.98
```

58.  In <u>Harris v. Marhoefer</u>, 24 F.3d 16, 19–20 (9th Cir. 1994), the court held that a party can recover, as part of a § 1988 fee award, and without the use of a bill of costs, out of pocket expenses for service of the summons and complaint.

59.  This Circuit has recognized that telephone expenses of an attorney are generally recoverable under § 1988, when it is the custom of attorneys in the local community to bill their clients separately for them.  <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1225 (3d Cir. 1995); <u>accord</u> <u>Boston and Maine Corp.</u>, 776 F.2d at 11; <u>Palmigiano</u>, 707 F.2d at 637; <u>Ramos Padro v. Puerto Rico</u>, 100 F.Supp.2d 99, 108 (D.P.R. 2000).

### <u>CONCLUSION</u>

60.  This case did not just serve the private interest of plaintiff which was fully vindicated.  As a "private attorney general," plaintiff also vindicated policies "Congress considered of the highest priority." <u>Newman</u>, 390 U.S. at 402.  This should result in a fully compensatory fee award.

61.  For the reasons stated, it is respectfully requested that up to February 29, 2008, the Court: (a) make an award of attorneys' fees to The Neuberger Firm in the amount of $35,781.00, (b) make an award of attorney's fees to the Law Office of John M. LaRosa in the amount of $34,675.00, and (c) make an award of expenses and costs for this case in the amount of $450.98.

62.  The fees and costs award should run against the County Defendant, as well as the individual defendants in their official and individual capacities.  Other compensatory damages entered in this case only run against the individual defendants individually because of Eleventh Amendment considerations.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com


**LAW OFFICE OF JOHN M. LaROSA**

/s/ John M. LaRosa
**JOHN M. LaROSA, ESQ. (#4275)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
JLR@LaRosaLaw.com

Attorneys for Plaintiff

Dated: May 1, 2008

## CERTIFICATE OF SERVICE

I, John M. LaRosa, being a member of the bar of this Court do hereby certify that on May 1, 2008, I electronically filed this **PLEADING** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

William W. Bowser, Esq.
Margaret M. DiBianca, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Charles E. Butler, Esq.
1224 North King Street
Wilmington, DE 19801

Kathleen M. Jennings, Esq.
Oberly Jennings and Rhodunda, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899

/s/ John M. LaRosa
**JOHN M. LaROSA, ESQ. (#4275)**

FTU\ atty fees\ Fees and Costs Memo.FINAL