**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHIEF HENRY V. TOBIN III,          :
                                   :
          Plaintiff,               :
                                   :
     v.                            :     C.A. No. 04-1211 MPT
                                   :
THOMAS P. GORDON, individually:
and in his official capacity; :
SHERRY FREEBERY, individually :
and in her official capacity; :
COLONEL JOHN L. CUNNINGHAM,    :
RETIRED, individually;         :
COLONEL DAVID F. MCALLISTER,   :
individually and in his        :
official capacity; and         :
NEW CASTLE COUNTY,             :
a municipal corporation,       :
                                   :
          Defendants.              :

**UNSWORN DECLARATION OF THOMAS S. NEUBERGER, ESQUIRE
UNDER 28 U.S.C. § 1746, IN SUPPORT OF CHIEF HENRY V. TOBIN III'S
MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

I, Thomas S. Neuberger, Esquire, hereby depose and state as follows:

1.   I have personal knowledge of the facts contained in this declaration, and if called as a witness, I am competent to testify as to those facts.

2.   I am an attorney admitted to practice in the State of Delaware.  I currently practice with one partner and one associate through my own law firm, The Neuberger Firm, P.A.  I was plaintiff's lead counsel in this action through judgment.

## I. THE JUDGMENT FOR PLAINTIFF, THE GOALS OF THIS ACTION AND THE DIFFICULT COURSE OF THE LITIGATION

3. In the First Amended Complaint, plaintiff sought a declaration that his Constitutional rights had been violated and compensatory damages for the violation of his rights to free speech and petition. (D.I. 14). The docket reflects an Order for Entry of Judgment for plaintiff in the amount of $25,000 plus reasonable attorneys' fees and costs. (D.I. 31). So success was achieved for these goals.

4. This case was one in a long difficult series of federal cases involving the corruption of the personnel process in the County police department by the now disgraced former County Executive and his Chief Administrative Officer. The first case began during the first Gordon administration with then Sergeant (and now Deputy Attorney General) John Downs. That case was vigorously defended by two law firms under lead counsel Sheldon N. Sandler and C.J. Seitz. The case ultimately achieved a confidential settlement after protracted litigation. The next case filed was for then Sergeants Jack Reyes and Tony Hernandez which is awaiting trial. That case also was defended by two law firms, one from Philadelphia and another from Delaware. The last public document I saw regarding the case indicated that over $700,000 had been spent defending the case. Needless to say, the case has been difficult and protracted.

2

5. Then three new and separate County police cases began for
officers Riddell, Jamison and Tobin. Each of these cases
resulted in separate federal filings against the same group of
defendants who had litigated the Downs and Reyes and Hernandez
cases. Based on prior experience with these same defendants, I
reasonably expected protracted and difficult litigation and
extensive briefing at the motion to dismiss and summary judgment
stages for these case as well as long trials.

6. My expectation was correct for the present Tobin case.
The legal issues, such as qualified immunity, First Amendment
protected activity and adverse action were many and complex.
In fact, the defense motion to dismiss brief raised at least
twelve issues, among which was that the detailed Complaint and
later First Amended Complaint lacked specificity - the direct
opposite view from the position defendants now have taken in
disputing plaintiff's fees for the time spent on drafting the
pleadings. I had anticipated such a defense and accordingly
devoted appropriate attention to framing a Complaint and First
Amended Complaint which would withstand that defense motion.  I
apparently succeeded because after a three year stay of this
civil action (which plaintiff strongly opposed) due to the
federal criminal prosecution of defendants Gordon and Freebery,
their eventual criminal convictions, amendment of the pleadings
and the lifting of the stay, the discovery and interviewing of

3

key liability fact witnesses and obtaining declarations therefrom, and a motion to dismiss and briefing thereon, the defendants confessed judgment, and our case ended.

7.   Plaintiff, in whose favor judgment was entered, is the "prevailing party" in this case.  Because of the protracted delay in advancing this case because of the criminal charges faced by two of the individual defendants and the long stay of proceedings in this case, our client had to get on with his life.  He was given the opportunity to form the newly created Middletown Police Department as its chief.  So he shook the dust off his feet and accepted that position, mooting any injunctive aspects to his case.  With new full time public duties consuming all his time and with the offer of a confessed judgment establishing liability for constitutional violations, my client accepted that vindication of his claims, ended this case and has devoted his time to serving the citizens of Middletown in the formation of their police department and the creation of a lasting foundation for that public trust.

8.   Any claim by defendants that plaintiff's counsel spent too much time on the case is without merit because it was necessary for plaintiff's counsel to interview fact witnesses and obtain declarations from them to preserve evidence during the three year stay in this case, and to amend the Complaint and conduct legal research into the impact of an intervening Supreme

Court opinion which altered the legal landscape of free speech
claims, all work billed ultimately contributed to the final
result of the case and counsel is exercising billing judgment in
making this fee application.

9.    Time billed for interviewing and preparing declarations
from Lynda Maloney and Maria Rendina was appropriate to interview
crucial fact witnesses.  Despite defendants' contention that
plaintiff should have devoted only "minimal efforts" to discovery
and fact-finding during the stay (a stay initiated at defendants'
explicit request to protect the interests of now confessed and
convicted criminals), the reality of litigation is that memories
fade over time, and fact witnesses do not live forever.
Therefore, it was necessary for plaintiff's counsel to interview
these fact witnesses and obtain declarations from them to
preserve evidence during the three year stay in this case.

10.   All work billed ultimately contributed to the final
result of the case.  Regarding time spent on services related to the
U.S. EEOC charge, plaintiff did file a Charge of Discrimination for
the denied promotions which gave rise to his claims.  The County and
its Police Department apparently were not represented by counsel at
that stage of the litigation.  Nevertheless, that work ultimately
contributed to the final result of the case.

11.   Plaintiff's counsel did exercise billing judgment in
preparing his fee application.  Specifically, I have deleted 3.7

hours for media related activities in this case in the exercise of billing discretion.  Also, my co-counsel in this case, John M. LaRosa of the Law Office of John M. LaRosa, only is billing for 138.7 of his 153.5 hours spent on the case.  He does not seek payment for the other 14.8 hours in the exercise of billing discretion.

## II.  MY BACKGROUND

12.  I have been practicing law in Delaware and nationally for 34 years this fall.  I received my Juris Doctor degree in 1974 from Georgetown University Law Center.  I was an editor of the *Georgetown Law Journal* and an associate editor of the *American Criminal Law Review.*  I have a Master's Degree in Political Science with honors which was granted in 1973, by the University of Delaware.  I also was awarded a graduate school teaching assistantship and a National Science Foundation traineeship.  I received my B.A. degree magna cum laude in Political Science in 1969 from St. Joseph's University in Philadelphia, Pennsylvania.

13.  From June 1972 through April 1974, I served as a law clerk to the Honorable John H. Pratt, Judge of the United States District Court for the District of Columbia.  I was admitted to the following bars on the dates indicated: the Delaware Supreme Court, 1974; the U.S. District Court for the District of

Delaware, 1974; the U.S. Supreme Court, 1978; the Fifth Circuit, 1978; the Third Circuit, 1979; the Ninth Circuit, 1980; the Seventh Circuit, 1985; the Sixth and D.C. Circuits, 1992, and the Fourth Circuit, 1993.   I am a member of the Delaware State Bar Association and the National Employment Lawyers Association.

14.   In January 2005, I was appointed by Chief Judge Anthony J. Scirica of the Third Circuit to a three year term on the 15 person Lawyers Advisory Committee of the Judicial Council of the Third Judicial Circuit, where I recently completed my term.   The committee comments on proposed rules of the Circuit and certain Judicial Council matters and serves as a liaison between the Court and the legal community.

15.   Judge Murray M. Schwartz of the District of Delaware described my legal representation in his federal court as being "of a consistently high quality." Hanshaw v. Delaware Technical and Community College, C.A. No. 74-196 (D. Del. Nov. 5, 1980), slip op., page 12.   Judge Caleb Wright of that court described my legal representation in his court as being "consistently high," demonstrating "unusual skill . . . speed and efficiency." Tyler v. Board of Educ., C.A. No. 80-279 (D. Del. Aug. 7, 1981), slip op., page 9.   Then Vice-Chancellor (now Justice) Jack B. Jacobs of the Delaware Court of Chancery described me as highly qualified, experienced and able.   Mother AUFCMP Church v. The Conference of African Union, No. 12055 (Del. Ch., April 22,

1992), slip op. at 12.  Judge Sleet of the District of Delaware
has described me as "experienced and sophisticated." Conley v.
Chaffinch, 431 F.Supp.2d 494, 499 (D.Del. 2006).

16.  I also was selected by my peers in the Delaware Bar as
one of its top 70 attorneys as reported in the Delaware Today
magazine in October 1996; as one of its 100 top attorneys as
reported in November 1999; as one of the top 175 attorneys as
reported in October 2001, and as one of its 75 power attorneys in
November 2004.  For the August or September 2006 issue of that
magazine, I was profiled as the leading civil rights attorney in
Delaware.  I am also listed as one of Delaware's leading business
lawyers in the area of employment and labor law in the 2003-2004
edition of Chambers USA America's Leading Business Lawyers
(2003), at 95, which reports that opponents "concede him to be an
'able and persuasive adversary' with a string of notable
victories to his name."[1]  Just last year, I was selected to
appear in the Pennsylvania Super Lawyer magazine's 2007 edition
in which I was the subject of a feature article.

17.  I served as an executive committee member of the Center
for Law and Religious Freedom of the Christian Legal Society from
1977 to 1981.  I also served as a national vice president of the
Christian Legal Society from 1978 to 1981.  The Christian Legal
Society is a non-profit corporation, with a nationwide

---

[1]  See www.ChambersandPartners.com.

membership, which was founded in 1961 as a professional association of Christian judges, attorneys, law professors and law students.  From 1982 to 1987, I served as a board member and general counsel for The Rutherford Institute (TRI), an international, nonprofit civil liberties organization committed to defending constitutional and human rights.  I also am currently a board member of TRI.  Presently, I also serve as a Board member of the Philadelphia, Pennsylvania chapter of the National Employment Lawyers Association (NELA), which has a nationwide membership.

18.  Since the mid-1970's, I have lectured on topics such as federal practice and procedure, the First Amendment to the United States Constitution, the Civil Rights Acts and recent case developments and have lectured at many national continuing legal education conferences.  For example, every summer, I lecture to legal interns on litigation and civil rights law at The Rutherford Institute and on September 12, 1998, I lectured at the Third Circuit Conference of NELA, on "Summary Judgment in the Third Circuit After `Hicks,' `Sheridan' and `Keller.'"

19.  I have authored or co-authored the following publications:

"The First Amendment Implications of State Regulation of Candidate Political Speech," 14 Saint Louis University Public Law Review 571 (1995).

"Tax Exempt Religious Schools Under Attack: Conflicting Goals of Religious Freedom and Racial

9

Integration," 48 <u>Fordham Law Review</u> 229 (1979).

"Separation of Church and State: Historical Roots and Modern Interpretations," <u>Delaware Lawyer</u> (Spring 1986).

"An Analysis of the Evidentiary Standard Under the Employment Discrimination Statutes," found in <u>Equal Employment Practice Guide</u> (Federal Bar Association, 1978).

"Sex as a Bona Fide Occupational Qualification Under Title VII," 29 <u>Labor Law Journal</u> 425 (July 1978).

"Evidence and Intent in a Fourteenth Amendment Employment Discrimination Case," 29 <u>Labor Law Journal</u> 72 (February 1978).

20.  Some of my more significant constitutional or statutory reported judicial decisions include the following.  I have not listed numerous employment discrimination cases which were settled or many successful six figure damages awards after jury verdicts.

<u>Springer v. Henry</u>, 435 F.3d 268 (3d Cir. 2006) (First Amendment free speech retaliation case – affirming plaintiff's jury verdict on behalf of an independent contractor physician).

<u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061 (3d Cir. 1996) (en banc) (plaintiff's jury verdict and the "pretext only" paradigm for proof of intentional discrimination established).

<u>Chadwick v. Janecka</u>, 312 F.3d 597 (3d Cir. 2002) (federal habeas corpus for civil contemnor).

<u>Rappa v. State of Delaware</u>, 18 F.3d. 1043 (3d Cir. 1994) (First Amendment free speech case in which an entire chapter of the Delaware Code was invalidated for infringing political speech).

<u>Presbytery of New Jersey v. Florio</u>, 40 F.3d 1454 (3d Cir. 1994)(free speech of religious institutions and

ripeness).

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994)(en banc)(qualified immunity and substantive due process).

Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994)(preliminary injunctions and irreparable harm).

Scott v. University of Delaware, 68 F.R.D. 606 (D. Del. 1975); 455 F.Supp. 1102 (D. Del. 1978), aff'd, vacated, rem'd 601 F.2d 76 (3d Cir. 1979) cert. denied 444 U.S. 931 (1979) (class action for race discrimination in faculty hiring).

Hugger v. The Rutherford Institute, 63 Fed.Appx. 683 (4th Cir. 2003) (defense of defamation action against a civil rights organization).

May v. Evansville-Vanderburgh School Corp., 787 F.2d 1105 (7th Cir. 1986)(viewpoint discrimination against religious speech).

Suh v. Immigration and Naturalization Service, 592 F.2d 230 (5th Cir. 1979) (deportation of a foreign investor stopped because of illegal government actions).

DiSabatino v. Salicete, 671 A.2d 1344 (Del. Supr. 1995)(in banc)(Family Court procedures in contempt proceedings declared unconstitutional and revised).

Dobrich v. Walls, 380 F.Supp.2d 366 (D.Del. 2005) (public school board members immune from individual liability for praying before board meetings).

Springer v. Henry, 2002 WL 389136 (D.Del. March 11, 2002) (denying defense motion to dismiss a First Amendment free speech retaliation lawsuit brought by a physician).

Lt. Col. Martha McSally v. Donald Rumsfeld, C.A. No. 01-2481 (D.D.C. Dec. 3, 2001) (action against the Secretary of Defense to enjoin the requirement that female members of the armed services wear the burqua when stationed in Saudi Arabia).

Liberty University v. The National Collegiate Athletic Association, C.A. No. 95-0046-L (W.D.Va. Sept. 1, 1995)(successful federal action rescinding ban by the NCAA of prayer on the field during football games).

O'Brien v. D.C. Armory Board, C.A. No. 94-1402-SSH
(D.D.C. June 27, 1994)(TRO enjoining the World Cup 1994
from interfering with the display of political signs at
World Cup soccer finals in a public stadium).

Aubrey v. Cincinnati Reds, 841 F.Supp. 229 (S.D. Ohio
1993) (successful overbreadth attack on prohibition of
religious signs at major league baseball games).

Aubrey v. City of Cincinnati, 815 F. Supp. 1100 (S.D.
Ohio 1992), dismissed as moot No. 93-4194 (6th Cir.
1995) (permanent injunction against sign regulations
which violated freedom of speech).

Walter v. Board of Chosen Freeholders, C.A.No. 91-4370
(D.N.J. August 12, 1992)(Federal injunctive and
compensatory relief for violation of the right to
distribute religious literature in a public forum).

Thate v. D.C. Armory Board, 804 F. Supp. 373 (D.D.C.
1992), and Stewart v. D.C. Armory Board, 789 F. Supp.
402 (D.D.C. 1992) (TRO, preliminary and permanent
injunction permitting the display of religious signs at
R.F.K. football stadium).

Mother African Union v. The Conference of African
Union, 1992 WL 83518 (Del.Ch., April 22, 1992)(TRO,
preliminary, and permanent injunction in a church
property dispute).

Tyler v. Board of Educ. of the New Castle County
Vocational-Technical Sch. Dist., 519 F. Supp. 834 (D.
Del. 1981) (plaintiff's jury verdict because of gender
discrimination and a violation of due process).

Wood v. Pursey, C.A. No. 81-C-1282 (E.D. Wis. December
29, 1981) (federal consent judgment limiting the right
of the State to license a religious nursing home for
the retarded and to inspect it in areas beyond health
and safety).

Walker v. First Orthodox Presbyterian Church of San
Francisco, 22 F.E.P. Cases 762 (Cal. Super. 1980) (city
ordinance requiring a church to employ gays declared
unconstitutional as a violation of the free exercise
clause).

Lewis v. Delaware State College, 445 F.Supp. 239 (D. Del. 1978) (right of a public employee to refuse to have an abortion upheld over a threat to dismiss her unless she did).

Stallings v. Container Corp., 75 F.R.D. 511 (D.Del. 1977) (successful race discrimination suit against a private employer).

Keegan v. University of Delaware, 349 A.2d 14 (Del. 1975), cert. denied 424 U.S. 934 (1976) (Amicus curiae, upholding the right of university students to pray on school property over an Establishment Clause challenge).

Hanshaw v. Delaware Technical and Community College, 405 F.Supp. 292 (D. Del. 1975) (a class action for race and gender discrimination in hiring and wages which was settled when policies were changed and a $75,000 fund created).

21. I have a successful practice in constitutional law, employment discrimination, the tort of childhood sexual abuse and other civil litigation. Prior to entering solo practice in 1981, and later expanding my firm, I was an associate and then a partner in a medium sized Wilmington, Delaware law firm.

22. I also have used the services for this case of my partner Stephen J. Neuberger, Esquire who had responsibility for briefing. After graduation from the University of Delaware with a B.A. degree in history, he worked for the firm for approximately eight months, before enrolling in Temple University Beasley School of Law. Then he served as the firm law clerk during his three years in law school where he successfully graduated in May of 2003, with a Juris Doctor degree. There he distinguished himself in trial advocacy, winning the Barrister's

Award.   While serving as the firm law clerk, Mr. Neuberger

specialized in briefing the areas of free speech and other legal

issues in employment and civil rights litigation.

23.   He was admitted to the following bars on the dates

indicated: the Delaware Supreme Court, 2003; the U.S. District

Court for the District of Delaware, 2004; the Third Circuit,

2004; the Fourth Circuit, 2004; and the D.C. Circuit, 2004.   He

is a member of the Delaware State Bar Association and the

National Employment Lawyers Association.

24.   Since he was admitted to the Delaware Bar, Stephen has

become the Firm expert in the area of public employee free speech

and petition clause retaliation case law.   As a result of his

careful study as an attorney and focused time as a law clerk, I

consider him to have the experience of an attorney with at least

seven years of litigation experience.   His work product, work

ethic, intellect and ability are of the highest rank and quality.

25.   Since admission to the Bar, some of his more

significant constitutional, civil rights and tort judicial

decisions include:

E.E.O.C. v. Hora, Inc., 239 Fed.Appx. 728 (3d Cir. 2007)
(reversal of sanctions against a civil rights attorney).

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) (First
Amendment free speech retaliation case - affirming
plaintiff's jury verdict on behalf of an independent
contract physician).

Reyes v. Freebery, 141 Fed.Appx. 49 (3d Cir. 2005) (per
curiam) (remanding to the district court to explain its

14

restrictions on the public's right of access to judicial
records and counsel's First Amendment right to be free of
prior restraints).

Hugger v. The Rutherford Institute, 94 Fed.Appx. 162 (4th
Cir. 2004) (successful First Amendment defense of civil
rights organization sued for defamation by public
officials).

Whitwell v. Archmere Academy, Inc., 2008 WL 1735370
(Del.Super. April 16, 2008) (upholding over a due process
challenge the constitutionality of the landmark Delaware
Child Victim's Act of 2007, which created a two year
retroactive statute of limitations window allowing victims
and survivors of childhood sexual abuse to hold their
abusers and their enablers accountable).

Whitwell v. Archmere Academy, Inc., C.A.No. 07C-08-006
(Del.Super. Feb. 22, 2008) (compelling a priest to answer
deposition questions about his sexual abuse of a young boy
in Delaware, Pennsylvania and New Jersey, over the priest's
Fifth Amendment objections).

Eden v. Oblates of St. Francis DeSales, 2007 WL 4722830
(Del.Super. Dec. 14, 2007) (compelling a priest to answer
deposition questions about his sexual abuse of a young boy
in Delaware and New Jersey over the priest's Fifth Amendment
objections)

Eden v. Oblates of St. Francis DeSales, 2006 WL 3512482
(Del.Super. Dec. 4, 2006) (recognizing repressed memory as a
valid means of tolling the statute of limitations in
childhood sexual abuse cases).

Adkins v. Rumsfeld, 389 F.Supp.2d 579 (D.Del. 2005)
(upholding the First Amendment free speech retaliation
claims brought by an Air Force sergeant who was disciplined
for speaking out about a tainted anthrax vaccine
administered by the Air Force that was poisoning military
personnel).

Conley v. Chaffinch, 2005 WL 2678954 (D.Del. March 4, 2005)
(First Amendment free speech opinion - denying defense
motion to impose a gag order on the plaintiff and her
attorneys to prevent them from criticizing misconduct by
high government officials).

Bullen v. Chaffinch, 336 F.Supp.2d 357 (D.Del. 2004)

(ordering the "instatement" of two state troopers who were
illegally denied promotion because of their race).

Bullen v. Chaffinch, 336 F.Supp.2d 342 (D.Del. 2004)
(upholding Fourteenth Amendment race discrimination in
promotions jury verdict on behalf of two state troopers).

Springer v. Henry, 2004 WL 2127172 (D.Del. Sept. 16, 2004)
(upholding First Amendment free speech retaliation jury
verdict on behalf of an independent contractor physician).

Maloney v. Gordon, 2004 WL 1043202 (D.Del. May 4, 2004) (in
a First Amendment public corruption action, rejecting
defense effort to impose umbrella protective order that
would seal off judicial records from public access).

26.  He has lectured on the First Amendment to the United
States Constitution and recent case developments at the following
events:

- *"AVA Anthrax Vaccine CLE Seminar" - October 28, 2006 -
  Washington, D.C.* Lectured on the case of Adkins v.
  Rumsfeld, 289 F.Supp.2d 579 (D.Del. 2005), the
  application of First Amendment free speech rights in
  the military context, and the impact of Garcetti v.
  Ceballos, 547 U.S. 210 (2006), on the free speech
  rights of members of the military.

- *National Employment Lawyers Association, Eastern
  District of Pennsylvania Chapter - December 13, 2006 -
  Philadelphia, PA.* Lectured on the case of Springer v.
  Henry, 435 F.3d 268 (3d Cir. 2006), and the application
  of First Amendment free speech and petition clause
  rights in the public employee context.

- *Rutherford Institute Summer Internship Speaker Series -
  July 20, 2007 - Charlottesville, VA.* Lectured on the
  topic of "Litigating in the Public Interest" with
  specific emphasis on First Amendment free speech and
  Fourth Amendment excessive force issues.

- *"Litigating Employment Discrimination Cases" CLE
  sponsored by the Pennsylvania Bar Institute and the
  Plaintiff's Employment Panel of the Eastern District of
  Pennsylvania - Philadelphia, PA.* Lectured on the topic
  of "Avoiding the Ethics Minefield after EEOC v. Hora,

16

239 Fed.Appx. 728 (3d Cir. 2007).

27.  I also have used the services of my now former associate attorney Cheryl A. Hertzog, Esquire.  She was admitted to the Pennsylvania Bar on November 11, 2005, and the New Jersey Bar on December 5, 2005.  She graduated from Villanova University School of Law in May 2005.

28.  I also have used the services of my associate attorney Raeann C. Warner, Esquire.  She was admitted to the Delaware Bar on December 15, 2006, the New Jersey Bar in December 2006, and the Pennsylvania Bar on April 30, 2007.  She graduated from Widener University School of Law in May 2006.

29.  I also have used the services for this case of John M. LaRosa, Esquire of The Law Office of John M. LaRosa. After graduation from the University of Delaware with a B.A. degree in Criminal Justice and a minor in Spanish, Mr. LaRosa attended Widener University School of Law.  There he distinguished himself by being selected to be a member of the *Widener University Law Symposium Journal* through a legal writing competition in 1997, and serving as a Research Assistant for Legal Research and Writing Professor Camille Chin from 1997 to 1998.  He graduated law school in 1999, with a Juris Doctor degree.

30.  From approximately May of 1998 to December of 2000, Mr. LaRosa also worked for me as my law clerk while enrolled in law

17

school, completing his Delaware preceptorship requirements under
my tutelage and studying for three state Bar Exams.

     31.   Mr. LaRosa was admitted to the following bars on the
dates indicated: the Pennsylvania Supreme Court, 2000; the New
Jersey Supreme Court, 2000; the U.S. District Court for the
District of New Jersey, 2000; the U.S. Court of Appeals for the
Third Circuit, 2001; the U.S. District Court for the Eastern
District of Pennsylvania, 2001, the Delaware Supreme Court, 2002;
the U.S. District Court for the District of Delaware, 2003; and
the U.S. Supreme Court, 2004.  He is a member of the American Bar
Association, the Delaware State Bar Association and the National
Employment Lawyers Association.  He has been practicing law for
eight years this May.

     32.   In January of 2001, he founded his own firm, The Law
Office of John M. LaRosa.  He has a successful practice in
employment, discrimination, civil rights and other civil
litigation, in which he has represented clients throughout the
States of Delaware, Pennsylvania and New Jersey.  During the ten
years I have known him, first as my law clerk and then as a
practicing attorney, he has worked with me on several employment,
discrimination and civil rights cases.  His work product, work
ethic, intellect and ability are of the highest rank and quality.
Since admission to the Bar, some of his more significant
employment, discrimination and civil rights reported judicial

18

decisions include:

>    Plummer v. Ryan,
>    2008 WL 400195 (Del. Supr. Feb. 15, 2008) (No. 4, 2008)
>    (defeating town government's appeal to the state Supreme
>    Court in a breach of employment contract and whistle blower
>    case).
>
>    Ryan v. Plummer,
>    No. 06C-12-030 WLW (Del. Super. Dec. 18, 2007) (Witham, J.)
>    (defeating town government's motion for summary judgment in
>    a breach of employment contract case).
>
>    Blozis v. Mellon Trust of Delaware National Association
>    494 F.Supp.2d 258 (D.Del. 2007) (Robinson, C.J.)
>    (defeating financial institution-employer's motion for
>    summary judgment in a retaliation and age discrimination
>    case).
>
>    Farrell v. AstraZeneca Pharmaceuticals, LP,
>    2005 WL 2122678 (D.Del. Sept. 2, 2005) (No. Civ. A. 04-285-
>    KAJ) (Jordan, J.)(defeating pharmaceutical-employer's motion
>    for summary judgment in a Family and Medical Leave Act
>    case).
>
>    Nolan v. Reading Blue Mountain & Northern Railroad Co.,
>    2005 WL 627981, 95 Fair Empl.Prac.Cas. (BNA) 772 (E.D.Pa.
>    Mar. 11, 2005) (No. CIV. A. 02-2805) (Tucker, J.)
>    (defeating transportation-employer's motion for summary
>    judgment in an age discrimination case).
>
>    Pratta v. American General Financial Services, Inc.,
>    2004 WL 2537081 (D.Del. Nov. 5, 2004) (No. Civ. A. 04-089-
>    JJF) (Farnan, J.)(defeating consumer lender-employer's
>    motion to dismiss an age discrimination case from court and
>    send the dispute to its own arbitrator).
>
>    Cuffee v. The Dover Wipes Co.,
>    334 F.Supp.2d 565, 94 Fair Empl.Prac.Cas. (BNA) 1461 (D.Del.
>    Sept. 7, 2004) (No. Civ. A. 03-276-SLR) (Robinson, J.)
>    (defeating two manufacturer-employers' motion for summary
>    judgment on claims of pay discrimination based on sex and
>    race).
>
>    Parker v. State,
>    2003 WL 24011961 (Del. Super. Oct. 14, 2003) (No. Civ. A.
>    99C-07-323-JRJ) (Jurden, J.) (granting nurse's motion to
>    amend the complaint against a state health department in a

race discrimination case).

### III.   ATTORNEYS' FEES

33.   As lead counsel, I ensured that an appropriate amount
of time was being expended on the case.  To the best of my
ability, I have endeavored to limit the time expended on
pleadings preparation, fact investigation and briefing,
consistent with my professional obligation to our client and the
financial loss he was suffering and to achieve the maximum level
of efficiency in light of the level of experience of each
professional working on the case.  I believe I achieved these
goals, and the services for which I request compensation as set
forth herein were reasonable and necessary to the prosecution of
this action.  To avoid unnecessary duplication of effort, John M.
LaRosa, Stephen J. Neuberger and I divided tasks as follows.  Mr.
LaRosa had responsibility for drafting the pleadings, the factual
investigation including interviewing and preparing declarations
for the fact witnesses and most communications with the Court,
our client and opposing counsel, including acceptance of the
offer of judgment in plaintiff's favor.  Stephen ultimately was
responsible for the legal research, first amendment law and
briefing relating to all legal issues.  I oversaw all strategy,
pleadings preparation, the course of factual investigation, our
final work product on the briefing and took the lead in all
telephonic appearances before the Court.

34.  My office's normal practice of keeping time for billing purposes consists of recording electronically time, the date, a timekeeping code and a brief description of the services rendered on timekeeping software which is a part of the Quickbooks Pro 2002 software package.  That information then can be collated and retrieved.  In support of this fee application, I am attaching the following documents, summaries and charts which are tabbed alphabetically.

A.  My transaction code list.

B.  Lodestar for each attorney on the case.

C.  Totals of all time for each attorney on the case, before the exercise of any billing judgment.

D.  A summary by transaction code for the total of all time for me, my partner "Stephen Neuberger," my former associate Cheryl A. Hertzog ("CAS") and my associate Raeann C. Warner ("RW").  Whenever a name does not appear besides a transaction code, Thomas S. Neuberger is the timekeeper.

E.  A chronological list describing all tasks performed in this case at the trial level by date and description, before the exercise of any billing judgment.

F.  A chronological listing describing all time spent on this case at the trial court level from its inception. Records include the date, task and the time expended on

21

35.   The time set forth in this declaration is taken from my office records.  I believe that this time accurately depicts the time and services for this case for which my firm and I are seeking payment.

36.   Set out below is the value of the lodestar and time in this case for my law firm at the trial level.

### Total Lodestar Time at Trial Court Level

Complaint drafting[2]

Total Hours:    9.1

Telephone conferences and meetings with client, counsel and others[3]

Total Hours:    28.0[4]

Fact investigation[5]

Total Hours:    10.2

Pleadings and document preparation[6]

Total Hours:    5.2[7]

Correspondence and file memos[8]

---

[2]   Time code 160.

[3]   Time codes 70, 110, 120, 790, 800, 810, 830.

[4]   This is the balance after 3.0 hours were eliminated for media related activity.

[5]   Time codes 280, 330.

[6]   Time codes 250, 620, 630, 700.

[7]   This is the balance after .6 hours were eliminated for media related activity.

[8]   Time codes 310, 420, 430.

Total Hours:    11.8[9]

Expert witnesses[10]

Total Hours:    .9

Briefing the stay motion and the motion to dismiss, legal research[11]

Total Hours:    27.9

Settlement efforts[12]

Total Hours:    7.5

Miscellaneous

Total Hours:    4.2

_____

Total All Hours: 104.8

Total Value of 104.8 hours

TSN   49.7 hours[13] @ $450/hour
                                    $      22,365.00

SJN   50.4 hours @ $250/hour
                                    $      12,600.00

CAH   2.6 hours @ $170/hour
                                    $        442.00

RCW   2.2 hours @ $170/hour
                                    $        374.00

_____

[9]   This is the balance after .1 hours were eliminated for media related activity.

[10]   Time code 271.

[11]   Time codes 90, 410.

[12]   Time code 720.

[13]   This is the balance after 3.7 hours were eliminated for media related activity.

23

| | | |
|---|---|---:|
| Total value of time | $ | 35,781.00 |
| TOTAL VALUE OF TRIAL COURT LODESTAR | | $ 35,781.00 |

37.  During all of 2008, my normal hourly billing rate has been $450 per hour.  I am uncertain whether defendants contest my hourly rate or the hourly rates of $250 per hour for Stephen J. Neuberger, $170 per hour each for Ms. Hertzog and Ms. Warner and $250 per hour for John M. LaRosa.

38.  My firm has only one billing rate for its employees which is charged to all hourly clients.  It is $250 per hour for Stephen Neuberger's services.

39.  I have litigated cases throughout the United States.  I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington.  I am acquainted with hourly rates charged by other law firms in Wilmington and in Philadelphia.  In my opinion, the $250 per hour rate for Stephen Neuberger, the $170 per hour each for Ms. Hertzog and Ms. Warner and $250 per hour for John M. LaRosa are not in excess of the usual and customary rates for Philadelphia or Wilmington attorneys who enjoy comparable reputations, skill and experience.

40.  With reference to Stephen Neuberger's hourly rate, I have personal knowledge that the major Wilmington, Delaware firm of Young, Conaway, Stargatt & Taylor bills at least $250 per hour for just second year associates in its Labor department, not even

24

considering that such a second year associate may not even have the equivalent of seven years of litigation experience. In its department specializing in the less complex area of bankruptcy law, that Firm's second year associates bill at an even higher hourly rate. Stephen Neuberger has consistently demonstrated that his ability, skill, experience and reputation is greater than his peers at major law firms. For example, he already has successfully completed three appeals in the Fourth and Third Circuits after oral argument, garnered one major free speech decision at the district court level, second-chaired four significant verdicts following federal court jury trials, completed successful post-trial briefing and defended the verdicts in the cases that did not subsequently settle and successfully completed intensive sanctions briefing against opponents in major law firms.

41. More than two years ago in March 2006, as part of the settlement following the State's unsuccessful appeal in the Springer case, the State of Delaware agreed and consented to Stephen Neuberger's hourly rate of $250 following the Third Circuit's decision in Springer v. Henry, 435 F.3d 268 (3d Cir. 2006).

42. Finally, my time which is devoted to this present fee application will be set forth separately in another declaration which I will file in connection with Plaintiff's Reply

25

Memorandum.

## IV. COSTS

43.   Through the judgment, my client has incurred out of pocket expenses of $451.98 in connection with the prosecution of the case.  These expenses are reflected in the books and records of this firm and are based on expense vouchers, check records and other similar documentary backup, all of which are maintained in the ordinary course of this practice.  All the expenses referenced were reasonably and necessarily incurred in prosecuting the case.

Court Costs and Filing Fees

|          | 8/26/04 | CK. #6779 | 150.00 |
|---|---|---|---|

Postage, Delivery or Service of Documents, Subpoenas, etc.

D & M Professional Services

|          | 9/30/04 | CK. #6812 | 175.00 |
|---|---|---|---|

Telephone conference calls

|          | 1/22/08 | CK. #7644 | 81.60 |
|---|---|---|---|
|          | 3/13/08 | CK. #7664 | 44.38 |

|          | TOTAL: | $450.98 |
|---|---|---|

## V.  CONCLUSION

44.   From the above it can be seen that a grand total of 104.8 hours were devoted by my Firm to the successful resolution of this case.

26

45.  Accordingly, I believe that an attorneys' fee award of $35,781.00 is reasonable and appropriate in this case for my office's work through February 22, 2008.  An award of $450.98 for costs also should be made.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on ~~April~~ *May 1*, 2008.

_____
THOMAS S. NEUBERGER

Tobin/Motions/Attorneys' Fees/TSN Decl

27