# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIEUTENANT HENRY V. TOBIN III, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 04-1211 KAJ |
| : | |
| THOMAS P. GORDON, individually; : | |
| CHRISTOPHER A. COONS, in his : | |
| official capacity as County Executive; : | |
| SHERRY L. FREEBERY, individually; : | |
| DAVID L. SINGLETON, in his official : | |
| capacity as Chief Administrative Officer; : | |
| COLONEL JOHN L. CUNNINGHAM, : | |
| RETIRED, individually; : | |
| COLONEL DAVID F. MCALLISTER, : | |
| individually and in his official capacity; : | |
| and NEW CASTLE COUNTY, a : | |
| municipal corporation, : | |
| : | |
| Defendants. : | |

**PLAINTIFF'S SETTLEMENT PROPOSAL
TO NEW CASTLE COUNTY AND THE OFFICIAL CAPACITY DEFENDANTS,
WHO BY OPERATION OF FED.R.CIV.P. 25(d)(1) NOW INCLUDE
CHRISTOPHER A. COONS, COUNTY EXECUTIVE, AND
DAVID L. SINGLETON, CHIEF ADMINISTRATIVE OFFICER**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com

Dated: April 26, 2005                    Attorney for Plaintiff

2. Violation of Work Rules:
   Testing Commenced Before Application Period Ended ...................................14

3. Intervening Pattern of Antagonism .................................................................14

4. Gordon and Freebery Controlled the Police Department and
   Had a Motive to Retaliate ................................................................................14

5.    The Totality of the Circumstances...............................................................15

I. Witnesses Who Will Be Used to Prove Plaintiff's Case ...........................................15

J. Injuries and Relief............................................................................................................16

1. Economic Damages...............................................................................................17

   a. Wage and Pension Losses ...........................................................................17

2. Emotional Distress and Psychiatric Damages .................................................18

3. Injury to Reputation .............................................................................................18

4. Humiliation .............................................................................................................19

5. Instatement ............................................................................................................19

K. Defendants' Attorneys' Fees ........................................................................................19

1. Young Conaway Stargatt & Taylor, LLP..........................................................20

2. Oberly Jennings & Rhodunda, P.A....................................................................20

3. Charles E. Butler, Esquire ..................................................................................21

4. The Known Total for Defendants'
   Attorneys Fees is $986,007.13 and Counting ...................................................21

L. Plaintiff's Attorneys' Fees and Expenses ..................................................................21

CONFIDENTIAL

  5. Plaintiff's Superior Qualifications ...................................................39

  6. Intervening Pattern of Antagonism ..................................................40

  7. The Big Picture .................................................................................41

 C. Same Decision Absent Protected Conduct ...................................................43

II.  DEFENDANTS ALSO VIOLATED PLAINTIFF'S FIRST AMENDMENT
     RIGHTS TO BE FREE OF RETALIATION FOR PETITIONING
     THE GOVERNMENT FOR REDRESS OF GRIEVANCES..............................44

 A. Basic Principles ........................................................................................44

 B. The Broad Scope of Activities Which Are Protected ................................45

 C. The Specific Legal Analysis .....................................................................46

 D. The Facts Prove the Petition Clause Was Violated ...................................47

III. THE FIRST AMENDMENT IS TRIGGERED BECAUSE THE
     ADVERSE ACTIONS THAT WERE TAKEN AGAINST PLAINTIFF
     WERE SUFFICIENT TO DETER A PERSON OF ORDINARY FIRMNESS FROM
     EXERCISING HIS PROTECTED FIRST AMENDMENT RIGHTS..............................48

IV.  NO DEFENSE OF QUALIFIED IMMUNITY WILL BE AVAILABLE BECAUSE IT
     HAS BEEN CLEARLY ESTABLISHED FOR AT LEAST FORTY YEARS THAT A
     PUBLIC EMPLOYER CANNOT RETALIATE AGAINST A PUBLIC EMPLOYEE
     FOR EXERCISING HIS FIRST AMENDMENT RIGHTS..............................52

 A. Prong One is Satisfied ..............................................................................53

 B. Prong Two is Satisfied ..............................................................................53

  1. Free Speech .......................................................................................55

  2. Petition Clause ..................................................................................56

V.   FOUR SEPARATE TYPES OF COMPENSATORY DAMAGES ARE
     AVAILABLE FOR THE CONSTITUTIONAL TORTS OF THIS CASE.......................57

iv

## INTRODUCTION

This confidential settlement package is subject to the normal protections of Federal and Delaware Rule of Evidence 408. Nothing contained herein shall be deemed to be an admission against plaintiff's interest. This package is sent in the course of compromise and settlement discussions.

This settlement package is directed only to defendant New Castle County and the two newly added official capacity defendants, who are Christopher A. Coons and David L. Singleton. It is **not** being offered to individual defendants Thomas P. Gordon, Sherry Freebery, retired Colonel John L. Cunningham, and Colonel David F. McAllister. It is not directed to these defendants in their individual capacities because defendants Gordon and Freebery have publically stated in numerous published newspaper articles that they want to have their day in court.[1] Accordingly, plaintiff is more than happy to oblige them and looks forward to the trial that will be held once the federal criminal racketeering proceedings against Gordon and Freebery are concluded and also to the crushing punitive damages that the jury will award to punish these individuals for their malicious and retaliatory misconduct.

## THE NATURE OF THE PENDING COURT CASE

Plaintiff was ranked first on the promotion list. He now seeks compensatory and punitive damages and injunctive relief because he was denied promotion to captain three times because he testified before the grand jury and also refused to cover up a crime by CAO Freebery's son.

Plaintiff exercised his First Amendment rights to report breach of the public trust,

---

[1] See e.g., Brandywine Community News, 1/7/05, at p. 2; Greenville Community News, 1/11/05, at p.6.

**2. Defendants.** Gordon was County Executive, and is sued in his individual capacity. (Compl. ¶ 4). Freebery was the Colonel and later the CAO and is sued in her individual capacity. (Compl. ¶ 5). Cunningham was the Colonel and is sued in his individual capacity. (Compl. ¶ 6). McAllister is the Colonel and is sued in both his individual and official capacities. (Compl. ¶ 7). Defendant New Castle County is a municipal corporation under the laws of the State of Delaware. (Compl. ¶ 8).

**B. Gordon's Control of the Police Department.** On May 26, 2004, Gordon and Freebery were indicted by a federal grand jury for public corruption, racketeering and fraud. Various criminal schemes are outlined over the course of that 47 page document. For example, pages 12-13 of the indictment explain how Freebery and Gordon used County police officers to campaign on County time for candidate Patti Powell.

Gordon and Freebery make all personnel and promotion decisions for the NCC Police Department, and also when they demand it, they otherwise exercise total control of the day to day operations of the Department. They and NCC additionally have a policy, practice and custom of retaliating against their political opponents within the Police Department and against Lodge 5 officers who will not accede to their demands for mistreatment of police officers. (Compl. ¶ 9).

For example, their control of the Police Department is illustrated by the fact that on December 16, 2003, Cunningham plead guilty in Superior Court to the crime of conspiracy in the third degree, in violation of Title 11 § 511 of the Delaware Code. Therein he admitted that during August 2002, he agreed with Freebery that one or both of them would engage in the crime of official misconduct in violation of 11 Delaware Code § 1211(2). To that end and out of fear of the personal consequences he would suffer at the hands of Freebery, he pressured subordinate

(Compl. ¶ 13).

To accomplish these ends, in the 1996 general election Gordon sought to be elected as County Executive so he could control the operations of County government and the executive branch of government. In November of 1996, Freebery was the Colonel of the Police Department. (Compl. ¶ 14). As stated in a May 26, 2004 criminal indictment filed by the United States against Gordon and Freebery for engaging in an election racketeering scheme, on November 1, 1996, Freebery directed and caused J.H., a subordinate County Police officer and classified employee, to order County Police officers who were classified employees under J.H.'s supervision to report to the headquarters of the Gordon Campaign, during working hours, to make telephone calls for political candidates, thereby causing such County police officers to forgo executing a search warrant they were intending to execute at that time. (Compl. ¶ 15 (citing Indictment ¶ 13.A.)).

From February 1996 to August 23, 2002, Gordon and Freebery diverted and used County resources for their personal benefit and caused County employees to use County property, including computers and restricted computer databases, photocopiers, paper, and buildings to prepare campaign literature, create and maintain campaign contribution and voter databases, and perform other related campaign or political services (Indictment ¶ 14), such as the following:

- From spring to November 1996, using a County Police computer to create and maintain records of financial contributions (¶ 14. A.);

- Using a County Police computer to prepare political literature during working hours for the Gordon Campaign and also for Thomas Sharp, an incumbent and powerful State Senator from New Castle County (¶ 14. B.);

reporting it through the chain of command of the Police Department. (Compl. ¶ 19). On December 11, 2002, as required by law, plaintiff appeared before the federal grand jury and testified truthfully when questioned by the U.S. Attorney's Office about defendants' unlawful conduct. The defendants were angry and displeased that he had done so. (Compl. ¶ 20).

      **3. Follow up Phone Conversation with the FBI.** On February 3, 2003, the lead FBI agent in the federal investigation telephoned plaintiff, and he gave the FBI a supplemental oral statement containing additional information and clarification of his grand jury testimony. (Compl. ¶¶ 21-22).

      Through his oral and/or recorded statements at the secret meeting, in his grand jury testimony, and in the FBI phone call, plaintiff exercised his First Amendment right to speak out on matters of public concern and to petition government for a redress of grievances. (Compl. ¶ 24). Plaintiff sought to bring to light actual or potential wrongdoing or breach of the public trust by Gordon and Freebery, and to have those wrongs exposed to the light of day and corrected by those with authority to do so. (Compl. ¶ 26).

   **E. The Content of Plaintiff's Protected Speech And Petition.**

      **1. Illegal Use of On-Duty Police Officers in the 1996 Campaign.** At the secret meeting, in his grand jury testimony, and in the FBI phone call, plaintiff told the federal authorities that defendants engaged in election and campaign irregularities by illegally using on-duty New Castle County police officers for political campaigning in 1996. (Compl. ¶ 27). For example, Freeberry shut down the Police Department's Detective Division for an entire workday and forced a majority of all County detectives to participate in a literature drop for Tom Sharp. (Compl. ¶¶ 28-29). Defendants also made plaintiff solicit twenty five "volunteers" from on duty

determine whether the driver had been drinking. (Compl. ¶¶ 42-44).

Accordingly, the officers responded to Freebery's residence on Ramunno Circle and found tire tracks across her next-door neighbor's front lawn that led toward Freebery's garage door where the vehicle was locked inside. (Compl. ¶ 45). Outside the garage in the driveway a County vehicle with a warm hood was parked. Its driver had obviously just arrived and rushed inside the home. (Compl. ¶ 46). The officers knocked on Freebery's door, but no one would answer. (Compl. ¶ 47). They then telephoned Freebery's residence, but still no one answered, even though the hood was warm on the County vehicle parked in the driveway. (Compl. ¶ 48). All the lights were turned off, and there was no sign of anyone. (Compl. ¶ 49). No one answered the door or the phone. (Compl. ¶ 50). There was no search warrant or exigent circumstances to justify a forced entry into the residence. (Compl. ¶ 51). So the officers then returned to the Minnquedale Police Station to properly preserve and record the physical evidence, such as the broken auto tail light lens which could be matched up with the vehicle in Freebery's garage to which the police did not have access. (Compl. ¶ 52). The accident debris and physical evidence was secured in evidence in accord with departmental procedures. (Compl. ¶ 53).

Cunningham learned of the criminal investigation, and he then ordered plaintiff via a Captain just to clear the scene of the accident and to do nothing further. (Compl. ¶ 54). Approximately four hours after the officers had left her home, and after it was too late to administer a reliable sobriety test on the driver of the vehicle, Freebery telephoned the Lieutenant's office from her residence and spoke to plaintiff. (Compl. ¶ 55). She falsely claimed that she had been asleep the whole time and when she awoke she found a message on her answering machine. (Compl. ¶ 56). Doing his duty, plaintiff then demanded to speak with her

9

voters and the public at large. (Compl. ¶ 66). Nothing plaintiff said interfered with the regular operations of the Police Department. His speech did not interfere with the Department's interests in: crime fighting; fostering trust and confidence among officers; protecting the safety of officers or other members of the community. (Compl. ¶ 70). Plaintiff's speech did not threaten the authority of the Colonel to run the Department. Nothing plaintiff said damaged his relationship with any superior officer. Plaintiff did not impugn the integrity of his supervisors. (Compl. ¶ 71). Plaintiff's speech did not have a detrimental impact on any close working relationship for which personal loyalty, trust, and confidence are necessary. Plaintiff is not the alter ego of defendants. Organizationally, plaintiff is several ranks below the individual defendants in the chain of command. (Compl. ¶ 72).

Any disruption that was caused was not caused by plaintiff's speech but was instead caused by the very problems that plaintiffs' speech was in fact intended to address - illegal conduct. (Compl. ¶ 73). In his position as a lieutenant, plaintiff did not make or formulate County policy. Rather, formulation of County policy is left up to others. (Compl. ¶ 74).

The individual defendants were aware of plaintiff's protected speech and petition, described above, and it angered and antagonized them. (Compl. ¶ 75).

**G. Defendants' Adverse Actions and Long Course of Retaliatory Conduct Against Plaintiff: Denial of Three Promotions and Mid-Year Salary Increase.** On March 3, 2003, the County announced that it was taking applications for two Police Captain positions. (Compl. ¶ 76). Plaintiff timely applied. (Compl. ¶¶ 77-78). The application process consisted of an oral board interview examination before three board members. (Compl. ¶ 79). Under County work rules, the board makes a recommendation to the Colonel based on its interviews of the

11

Just four days later, on March 23, 2004, defendants posted one of the two vacant Captain positions and declared that applications could be made for promotion. (Compl. ¶ 111). After plaintiff re-tested on April 29, 2004, defendants lowered plaintiff's ranking to fourth and failed to promote him to the vacant Captain position. (Compl. ¶ 112). Instead, on or about May 24, 2004, defendants promoted Elmer Setting to Captain, a clearly unqualified person to be a Captain. (Compl. ¶ 113). Setting previously was ranked last among the twelve candidates for promotion on the list for the May 2003 promotion, but in 2004, suspiciously he was ranked first. (Compl. ¶ 114).

### H. Circumstantial Evidence of Retaliatory Motive.

#### 1. Promotion Factors Usually Considered Were Ignored.

##### a. Plaintiff's #1 Ranking on the Oral Board. The County historically has promoted candidates in the order in which they ranked under the oral board testing. (Compl. ¶ 95). Previously on September 24, 2002, the two candidates who were ranked first by the oral board for promotions to Lieutenant and Sergeant respectively received those promotions. (Compl. ¶ 96). In fact, from 1996 to May 24, 2004, all candidates for promotion to Sergeant, Lieutenant, Captain, or other supervisory roles within the Police Department, who tested and were ranked first for a promotion, were promoted except for plaintiff. (Compl. ¶ 97).

##### b. The Successful Candidates Were Ranked Third and Sixth. In contrast, the board had only ranked Quinton Watson third overall for promotion to Captain, and McLaren was only sixth. (Compl. ¶ 98). One of the requirements of promotion also was completion of some college courses in police science, business, administration, management, finance, or related field. (Compl. ¶ 99). Plaintiff has a Master's degree in Human Resources

13

speech and petition, defendants retaliated against him in numerous ways:

- Plaintiff was denied promotion to Captain three times;

- Plaintiff was involuntarily transferred first from the Minnquedale Station to a less desirable position at the Southern Patrol Unit's Headquarters in Middletown, Delaware, a career experience which plaintiff already had acquired in his two prior assignments there and then from Middletown back up to Minnquedale in Patrol, Squad B;

- Plaintiff's job responsibilities were altered because he no longer serves as the Executive Officer to the Patrol Captain; and

- Plaintiff, in effect, was demoted because he commanded approximately 25 officers in Middletown compared to the approximately 200 officers he often commanded as Executive Officer to the Patrol Captain at Minnquedale (Compl. ¶ 116), and he now commands no officers as a member of Patrol, Squad B.

**I. Witnesses Who Will Be Used to Prove Plaintiff's Case.** The following fact witnesses will be used to affirmatively prove plaintiff's case:

| Witness Name, Address, and Telephone Number | Subjects of Discoverable Information |
|---|---|
| Lynda Maloney | Complaint ¶¶ 1-147. |
| Maria Rendina | Complaint ¶¶ 1-147. |
| Patricia Lutz DiIenno – Manager Human Resources | Complaint ¶¶ 95-102, 104-106, 108-115. |
| Sally Goldsborough, Executive Assistant to Freebery, then Gordon | Complaint ¶¶ 33-64. |
| Captain Debra Rees | Complaint ¶¶ 76-94. |
| Sergeant Kathy Riddell | Complaint ¶¶ 16, 54, 62. |

**1. Economic Damages.**  Plaintiff has suffered substantial economic losses as great as $574,000.  Presently he is 50 years old.  He will reach the mandatory retirement age of 55 on October 25, 2009.

**a. Wage and Pension Losses.**  Dr. David E. Black, plaintiff's forensic economist already has analyzed plaintiff's earnings and pension losses.  His report is attached as Tab A.  As a result of being denied promotion to Captain on May 12, 2003, Lt. Tobin's after-tax lost earnings and pension total $274,026.  His pension loss is $157,868.  His past and future earnings and other benefits loss is $100,747.  This totals $258,616.  With a 25% effective tax rate for wages and the 28% effective tax rate for pension, economic losses must be multiplied by 1.06, producing $274,026 in damages.  See Tab A at 2.

As a result of being denied promotion to Captain on May 12, 2003, and the mid-year salary increase of two pay grades on July 19, 2004, Lt. Tobin's after-tax lost earnings and pension total $330,947.  His pension loss is $189,637.  His past and future earnings and other benefits loss is $121,480.  This totals $311,417.  With a 25% effective tax rate for wages and a 28% effective tax rate for pension, economic losses must be multiplied by 1.06, producing $330,947 in damages.  See Tab A at 2.

As a result of being denied promotion to Captain on May 12, 2003, and subsequent promotion to Major on May 24, 2004, Lt. Tobin's after-tax lost earnings and pension total $361,265.  His pension loss is $209,687.  His past and future earnings and other benefits loss is $129,972.  This totals $339,659.  Assuming a 25% effective tax rate for wages and a 28% effective tax rate for pension, economic losses must be multiplied by 1.07, producing $361,265 in damages.  See Tab A at 2.

which would justify defendants' failure to promote him. (Compl. ¶ 122).

He also has been isolated from society. McAllister has confronted Tobin's co-workers, including but not limited to Staff Sergeant Gary Worthy and New Castle County Paramedics Deputy Chief Larry Tan, to discourage them from associating with Lt. Tobin. In fact, Lt. Tobin may never know the full extent of his lost opportunities to relate and associate with others because he can be avoided without knowing the reason and without having a chance to explain the reason for the retaliatory action taken against him. (Compl. ¶ 123).

**4. Humiliation.** Lt. Tobin also has suffered humiliation. Many of his old friends and co-workers began to treat him as outcasts. Persons who used to be friendly with him, including but not limited to Lt. Colonel McLaren, would stop in the hall, turn briefly into an office and then immediately leave the office, and walk back down the hall in the opposite direction to avoid interacting with him.

**5. Instatement.** To settle this case, Lt. Tobin seeks only monetary compensation for the aforementioned injuries. Regarding the promotions he has been denied, he simply will expect fair treatment in the future and a strong no retaliation agreement from the new administration. However, if the case cannot be settled, he will seek injunctive relief in a post-trial motion following a favorable jury verdict and seek to displace incumbent superior officers in order to gain his rightful promotion. They obviously have unclean hands.

**K. Defendants' Attorneys' Fees.** The attorneys' fees expended so far by defendants in this case and my other three County police officer cases against Freebery and some combination

firm so far in this case is $3,770.00 as of February 24, 2005.

      **3. Charles E. Butler, Esquire.** Mr. Butler is an attorney for Defendants Sherry L. Freebery and Thomas P. Gordon. He also represents them in the <u>Riddell</u> case. The amount of taxpayer money paid to him and his firm so far in Lt. Tobin's case is unknown.

      **4. The Known Total for Defendants' Attorneys Fees is $986,007.13 and Counting.** As of February 24, 2005, the County has paid over $980,000 for legal services in defense of this case and three of my other County employment cases. Here alone prior to filing an Answer, the County has spent over $28,000 of taxpayer dollars to pay just two of the three law firms representing defendants in this case. It is unknown how much more taxpayer money has been spent to pay the third law firm involved, but we can be sure it did not work for free.

    **L. Plaintiff's Attorneys' Fees and Expenses.** Plaintiff is represented by The Neuberger Firm, P.A., which consists of Thomas S. and Stephen J. Neuberger and is also represented by Law Office of John M. LaRosa which consists of John M. LaRosa. To date, these two firms have spent approximately $25,000 in attorneys' time and $5,200 for expenses in prosecuting this case. Time to settle the case is estimated at $4,000. This all totals $34,200.

court. First, if the speech is to be protected from retaliation, the court must determine that it addressed a matter of "public concern." Second, the court must balance the relevant interests to determine if the government's interests as an employer in promoting the effective and efficient fulfillment of its public responsibilities outweighs the public employee's interest as a citizen in speaking out on matters of public concern and the value to the community at large of being free to hear such speech. Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997)(en banc).

   1. **Matter of Public Concern**.  Unfortunately for defendants, "[n]o suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression." Bridges v. State of Cal., 314 U.S. 252, 269 (1941). "[S]peech concerning public affairs is more than self-expression, it is the essence of self-government." Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993). "[S]peech on public issues occupies the 'highest run of the hierarchy of First Amendment values,' and is entitled to special protection." Connick v. Myers, 461 U.S. 138, 145 (1983)(quoting NAACP v. Clairborn Hardware Co., 458 U.S. 886, 913 (1982) and Carey v. Brown, 477 U.S. 455, 467 (1980)). "An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996). This is determined by reference to the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.

   In Sanguigni v. Pittsburgh Bd. of Pub. Ed., 968 F.2d 393 (3d Cir. 1992), the court surveyed the law and identified a number of broad categories of cases found to be of public

            **a. Our "Content" Is Criminal Wrongdoing**. "The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if . . . the speaker seeks to 'bring to light actual or potential *wrongdoing or breach of public trust*' on the part of government officials." Holder, 987 F.2d at 195 (quoting Connick, 461 U.S. at 148)(emphasis added).

      In Baldassare v. State of N.J., an investigator in a New Jersey County Prosecutor's office was fired for his role in an internal investigation of law enforcement officers which ultimately resulted in the suspension of two officers for wrongdoing. The Third Circuit found that Baldassare's conduct and expression during the course of investigation was on "a matter of public concern because it attempted to expose *specific wrongs and abuses within the county government*." Baldassare, 250 F.3d at 196 (internal punctuation omitted)(emphasis added).

      The Circuit pointed out that his investigation "sought to bring to light actual or potential wrongdoing or breach of the public trust by the officers he investigated" and such allegations were of the utmost public concern. Id. at 197 (internal punctuation omitted). "Disclosing *corruption, fraud and illegality* in a government agency is a matter of significant public concern." Id. at 196 (quoting Feldman, 43 F.3d at 829)(emphasis added). Our "jurisprudence makes clear that an internal investigation into alleged criminal actions of public employees falls squarely within the core public speech delineated in Connick." Id. at 196-97. "[A]llegations of *corrupt practices* by government officials are of the *utmost public concern*." Id. at 197

---

Ed. v. Doyle, 429 U.S. 274 (1977)(public school teacher who criticized school district policy protected); Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997)(en banc)(public employee who reported sexual harassment by a superior protected).

> This is not a typical case among private litigants. It involves *serious allegations of public corruption.* It may be stating the obvious, but it bears emphasis that "the public has a substantial interest in the integrity or lack of integrity of those who serve them in public office."

Id. at *4 (quoting U.S. v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)(emphasis added)).

Continuing, the district court found that "[t]he public's substantial interest in unearthing governmental improprieties requires courts to foster legitimate whistleblowing." Id. (quoting Feldman, 43 F.3d at 830).

Plaintiff's speech exposed defendants' felonious criminal conduct, and he was a key player in the investigation that led to the federal criminal charges against defendants Gordon and Freebery for public corruption, racketeering and fraud. As the district court has already found in the criminal case against defendants that arose out of plaintiff's speech,

> This is a matter of *exceptional public consequence* in this District, involving allegations both of corruption in the day-to-day operations at the upper echelon of government in the State's largest County and in the election processes foundational to that government's legitimacy.

U.S. v. Gordon, 334 F.Supp.2d 581, 597 (D.Del. 2004)(emphasis added).

> **b. Form and Context.** "The form and context of [ ] speech may help to characterize it as relating to a matter of social or political concern to the community if . . . the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed." Holder, 987 F.2d at 195. Here, Plaintiff did not speak out internally to Gordon, Freebery, Cunningham, or McAllister. Instead, he went outside the public office of the County Government and spoke to the U.S. Attorney, the FBI, the IRS, as well as the federal grand jury.

27

(subpoenaed testimony)).

"[P]ublic policy . . . requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." Briscoe v. LaHue, 460 U.S. 325, 333 (1983). "The function of witnesses is fundamental to the administration of justice" and "[e]very consideration of public policy requires that they should be as fearless in testifying as the judge and jury are independent in weighing his testimony." Williams v. Hepting, 844 F.2d 138, 141 (3d Cir. 1988) (quoting Brewer v. Horowitz, 535 F.2d 830, 837 (3d Cir. 1976)); see also Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000)("In order to encourage truthful and uninhibited testimony, the law has long afforded certain protections to witnesses"). "The context of a [grand jury] appearance raises speech to a level of public concern, regardless of its content." Green, 105 F.3d at 887 (citing Pro, 81 F.3d at 1291). The First Amendment provides protection even when the content of the sworn testimony is "'purely private' because the form and context of [the] speech [is] of public concern, i.e. an appearance to deliver sworn testimony before an adjudicatory body." Id. at 886.

In Pro, the Third Circuit found that "the public employee's interest in responding to a subpoena and the judicial interest in having state employees respond to subpoenas without fear of employer reprisal" justified the holding that subpoenaed testimony is protected. Pro, 81 F.3d at 1291. Similarly, "[t]he goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts as speech 'of public concern.'" Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1291 (5th Cir. 1989)(quoted in Green, 105 F.3d at 887). The Third Circuit has justified such holdings because of "[t]he utility of uninhibited

29

campaign for defendant Gordon for County Executive. (Compl. ¶ 30). Plaintiff also was the

Shift Commander of Patrol Squad E on duty the night of the November 30, 2001 hit-and-run

accident on Yorklyn Road which was covered up by Freebery. (Compl. ¶¶ 35-36). Plaintiff was

ordered by Defendant Cunningham via a Captain to clear the scene of the accident and to do

nothing further. (Compl. ¶ 54).

          **iv. Motive.** Another factor to be considered is the speaker's

motivation. <u>Brennan v. Norton</u>, 350 F.3d 399, 413 (3d Cir. 2003); accord <u>Versarge v. Township</u>

<u>of Clinton N.J.</u>, 984 F.2d 1359, 1364 (3d Cir. 1993). Speech does not lose its protection if the

employee speaks out as part of the meritorious performance of his job duties. See <u>Feldman v.</u>

<u>Philadelphia Hous. Auth.</u>, 43 F.3d 823, 830 (3d Cir. 1994); <u>Baldassare</u>, 250 F.3d at 197. But

even when "an employee's statement is an outgrowth of his personal dispute[, this] does not

prevent some aspect of it from touching upon matters of public concern." <u>Johnson v. Lincoln</u>

<u>Univ. of Com. Sys. of Higher Ed.</u>, 776 F.2d 443, 451 (3d Cir. 1985)(internal punctuation

omitted). Indeed -

> Common sense suggests that public employees, no less than other
> employees, will be more likely to speak out when they are
> disgruntled or personally dissatisfied with some aspect of his
> employment or employer. Nevertheless, the harm that results from
> silencing or chilling public speech is neither negated nor mitigated
> merely because the speaker may have harbored motivations that
> were less than altruistic.

<u>Brennan</u>, 350 F.3d at 413. Thus, even improper "motivations will rarely, by themselves, justify

silencing speech that otherwise addresses matters concerning the public." <u>Brennan</u>, 350 F.3d at

413.

employer in promoting the effective and efficient fulfillment of its public responsibilities against the public employee's interest as a citizen in speaking out on matters of public concern and the value to the community at large of being free to hear such speech. Azzaro, 110 F.3d at 980; Pickering, 391 U.S. at 568; Connick, 461 U.S. at 150. If the government interest in the effective and efficient provision of services outweighs the value of speech itself, it will be held to be unprotected. Azzaro, 110 F.3d at 980. The burden of proof is on the employer here to make a "substantial showing." Waters v. Churchill, 511 U.S. 611, 674 (1994)(plurality opinion); accord Watters v. City of Phila., 55 F.3d at 816.

Importantly, "[v]igilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." Rankin v. McPherson, 483 U.S. 378, 384 (1987).

**a. Disruption.** Factors relevant in the balancing are "the extent to which the employee's speech activity disrupts the working of the office, the extent to which the employee threatens the authority of the employer to run the office, and the extent to which the employee uses the speech activity to resolve an essentially private grievance." Holder, 987 F.2d at 195. In evaluating the disruptiveness of the speech, the court should look at:

> whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

Watters, 55 F.3d at 897 (citing Rankin, 483 U.S. at 388).

Importantly, there is a presumption in favor of free speech and mere disruption is

33

County and in the election processes foundational to that government's legitimacy." U.S. v. Gordon, 334 F.Supp.2d at 597.

**ii. Policymakers.** Another consideration is the policymaking status of the public employee. Muti v. Schmidt, 96 Fed.Appx. 69, 73 (3d Cir.2004). Here, plaintiff, in his position as a lieutenant, was not a policymaker as he did not make or formulate County Policy. (Compl. at ¶ 74).

**iii. Causation.** Additionally, when evaluating the disruption, the court must consider whether it was caused by the employee's speech or by the employer itself. "Disruption caused by actions independent of the speech at issue cannot be equated with disruption caused by the speech itself." Watters, 55 F.3d at 897 (finding that discontent within the Police Department was caused by the "very problems to which the plaintiff's speech was directed[]"); accord Rode, 845 F.2d at 1202 (disruption caused by a newspaper article in which employee claimed to be the victim of racial discrimination must not have been too serious because the public employer reproduced and circulated it in the workplace); Zamboni, 847 F.2d at 79 (finding public employer to have exacerbated any initial disruption by spreading word of the speech throughout the office and by ordering other employees not to associate with the speaker); Springer v. Henry, 2002 WL 389136, at *5 (finding it fatal to defendant's disruption claims that they had failed to show how the claimed disruption was caused in any way by plaintiff's speech). Similarly, any disruption in NCC government was not caused by plaintiff's actions, but was instead caused by the very widespread corruption that his speech sought to address and expose.

35

a question of fact, not one of law. Baldassare, 250 F.3d at 195. "But for" causation is not

needed. Suppan v. Dadonna, 203 F.3d 228, 236 (3d Cir. 2000). Instead, a plaintiff need only

show that his protected First Amendment rights "played any substantial role in the relevant

decision." Suppan, 203 F.3d at 236; see also Miller v. Cigna, Corp., 47 F.3d 586, 597 n.9 (3d Cir.

1995)(en banc)("played a role" in the adverse decision).

The following legal factors will provide ample evidence for the jury to find as a fact, that

the defendants, who at the time of trial will be convicted felons, retaliated against plaintiff:

**1. Temporal Proximity.** "[T]emporal proximity between the protected activity

and the termination is sufficient to establish a causal link." Woodson v. Scott Paper Co., 109

F.3d 913, 920 (3d Cir. 1997); see also Zelinski v. Pennsylvania State Police, 2004 WL 1799234,

at *5-6 (3d Cir. Aug. 1, 2004)(discussing the law of temporal proximity in the causation

analysis). When a plaintiff engages in a pattern of protected activity and suffers an adverse

action, such as a denied promotion,

> shortly after the final episode of such protected activity, a fact-
> finder may reasonably infer that it was the aggregate of the
> protected activities that led to retaliatory dismissal. This inference
> would be particularly strong if the plaintiff can show that the
> decision maker lacked a pretext on which to [take adverse action
> against] the plaintiff until shortly before the time of [the adverse
> action].

San Filippo v. Bongiovanni, 30 F.3d 424, 444 (3d Cir. 1994). For example, adverse action taken

against an employee two days after engaging in protected activity is "unusually suggestive." Jalil

v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

───────────────────────────

in this section, it is discussed in Argument III below.

plaintiff was singled out for harassing and retaliatory treatment that other lieutenants did not receive.

      **4. Violations of Procedures.** Violations of laws, rules and procedures also have long been recognized as proof of wrongdoing. See Village of Arlington Heights v. Metropolitan Hous. Develop. Corp., 429 U.S. 252, 267 (1977)("Departures from the normal procedural sequence also might afford evidence that *improper purposes are playing a role*. Substantive departures, too, may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached."); Stewart v. Rutgers, the State Univ., 120 F.3d 426, 434 (3d Cir. 1997)(departures from the normal procedural sequence afford evidence that *improper purposes are playing a role*); see also Bray v. Marriott Hotels, 110 F.3d 986, 992, 994 (3d Cir. 1997); Kunda v. Muhlenberg College, 621 F.2d 532, 539 (3d Cir. 1980); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 143-44 (3d Cir. 1977). Here, for example, defendants long course of harassment and retaliation violated NCC Personnel Policy 5.10 which prohibits harassment for engaging in protected activities.

      **5. Plaintiff's Superior Qualifications.** Also, plaintiff's superior qualifications for the position establishes a causal link between his protected speech and defendants' adverse actions. Again, plaintiff has been employed by the County as a police officer for over 25 years. (Complaint ¶ 84). He has held a supervisory position since 1989, when he was promoted to Sergeant. (Complaint ¶ 85). In 1994, he was promoted to Lieutenant, and in 1998, to Senior Lieutenant. (Complaint ¶¶ 86-87). His annual performance review received on February 14, 2003, a mere month before his application, rated him as exceeds expectations in all but one category, and his last annual performance review received on March 8, 2004, was outstanding

protected activity and the retaliation, the "intervening pattern of antagonism" by defendants proved causation. Robinson v. SEPTA, 985 F.2d 892, 895 (3d Cir. 1993); see also Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003)("timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive'"). Similarly, in San Filippo, the adverse action took place in 1986, and the Third Circuit noted that, "[a]t the outset, we disagree with the district court's view that San Filippo's protected activities in 1977-79 and 1983-84 were too far removed in time to support an inference of retaliation" when the entire situation was viewed in context, in light of evidence of hostility, disparate treatment and other evidence. 30 F.3d at 444. Here, the continued retaliation and overt hostility towards plaintiff clearly demonstrates an intervening pattern of antagonism.

       **7. The Big Picture.** "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a [retaliation] analysis must concentrate not only on individual incidents, but on the overall scenario." Andrews v. City of Phila., 895 F.2d 1469, 1484 (3d Cir. 1990). The fact finder should not "examine each alleged incident of harassment in a vacuum. What may appear to be a legitimate justification for a single incident of harassment may look pretextual when viewed in the context of several other related incidents. The factfinder must not only look to the frequency of the incidents but to their gravity as well." Id. (internal punctuation and citation omitted). Thus, even when individual incidents by themselves may be de minimis or otherwise insufficient when standing alone, when viewed together, the totality of the actions may be sufficient. Woodson, 109 F.3d at 921 ("While each

piece of evidence alone is not sufficient to support an inference of a pattern of antagonistic

last among the twelve candidates for promotion on the list for the May 2003 promotion, but suspiciously was ranked first in 2004 (Compl. ¶¶ 113-114);

- involuntarily transferred plaintiff first from the Minnquedale Station on or about May 31, 2004, to a less desirable position at the Southern Patrol Unit's Headquarters in Middletown, Delaware, a career experience which plaintiff already had acquired in his two prior assignments there, in a specific attempt to scare him into silence. (Compl. ¶ 115), and then back to Minnquedale on March 4, 2005, in Patrol, Squad B, a career experience which plaintiff already acquired at least six times in previous assignments to Patrol, Squads A, D, and E;

- altered Plaintiff's job responsibilities because he no longer serves as the Executive Officer to the Patrol Captain; and

- in effect, demoted plaintiff because he commanded approximately 25 officers in Middletown and now commands no one in Patrol, Squad B compared to the approximately 200 officers he often commanded as Executive Officer to the Patrol Captain. (Compl. ¶ 116).

Accordingly, there is overwhelming record evidence that proves that plaintiff's protected activity was a substantial or motivating factor in defendants' retaliatory actions against them.

   **C. Same Decision Absent Protected Conduct.** The burden of proof then "shifts to the defendant to show 'by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.'" Nicholas, 227 F.3d at 144 (quoting Mount Healthy, 429 U.S. at 287). This last step is an "affirmative defense," id. and it is a question for the fact-finder. Baldassare, 250 F.3d at 195. If the employer meets this burden, the

43

F.3d at 442. Instead, it ranks "among the most precious of the liberties safeguarded by the Bill of

Rights" and is "intimately connected, both in origin and purpose with the other First Amendment

rights of free speech and free press." United Mine Workers of America v. Illinois State Bar

Ass'n, 389 U.S. 217, 222 (1967). "All these, though not identical, are inseparable." Id. (quoting

Thomas v. Collins, 323 U.S. 516, 530 (1945)). The "right to petition is cut from the same cloth

as the other guarantees of [the First] Amendment, and is an assurance of a particular form of

expression." McDonald, 472 U.S. at 482. "[W]hen one files a 'petition' one is addressing the

government and asking government to fix what . . . government has broken or has failed in its

duty to repair." San Filippo, 30 F.3d at 442.

"[T]he values in the right of petition as an important aspect of self-government are

beyond question." McDonald, 472 U.S. at 483. The right to petition "is implicit in the very idea

of government, republican in form." McDonald, 472 U.S. at 482 (quoting U.S. v. Cruikshank, 92

U.S. 542 (1876)(internal punctuation omitted)). The "fundamental importance of the right to

petition [is] as a check against the government's abuse of power." Anderson, 125 F.3d at 162.

**B. The Broad Scope of Activities Which Are Protected.** In the words of James

Madison, the "people 'may communicate their will' through direct petitions to the legislature and

government officials." McDonald, 472 U.S. at 482 (quoting 1 Annals of Cong. 738 (1789)).

Accordingly, "the right to petition extends to all departments of Government." California Motor

Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).[10] It extends to "administrative

---

[10] As Blackstone wrote long ago, "there still remains a . . . right, appertaining to every individual, namely, the right of petitioning the king, or either house of parliament, for the redress of grievances." San Filippo, 30 F.3d at 443 n.23 (quoting 1 William Blackstone, Commentaries 143). Recognizing this, the Third Circuit has held that "[t]here is no persuasive reason for the right of petition to mean less today than it was intended to mean in England three centuries ago."

Importantly, the protected activity analysis under the petition clause is different than that under the free speech clause. In the petition arena, there is no disruption balancing nor is there a public concern analysis. Instead, matters of purely private concern are protected, as long as the petition is not a sham. San Filippo, 30 F.3d at 440, 443; We, Inc., 174 F.3d at 330 n.2; Brennan, 350 F.3d at 417; see also San Filippo, 30 F.3d at 434-43 (the Third Circuit's extensive analysis of the issue). As the Circuit stated in Brennan, a plaintiff need only show that his petition "was not frivolous in order to make out a prima facie claim for retaliation under the Petition Clause." Brennan, 350 F.3d at 417.

Simply put, the making of a "petition is not a constitutionally permissible ground for" adverse action against anyone. San Filippo, 30 F.3d at 443. The government simply may not retaliate against those who petition it as such a result "is hardly consistent with the fundamental principles of orderly protest, which our Constitution sought to preserve by protecting our right to petition the government for redress." Anderson, 125 F.3d at 163.

**D. The Facts Prove the Petition Clause Was Violated.** It is clear that plaintiff also engaged in protected petitioning activity. He sought out and petitioned the Executive Branch prosecutorial authorities to report criminal wrongdoing and asked those same Executive Branch authorities to fix our broken County government which had been corrupted by eight years of defendants' unlawful practices. Thus, as a matter of law, plaintiff petitioned high Executive Branch agencies and officials, such as the U.S. Attorney, the FBI, and the IRS, and that activity was protected against retaliation by the First Amendment.

The remaining prongs, substantial or motivating factor and same decision absent protected conduct, are identical to those discussed in the free speech argument above and need

*person of ordinary firmness* from exercising his First Amendment rights." Suppan, 203 F.3d at

235 (internal punctuation omitted)(emphasis added); accord Allah v. Seiverling, 229 F.3d 220,

225 (3d Cir. 2000); Muti, 96 Fed.Appx. at 74.[12]  "Put another way, the retaliatory actions must be

sufficiently severe to cause reasonably hardy individuals to refrain from protected activity."

Muti, 96 Fed.Appx. at 74 (internal punctuation omitted)(quoting Agosto-de-Feliciano v.

Aponte-Rogue, 889 F.2d 1209, 1218 (1st Cir. 1989)(en banc). This is an objective test, not a

subjective one.  Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003).[13]

    As a matter of law, both individually and together, (1) denying three promotions and

(2) the rest of the retaliatory actions defendants took against plaintiff, are "sufficient to deter a

person of ordinary firmness from exercising his First Amendment rights." Suppan, 203 F.3d at

235.  Such an adverse action would "cause reasonably hardy individuals to refrain from protected

activity." Muti, 96 Fed.Appx. at 74.

    "Determining whether a plaintiff's First Amendment rights were adversely affected by

retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of

the retaliator, the relationship between the speaker and the retaliator, and the nature of the

retaliatory acts." Brennan, 350 F.3d at 419 (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d

---

    [12]  See Rodriguez v. Torres, 60 F.Supp.2d 334, 349 (D.N.J. 1999); Kadetsky v. Egg
Harbor Township Bd. of Ed., 82 F.Supp.2d 327, 337 (D.N.J. 2000); Katzenmoyer v. City of
Reading, 2001 WL 1132374, at *2 (E.D.Pa. Sept. 21, 2001); Marrero v. Camden County Bd. of
Soc. Serv., 164 F.Supp.2d 455, 467 (D.N.J. 2001); Sunkett v. Misci, 183 F.Supp.2d 691, 708
(D.N.J. 2002); Kelleher v. City of Reading, 2002 WL 1067442, at *5 (E.D.Pa. May 29, 2002);
Zugarek v. Southern Tioga Sch. Dist., 214 F.Supp.2d 468, 476-77 (M.D.Pa. 2002) (all applying
the "sufficient to deter a person of ordinary firmness"standard).

    [13]  The existence of adverse action is usually a question for the fact finder.  See Suppan,
203 F.3d at 235; Allah, 229 F.3d at 225; Baldassare, 250 F.3d at 195; Muti, 96 Fed.Appx. at 69.

with just a lateral transfer, absent any loss in pay or benefits. Torre v. Casio, Inc., 42 F.3d 825,

831 n.7 (3d Cir. 1994); accord Dilenno v. Goodwill Indus. of Mid-Eastern Pa., 162 F.3d 235, 236

(3d Cir. 1998). The case law is clear that it covers many situations. See e.g. Jones v. School

Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999)(adverse action when teacher involuntarily

transferred to a less desirable assignment and lost the opportunity to do the job he "sought

most"); Dilenno, 162 F.3d at 236 (transferring plaintiff with bug phobia to position inspecting

bags of donated clothing); Torre, 42 F.3d at 831 n.7 (transfer to a dead-end job); Mondzelewski

v. Pathmark Stores, Inc., 162 F.3d 778, 787-88 (3d Cir. 1998)(small change in working hours).

See also Rodriguez v. Board of Ed., 620 F.2d 362, 364-66 (2d Cir. 1980)(adverse action where

transfer radically changed nature of employee's work and resulted in "severe professional

trauma.") (internal punctuation omitted).

　　　To illustrate, in Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107 (3d Cir.

1996), a police officer spoke out and exercised his protected speech rights. Soon thereafter he

was involuntarily transferred to a less desirable assignment, without any explanation. The officer

deemed his transfer to be a demotion. At summary judgment, the defendants argued that the

transfer was not a demotion because his rank and pay were unaffected, was merely a lateral

reassignment, was part of a routine rotation schedule, and thus did not constitute adverse action.

The Third Circuit rejected the argument that adverse action was lacking and reversed the grant of

summary judgment for the defense. Id. at 116.

　　　As described above, the retaliatory actions defendants took against plaintiffs, even under

a Title VII standard, adversely affected their status as employees. Robinson, 120 F.3d at 1300,

1296-97. Accordingly, under both the First Amendment test and the stricter Title VII test,

51

536 U.S. 730, 736 (2002). If the plaintiff meets this threshold, a court must next decide whether

the right allegedly violated was a clearly established one, about which a reasonable person would

have known. Wilson, 526 U.S. at 609; Hope, 536 U.S. at 739. "Whether a governmental official

is entitled to protection under the doctrine of qualified immunity is a 'purely legal question.'"

Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997)(quoting Acierno v. Cloutier, 40 F.3d 597,

609 (3d Cir. 1994)(en banc)); see also Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001); Rouse v.

Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999).

**A. Prong One is Satisfied.** In light of the extensive factual record and the legal analysis

found in Arguments I-III above, there can be no question that plaintiff has proven facts that

constitute a First Amendment violation under both the speech and petition clauses. So the first

prong in defeating qualified immunity has been satisfied.

**B. Prong Two is Satisfied.** Second, if a plaintiff meets the prong one threshold, the

court next must decide whether the right violated was a clearly established one, about which a

reasonable person would have known. Atkinson, 316 F.3d at 261; Saucier v. Katz, 533 U.S. 194,

201 (2001); Hope, 536 U.S. at 739; Wilson, 526 U.S. at 609; Doe 257 F.3d at 314-15. In other

words, in light of prong one, would a reasonable public official be put on notice that the

constitutional violation already established under prong one runs afoul of clearly established law?

See Bennett v. Murphy, 274 F.3d 133, 136-37 (3d Cir. 2001)(observing that prong two operates

on the "factual scenario established by the plaintiff" under prong one).

"[Q]ualified immunity applies if 'reasonable officials in the defendants' position at the

relevant time could have believed, *in light of what was in the decided case law*, that his conduct

would be lawful.'" Doe, 257 F.3d at 318 (emphasis added)(quoting Good v. Dauphin County,

protecting legions of public employees in the Supreme Court, the Third Circuit and the District

of Delaware, there is no way that defendants could reasonably believe that they could retaliate

against plaintiff in violation of the Free Speech Clause.[16]  Concerning the huge body of public

employee case law (only a portion of which is listed in the preceding footnote), the Third Circuit

recently held that in our Circuit since 1982, the law has been clearly established that no public

employee can suffer adverse action or other "retaliation for exercising his rights under the first

amendment." Baldassare, 250 F.3d at 201.  Going even farther back to 1968, the Supreme

Court's Pickering opinion specifically held that a public employee's speech critical of a public

employer's policies was protected. 391 U.S. 563.

    The general legal principles from these many closely analogous cases, and those cases

discussed in much greater length in Argument I above, would put any reasonable official on

notice that plaintiff had clearly established First Amendment rights to be free of retaliation

---

[16] See e.g., Baldassare v. State of N.J., 250 F.3d 188 (3d Cir. 2001)(public employee who
conducted *internal investigation into wrongdoing and breach of the public trust* in a public
agency protected); Feldman v. Philadelphia Hous. Auth., 43 F.3d 823 (3d Cir. 1994)(public
employee who *exposed corruption, inefficiency, and other improprieties* in public agency
protected); Monsanto v. Quinn, 674 F.2d 990 (3d Cir. 1982)(public employee who criticized
management policies in a public agency protected); Czurlanis v. Albanese, 721 F.2d 98 (3d Cir.
1983)(public employee who criticized waste and inefficiency in public agency protected); Rode
v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988)(public employee's criticism of racism in police
department protected); O'Donnell v. Yanchulis, 875 F.2d 1059 (3d Cir. 1989)(police chief's
criticism of township government for trying to force him to fix traffic citations protected);
Watters v. City of Phila., 55 F.3d 886 (3d Cir. 1995)(public employee who criticized policies in
public agency protected); Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996)(public employee who
was subpoenaed to testify at supervisor's divorce proceeding protected); Azzaro v. County of
Allegheny, 110 F.3d 968 (3d Cir. 1997)(en banc)(public employee who reported sexual
harassment by a superior protected); Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003)(public
employee who criticized policies and health hazards in a public agency protected); Pickering v.
Board of Ed., 391 U.S. 563 (1968)(public school teacher who criticized school district policies
protected); Mount Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274 (1977)(public school teacher
who criticized school district policy protected).

"It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory." Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000); see also Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986)("when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts").

"Rights . . . do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." Carey v. Piphus, 435 U.S. 247, 254 (1978). "Our legal system's concept of damages reflects this view of legal rights." Id. "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." Id. at 254-55 (quoting F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956)(emphasis in original)). "To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." Stachura, 477 U.S. at 307 (internal punctuation omitted); accord Allah, 226 F.3d at 250.

In another one of counsel's recent § 1983 police cases, a federal court jury awarded $300,000 in compensatory damages on a far weaker record than exists in Tobin's case. In Bullen v. Chaffinch, 336 F.Supp.2d 342, 356 (D.Del. 2004), the District of Delaware recently upheld the jury's $300,000 award to compensate the Bullen plaintiffs for "injury to reputation . . . humiliation and emotional distress."[17] In Bullen, the damages award was based solely upon the

---

[17] The Supreme Court has noted that the word "distress" includes "mental suffering or emotional anguish." Carey, 435 U.S. at 264 n.20. This then encompasses the concept of pain and suffering, but also implicitly recognizes that humiliation and injury to reputation are separate

Smith v. Wade, 461 U.S. 30 (1983). Smith was a § 1983 action arising from a brutal assault

against a youthful first offender while in a juvenile reformatory. A jury awarded $25,000 in

compensatory damages to the youth as well as $5,000 in punitives. The defendant appealed the

punitive damages award on two grounds. First, he argued that the proper test for punitive

damages is one of "actual malicious intent - ill will, spite, or intent to injure." Id. at 37-38.

(internal punctuation omitted). Second, that the requisite standard for punitive damages had to

be higher than the liability standard. Id. at 38. The Supreme Court explicitly rejected both of

these arguments. Id. at 56.

As to the first argument, the Supreme Court extensively surveyed the common law both

at the time and since the enactment of § 1983 in 1871, id. at 39-51, and found that

> we are content to adopt the policy judgment of the common law -
> that reckless or callous disregard for the plaintiff's rights, as well
> as intentional violations of federal law, should be sufficient to
> trigger a jury's consideration of the appropriateness of punitive
> damages.

Id. at 51. The Court rejected the defendants' contentions that the higher standard of "actual

malicious intent - ill will, spite, or intent to injure," id. at 37-38 (internal punctuation omitted),

was a prerequisite for punitive damages and instead held that although the higher standard would

warrant consideration of punitive damages, "reckless or callous indifference to the federally

protected rights of others" is all that is needed as an alternative basis for punitive damages. Id. at

56.

The Court also rejected the defendant's second argument that "the threshold for punitive

damages" had to be higher "than the underlying standard for liability in the first instance." Id. at

51. The Court observed that "[t]here has never been any general common-law rule that the

Moreover, our petition clause theory has been clearly established since the days of ancient England and also the Third Circuit exhaustively addressed the theory in the First Amendment employment context in 1994. Thus, they are not novel or poorly recognized. Lastly, the fourth exception does not apply because there are no statutory exemptions to the First Amendment's prohibition on retaliation for exercising First Amendment rights.

Importantly, none of the Supreme Court cases dealing with punitive damages since Smith v. Wade have overruled its holding. Rather, these cases either discuss the Smith standard, as in Kolstad, or deal with the entirely separate issue of constitutional limitations on the size of the award of punitive damages, not the jury's ability to award punitive damages themselves. See Browning-Ferris Indus. v. Kelco Disposal, 492 U.S. 257 (1989)(Eighth Amendment Excessive Fines Clause); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1 (1991)(Fourteenth Amendment Due Process); TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993)(same); Honda Motor Co. v. Oberg, 512 U.S. 415 (1994)(same); BMW of North America v. Gore, 517 U.S. 559 (1996)(same).[19]

Accordingly, "intentional violations of federal law" are sufficient to trigger a jury's consideration of the appropriateness of punitive damages. Smith, 461 U.S. at 51. In the same way, "a jury may assess punitive damages in a civil rights action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Alexander v. Riga, 208 F.3d 419, 430-31

---

[19] No doubt these due process limitations will come into play once the jury has their way with the individual defendants and gets the chance to award punitive damages. Fortunately, the federal case law will uphold multiples of the total compensatory damages award for punitives. Here, we can expect a punitive damages award of millions.

- just four days after the list ranking plaintiff as the first candidate for promotion to Captain expired on March 19, 2004, <u>intentionally</u> posting one of the two vacant Captain positions, <u>callously</u> declaring that applications could be made for promotion on March 23, 2004, and then <u>maliciously</u> lowering plaintiff's ranking to fourth when he re-tested on April 29, 2004. (Compl. ¶¶110-113);

- again <u>intentionally</u> failing to promote plaintiff to the vacant Captain position and instead <u>recklessly</u> promoting Elmer Setting, a clearly unqualified person who previously was ranked last among the twelve candidates for promotion on the list for the May 2003 promotion, but suspiciously was ranked first in 2004 (Compl. ¶¶ 113-114);

- <u>maliciously</u> transferring plaintiff involuntarily from the Minnquedale Station on or about May 31, 2004, to a less desirable position at the Southern Patrol Unit's Headquarters in Middletown, Delaware, a career experience which plaintiff already had acquired in his two prior assignments there, in a specific attempt to scare him into silence. (Compl. ¶ 115);

- then <u>callously</u> transferring plaintiff back to Minnquedale on March 4, 2005, in Patrol, Squad B, a career experience which plaintiff already acquired at least six times in previous assignments to Patrol, Squads A, D, and E;

- <u>intentionally</u> altering Plaintiff's job responsibilities because he no longer serves as the Executive Officer to the Patrol Captain; and

- in effect, <u>maliciously</u> demoting plaintiff because he commanded approximately 25 officers in Middletown compared to the approximately 200 officers he often

## A SETTLEMENT PROPOSAL

Because of his protected activity against these criminals, the defendants began their severe course of retaliation against him and dead ended his career. There is no defense to this unassailable proof that the cause of all these adverse actions was Lt. Tobin's speech and petition to the U.S. Attorney, the FBI, and the IRS, and his refusal to coverup Patrick Duffy's crimes.

Liability in this case is assured. There is no reasonable doubt that the jury will return a verdict for plaintiff. The only question is how outraged the jury will be at the crimes of the defendants and how high the damages verdict will be.

Plaintiff's assistance also led to the indictment of the corrupt criminal leadership of the County. Gordon and Freebery's ultimate convictions or guilty pleas are virtually assured and they also will be admissible as substantive evidence in this case. Lt. Tobin's conduct implicated matters of the highest public concern in a democracy. The jury will be duly appreciative of this brave citizen who, as an officer of the Law, treats all citizens equally.

The retaliation against plaintiff was continuous and severe. It lead to the failure of his mental and physical health, which will be documented for trial.

There are several components of damages in this case for settlement purposes. In this offer, the value of these losses will not be discounted for any probability of not succeeding on liability at trial, since failure to prove liability is out of the question. As indicated, there is no way any jury will not return a very sizeable judgment against all defendants in this case.

First, there is the value of the wage, pension and other economic losses in the case which range from $275,000; $331,000; $361,000 and $574,000. The latter two figures are for lost promotion opportunities beyond captain. His pension loss is as high as $333,992, as explained

injury to reputation and humiliation.

With such losses, we can see how the punitive damages award against Gordon and Freebery will start at $1.5 million each since this is simply a multiple of about one, based on the size of the compensatory damages amount. Plaintiff's punitive damages awards can even range from $5 to $10 million.

This case can be settled and a release given of the County and its agents in their official, but not their individual, capacities, upon the payment as compensatory damages for all claims, of $1,474,000. A 1099 would be issued for Mr. Tobin. Only $574,000 would be wages, the remainder is personal injuries for tax purposes.

A separate payment of $34,200 also must be made for legal fees and costs to The Neuberger Firm, with an appropriate 1099 to that Firm. In light of the almost $1 million paid thus far for legal services in defense of my other County cases against Freebery and some combination of Gordon, Cunningham, and/or McAllister, that payment is very, very reasonable for the quality legal services rendered to date.

This offer will expire thirty (30) calendar days from April 26, 2005.

Respectfully Submitted,

THE NEUBERGER FIRM, P.A.

THOMAS S. NEUBERGER, ESQ. (#243)
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com

Dated: April 26, 2005                Attorney for Plaintiff

67

# CALCULATION OF THE PRESENT VALUE OF THE ECONOMIC LOSS

# FROM LOST EARNINGS AND PENSION

# DUE TO RETALIATORY DENIALS OF PROMOTION

CONFIDENTIAL

## HENRY V. TOBIN III

Prepared by

David E. Black, Ph.D.

Economist

January 20, 2005

2

Summary of Results, Present Values of Losses:

| Promotion | Lost Past Earnings Including Benefits | Lost Future Earnings Including Benefits | Lost Pension | Total Lost Earnings Plus Pension | Total Loss Including Compensation For Higher Tax On Lump-Sum Payment |
|---|---|---|---|---|---|
| Captain (5/12/2003) and then Lt. Colonel (5/24/2004) | $23,669 | $181,345 | $333,992 | $539,005 | $574,665 |
| (Earnings Table 1 and Pension Table 1) | | | | | |
| Captain (5/12/2003) and then Major (5/24/2004) | $13,631 | $116,341 | $209,687 | $339,659 | $361,265 |
| (Earnings Table 2 and Pension Table 2) | | | | | |
| Captain (5/12/2003) and then two pay grades at Captain (7/19/2004) | $16,474 | $105,306 | $189,637 | $311,417 | $330,947 |
| (Earnings Table 3 and Pension Table 3) | | | | | |
| Captain (5/12/2003) | $12,150 | $88,597 | $157,868 | $258,616 | $274,026 |
| (Earnings Table 4 and Pension Table 4) | | | | | |

CONFIDENTIAL

4

## LOSS OF EARNINGS

Mr. Tobin's loss of earnings in each year is shown in column (5) of Earnings Tables 1 - 4 as the difference between what he would have earned if he had he been promoted [column(4)] and what he will earn without being promoted [column (3)].

## LOSS OF CERTAIN BENEFITS

There are two additional benefits that Mr. Tobin would get with promotion to Captain and above. Instead of shift differential pay being rewarded on an hourly basis, as it is for Senior Lieutenants, Captains and above receive a stipend for working shifts. In 2004 the difference between the total annual stipend and his annualized shift differential pay is $664. ($735 in total annual shift stipends as a Captain minus $71 in shift differential earnings as a Senior Lieutenant) The second benefit that Mr. Tobin would receive as a Captain is the free use of a cell phone. It is my understanding that this value is equivalent to $40 per month for nine months and $50 for the three months that the monthly minute allowance is exceeded. This amounts to an annual value of $510. The total annual value of these two benefits is $1,174. It is assumed that these benefits rise over time at 3.0% per year, the same cost of living adjustment rate assumed for earnings. Column (6) of Earnings Tables 1 - 4 shows the projection of these benefits.

## LOST PAST EARNINGS, INCLUDING CERTAIN BENEFITS

Mr. Tobin's lost past earnings including certain benefits for 2003 and 2004 are calculated in column (7) and are totaled at the bottom of Earnings Tables 1 - 4.

## PRESENT VALUE OF LOST FUTURE EARNINGS

In order to determine the present value of Mr. Tobin's lost future earnings including certain benefits, the loss for each year in the future must be discounted at 5.5% per year to its 2005 value. The present (2005) value of each year's loss is shown in the column (7) of Earnings Tables 1 - 4 up to his retirement. The present values of lost future earnings including certain benefits from January 1, 2005 to the date of his retirement are totaled at the bottom of Earnings Tables 1 - 4.

## LOST PENSION BENEFITS

The pension benefits of New Castle County police officers are based on the last 5 years of earnings and on years of service. Since Mr. Tobin's last five years of earnings will be lower than they would be if he had not been denied promotion, he suffers a reduction in pension benefits. Mr. Tobin's will have 30 years and 2.5 months of service at retirement. Since 1 to 2 months of service count as 1/4th of a year, Mr Tobin will have 30.25 years of service, and for officers with 30.25 years of service, the pension benefit is 75.63% (30.25 years X 2.5%) of the average final

6

In order to compute the tax on lump-sum payments received in 2005, the lump-sum is allocated across each tax bracket beginning with the remainder of the 25% bracket. Each lump sum not only fills the remainder of the 25% bracket, but also entirely fills the 28% and 33% brackets. The amount of each lump sum remaining is taxed at the top tax rate of 35%.

The compensation for the higher tax on each lump sum is the difference between these two tax calculations. The lump-sum tax compensation calculations are added to the present value of Total Lost Earnings and Pension at the bottom of Tables 1-4.


David E. Black, Ph.D.
Associate Professor, Economics
University of Delaware

CONFIDENTIAL

Earnings Table 1

# PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS

## HENRY V. TOBIN III

*Denied Promotions to Captain, May 12, 2003, and to Lt. Colonel, May 24, 2004*

| YEAR (1) | AGE (2) | EARNINGS WITHOUT PROMOTION (3) | EARNINGS WITH PROMOTION (4) | ECONOMIC LOSSES [(4)-(3)] (5) | LOSS OF CERTAIN BENEFITS (6) | PRESENT VALUE OF LOSSES (7) |
|---|---|---|---|---|---|---|
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $103,993 | $19,376 | $1,174 | $20,550 |
| 2005 | 51 | $87,155 | $120,494 | $33,339 | $1,209 | $34,548 |
| 2006 | 52 | $89,769 | $130,313 | $40,543 | $1,245 | $39,610 |
| 2007 | 53 | $92,463 | $140,934 | $48,472 | $1,283 | $44,702 |
| 2008 | 54 | $95,236 | $146,070 | $50,833 | $1,321 | $44,416 |
| 5/30/2009 | 55 | $40,872 | $62,688 | $21,816 | $567 | $18,068 |
| TOTALS | | $541,143 | $757,939 | $216,796 | $7,503 | |

| | |
|---|---|
| LOST PAST EARNINGS AND BENEFITS(2003-2004) | $23,669 |
| PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS | $181,345 |
| PRESENT VALUE OF LOST PENSION (Pension Table 1) | $333,992 |
| PRESENT VALUE OF LOST EARNINGS AND PENSION | $539,005 |
| COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT | $35,660 |
| TOTAL LOSS | $574,665 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Earnings Table 3
## PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS
### HENRY V. TOBIN III

Denied Promotion to Captain, May 12, 2003,
and Denied Mid-Year Increase of Two Pay Grades, July 19, 2004

| YEAR (1) | AGE (2) | EARNINGS WITHOUT PROMOTION (3) | EARNINGS WITH PROMOTION (4) | LOSS OF EARNINGS [(4)-(3)] (5) | LOSS OF CERTAIN BENEFITS (6) | PRESENT VALUE OF LOSSES (7) |
|---|---|---|---|---|---|---|
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $96,798 | $12,182 | $1,174 | $13,356 |
| 2005 | 51 | $87,155 | $110,264 | $23,109 | $1,209 | $24,318 |
| 2006 | 52 | $89,769 | $114,281 | $24,512 | $1,245 | $24,414 |
| 2007 | 53 | $92,463 | $117,710 | $25,247 | $1,283 | $23,836 |
| 2008 | 54 | $95,236 | $121,241 | $26,005 | $1,321 | $23,271 |
| 5/30/2009 | 55 | $40,872 | $2,033 | $11,160 | $567 | $9,467 |
| TOTALS | | $541,143 | $665,773 | $124,630 | $7,503 | |

| | |
|---|---|
| LOST PAST EARNINGS AND BENEFITS(2003-2004) | $16,474 |
| PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS | $105,306 |
| PRESENT VALUE OF LOST PENSION (Pension Table 3) | $189,637 |
| PRESENT VALUE OF LOST EARNINGS AND PENSION | $311,417 |
| COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT | $19,530 |
| TOTAL LOSS | $330,947 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 1

# PRESENT VALUE OF LOST PENSION BENEFITS

## HENRY V. TOBIN III

*Denied Promotions to Captain, May 12, 2003,*
*and to Lt. Colonel, May 24, 2004*

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $18,203 | $14,694 |
| 2010 | 56 | $31,206 | $23,877 |
| 2011 | 57 | $31,206 | $22,632 |
| 2012 | 58 | $31,206 | $21,452 |
| 2013 | 59 | $31,206 | $20,334 |
| 2014 | 60 | $31,206 | $19,274 |
| 2015 | 61 | $31,206 | $18,269 |
| 2016 | 62 | $31,206 | $17,317 |
| 2017 | 63 | $31,206 | $16,414 |
| 2018 | 64 | $31,206 | $15,558 |
| 2019 | 65 | $31,206 | $14,747 |
| 2020 | 66 | $31,206 | $13,978 |
| 2021 | 67 | $31,206 | $13,249 |
| 2022 | 68 | $31,206 | $12,559 |
| 2023 | 69 | $31,206 | $11,904 |
| 2024 | 70 | $31,206 | $11,283 |
| 2025 | 71 | $31,206 | $10,695 |
| 2026 | 72 | $31,206 | $10,138 |
| 2027 | 73 | $31,206 | $9,609 |
| 2028 | 74 | $31,206 | $9,108 |
| 2029 | 75 | $31,206 | $8,633 |
| 2030 | 76 | $31,206 | $8,183 |
| 2031 | 77 | $31,206 | $7,757 |
| 2032 | 78 | $9,882 | $2,328 |
| TOTAL | | $714,616 | |
| PRESENT VALUE OF LOST PENSION | | | **$333,992** |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 3

# PRESENT VALUE OF LOST PENSION BENEFITS

## HENRY V. TOBIN III

*Denied Promotion to Captain, May 12, 2003,*
*and Denied Mid-Year Increase of Two Pay Grades, July 19, 2004*

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $10,336 | $8,343 |
| 2010 | 56 | $17,718 | $13,557 |
| 2011 | 57 | $17,718 | $12,850 |
| 2012 | 58 | $17,718 | $12,180 |
| 2013 | 59 | $17,718 | $11,545 |
| 2014 | 60 | $17,718 | $10,943 |
| 2015 | 61 | $17,718 | $10,373 |
| 2016 | 62 | $17,718 | $9,832 |
| 2017 | 63 | $17,718 | $9,320 |
| 2018 | 64 | $17,718 | $8,834 |
| 2019 | 65 | $17,718 | $8,373 |
| 2020 | 66 | $17,718 | $7,937 |
| 2021 | 67 | $17,718 | $7,523 |
| 2022 | 68 | $17,718 | $7,131 |
| 2023 | 69 | $17,718 | $6,759 |
| 2024 | 70 | $17,718 | $6,407 |
| 2025 | 71 | $17,718 | $6,073 |
| 2026 | 72 | $17,718 | $5,756 |
| 2027 | 73 | $17,718 | $5,456 |
| 2028 | 74 | $17,718 | $5,172 |
| 2029 | 75 | $17,718 | $4,902 |
| 2030 | 76 | $17,718 | $4,646 |
| 2031 | 77 | $17,718 | $4,404 |
| 2032 | 78 | $5,611 | $1,322 |
| TOTAL | | $405,751 | |
| PRESENT VALUE OF LOST PENSION | | | $189,637 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **DONALD E. CAVE, JR.** and<br>**JAMES W. BROWN,** and<br>**JOHN MANTAKOUNAS,**<br><br>         *Petitioners,*<br><br>v.<br><br>**NEW CASTLE COUNTY COUNCIL,**<br>Consisting of Christopher A. Coons,<br>J. Robert Woods, Robert S. Weiner,<br>William J. Tansey, Penrose Hollins,<br>Karen Venezky, Patty W. Powell;<br>**CHURCHMANS CROSSING, LLC**; and<br>**LEON N. WEINER & ASSOCIATES,<br>INC.,**<br><br>         *Respondents.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. NO. 02A-11-006-SCDP<br><br>NON-ARBITRATION CASE |

## RESPONDENT NEW CASTLE COUNTY COUNCIL'S
## REVISED ANSWERING BRIEF

Mary A. Jacobson (#3508)
New Castle County Law Department
87 Reads Way
New Castle, DE 19720
(302) 395-5144
*Attorney for New Castle County Council*

Dated: April 15, 2004

## STATEMENT OF FACTS

Churchmans Meadows is a 33.16 +/- acre affordable housing development site located in the White Clay Hundred section of New Castle County. Churchmans Meadows is bordered partly to the southwest by a property known as the Christiana Town Center. The two properties are part of a transportation study called the Churchmans Crossing Study ("Study"). The Study depicts a bypass traversing the properties and connecting State Route 7 to State Route 273 known as the Churchmans Bypass ("Bypass"). The Bypass was put on the study by the property owners, without any analysis, as a conceptual idea that was intended to be constructed by the property owners. CCM-11[1]. DelDOT never agreed to make the Bypass a committed right-of-way. *Id.*

Leon N. Weiner and Associates, Inc. ("Weiner") took the Plan through the New Castle County Land Subdivision Regulations known as the Unified Development Code ("UDC'). As required by the UDC, the preliminary plan was reviewed by the Technical Advisory Committee ("TAC") for compliance with County and State law. On November 6, 2001, a meeting of the New Castle County Planning Board ("Planning Board") was scheduled to review the TAC comments. Notice of the Planning Board meeting was advertised in the News Journal. Exhibit A. Notice of the Planning Board meeting was also sent to all property owners within a three hundred foot radius of Churchmans Meadows. Exhibit B. In addition, Weiner posted notice of the Planning Board hearing on a sign located on the Churchmans Meadows property. Exhibit C. In August of 2002, Weiner was successful in satisfying all of the requirements of the UDC and obtained approval from the New Castle County Land Use Department ("Department") pursuant to section 40.31.114(B) of the UDC. The Plan was then scheduled for the September 2, 2002

---

[1] Citations to the meeting of the New Castle County Council on September 10, 2002 are denoted by a "CCM-" followed by a page number.

County developed the private interest, the owners of those pieced of land, would have to contribute to both the right-of-way and the capital necessary to build those connector roads to wherever they might land." CCM-11.

When the Plan was submitted for review, DelDOT and Weiner met and discussed the appropriate alignment of Bypass that satisfied the need for local circulation in the area and the property owners need to develop the site. CCM-11. In the end, the alignment in the Plan was determined to be sufficient to carry traffic across Churchmans Meadows and connect intelligently with the adjoining property of the Christiana Town Center. CCM-12. The Department agreed with location of the Bypass on the Plan and determined that the Plan and the Bypass met all of the requirements of the UDC.

Council, after deliberation and discussion, consented to the approval of the Plan by a vote of 5 "yes", 1 "no", and 1 "abstained". CCM-30, 31. The plans was recorded in the Recorder of Deeds for New Castle County on September 1, 2003.

4

## ARGUMENT

### I.    COUNCIL'S DECISION TO CONSENT TO THE APPROVAL OF THE PLAN SHOULD NOT BE REVERSED.

#### A.    Council's decision to consent to the approval of the Plan should only be reversed if the Court determines that Council did not properly follow the record plan submission requirements.

Assuming *arguendo* that the Court finds Petitioners posses standing to invoke its jurisdiction and the matter should be dismissed for Petitioners failure to join an indispensable party, upon review, the Court must determine whether there were "some kind of procedural irregularities that allows [it] to say that [Council has] violated the provisions of UDC or state law, or that requires this Court in some way to substitute its judgment for that of [Council]." *Concord Towers, Inc.,* 1997 WL 525860 *4. "The word 'irregularity' should be used in the specific context of a failure to follow procedures." *Id.*

Procedurally, the record plan submission requirements provide that once a plan is approved by the Department, it is referred to Council for its consent and recordation. Council must then schedule the plan for its next scheduled meeting. *UDC* § 40.31.114.[3] At the public meeting, Council may either adopt the resolution consenting to the recordation of the plan or table the matter, no more than twice, and refer it back to the Department with questions relating to the plan's technical compliance with the law. *UDC* § 40.31.114(C)(1)(a) and (b). Upon final consent to the plan, the plan must be recorded in the Office of the Recorder of Deeds. *UDC* § 40.31.114(E).

In August of 2002, the Plan was referred to Council by the Department with a statement that the Plan met all of requirements of the UDC. The Plan was then scheduled for the next meeting of County Council on September 10, 2002. Prior to the County Council meeting, a meeting of the

---

[3]  Citations to provisions of the UDC in this Brief may be found in the Compendium of Unreported Opinions and UDC provisions which was filed on April 29, 2003.

6

are adopted by resolution. *UDC* § 40.31.114(C). A resolution is simply an expression of the opinion or will of a body that does not have the force of effect of law. *Black's Law Dictionary*, 6th Ed. Resolutions are used to regulate administrative or ministerial matters that are temporary in nature. *Freedman v. Longo*, 1994 WL 469159 *3 (Del.Ch.). The Delaware Supreme Court has similarly approved action by resolution, rather than ordinance, where the governing body merely consents to the proposed action of another body. *Id; citing Piekarski v. Smith*, 153 A.2d 587, 591 (Del. 1959). Council's consent to approval of the Plan is clearly ministerial in nature. *Rappa v. Buck*, 275 A.2d 795 (Del. Super. 1971); *Acierno v. Folsom*, 337 A.2d 309, 313 (Del. 1975). Therefore, the Court's review is limited to a determination of whether procedural irregularities occurred.

**B.      Even reviewed under the substantial evidence standard, Council's actions were appropriate.**

Even under a substantial evidence analysis the acts of Council must be upheld. Substantial evidence is that evidence from which an agency fairly and reasonably could reach the conclusion it did. It is more than a scintilla but less than a preponderance. *Mellow v. Board of Adjustment*, 565 A.2d 947, 954 (Del. Super. 1988), 567 A.2d 422 (Del. 1989). If the decision is supported by substantial evidence, the Court must sustain the decision of the governmental body, even though it would have decided otherwise had it come before it in the first instance. *Id.* The Court will not disturb a decision simply because a different view of the same evidence could be taken given the totality of the circumstances surrounding the application. *Council of Civic Associations of Brandywine Hundred v. Board of Adjustment*, 682 A.2d 675 (Del. 1996). The Court merely determines if the evidence is legally adequate to support the findings; it does not sit as a trier of fact with authority to weigh evidence, determine questions of credibility, and make its own factual findings and conclusions. *Petrucelli v. Board of Adjustment*, 1998 WL 283381 (Del. Super.).

8

As stated *supra*, the road connecting these two properties was never intended to serve as a committed right-of-way in the Study. CCM-11. Rather, it was intended to indicate a developer proposed roadway. Id. Moreover, just because Mr. Acierno placed the location of the Bypass in a particular location on his plan that uniquely serves his parcel without regard to those around him, does not create a local circulation plan. The only relevant reference to this road is that it will some way connect Route 273 to Route 7. The Study does not identify the location with certainty. The location of a road can vary to a large degree based upon the zoning, topography, and alignment information that is provided to DelDOT prior to construction of the road. *UDC* § 40.21.111. In addition, there was never any commitment by DelDOT that the roads connecting these properties would be located in the place indicated by the Christiana Town Center plan. In fact, Secretary Hayward stated that the owners of these two properties never expected to have a particular alignment. CCM-11. This statement is supported by the lack of any studies or analysis conducted to determine the feasibility of the road location in the place depicted on the Christiana Town Center plan. To the contrary, Secretary Hayward stated that negotiations, surveys, and analysis had been conducted on the current location of the road on the Plan and determined that this location is both appropriate and feasible. CCM-11,12.

Petitioners further contend that the location of the road does not work in a manner that is equal or paramount to the alignment in the Study. DelDOT thoroughly reviewed the plan and determined that it is consistent with the Study. LUC-13. The General Manager of the Department, Charles Baker, echoed this sentiment by stating that "the correspondence and analysis that DelDOT went through, they came to the conclusion that the function of the alignment of the road connecting the properties" depicted on the Plan functioned effectively. LUC- 34. In addition, DelDOT has investigated the feasibility of crossing the wetlands and has determined that it is possible with a

Council's approval would be the property owners, Respondents Churchmans Crossing LLC and Leon N. Weiner & Associates, Inc.

Although Petitioners were not entitled to procedural due process in connection with Council's consent to approve the Plan, significant notice and opportunity were provided to all interested parties.   Upon the scheduling of the Plan for review before the Planning Board to address the technical advisory committee comments, the Department advertised the applications in the legal notice section of the Saturday issue of *the News Journal* fourteen calendar days prior to the public hearing date.  Exhibit A.   The Department also sent a copy of the legal notice of the Planning Board Hearing to the last known address of all property owners within a three hundred feet radius of the property at issue or twelve different property owners, whichever is greater, within ten calendar days prior to the Planning Board Hearing.[4] Exhibit B. In addition, Weiner posted a notice of the Planning Board Hearing on the property in a conspicuous location, at an appropriate size, so that all interested parties would be advised of the hearing.  Exhibit C. Furthermore, all such notices indicate that the files for these particular plans are available in the offices of the Department for review.

Similarly, Council advertised the Land Use Committee meeting, both in the *News Journal* and  outside the chambers of council as required by the Delaware Freedom of Information Act.  Exhibit D and E.  The meeting of County Council at which the Plan was adopted was also dully notice in the News Journal the Saturday preceding the meeting.  Exhibit F.

---

[4] It should be noted that if Petitioner Cave are any relationship to the trustees of the estate of Pearl M. Cave they received notice of the New Castle County Planning Board hearing.  Exhibit B.

## CONCLUSION

It is clear that Council's actions were in conformance with the land subdivision regulations of the UDC and supported by substantial evidence. Therefore, Council's action must be upheld and the matter before the Court dismissed. Finally, despite Petitioners lack of entitlement to due process of the law, sufficient notice and opportunity was given to review and comment on the Plan prior to its adoption. Thus, this claim also must be dismissed.

NEW CASTLE COUNTY LAW DEPARTMENT


_____
Mary A. Jacobson (#3508)
First Assistant County Attorney
New Castle County Government Center
87 Reads Way
New Castle, DE 19720
Attorney for Respondent New Castle County Council

Dated: April 15, 2004

# EXHIBIT

# 2

LAW OFFICE

OF

# JOHN M. LaRosa

TWO EAST 7TH STREET, SUITE 302

WILMINGTON, DELAWARE 19801-3707

PHONE: (302) 888-1290

FAX:    (302) 655-9329

LICENSED IN DE, PA, AND NJ

INTERNET: WWW.LaRosaLaw.COM

October 3, 2006                    **PERSONAL AND CONFIDENTIAL**

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Gregg E. Wilson, Esquire
County Attorney
New Castle County Law Department
87 Reads Way
New Castle, DE 19720-1648



RE:    <u>**Tobin v. Gordon, et al. C.A. No. 04-1211 KAJ**</u>

Dear Gregg:

I am an attorney representing Lieutenant Henry V. Tobin III in the above captioned

federal lawsuit. While my co-counsel, Thomas Neuberger, tends to other matters, I am handling

this case. So I believe continued settlement discussions at the outset of the litigation are

appropriate. This letter is subject to the normal protections of Federal Rule of Evidence 408.

Nothing contained herein shall be deemed to be an admission against my client's interest. This

letter is sent in the course of settlement discussions.

Resuming negotiations at the outset of the litigation is in the best interest of all parties.

My client's case essentially is about the economic impact of being denied promotion to Captain,[1]

---

[1] There are several components of damages in this case including emotional distress,
injury to reputation, humiliation and embarrassment, and punitive damages. However,
recognizing that juries respond primarily to economic losses, only wage and pension losses and
attorneys' fees will be discussed. The value of the wage, pension, and other economic losses in

Gregg E. Wilson, Esquire
County Attorney
October 3, 2006
Page 2

and he recently felt vindicated when the former interim Colonel and current Lieutenant Colonel

Scott McClaren admitted that he deserved to be promoted to Captain a long time ago. With the

passage of time, my client also has been able to distance himself from the hurt of being passed

over for promotion, and he now fully realizes that the adverse employment actions were not due

to any fault of his own. Thus, he would like to settle the case and move on with his life.

Also, my client has learned that another Captain position soon will become vacant, and he

plans to apply for it. He excelled at the testing in the past, and now with the old administration

no longer affecting his chances, we expect that he will have a fair shot to earn such a promotion

which would partially mitigate his damages. So I believe that now is an appropriate time to make

a renewed settlement demand. CONFIDENTIAL

I also believe that continued settlement discussions at the outset of the litigation are in the

County's best interest for several reasons. First, at this early stage, Defendants' attorneys' fees

have not yet escalated as they have in other County employment cases. For instance, I

understand that in one case alone, Reyes v. Freebery, C.A. No. 02-1283 SLR, the County's legal

fees for outside counsel just through discovery exceeded $650,000. Secondly, there is reduced

exposure here because Plaintiff's attorneys' fees are only a fraction of what they will be if the

---

the case ranges from $275,000; to $331,000; to $361,000; to $574,000. The latter two figures are
for lost promotion opportunities beyond captain. Lieutenant Tobin's pension loss is as high as
$333,992, as explained by our forensic economist, David E. Black, Ph.D. See Ex. A. So our
client's economic loss is as high as $574,000. The other exposure for which there should be
compensation is our client's attorneys' fees and expenses which to date approximates $35,000.
So Defendants' exposure for economic losses and plaintiff's attorneys' fees to date ranges
between $310,000 and $609,000.

Gregg E. Wilson, Esquire
County Attorney
October 3, 2006
Page 3

case is litigated through trial. Thus, an early resolution here undoubtedly will save the County

taxpayers hundreds of thousands of dollars in legal fees.

Finally, this proposal is being made as to all defendant in this case, including the former

county executive and chief administrative officer. So the entire case will end.

Resuming settlement discussions at the outset of the litigation is in the best interest of all

parties. I am serious about settlement, and I remain optimistic that we can ultimately settle the

case for a figure acceptable to all involved. For now, my client has authorized me to move from

his previous $1.5 million demand and make a new settlement offer of **$600,000**.

I believe the proposal speaks for itself. Nevertheless, please contact me if you have any

questions about this offer. The offer expires thirty (30) calendar days from the date of this letter.

I look forward to hearing your response to this proposal.

Respectfully submitted,

CONFIDENTIAL

John M. LaRosa

Enclosures

cc:     Thomas S. Neuberger, Esquire
        Lieutenant Henry V. Tobin III

# CALCULATION OF THE PRESENT VALUE OF THE ECONOMIC LOSS

# FROM LOST EARNINGS AND PENSION

# DUE TO RETALIATORY DENIALS OF PROMOTION

CONFIDENTIAL

## HENRY V. TOBIN III

Prepared by

David E. Black, Ph.D.

Economist

January 20, 2005

Henry V. Tobin III is a Senior Lieutenant in the New Castle County Police Department where he has been employed since February 19, 1979. He was denied promotion to Captain on May 12, 2003. Because he was denied this promotion, several other promotion opportunities were denied him. On July 19, 2004, two Captains were each given increases of two grades. One of these Captains was the Lieutenant who was promoted over Mr. Tobin on May 12, 2003. In addition, on May 24, 2004, there were promotion opportunities from Captain to Major and also to Lt. Colonel. It is Mr. Tobin's contention that these denied promotions were due to his exercise of his First Amendment free speech rights in reporting wrongdoing to federal authorities.

This report estimates the economic loss which results from Mr. Tobin's loss of the additional earnings including certain additional benefits and pension benefits which he would have had with promotion to Captain and with subsequent promotions. Losses are calculated for four denied promotion scenarios:

> Denied Promotions to Captain, May 12, 2003
> and to Lt. Colonel, May 24, 2004
>
> Denied Promotions to Captain, May 12, 2003
> and to Major, May 24, 2004
>
> Denied Promotion to Captain, May 12, 2003
> and denied mid-year increase of two pay grades, July 19, 2004
>
> Denied Promotion to Captain, May 12, 2003

Lost earnings are calculated from the various dates of promotion. It is assumed that Mr. Tobin will retire at age 55, the mandatory retirement age. Mr. Tobin is now 50.1 years old, and his life expectancy is 77.5 years. (U.S. Department of Health and Human Services, National Vital Statistics Reports, 1996, United States Abridged Life Tables) The present value of lost future earnings including certain benefits and pension benefits are computed as of 2005 by applying a 5.5% rate of discount to future losses. This report also calculates the compensation for the higher tax that will be imposed on the lump-sum compensation for the total loss.

The following presents the assumptions and calculations involved in determining the present value of Mr. Tobin's lost earnings including certain benefits and pension benefits.

2

Summary of Results, Present Values of Losses:

| Promotion | Lost Past Earnings Including Benefits | Lost Future Earnings Including Benefits | Lost Pension | Total Lost Earnings Plus Pension | Total Loss Including Compensation For Higher Tax On Lump-Sum Payment |
|---|---|---|---|---|---|
| Captain (5/12/2003) and then Lt. Colonel (5/24/2004) | $23,669 | $181,345 | $333,992 | $539,005 | $574,665 |
| (Earnings Table 1 and Pension Table 1) | | | | | |
| Captain (5/12/2003) and then Major (5/24/2004) | $13,631 | $116,341 | $209,687 | $339,659 | $361,265 |
| (Earnings Table 2 and Pension Table 2) | | | | | |
| Captain (5/12/2003) and then two pay grades at Captain (7/19/2004) | $16,474 | $105,306 | $189,637 | $311,417 | $330,947 |
| (Earnings Table 3 and Pension Table 3) | | | | | |
| Captain (5/12/2003) | $12,150 | $88,597 | $157,868 | $258,616 | $274,026 |
| (Earnings Table 4 and Pension Table 4) | | | | | |

CONFIDENTIAL

3

## EARNINGS WITHOUT PROMOTION

Mr. Tobin's earnings without promotion are projected in column (3) of Earnings Tables 1 - 4 from the date at which his promotion to Captain is denied on May 12, 2003 to age 55 which is the mandatory retirement age for police officers in New Castle County. At the time he was denied this promotion, Mr. Tobin was earning at a Senior Lieutenant's grade, step 10. (Pay Plan and Rates of Pay for FOP Lodge No. 5, effective April 1, 2004, P001. The rate for 2003 is derived based on a 3.0% cost of living increase.) It is assumed that Mr. Tobin remains at this pay grade and step until his retirement at age 55. Cost of living raises of 3.0% are added annually on April 1.

## EARNINGS WITH PROMOTION

Earnings with promotion are projected in column (4) of Earnings Tables 1 - 4 from the date at which Mr. Tobin's promotion to Captain was denied. In Earnings Table 4, it is assumed that Mr. Tobin is only denied a promotion to Captain. Earnings are projected starting with Captain's grade, pay step 2. (Pay step 2 is used because it is the lowest pay step which pays an hourly rate which is higher than what Mr. Tobin was earning as a Senior Lieutenant.) Pay progressions to higher pay steps are assumed to occur on Mr. Tobin's anniversary date, and cost of living increases of 3.0% are assumed to occur on April 1 of each year. (Pay Plan and Rates of Pay for Non-Union Classified Police Executive Staff, effective April 1, 2004, P002)

In column (4) of Earnings Table 3, it is assumed that Mr. Tobin is denied mid-year increases of two pay grades on July 19, 2004. It is my understanding that pay increases are normally given on an individual's anniversary date, however on July 19, 2004, two Captains each received two pay grade increases. One of these Captains was the Lieutenant who was promoted over Mr. Tobin on May 12, 2003. Beyond July 19, 2004, earnings are projected for this pay grade in the same way as described for Earnings Table 4 above. (Pay Plan and Rates of Pay for Non-Union Classified Police Executive Staff, effective April 1, 2004, P002)

In column (4) of Earnings Table 2, it is assumed that if Mr. Tobin had been promoted to Captain on May 12, 2003, he would have been promoted to Major on May 24, 2004 at the lowest pay step. Beyond May 24, 2004, earnings are projected for this pay grade in the same way as described for Earnings Table 4 above. (Pay Plan and Rates of Pay for Non-Union Classified Police Executive Staff, effective April 1, 2004, P002)

In column (4) of Earnings Table 1, it is assumed that if Mr. Tobin had been promoted to Captain on May 12, 2003, he would have been promoted to Lieutenant Colonel on May 24, 2004 at the lowest pay step. Beyond May 24, 2004, earnings are projected for this pay grade in the same way as described for Earnings Table 4 above. (Pay Plan and Rates of Pay for Non-Union Classified Police Executive Staff, effective April 1, 2004, P002)

4

## LOSS OF EARNINGS

Mr. Tobin's loss of earnings in each year is shown in column (5) of Earnings Tables 1 - 4 as the difference between what he would have earned if he had he been promoted [column(4)] and what he will earn without being promoted [column (3)].

## LOSS OF CERTAIN BENEFITS

There are two additional benefits that Mr. Tobin would get with promotion to Captain and above. Instead of shift differential pay being rewarded on an hourly basis, as it is for Senior Lieutenants, Captains and above receive a stipend for working shifts. In 2004 the difference between the total annual stipend and his annualized shift differential pay is $664. ($735 in total annual shift stipends as a Captain minus $71 in shift differential earnings as a Senior Lieutenant) The second benefit that Mr. Tobin would receive as a Captain is the free use of a cell phone. It is my understanding that this value is equivalent to $40 per month for nine months and $50 for the three months that the monthly minute allowance is exceeded. This amounts to an annual value of $510. The total annual value of these two benefits is $1174. It is assumed that these benefits rise over time at 3.0% per year, the same cost of living adjustment rate assumed for earnings. Column (6) of Earnings Tables 1 - 4 shows the projection of these benefits.

## LOST PAST EARNINGS, INCLUDING CERTAIN BENEFITS

Mr. Tobin's lost past earnings including certain benefits for 2003 and 2004 are calculated in column (7) and are totaled at the bottom of Earnings Tables 1 - 4.

## PRESENT VALUE OF LOST FUTURE EARNINGS

In order to determine the present value of Mr. Tobin's lost future earnings including certain benefits, the loss for each year in the future must be discounted at 5.5% per year to its 2005 value. The present (2005) value of each year's loss is shown in the column (7) of Earnings Tables 1 - 4 up to his retirement. The present values of lost future earnings including certain benefits from January 1, 2005 to the date of his retirement are totaled at the bottom of Earnings Tables 1 - 4.

## LOST PENSION BENEFITS

The pension benefits of New Castle County police officers are based on the last 5 years of earnings and on years of service. Since Mr. Tobin's last five years of earnings will be lower than they would be if he had not been denied promotion, he suffers a reduction in pension benefits. Mr. Tobin's will have 30 years and 2.5 months of service at retirement. Since 1 to 2 months of service count as 1/4th of a year, Mr Tobin will have 30.25 years of service, and for officers with 30.25 years of service, the pension benefit is 75.63% (30.25 years X 2.5%) of the average final

5

five years of earnings.

For Mr. Tobin, the difference in average earnings over the last 5 years is computed using column (5) in Earnings Tables 1 - 4. Column (3) of Pension Tables 1 - 4 shows 75.63% of this difference [column (5)] for every year after his retirement up to the end of his life expectancy. Present values are calculated in column (4) of Pension Tables 1 - 4. The sum of these present values is the total present value of his lost pension benefits which is shown at the bottom of Pension Tables 1 - 4.

## COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT

Because the Federal Income Tax is a graduated tax, a lump-sum payment covering the present value of Mr. Tobin's lost earnings and pension will be taxed at a higher federal rate than the lost earnings and pension would have been taxed if these earnings and pension are paid in the years in which they should have been or should be paid. (It is assumed that payroll taxes on a lump-sum payment will be the same as on annual payments. The State of Delaware income tax rate is constant in the range of taxable income that applies in this case and therefore would also be the same for a lump-sum payment as for annual payments.)

Part of Mr. Tobin's loss is not taxable. Because his loss of certain benefits [column (6) in Tables 1 - 4] is not subject to taxation, this part of his loss must be excluded from consideration in the calculation of compensation for the higher tax on his lump-sum payment. In order to compute Mr. Tobin's taxable loss, the present value of lost earnings and pension is recalculated in Tables 1 - 4 by subtracting the present value of certain benefits, $7,003. The resulting present value of taxable lost of earnings and pension for Tables 1 - 4 are respectively $532,003, $332,656, $304,414, and $251,613.

The higher Federal Income Taxation of a lump-sum payment made to Mr. Tobin is calculated by computing the present value of the taxes that would be imposed on lost annual payments of earnings and pension and subtracting this from the 2005 taxes that would be imposed on the lump-sum present value of these payments. The Tobin's estimated 2005 taxable income, $109,494, places them in the 25% marginal tax bracket, i.e., their last dollars of taxable income are taxed at a 25% rate. If Mr Tobin's lost 2005 earnings are added to his estimated taxable income, $10,456 of his 2005 loss would be taxed at 25% and the remainder would fall into the next marginal bracket and be taxed at 28%. For each loss scenario, his annual losses in some years would be taxed at both 25% and 28% as in 2005, but his annual losses in other years would be taxed entirely at 25%. In order to compute the present value of the taxes on all his annual payments, the total present value of earnings and pension which would be subject to a 25% tax rate was calculated. Subtracting this amount from the relevant lump-sum amount leaves the present value of income and pension taxed at 28%. Applying the appropriate tax rates to each of these present values and adding the results together, yields the present value of the taxes on his annual payments. This method of calculation assumes that the Tobin's 2003 tax status remains the same over time.

6

In order to compute the tax on lump-sum payments received in 2005, the lump-sum is allocated across each tax bracket beginning with the remainder of the 25% bracket.  Each lump sum not only fills the remainder of the 25% bracket, but also entirely fills the 28% and 33% brackets.  The amount of each lump sum remaining is taxed at the top tax rate of 35%.

The compensation for the higher tax on each lump sum is the difference between these two tax calculations.  The lump-sum tax compensation calculations are added to the present value of Total Lost Earnings and Pension at the bottom of Tables 1-4.

David E. Black, Ph.D.
Associate Professor, Economics
University of Delaware

CONFIDENTIAL

7

List of Documents Reviewed for this Report

1.    The Pay grades for his (Mr. Tobin's) current rank (Sr. Lieutenant), the rank he was denied (Police Captain), and other ranks (P1-3).

2.    Description of Supplemental Staff Benefits for the ranks of Captain and higher (P4).

3.    A summary of his 2004 year-to-date earnings and benefits (P5).

4.    His W-2's from Defendant New Castle County from 1994-2003 (P6-15).

5.    Amendment to New Castle County Code regarding pensions. (P16-37).

6.    New Castle County Code Chapter 11A entitled "Pensions."  (P38-149).

7.    New Castle County Employee's Pension Program.  (P150-162).

8.    U.S. Department of Health and Human Services, National Vital Statistics Reports, 1996, United States Abridged Life Tables.

CONFIDENTIAL

Earnings Table 1

# PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS

## HENRY V. TOBIN III

*Denied Promotions to Captain, May 12, 2003, and to Lt. Colonel, May 24, 2004*

| YEAR (1) | AGE (2) | EARNINGS WITHOUT PROMOTION (3) | EARNINGS WITH PROMOTION (4) | ECONOMIC LOSSES [(4)-(3)] (5) | LOSS OF CERTAIN BENEFITS (6) | PRESENT VALUE OF LOSSES (7) |
|---|---|---|---|---|---|---|
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $103,993 | $19,376 | $1,174 | $20,550 |
| 2005 | 51 | $87,155 | $120,494 | $33,339 | $1,209 | $34,548 |
| 2006 | 52 | $89,769 | $130,313 | $40,543 | $1,245 | $39,610 |
| 2007 | 53 | $92,462 | $140,934 | $48,472 | $1,283 | $44,702 |
| 2008 | 54 | $95,236 | $146,070 | $50,833 | $1,321 | $44,416 |
| 5/30/2009 | 55 | $40,872 | $62,688 | $21,816 | $567 | $18,068 |
| TOTALS | | $541,143 | $757,939 | $216,796 | $7,503 | |

CONFIDENTIAL

| | |
|---|---|
| LOST PAST EARNINGS AND BENEFITS(2003-2004) | $23,669 |
| PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS | $181,345 |
| PRESENT VALUE OF LOST PENSION (Pension Table 1) | $333,992 |
| PRESENT VALUE OF LOST EARNINGS AND PENSION | $539,005 |
| COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT | $35,660 |
| TOTAL LOSS | $574,665 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Earnings Table 2

# PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS

## HENRY V. TOBIN III

*Denied Promotions to Captain, May 12, 2003, and to Major, May 24, 2004*

CONFIDENTIAL

| YEAR (1) | AGE (2) | EARNINGS WITHOUT PROMOTION (3) | EARNINGS WITH PROMOTION (4) | ECONOMIC LOSSES [4]-[3] (5) | LOSS OF CERTAIN BENEFITS (6) | PRESENT VALUE OF LOSSES (7) |
|---|---|---|---|---|---|---|
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $93,955 | $9,339 | $1,174 | $10,513 |
| 2005 | 51 | $87,155 | $104,511 | $17,356 | $1,209 | $18,565 |
| 2006 | 52 | $89,769 | $113,317 | $23,548 | $1,245 | $23,501 |
| 2007 | 53 | $92,462 | $122,553 | $30,091 | $1,283 | $28,187 |
| 2008 | 54 | $95,236 | $132,541 | $37,305 | $1,321 | $32,894 |
| 5/30/2009 | 55 | $40,872 | $56,650 | $15,778 | $567 | $13,194 |
| TOTALS | | $541,143 | $676,974 | $135,830 | $7,503 | $13,631 |

| | |
|---|---|
| LOST PAST EARNINGS AND BENEFITS(2003-2004) | $13,631 |
| PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS | $116,341 |
| PRESENT VALUE OF LOST PENSION (Pension Table 2) | $209,687 |
| PRESENT VALUE OF LOST EARNINGS AND PENSION | $339,659 |
| COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT | $21,606 |
| TOTAL LOSS | $361,265 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Earnings: Table 3

# PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS

## HENRY V. TOBIN III

*Denied Promotion to Captain, May 12, 2003,*
*and Denied Mid-Year Increase of Two Pay Grades, July 19, 2004*

| YEAR | AGE | EARNINGS WITHOUT PROMOTION | EARNINGS WITH PROMOTION | LOSS OF EARNINGS [(4)-(3)] | LOSS OF CERTAIN BENEFITS | PRESENT VALUE OF LOSSES |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $96,798 | $12,182 | $1,174 | $13,356 |
| 2005 | 51 | $87,155 | $110,264 | $23,109 | $1,209 | $24,318 |
| 2006 | 52 | $89,769 | $114,281 | $24,512 | $1,245 | $24,414 |
| 2007 | 53 | $92,463 | $117,710 | $25,247 | $1,283 | $23,836 |
| 2008 | 54 | $95,236 | $121,241 | $26,005 | $1,321 | $23,271 |
| 5/30/2009 | 55 | $40,872 | $52,033 | $11,160 | $567 | $9,467 |
| TOTALS | | $541,143 | $665,773 | $124,630 | $7,503 | |

*(CONFIDENTIAL)*

| | |
|---|---|
| LOST PAST EARNINGS AND BENEFITS(2003-2004) | $16,474 |
| PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS | $105,306 |
| PRESENT VALUE OF LOST PENSION (Pension Table 3) | $189,637 |
| PRESENT VALUE OF LOST EARNINGS AND PENSION | $311,417 |
| COMPENSATION FOR HIGHER TAX ON LUMP-SUM PAYMENT | $19,530 |
| TOTAL LOSS | $330,947 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Earnings Table 4

# PRESENT VALUE OF LOST EARNINGS AND CERTAIN BENEFITS

## HENRY V. TOBIN III

*Denied Promotion to Captain, May 12, 2003*

| YEAR (1) | AGE (2) | EARNINGS WITHOUT PROMOTION (3) | EARNINGS WITH PROMOTION (4) | LOSS OF EARNINGS [(4)-(3)] (5) | LOSS OF CERTAIN BENEFITS (6) | PRESENT VALUE OF LOSSES (7) |
|---|---|---|---|---|---|---|
| 5/12/2003 | 49 | $51,032 | $53,447 | $2,415 | $703 | $3,118 |
| 2004 | 50 | $84,616 | $92,475 | $7,858 | $1,174 | $9,032 |
| 2005 | 51 | $87,155 | $100,012 | $12,857 | $1,209 | $14,066 |
| 2006 | 52 | $89,769 | $108,162 | $18,393 | $1,245 | $18,615 |
| 2007 | 53 | $92,463 | $116,979 | $24,516 | $1,283 | $23,179 |
| 2008 | 54 | $95,236 | $121,241 | $26,005 | $1,321 | $23,271 |
| 5/30/2009 | 55 | $40,872 | $52,033 | $11,160 | $567 | $9,467 |
| TOTALS | | $541,143 | $644,348 | $103,204 | $7,503 | |

CONFIDENTIAL

LOST PAST EARNINGS AND BENEFITS (2003-2004)                                      $12,150

PRESENT VALUE OF LOST FUTURE EARNINGS AND BENEFITS                     $88,597

PRESENT VALUE OF LOST PENSION (Pension Table 4)                               $157,868

PRESENT VALUE OF LOST EARNINGS AND PENSION                                   $258,616

COMPENSATION FOR HIGHER TAX ON
LUMP-SUM PAYMENT                                                                                  $15,410

TOTAL LOSS                                                                                               $274,026

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 1

# PRESENT VALUE OF LOST PENSION BENEFITS
## HENRY V. TOBIN III

*Denied Promotions to Captain, May 12, 2003,*
*and to Lt. Colonel, May 24, 2004*

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $18,203 | $14,694 |
| 2010 | 56 | $31,206 | $23,877 |
| 2011 | 57 | $31,206 | $22,632 |
| 2012 | 58 | $31,206 | $21,452 |
| 2013 | 59 | $31,206 | $20,334 |
| 2014 | 60 | $31,206 | $19,274 |
| 2015 | 61 | $31,206 | $18,269 |
| 2016 | 62 | $31,206 | $17,317 |
| 2017 | 63 | $31,206 | $16,414 |
| 2018 | 64 | $31,206 | $15,558 |
| 2019 | 65 | $31,206 | $14,747 |
| 2020 | 66 | $31,206 | $13,978 |
| 2021 | 67 | $31,206 | $13,249 |
| 2022 | 68 | $31,206 | $12,559 |
| 2023 | 69 | $31,206 | $11,904 |
| 2024 | 70 | $31,206 | $11,283 |
| 2025 | 71 | $31,206 | $10,695 |
| 2026 | 72 | $31,206 | $10,138 |
| 2027 | 73 | $31,206 | $9,609 |
| 2028 | 74 | $31,206 | $9,108 |
| 2029 | 75 | $31,206 | $8,633 |
| 2030 | 76 | $31,206 | $8,183 |
| 2031 | 77 | $31,206 | $7,757 |
| 2032 | 78 | $9,882 | $2,328 |
| TOTAL | | $714,616 | |
| PRESENT VALUE OF LOST PENSION | | | $333,992 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 2

# PRESENT VALUE OF LOST PENSION BENEFITS

## HENRY V. TOBIN III

### Denied Promotions to Captain, May 12, 2003, and to Major, May 24, 2004

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $11,429 | $9,225 |
| 2010 | 56 | $19,592 | $14,990 |
| 2011 | 57 | $19,592 | $14,209 |
| 2012 | 58 | $19,592 | $13,468 |
| 2013 | 59 | $19,592 | $12,766 |
| 2014 | 60 | $19,592 | $12,100 |
| 2015 | 61 | $19,592 | $11,470 |
| 2016 | 62 | $19,592 | $10,872 |
| 2017 | 63 | $19,592 | $10,305 |
| 2018 | 64 | $19,592 | $9,768 |
| 2019 | 65 | $19,592 | $9,258 |
| 2020 | 66 | $19,592 | $8,776 |
| 2021 | 67 | $19,592 | $8,318 |
| 2022 | 68 | $19,592 | $7,885 |
| 2023 | 69 | $19,592 | $7,474 |
| 2024 | 70 | $19,592 | $7,084 |
| 2025 | 71 | $19,592 | $6,715 |
| 2026 | 72 | $19,592 | $6,365 |
| 2027 | 73 | $19,592 | $6,033 |
| 2028 | 74 | $19,592 | $5,718 |
| 2029 | 75 | $19,592 | $5,420 |
| 2030 | 76 | $19,592 | $5,138 |
| 2031 | 77 | $19,592 | $4,870 |
| 2032 | 78 | $6,204 | $1,462 |
| TOTAL |  | $448,652 |  |
| PRESENT VALUE OF LOST PENSION |  |  | **$209,687** |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 3

# PRESENT VALUE OF LOST PENSION BENEFITS
## HENRY V. TOBIN III

*Denied Promotion to Captain, May 12, 2003,*
*and Denied Mid-Year Increase of Two Pay Grades, July 19, 2004*

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $10,336 | $8,343 |
| 2010 | 56 | $17,718 | $13,557 |
| 2011 | 57 | $17,718 | $12,850 |
| 2012 | 58 | $17,718 | $12,180 |
| 2013 | 59 | $17,718 | $11,545 |
| 2014 | 60 | $17,718 | $10,943 |
| 2015 | 61 | $17,718 | $10,373 |
| 2016 | 62 | $17,718 | $9,832 |
| 2017 | 63 | $17,718 | $9,320 |
| 2018 | 64 | $17,718 | $8,834 |
| 2019 | 65 | $17,718 | $8,373 |
| 2020 | 66 | $17,718 | $7,937 |
| 2021 | 67 | $17,718 | $7,523 |
| 2022 | 68 | $17,718 | $7,131 |
| 2023 | 69 | $17,718 | $6,759 |
| 2024 | 70 | $17,718 | $6,407 |
| 2025 | 71 | $17,718 | $6,073 |
| 2026 | 72 | $17,718 | $5,756 |
| 2027 | 73 | $17,718 | $5,456 |
| 2028 | 74 | $17,718 | $5,172 |
| 2029 | 75 | $17,718 | $4,902 |
| 2030 | 76 | $17,718 | $4,646 |
| 2031 | 77 | $17,718 | $4,404 |
| 2032 | 78 | $5,611 | $1,322 |
| TOTAL | | $405,751 | |
| PRESENT VALUE OF LOST PENSION | | | $189,637 |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

Pension Table 4

# PRESENT VALUE OF LOST PENSION BENEFITS
## HENRY V. TOBIN III

*Denied Promotion to Captain, May 12, 2003*

| YEAR (1) | AGE (2) | PENSION BENEFIT DIFFERENCE (3) | PRESENT VALUE OF LOSSES (4) |
|---|---|---|---|
| 6/1/2009 | 55 | $8,604 | $6,945 |
| 2010 | 56 | $14,750 | $11,286 |
| 2011 | 57 | $14,750 | $10,697 |
| 2012 | 58 | $14,750 | $10,140 |
| 2013 | 59 | $14,750 | $9,611 |
| 2014 | 60 | $14,750 | $9,110 |
| 2015 | 61 | $14,750 | $8,635 |
| 2016 | 62 | $14,750 | $8,185 |
| 2017 | 63 | $14,750 | $7,758 |
| 2018 | 64 | $14,750 | $7,354 |
| 2019 | 65 | $14,750 | $6,970 |
| 2020 | 66 | $14,750 | $6,607 |
| 2021 | 67 | $14,750 | $6,263 |
| 2022 | 68 | $14,750 | $5,936 |
| 2023 | 69 | $14,750 | $5,627 |
| 2024 | 70 | $14,750 | $5,333 |
| 2025 | 71 | $14,750 | $5,055 |
| 2026 | 72 | $14,750 | $4,792 |
| 2027 | 73 | $14,750 | $4,542 |
| 2028 | 74 | $14,750 | $4,305 |
| 2029 | 75 | $14,750 | $4,081 |
| 2030 | 76 | $14,750 | $3,868 |
| 2031 | 77 | $14,750 | $3,666 |
| 2032 | 78 | $4,671 | $1,100 |
| TOTAL | | $337,777 | |
| PRESENT VALUE OF LOST PENSION | | | **$157,868** |

Prepared by David E. Black, Ph.D., Economist, University of Delaware

# EXHIBIT

# 3

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 1 | JML | 07/08/03 | Initial consultation with client | 1.4 | |
| 2 | TSN | 07/29/03 | Meeting with JLR to discuss his possible case and the facts. | 0.5 | |
| 3 | JML | 07/30/03 | Meeting with TSN regarding facts from initial consultation | 0.5 | |
| 4 | JML | 07/31/03 | 2d Meeting with TSN re: facts and documents needed to establish claim of 1st Amendment retaliation | 0.5 | |
| 5 | JML | 08/06/03 | Telephone to client regarding promotion procedures and illegal reasons for his denied promotion | 0.2 | |
| 6 | TSN | 08/18/03 | Meet with JLR to discuss the facts for a retaliation claim. | 0.3 | |
| 7 | JML | 09/25/03 | 3d Meeting with TSN regarding First Amendment retaliation and other potential claims | 0.4 | |
| 8 | JML | 10/10/03 | Review deposition of Colonel Cunningham regarding promotions in NCC PD | 0.3 | |
| 9 | JML | 10/10/03 | Memo to TSN regarding Cunningham deposition testimony regarding NCC PD promotions | 0.8 | 0.8 |
| 10 | TSN | 10/15/03 | Review fact memo from JLR. | 0.1 | 0.1 |
| 11 | SJN | 10/21/03 | Conference with TSN, JLR, MDH to discuss conflict issues. | 0.5 | |
| 12 | TSN | 10/21/03 | Meet with JLR, MH, SJN about conflict of interest issues and the respresentation. | 0.5 | |
| 13 | JML | 10/22/03 | Review file and prepare for today's meeting with TSN | 0.4 | |
| 14 | TSN | 11/10/03 | Meet with JLR about the case. | 0.1 | |
| 15 | TSN | 12/09/03 | Meet with JLR to discuss the timing of the case. | 0.1 | |
| 16 | JML | 12/19/03 | Telephone from client regarding newest promotions | 0.3 | |
| 17 | JML | 02/04/04 | Telephone from client regarding new job postings and denial of 2 additional promotions | 0.2 | |
| 18 | JML | 02/04/04 | Memo to TSN regarding today's telephone call from client | 0.5 | 0.5 |
| 19 | JML | 02/25/04 | Telephone to client regarding other County officers | 0.1 | |
| 20 | JML | 03/08/04 | Telephone from client regarding documents for him to sign at today's meeting | 0.1 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| 1.4 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| 0.2 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | 0.3 | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| 0.3 | | | | | | | | | | | | | |
| 0.3 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| 0.1 | | | | | | | | | | | | | |
| 0.1 | | | | | | | | | | | | | |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 21 | JML | 03/08/04 | Legal research regarding potential immunity of local government | 0.3 | |
| 22 | JML | 03/08/04 | Meeting with client to review new factual documents from him | 1.0 | |
| 23 | JML | 03/29/04 | Telephone from client regarding new promotion to Captain and memo to TSN regarding advice on new Captain vacancy | 0.7 | |
| 24 | JML | 03/31/04 | Telephone from client regarding information on eligible candidates for December 2003 Lt. and Captain promotions | 0.2 | |
| 25 | JML | 04/02/04 | Meeting with client regarding additional information on promotions and eligibility lists and other promotion candidates | 0.7 | |
| 26 | TSN | 04/08/04 | Review JLR letter to EEOC. | 0.1 | 0.1 |
| 27 | TSN | 04/10/04 | Review memo from JLR. | 0.1 | 0.1 |
| 28 | TSN | 04/21/04 | Meet with JLR on status of the case. | 0.1 | |
| 29 | JML | 04/26/04 | Telephone from client regarding new Captain promotion and memo to TSN regarding same | 0.7 | |
| 30 | JML | 04/28/04 | E-mail to TSN regarding our strategy regarding First Amendment retaliation claims in light of retaliatory re-posting of a Captain promotion after prior promotion list expired. | 0.2 | 0.2 |
| 31 | TSN | 04/28/04 | Review fact memo from JLR and respond. | 0.2 | 0.2 |
| 32 | TSN | 05/03/04 | Review status report from JLR. | 0.1 | 0.1 |
| 33 | JML | 05/27/04 | Telephone to client and memo to TSN regarding retaliation: lowered ranking, denied promotion, and Middletown transfer | 0.8 | |
| 34 | TSN | 06/08/04 | Review status report from JLR. | 0.1 | 0.1 |
| 35 | JML | 06/10/04 | Meeting with law clerk regarding statute of limitations issue | 0.1 | 0.1 |
| 36 | TSN | 06/10/04 | Discuss with JLR the EEOC timeliness issue. | 0.1 | |
| 37 | JML | 06/15/04 | Meeting with TSN and SJN regarding filing the First Amendment Complaint | 0.5 | |
| 38 | SJN | 06/15/04 | Meeting TSN and JLR. | 0.1 | |
| 39 | TSN | 06/15/04 | Meet with JLR to discuss legal theories and decide to file the case now. | 0.5 | |
| 40 | JML | 06/17/04 | Review law clerk's legal research memo regarding statute of limitations | 0.3 | 0.3 |
| 41 | TSN | 06/22/04 | Review SOL resesarch memo. | 0.1 | 0.1 |
| 42 | TSN | 07/26/04 | Meet with JLR about drafting the complaint for filing. | 0.2 | |
| 43 | TSN | 07/26/04 | Try to reach my client about filing the case. | 0.1 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   | 0.3 |  |   |   |   |   |   |   |
| 1.0 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.7 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.2 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.7 |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.7 |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.8 |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.1 |   |   |   |   |   |   |   |   |   |   |   |   |   |

2524623_1

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 44 | TSN | 07/26/04 | Telephone with client to set appointment. | 0.1 | |
| 45 | JML | 07/27/04 | Meeting with TSN and client regarding lawsuit content and strategy | 2.0 | |
| 46 | SJN | 07/27/04 | Meeting with TSN. | 0.1 | |
| 47 | TSN | 07/27/04 | Meet with JLR and client to discuss facts, law and filing his case in the next month, our two main legal theories. | 1.8 | |
| 48 | TSN | 07/27/04 | Meeting with SJN. | 0.1 | |
| 49 | JML | 07/28/04 | Draft Complaint: Caption, Parties, Jurisdiction, and Wherefore Clause | 1.5 | |
| 50 | JML | 07/28/04 | Telephone from client regarding dates of his protected activity | 0.1 | |
| 51 | JML | 07/29/04 | Meeting with TSN regarding defendants to name and allegations to make in the Complaint | 0.2 | |
| 52 | TSN | 07/29/04 | Meet with JLR about draft complaint and the parties defendant. | 0.2 | |
| 53 | JML | 08/03/04 | Review TSN memo regarding meeting with client | 0.1 | 0.1 |
| 54 | JML | 08/04/04 | Complaint preparation | 0.1 | |
| 55 | JML | 08/04/04 | Revise Complaint Caption, Parties, and Wherefore Clause | 0.2 | |
| 56 | JML | 08/04/04 | Complaint preparation: Draft facts relating to employment history and circumstantial evidence of retaliation | 1.5 | |
| 57 | JML | 08/04/04 | Complaint preparation: Draft allegations regarding defendants' conduct | 0.3 | |
| 58 | JML | 08/04/04 | Draft Counts I and II: Free Speech and Petition Clause violations | 0.3 | |
| 59 | JML | 08/04/04 | Draft facts relating to individual defendants' decision making and less qualified successful candidate | 0.5 | |
| 60 | JML | 08/09/04 | Continue drafting Complaint: Plaintiff's Injuries | 0.5 | |
| 61 | JML | 08/14/04 | Draft facts regarding cover up of accident | 1.2 | |
| 62 | JML | 08/14/04 | Draft facts regarding campaign and election improprieties | 1.3 | |
| 63 | JML | 08/16/04 | Draft Civil Cover Sheet and Summons and revise Complaint | 0.6 | |
| 64 | JML | 08/16/04 | Complaint preparation: Draft Injunctive relief | 0.5 | |
| 65 | JML | 08/17/04 | Telephone to client regarding content of his protected speech, retaliatory transfer, and injury to reputation | 0.6 | |
| 66 | JML | 08/17/04 | Continue drafting Complaint: content of protected speech, retaliatory transfer, and injury to reputation | 3.0 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| 0.1 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| 1.8 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | 1.5 | | | | | | |
| 0.1 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | 0.1 | | | | | | |
| | | | | | | | 0.2 | | | | | | |
| | | | | | | | 1.5 | | | | | | |
| | | | | | | | 0.3 | | | | | | |
| | | | | | | | 0.3 | | | | | | |
| | | | | | | | 0.5 | | | | | | |
| | | | | | | | 0.5 | | | | | | |
| | | | | | | | 1.2 | | | | | | |
| | | | | | | | 1.3 | | | | | | |
| | | | | | | | 0.6 | | | | | | |
| | | | | | | | 0.5 | | | | | | |
| 0.6 | | | | | | | | | | | | | |
| | | | | | | | 3.0 | | | | | | |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 67 | JML | 08/17/04 | Revise Summons of John Cunningham | 0.1 | |
| 68 | JML | 08/17/04 | 2d telephone call to client regarding his additional information on accident and the continued retaliation | 0.3 | |
| 69 | JML | 08/20/04 | Telephone to client regarding TSN revision of Complaint | 0.3 | |
| 70 | JML | 08/23/04 | Revise Complaint based on Friday's conversation with client | 0.1 | |
| 71 | TSN | 08/23/04 | Work on second draft of complaint. | 1.2 | |
| 72 | TSN | 08/23/04 | Second draft of the complaint. | 2.5 | |
| 73 | JML | 08/24/04 | Continue revising of Complaint and telephone to client regarding same | 0.4 | |
| 74 | SJN | 08/24/04 | Review and edit draft 0.2 of complaint | 0.4 | |
| 75 | TSN | 08/24/04 | Telephone with client about his draft complaint and his need to review it for factual accuracy and whether he wishes to hold a press conference. | 0.1 | |
| 76 | TSN | 08/25/04 | Draft 3 of the complaint. | 1.9 | |
| 77 | JML | 08/26/04 | Telephone to client regarding revised Complaint | 0.3 | |
| 78 | JML | 08/27/04 | Review TSN's draft Complaint | 0.3 | |
| 79 | SJN | 08/27/04 | Meeting with TSN. | 0.3 | |
| 80 | TSN | 08/27/04 | Meeting with Steve | 0.3 | |
| 81 | TSN | 08/27/04 | Document drafting, copy counsel to review. | 0.3 | |
| 82 | TSN | 08/27/04 | Telephone from the AP. | 0.1 | |
| 83 | SJN | 08/29/04 | Review and edit draft 3 of complaint. | 0.6 | |
| 84 | JML | 08/30/04 | Review and revise draft Complaint | 0.2 | |
| 85 | JML | 08/30/04 | Meeting with TSN and client regarding pending lawsuit | 1.0 | |
| 86 | JML | 08/30/04 | Revise Civil Cover Sheet | 0.2 | |
| 87 | TSN | 08/30/04 | Meet with client to review facts of the complaint and make revisions. | 1.0 | |
| 88 | TSN | 08/30/04 | Final draft of complaint. | 2.5 | |
| 89 | SJN | 08/31/04 | Meeting with TSN re filing and related issues. | 0.3 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | 0.1 |  |  |  |  |  |  |
| 0.3 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.3 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.1 |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 1.2 |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 2.5 |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.4 |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.4 |  |  |  |  |  |  |
| 0.1 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 1.9 |  |  |  |  |  |  |
| 0.3 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.3 |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.3 |  |  |  |  |  |  |
|  |  |  |  | 0.1 |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.6 |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.2 |  |  |  |  |  |  |
| 1.0 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 0.2 |  |  |  |  |  |  |
| 1.0 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | 2.5 |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 90 | SJN | 08/31/04 | Review latest draft of complaint. | 0.3 | |
| 91 | TSN | 08/31/04 | Finalize complaint. | 0.7 | |
| 92 | TSN | 08/31/04 | Draft press release. | 0.6 | |
| 93 | TSN | 08/31/04 | Meeting with SJN re filing and related issues. | 0.3 | |
| 94 | SJN | 09/02/04 | Press conference. | 1.0 | |
| 95 | SJN | 09/02/04 | Fact investigation and meeting with client. | 1.3 | |
| 96 | SJN | 09/02/04 | Fact investigation re: other incidents where Freebery's has done this. | 0.3 | |
| 97 | SJN | 09/02/04 | Respond to media inquiries. | 0.5 | |
| 98 | SJN | 09/02/04 | Telephone with Hank. | 0.1 | |
| 99 | SJN | 09/02/04 | Telephone calls with Tom. | 0.2 | |
| 100 | SJN | 09/02/04 | Fact investigation. | 0.5 | |
| 101 | SJN | 09/02/04 | Calls with Steve. | 0.2 | |
| 102 | TSN | 09/02/04 | Meeting with client about facts. | 1.0 | |
| 103 | TSN | 09/02/04 | Attend press conference for client, preparation. | 1.4 | |
| 104 | SJN | 09/03/04 | Telephone with TSN. | 0.1 | |
| 105 | SJN | 09/03/04 | Call to Hank. | 0.1 | |
| 106 | SJN | 09/03/04 | Fact investigation. | 0.3 | |
| 107 | SJN | 09/03/04 | E-mail to TSN & JLR. | 0.1 | 0.1 |
| 108 | SJN | 09/03/04 | Phone call to investigate the facts of the police report being doctored. | 0.1 | |
| 109 | SJN | 09/03/04 | E-mail to TSN & JLR re: Freebery order via Janet Smith to alter police report. | 0.1 | 0.1 |
| 110 | SJN | 09/03/04 | Calls with Steve. | 0.2 | |
| 111 | SJN | 09/07/04 | Fact investigation. | 0.2 | |
| 112 | SJN | 09/08/04 | Meeting with TSN. | 0.3 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|----|----|-----|----|----|----|----|----|----|
|   |   |   |   |     |   |   | 0.3 |    |    |    |    |    |    |
|   |   |   |   |     |   |   | 0.7 |    |    |    |    |    |    |
|   |   |   |   | 0.6 |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   |   |   | 1.0 |   |   |     |    |    |    |    |    |    |
| 1.3 |   |   |   |   |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   |   |   | 0.5 |   |   |     |    |    |    |    |    |    |
| 0.1 |   |   |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   | 0.5 |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
| 1.0 |   |   |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   | 1.4 |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
| 0.1 |   |   |   |    |   |   |     |    |    |    |    |    |    |
|   |   | 0.3 |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   | 0.1 |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |
|   |   | 0.2 |   |    |   |   |     |    |    |    |    |    |    |
|   |   |   |   |     |   |   |     |    |    |    |    |    |    |

2524623_1

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 113 | TSN | 09/08/04 | Review fact statements by parties. | 0.2 | |
| 114 | TSN | 09/08/04 | Review witness statements and email client. | 0.4 | |
| 115 | TSN | 09/08/04 | Call from M. Allen about the police report claims. | **0.2** | |
| 116 | TSN | 09/08/04 | E-mail JLR with things to do. | 0.2 | 0.2 |
| 117 | TSN | 09/08/04 | Meeting with Steve. | 0.3 | |
| 118 | TSN | 09/09/04 | Review two e-mails from client and reply. | 0.2 | |
| 119 | TSN | 09/09/04 | Investigate facts given by client. | 0.2 | |
| 120 | SJN | 09/10/04 | Fact investigation. | 0.1 | |
| 121 | SJN | 09/13/04 | Review e-mails. | **0.1** | 0.1 |
| 122 | TSN | 09/13/04 | Email to client about preparing rule 26 disclosures. | 0.2 | |
| 123 | SJN | 09/30/04 | Return call to Bowser re: extension of time on Answer. | 0.1 | |
| 124 | SJN | 10/01/04 | Meeting with TSN. | 0.1 | |
| 125 | SJN | 10/01/04 | E-mail to Bowser re: extension of time to file Answer and conflict of interest. | 0.1 | |
| 126 | TSN | 10/01/04 | Meeting with SJN. | 0.1 | |
| 127 | JML | 10/06/04 | Telephone from client regarding accident and potential discipline and advise regarding his rights of appeal | 0.1 | |
| 128 | TSN | 10/07/04 | Review e-mail from client on damages and disparate punishment. | 0.1 | |
| 129 | JML | 10/28/04 | E-mail to client regarding his potential new employment and its impact on the case | 0.2 | |
| 130 | TSN | 11/03/04 | Review two e-mails from the client. | 0.1 | |
| 131 | SJN | 11/05/04 | Meeting with TSN re: D's filing answer or motion for a stay. | 0.1 | |
| 132 | TSN | 11/05/04 | Meeting with SJN re: D's filing answer or motion for a stay. | 0.1 | |
| 133 | TSN | 11/09/04 | Review their stay brief and e-mail JLR about a response. | 0.2 | |
| 134 | SJN | 11/10/04 | Meeting with TSN re: settlement. | 0.2 | |
| 135 | TSN | 11/10/04 | Discuss with JLR settlement strategy for the case. | 0.5 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|  |  | 0.2 |  |  |  |  |  |  |  |  |  |  |  |
|  |  | 0.4 |  |  |  |  |  |  |  |  |  |  |  |
|  |  | 0.2 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.2 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  | 0.2 |  |  |  |  |  |  |  |  |  |  |  |
|  |  | 0.1 |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.2 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  | 0.1 |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  | 0.1 |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.1 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.1 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.2 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0.1 |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 0.1 |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 0.1 |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 0.2 |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 0.2 |  |  |
|  |  |  |  |  |  |  |  |  |  |  | 0.5 |  |  |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 136 | TSN | 11/10/04 | Meeting with SJN re: settlement. | 0.2 | |
| 137 | JML | 11/15/04 | E-mail to client regarding health status report | 0.1 | |
| 138 | JML | 11/16/04 | Telephone and e-mail to client regarding damages information | 0.4 | |
| 139 | JML | 11/16/04 | E-mail to plaintiff's counsel regarding our Response to Motion to Stay | 0.1 | |
| 140 | SJN | 11/16/04 | Motion to stay briefing. | 0.2 | |
| 141 | JML | 11/22/04 | Begin drafting Memo in Opposition to Motion to Stay | 2.2 | |
| 142 | JML | 11/24/04 | Continue drafting Response to Motion to Stay | 2.1 | |
| 143 | JML | 11/24/04 | Continue drafting Response to Motion to Stay | 3.5 | |
| 144 | JML | 11/26/04 | Finalize Response to Motion to Stay and e-mail to TSN regarding same | 1.3 | |
| 145 | SJN | 11/29/04 | Review our AB. | 0.2 | |
| 146 | TSN | 11/30/04 | Review our stay brief. | 0.1 | |
| 147 | TSN | 11/30/04 | E-mail to JLR. | 0.1 | 0.1 |
| 148 | TSN | 12/05/04 | Fact investigation on expected changes in County government in January and effect on this case. | 0.5 | |
| 149 | JML | 12/08/04 | Telephone to economist regarding retaining him for an expert report | 0.3 | |
| 150 | JML | 12/16/04 | Telephone from client regarding motion to stay | 0.1 | |
| 151 | TSN | 12/19/04 | Review stay decision by the court. | **0.1** | |
| 152 | SJN | 12/21/04 | Meeting with TSN re: settlement strategy. | 0.1 | |
| 153 | TSN | 12/21/04 | Meet with JLR about settlement strategy. | 0.3 | |
| 154 | TSN | 12/21/04 | Meeting with SJN re: settlement strategy. | 0.1 | |
| 155 | JML | 12/22/04 | Telephone to client regarding economist's follow up questions | 0.3 | |
| 156 | JML | 12/22/04 | Letter to economist regarding follow up data from today's conversation with client | 0.4 | |
| 157 | JML | 12/23/04 | Review cardiologist medical records and end of year pay stubs for 2001-2004 | 0.5 | |
| 158 | JML | 12/23/04 | Draft letter to economist regarding additional pension documents | 0.1 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.4 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   | 0.1 |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 0.2 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 2.2 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 2.1 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 3.5 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 1.3 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 0.2 |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 0.1 |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   | 0.5 |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    | 0.3 |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    | 0.1 |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |    |    |
| 0.3 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    | 0.4 |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    | 0.1 |    |

Both Firms by Date

|     | ATTY | Date | Description | Time | 2 |
|-----|------|------|-------------|------|---|
| 159 | JML | 12/29/04 | E-mail to economist regarding his initial draft report | 0.1 | |
| 160 | JML | 12/30/04 | Telephone to client and 2 calls from client regarding salary range for Lt. Colonel, date of pay increase to Captain QW, and date of promotion to Major | 0.3 | |
| 161 | JML | 12/30/04 | Draft letter to economist regarding additional information and documents and 4 scenarios of denied promotions and pay increases | 0.5 | |
| 162 | JML | 12/31/04 | E-mail to Dr. Black regarding 3rd denied promotion scenario | 0.2 | |
| 163 | JML | 01/03/05 | Review second draft economic report from Dr. Black | 0.4 | |
| 164 | JML | 01/03/05 | E-mail to economist regarding corrections to latest draft of report | 0.1 | |
| 165 | JML | 01/03/05 | E-mail from and to economist regarding title page of his report | 0.2 | |
| 166 | SJN | 01/05/05 | Review TSN settlement concept e-mail. | 0.1 | |
| 167 | TSN | 01/05/05 | Review Dr. Black report and outline demand package. | **0.6** | |
| 168 | TSN | 01/13/05 | E-mail to JLR about economic report. | 0.1 | |
| 169 | JML | 01/14/05 | Telephone to Dr. Black regarding revising his economic report to include tax effect | 0.1 | |
| 170 | TSN | 01/16/05 | E-mail to JLR about settlement and Monell issues. | 0.3 | |
| 171 | JML | 01/17/05 | Telephone to client regarding additional information to update economic report to add income tax effect of lump sum recovery | 0.1 | |
| 172 | JML | 01/18/05 | Contact economist regarding additional documents for him to review | 0.1 | |
| 173 | JML | 01/20/05 | Begin drafting Settlement package | 2.0 | |
| 174 | TSN | 01/26/05 | Review revised economic expert report. | **0.3** | |
| 175 | TSN | 01/27/05 | Telephone with Jeff Goddess. | **0.1** | |
| 176 | TSN | 01/27/05 | E-mail to JLR> | 0.1 | 0.1 |
| 177 | TSN | 01/29/05 | E-mail to JLR. | 0.1 | 0.1 |
| 178 | TSN | 02/02/05 | E-mail JLR on Coons transition actions. | 0.2 | 0.2 |
| 179 | TSN | 02/04/05 | Meet with KM about NCCPD promotion process. | **0.6** | |
| 180 | JML | 02/07/05 | E-mail from TSN and to client regarding demand letter | 0.2 | |
| 181 | TSN | 02/07/05 | E-mail JLR on timing of settlement demand. | 0.1 | 0.1 |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | 0.1 | |
| 0.3 | | | | | | | | | | | | | |
| | | | | | | | | | | | | 0.5 | |
| | | | | | | | | | | | | 0.2 | |
| | | | | | | | | | | | | 0.4 | |
| | | | | | | | | | | | | 0.1 | |
| | | | | | | | | | | | | 0.2 | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | | 0.6 | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | | 0.1 | |
| | | | | | | | | | | | 0.3 | | |
| 0.1 | | | | | | | | | | | | | |
| | | | | | | | | | | | | 0.1 | |
| | | | | | | | | | | | 2.0 | | |
| | | | | | | | | | | | | 0.3 | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | 0.2 | | |
| | | | | | | | | | | | | | |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 182 | TSN | 02/09/05 | Gather facts on county finances. | 0.1 | |
| 183 | TSN | 02/09/05 | Think about recusal decision by the court. | 0.2 | 0.2 |
| 184 | SJN | 02/10/05 | Meeting with TSN and JLR re: case strategy. | 0.4 | |
| 185 | TSN | 02/10/05 | Meeting with SJN and JLR re: case strategy. | 0.4 | |
| 186 | JML | 02/11/05 | Review TSN-SJN draft settlement demand in NCC case | 1.5 | |
| 187 | JML | 02/11/05 | Continue drafting settlement package | 1.4 | |
| 188 | TSN | 02/11/05 | File memo on recusal. | 0.2 | 0.2 |
| 189 | JML | 02/14/05 | Continue drafting settlement package: Statement of Facts | 1.6 | |
| 190 | JML | 02/16/05 | Continue drafting settlement demand: Fact Witnesses and Expert Witnesses and Physical Injuries | 1.5 | |
| 191 | JML | 02/16/05 | Continue drafting settlement demand: Damages, Injuries, Relief, Attorneys' Fees, and Punitives | 1.9 | |
| 192 | JML | 02/17/05 | Continue drafting settlement package: Argument Section I | 1.5 | |
| 193 | JML | 02/17/05 | Continue drafting settlement package: Argument Section II | 1.5 | |
| 194 | JML | 02/17/05 | Continue drafting settlement package: Argument Section III | 1.5 | |
| 195 | JML | 02/18/05 | Continue drafting settlement package: Finish Argument Section III | 0.1 | |
| 196 | JML | 02/18/05 | Continue drafting Settlement package: Argument Section IV | 1.4 | |
| 197 | JML | 02/18/05 | Continue drafting Settlement package: Argument Section V | 1.4 | |
| 198 | JML | 02/18/05 | Legal research regarding Indemnification Law | 0.5 | |
| 199 | JML | 02/18/05 | Continue drafting Settlement package: Argument Sections VI and VII | 2.0 | |
| 200 | JML | 02/18/05 | Continue drafting settlement package: Settlement Proposal | 1.0 | |
| 201 | JML | 02/18/05 | Review and revise entire 70 page settlement package | 1.9 | |
| 202 | TSN | 02/19/05 | E-mail on settlement. | 0.1 | |
| 203 | SJN | 02/20/05 | Review and revise settlement proposal. | 0.8 | |
| 204 | JML | 03/03/05 | Memorandum to client regarding economic, compensatory, and punitive damages, his economic report, settlement demand package, Dr. Black, and detail report. | 1.0 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   | 0.1 |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.5 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.4 |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.6 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.5 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.9 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.5 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.5 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.5 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 0.1 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.4 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.4 |   |   |
|   |   |   |   |   |   | 0.5 |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 2.0 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.0 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.9 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 0.1 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 0.8 |   |   |
|   |   |   |   |   |   |   |   |   |   |   | 1.0 |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 205 | TSN | 03/03/05 | Meet with JLR about the case. | 0.2 | |
| 206 | JML | 03/08/05 | Telephone to client regarding further retaliatory transfer back to Minquedale for shift work | 0.1 | |
| 207 | JML | 03/08/05 | Memo to TSN regarding further retaliatory transfer back to Minquedale for shift work | 0.2 | 0.2 |
| 208 | TSN | 03/08/05 | Review memo on his additional transfer to a new assignment. | 0.1 | 0.1 |
| 209 | JML | 03/14/05 | Review litigation report from NCC | 0.1 | |
| 210 | JML | 03/14/05 | Prepare for today's briefing of TSN for his meeting tomorrow with the County attorney | 1.5 | |
| 211 | JML | 03/14/05 | Update settlement package to include new developments in the case: Transfer to Patrol Squad B, additional defense attorneys' fees, etc | 0.9 | |
| 212 | JML | 03/14/05 | E-mail to TSN regarding updated settlement package | 0.1 | |
| 213 | SJN | 03/15/05 | Meet with TSN and Greg Wilson about settlement the case. | 0.2 | |
| 214 | TSN | 03/15/05 | Meet with Greg Wison and SNJ about settling the case. | 0.2 | |
| 215 | TSN | 03/15/05 | E-mail to JLR. | 0.1 | 0.1 |
| 216 | JML | 03/16/05 | Review e-mail from TSN and send e-mail to client regarding TSN meeting with County attorney | 0.1 | |
| 217 | SJN | 03/18/05 | Meet with TSN about the settlement package. | 0.3 | |
| 218 | TSN | 03/18/05 | meet with SJN about the settlement package. | 0.3 | |
| 219 | TSN | 03/18/05 | Email to co-counsel | 0.1 | 0.1 |
| 220 | JML | 03/22/05 | E-mail from TSN and send e-mail to client regarding Coons' speech of 3/16/05 | 0.1 | |
| 221 | TSN | 03/22/05 | E-mail to JLR | 0.1 | 0.1 |
| 222 | SJN | 03/23/05 | Working on settlement package | 0.5 | |
| 223 | JML | 03/24/05 | E-mail to Dr. Black regarding expert report | 0.1 | |
| 224 | SJN | 03/24/05 | Meet with TSN about settlement proposal | 0.2 | |
| 225 | SJN | 03/24/05 | Revising settlement package | 1.1 | |
| 226 | TSN | 03/24/05 | Meet with SJN re: draft settlement proposal | 0.2 | |
| 227 | TSN | 04/05/05 | Fact investigation on new public safety director | **0.2** | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    | 1.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.9 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    | 0.1 |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 1.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   | 0.2 |   |   |   |   |    |    |    |    |    |    |   |

2524623_1

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 228 | TSN | 04/05/05 | Fact investigation on new public safety director | **0.2** | |
| 229 | TSN | 04/06/05 | Discuss with SJN status of the police dept. | 0.2 | |
| 230 | TSN | 04/06/05 | Review letter on settlement from client | 0.1 | |
| 231 | JML | 04/15/05 | Telephone to client regarding demand, meeting, and delivery of settlement package | 0.1 | |
| 232 | JML | 04/15/05 | E-mail from TSN regarding demand, meeting, and delivery of settlement package and e-mails to and from co-counsel regarding cover letter for settlement package | 0.1 | |
| 233 | TSN | 04/15/05 | Revise draft demand package | 1.1 | |
| 234 | TSN | 04/15/05 | Finish revision of demand package | 1.5 | |
| 235 | JML | 04/16/05 | Begin revising settlement package: pages 1-17 | 1.0 | |
| 236 | JML | 04/18/05 | Continue revising settlement package: pp. 19-65 | 1.4 | |
| 237 | JML | 04/18/05 | Continue revising settlement package: pp. 19-65 | 1.0 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   | 0.2 |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    | 0.1 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.1 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.5 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.0 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.4 |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.0 |    |    |

Both Firms by Date

|  | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 238 | JML | 04/18/05 | Continue drafting 67 page settlement package | 1.0 | |
| 239 | JML | 04/18/05 | Begin drafting letter to County attorney regarding settlement package | 0.2 | |
| 240 | SJN | 04/18/05 | Meeting with TSN re: settlement package | 0.1 | |
| 241 | TSN | 04/18/05 | E-mails from JLR | 0.1 | 0.1 |
| 242 | TSN | 04/18/05 | Meeting with SJN re: settlement package | 0.1 | |
| 243 | JML | 04/19/05 | Finalize letter to county attorney regarding settlement package | 0.1 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    | 1.0 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 244 | JML | 04/19/05 | Revise settlement package | 0.3 | |
| 245 | SJN | 04/19/05 | E-mail from JLR re: retaliatory transfer | 0.1 | 0.1 |
| 246 | JML | 04/21/05 | Draft section on Plaintiff's superior qualifications | 0.7 | |
| 247 | JML | 04/21/05 | Review and finalize 67 page demand package | 1.5 | |
| 248 | JML | 04/21/05 | E-mail to TSN regarding demand package | 0.1 | |
| 249 | JML | 04/22/05 | Finalize demand package with most recent revisions and e-mail to The Neuberger Firm regarding same | 0.2 | |
| 250 | SJN | 04/22/05 | Meeting with SJN re: status of case, and planning out discovery and trial | 0.3 | |
| 251 | TSN | 04/22/05 | Meeting with TSN re: status of case, and planning out discovery and trial | 0.3 | |
| 252 | TSN | 04/22/05 | Review and approve settlement documents | 0.4 | |
| 253 | TSN | 04/22/05 | Meet with client to review and obtain approval of demand package and our negotiating strategy | 1.5 | |
| 254 | TSN | 04/22/05 | E-mail to co-counsel | 0.1 | 0.1 |
| 255 | JML | 04/26/05 | Telephone to client and e-mail to TSN regarding delivery of demand package | 0.1 | |
| 256 | TSN | 05/12/05 | E-mail on witnesses | 0.1 | 0.1 |
| 257 | TSN | 05/19/05 | Review e-mail from client | 0.1 | |
| 258 | JML | 05/20/05 | Telephone to client regarding demand response and e-mail to TSN regarding same | 0.2 | |
| 259 | TSN | 05/20/05 | Meet with JLR about failure of settlement efforts | 0.1 | |
| 260 | TSN | 05/26/05 | E-mail to client | 0.2 | |
| 261 | TSN | 06/07/05 | E-mail from client and reply on his medical condition and damages | 0.4 | |
| 262 | TSN | 06/07/05 | E-mail to client | 0.2 | |
| 263 | TSN | 06/07/05 | E-mail from JLR and respond | 0.1 | 0.1 |
| 264 | TSN | 06/08/05 | Speak with JLR about the facts | 0.1 | 0.1 |
| 265 | TSN | 06/25/05 | Telephone with client | 0.1 | |
| 266 | TSN | 06/25/05 | Speak with client about status of the case | 0.3 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.7 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 1.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.4 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 1.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
| 0.1 |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
| 0.2 |   |   |   |   |   |   |    |    |    |    |     |   |   |
| 0.4 |   |   |   |   |   |   |    |    |    |    |     |   |   |
| 0.2 |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
|   |   |   |   |   |   |   |    |    |    |    |     |   |   |
| 0.1 |   |   |   |   |   |   |    |    |    |    |     |   |   |
| 0.3 |   |   |   |   |   |   |    |    |    |    |     |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 267 | TSN | 06/27/05 | E-mail on removal of the Chief | 0.5 | 0.5 |
| 268 | TSN | 06/28/05 | Fact investigation | 0.3 | |
| 269 | JML | 07/05/05 | Review e-mail from TSN and e-mail to client regarding County's reported financial deficit | 0.1 | |
| 270 | JML | 07/18/05 | Telephone to client regarding County's reported financial deficit | 0.1 | |
| 271 | TSN | 07/21/05 | E-mail from client and respond | 0.2 | |
| 272 | TSN | 08/23/05 | Discuss status of the case with JLR | 0.1 | |
| 273 | TSN | 08/25/05 | Letter to client | 0.2 | |
| 274 | TSN | 09/09/05 | E-mail to co-counsel | 0.1 | 0.1 |
| 275 | TSN | 10/04/05 | E-mail from client and respond | 0.1 | |
| 276 | TSN | 12/30/05 | E-mail from client and reply on status of the case | 0.3 | |
| 277 | TSN | 01/31/06 | Reply to clients e-mail on his damages | 0.2 | |
| 278 | TSN | 03/18/06 | E-mail from client and respond | 0.1 | |
| 279 | TSN | 06/01/06 | E-mail from client and respond | 0.1 | |
| 280 | TSN | 06/22/06 | E-mail from client and reply | 0.1 | |
| 281 | TSN | 06/22/06 | E-mail from client and reply | 0.1 | |
| 282 | SJN | 07/05/06 | Meeting with TSN re: impact of Garcetti | 0.1 | |
| 283 | TSN | 07/05/06 | Meeting with SJN re: impact of Garcetti | 0.1 | |
| 284 | JML | 07/25/06 | Meeting with TSN regarding case in light of new SCt case | 0.2 | |
| 285 | TSN | 07/25/06 | Meet with JLR about status of the case | 0.2 | |
| 286 | TSN | 08/10/06 | Call from client | 0.1 | |
| 287 | TSN | 08/10/06 | E-mail to JLR and client | 0.1 | 0.1 |
| 288 | JML | 08/14/06 | Telephone to client and e-mail to TSN regarding Supreme Court decision | 0.2 | |
| 289 | JML | 08/14/06 | Review Garcetti decision and analyze its impact on the case | 1.0 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   | 0.3 |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    | 0.1 |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.3 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   | 1.0 |  |    |    |    |    |    |    |

2524623_1

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 290 | JML | 08/14/06 | Review TSN brief regarding Garcetti case law affecting this case | 0.5 | 0.5 |
| 291 | JML | 08/15/06 | Telephone to client and e-mail to TSN regarding S.Ct. decision | 0.2 | |
| 292 | TSN | 08/29/06 | Review file | 0.4 | |
| 293 | JML | 08/30/06 | Meeting with TSN and client regarding new settlement strategy | 1.1 | |
| 294 | JML | 08/30/06 | Draft Memo to TSN regarding today's meeting | 0.6 | 0.6 |
| 295 | SJN | 08/30/06 | Meeting with TSN re: settlement issues | 0.2 | |
| 296 | TSN | 08/30/06 | Meet with client and JLR about settlement authority | 1.3 | |
| 297 | TSN | 08/30/06 | Meeeting with SJN re: settlement issues | 0.2 | |
| 298 | JML | 09/13/06 | E-mail to co-counsel regarding settlement initiatives | 0.1 | |
| 299 | JML | 09/14/06 | Meeting with co-counsel regarding NCC settlement initiatives | 0.5 | |
| 300 | JML | 09/26/06 | E-mail to co-counsel regarding NCC settlement talks | 0.1 | |
| 301 | JML | 09/28/06 | Telephone from co-counsel regarding status of settlement talks | 0.1 | |
| 302 | JML | 10/02/06 | Draft renewed settlement demand letter | 2.5 | |
| 303 | TSN | 10/02/06 | Edit demand letter | 0.2 | |
| 304 | JML | 10/03/06 | Finalize renewed demand letter | 1.8 | |
| 305 | TSN | 10/06/06 | Meet with JLR on status of the case | 0.1 | |
| 306 | JML | 11/10/06 | Telephone to client regarding his case status | 0.1 | |
| 307 | TSN | 11/10/06 | Meet with JLR about status of negotiations | 0.1 | |
| 308 | TSN | 12/06/06 | Meet with JLR about settlement strategy | 0.1 | |
| 309 | SJN | 12/16/06 | Pleadings review | 0.1 | |
| 310 | TSN | 01/02/07 | Telephone with the USM about the case | 0.1 | |
| 311 | TSN | 01/09/07 | Try to reach my client | 0.1 | |
| 312 | TSN | 01/09/07 | Telephone with client | 0.1 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| 0.2 | | | | | | | | | | | | | |
| | 0.4 | | | | | | | | | | | | |
| 1.1 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | 0.2 | | |
| | | | | | | | | | | | 1.3 | | |
| | | | | | | | | | | | 0.2 | | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | 0.5 | | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | 2.5 | | |
| | | | | | | | | | | | 0.2 | | |
| | | | | | | | | | | | 1.8 | | |
| | | | | | | | | | | | | | |
| 0.1 | | | | | | | | | | | | | |
| | | | | | | | | | | | 0.1 | | |
| | | | | | | | | | | | 0.1 | | |
| | 0.1 | | | | | | | | | | | | |
| | | | | | 0.1 | | | | | | | | |
| 0.1 | | | | | | | | | | | | | |
| 0.1 | | | | | | | | | | | | | |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 313 | SJN | 01/11/07 | Meeting with Hank re: settlement and case status | 2.0 | |
| 314 | TSN | 01/12/07 | Review e-mail | 0.1 | 0.1 |
| 315 | TSN | 03/08/07 | E-mail from client and respond | 0.1 | |
| 316 | TSN | 05/02/07 | E-mail to co-counsel on settlement | 0.1 | |
| 317 | SJN | 05/03/07 | E-mail from JLR | 0.1 | 0.1 |
| 318 | TSN | 05/29/07 | E-mail on interview fact witnesses | 0.2 | 0.2 |
| 319 | TSN | 05/29/07 | Fact investigation, attend the deposition of Maloney & Rendina on the operation of NCC | 1.4 | |
| 320 | JML | 06/01/07 | Telephone from client and e-mail to TSN regarding police report of Freeberry accident | 0.3 | |
| 321 | TSN | 06/01/07 | E-mail from JLR and reply | 0.1 | 0.1 |
| 322 | TSN | 06/01/07 | E-mail to JLR about IA inquire to client | 0.1 | 0.1 |
| 323 | TSN | 06/03/07 | E-mail to Maloney statements | 0.1 | |
| 324 | RW | 06/05/07 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.7 | |
| 325 | RW | 06/06/07 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.5 | |
| 326 | RW | 06/06/07 | Memo to TSN re: Maloney/Rendina testimony in Wilmington Hospitality case | 0.8 | |
| 327 | TSN | 06/06/07 | E-mail on lifting the stay | 0.2 | |
| 328 | JML | 06/07/07 | Legal and factual analysis: review e-mail from TSN, Complaint, and send e mail to TSN regarding defendant Gordon | 1.3 | |
| 329 | TSN | 06/07/07 | E-mail on evidence issue | 0.2 | 0.2 |
| 330 | TSN | 06/14/07 | Meet with Maloney and Rendina about the facts of the case | 1.0 | |
| 331 | TSN | 06/15/07 | Telephone with JLR about fact investigation | 0.2 | |
| 332 | JML | 06/18/07 | E-mail to RW regarding depositions of LM and MR and to CAH regarding affidavits of LM and MR | 0.2 | |
| 333 | SJN | 06/18/07 | Meeting with TSN re: amending complaint | 0.1 | |
| 334 | TSN | 06/18/07 | Meeting with SJN re: amending complaint | 0.1 | |
| 335 | TSN | 06/18/07 | E-mail from client and reply | 0.2 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    | 2.0 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
| 0.1 |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    | 0.2 |   |    |    |   |   |
|   |   |   |   |   |   |   | 1.3 |    |   |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |   |   |
|   |   |   |   |   |   |   | 0.1 |    |   |    |    |   |   |
|   |   |   |   |   |   |   | 0.1 |    |   |    |    |   |   |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 336 | TSN | 06/18/07 | E-mail on the stay | 0.1 | |
| 337 | JML | 06/19/07 | E-mail to TSN regarding no Answer filed and amending the Complaint | 0.1 | |
| 338 | JML | 06/19/07 | Review Complaint and deposition testimony of LM in County case | 1.5 | |
| 339 | JML | 06/19/07 | Review deposition testimony of MR in County case | 0.1 | |
| 340 | JML | 06/19/07 | Review memo from RW regarding trial testimony of LM and MR in NCC case | 0.3 | |
| 341 | JML | 06/19/07 | Review deposition of defendant Freeberry in County police case | 2.0 | |
| 342 | JML | 06/19/07 | Prepare questions for interviews of witnesses LM and MR | 1.0 | |
| 343 | JML | 06/20/07 | Continue preparing interview questions | 0.5 | |
| 344 | JML | 06/20/07 | Telephone to LM regarding interview | 0.1 | |
| 345 | JML | 06/20/07 | Draft letter to LM and MR regarding interview | 0.3 | |
| 346 | JML | 06/21/07 | E-mail to witness regarding interviews | 0.2 | |
| 347 | SJN | 06/24/07 | Legal research - speech to grand jury still protect post-Garcetti cases | 0.2 | |
| 348 | JML | 06/27/07 | Interview MR regarding case | 2.0 | |
| 349 | JML | 06/27/07 | Interview LM regarding case | 2.2 | |
| 350 | CAS | 07/02/07 | E-mail to JLR regarding affidavits and plea agreement | 0.2 | 0.2 |
| 351 | CAS | 07/09/07 | Review e-mail from TSN regarding client's new job | 0.1 | 0.1 |
| 352 | JML | 07/09/07 | Draft Declaration of LM | 3.0 | |
| 353 | JML | 07/09/07 | Telephone to TSN regarding case status | 0.3 | |
| 354 | JML | 07/09/07 | E-mail to TSN regarding damages | 0.4 | 0.4 |
| 355 | SJN | 07/09/07 | Call from TSN | 0.2 | |
| 356 | SJN | 07/09/07 | Review draft declaration and send amended complaint and unstaying letter to JLR | 0.2 | 0.2 |
| 357 | TSN | 07/09/07 | Telephone with client | 0.2 | |
| 358 | TSN | 07/09/07 | Review L. Maloney declaration | 0.2 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    | 0.1 |   |   |   |   |   |
|   |   |   |   |   |   |   | 0.1 |   |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   | 2.0 |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
| 0.2 |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   | 0.2 |  |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |
| 0.2 |   |   |   |   |   |   |    |    |   |   |   |   |   |
|   |   |   |   |   |   |   |    |    |   |   |   |   |   |

2524623_1

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 359 | TSN | 07/09/07 | Discuss lifting the stay with JLR and strategy | 0.3 | |
| 360 | TSN | 07/09/07 | Telephone with SJN on strategy | 0.2 | |
| 361 | JML | 07/10/07 | Draft Declaration of MR | 3.0 | |
| 362 | JML | 07/10/07 | Telephone to LM regarding additional facts for Declaration | 0.1 | |
| 363 | TSN | 07/10/07 | Telephone with client, return call from media | 0.2 | |
| 364 | JML | 07/11/07 | Review Riddel original and first amended complaints for our First Amended Complaint | 1.0 | |
| 365 | JML | 07/11/07 | Begin drafting First Amended Complaint | 1.2 | |
| 366 | JML | 07/11/07 | Revise draft 1 of First Amended Complaint and e-mail to TSN regarding same | 1.5 | |
| 367 | JML | 07/12/07 | Revise First Amended Complaint | 0.4 | |
| 368 | JML | 07/12/07 | Telephone to MR regarding facts | 1.4 | |
| 369 | TSN | 07/12/07 | Review amended complaint | 0.2 | |
| 370 | JML | 07/13/07 | Revise MR Declaration | 1.1 | |
| 371 | JML | 07/13/07 | Revise Declaration of LM | 1.4 | |
| 372 | SJN | 07/14/07 | Review and revise first amended complaint | 0.7 | |
| 373 | CAS | 07/16/07 | E-mail from TSN regarding amended complaint and stay | 0.1 | 0.1 |
| 374 | JML | 07/23/07 | Finalize Declaration of LM | 0.4 | |
| 375 | JML | 07/24/07 | Finalize First Amended Complaint | 1.5 | |
| 376 | JML | 07/24/07 | Draft letter to USM regarding lifting stay | 0.5 | |
| 377 | SJN | 07/25/07 | Pleadings review | 0.1 | |
| 378 | JML | 07/26/07 | E-mail to co-counsel regarding Declarations and other NCC material | 0.1 | 0.1 |
| 379 | JML | 08/23/07 | E-mail to MR regarding her declaration | 0.1 | |
| 380 | JML | 08/27/07 | Finalize declaration of MR and e-mail to witness regarding same | 1.0 | |
| 381 | CAS | 08/28/07 | Review e-mail from JLR regarding status | 0.1 | 0.1 |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|   |   |   |   |   |   |   |     | 0.3 |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   | 0.2 |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 1.0 |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 1.2 |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 1.5 |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 0.4 |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 0.2 |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 0.7 |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   | 1.5 |   |   |   |   |   |   |
|   |   |   |   |   | 0.5 |   |     |   |   |   |   |   |   |
|   | 0.1 |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |
|   |   |   |   |   |   |   |     |   |   |   |   |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 382 | TSN | 08/28/07 | E-mail on status | 0.1 | 0.1 |
| 383 | CAS | 08/31/07 | E-mails from TSN | 0.1 | 0.1 |
| 384 | TSN | 08/31/07 | E-mail to client | 0.2 | |
| 385 | TSN | 08/31/07 | E-mail to client | 0.2 | |
| 386 | CAS | 09/05/07 | E-mail from TSN to client regarding settlement | 0.1 | |
| 387 | TSN | 09/05/07 | E-mail from client and respond | 0.2 | |
| 388 | JML | 09/12/07 | Telephone to client regarding case status | 0.4 | |
| 389 | JML | 09/13/07 | Meeting with client regarding settlement | 1.3 | |
| 390 | JML | 09/13/07 | E-mail to client regarding today's meeting | 0.3 | |
| 391 | TSN | 09/13/07 | Meet with client about settlement | 1.3 | |
| 392 | JML | 09/24/07 | Draft new demand letter to NCC | 1.5 | |
| 393 | JML | 09/24/07 | E-mail to TSN regarding draft demand letter | 0.2 | |
| 394 | JML | 09/25/07 | Revise demand letter | 0.3 | |
| 395 | TSN | 09/25/07 | E-mail from JLR | 0.1 | 0.1 |
| 396 | TSN | 09/25/07 | Review and edit settlement demand | 0.4 | |
| 397 | JML | 09/26/07 | Review and finalize settlement demand 3 | 0.3 | |
| 398 | TSN | 10/09/07 | Meet with MH | **0.1** | |
| 399 | JML | 10/25/07 | Meeting with co-counsel regarding settlement | 1.5 | |
| 400 | JML | 10/25/07 | E-mail to client regarding sending settlement letter to the judge | 0.1 | |
| 401 | TSN | 10/25/07 | Meet with MH re: the case | **0.1** | |
| 402 | JML | 11/06/07 | Draft letter to USM regarding settlement offer | 0.4 | |
| 403 | JML | 11/09/07 | Finalize letter to USM | 0.2 | |
| 404 | JML | 11/15/07 | Meeting with TSN regarding case status | 0.5 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
| 0.2 |   |   |   |   |   |   |    |    |    |    |    |    |    |
| 0.4 |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 1.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 1.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.2 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 0.4 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.3 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    | 1.5 |   |   |
|   |   |   |   |   |   |   |    |    |    |    | 0.1 |   |   |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |
|   |   |   |   |   | 0.1 |   |    |    |    |    |    |    |    |
|   |   |   |   |   | 0.4 |   |    |    |    |    |    |    |    |
|   |   |   |   |   |   |   |    |    |    |    |    |    |    |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 405 | JML | 11/15/07 | Telephone to client regarding consent to magistrate's jurisdiction | 0.2 | |
| 406 | JML | 11/15/07 | E-mail to TSN regarding consent to Magistrate's jurisdiction | 0.2 | 0.2 |
| 407 | JML | 11/15/07 | Draft letter to counsel regarding Scheduling Order | 0.5 | |
| 408 | JML | 11/15/07 | Draft Join Proposed Scheduling Order | 1.4 | |
| 409 | JML | 11/15/07 | E-mail to TSN regarding joint proposed scheduling order | 0.1 | 0.1 |
| 410 | SJN | 11/15/07 | Pleadings review | 0.1 | |
| 411 | TSN | 11/15/07 | Discuss case with MH | **0.2** | |
| 412 | TSN | 11/15/07 | Meet with JLR about discovery and trial | 0.3 | |
| 413 | JML | 11/17/07 | Finalize letter to counsel regarding scheduling order | 0.5 | |
| 414 | CAS | 11/26/07 | Review e-mail from defense counsel | 0.1 | |
| 415 | JML | 11/26/07 | Meeting with TSN regarding defendants attempt to delay case with a briefing schedule | 0.3 | |
| 416 | JML | 11/26/07 | E-mail to counsel regarding its demand for briefing schedule | 0.1 | |
| 417 | TSN | 11/26/07 | Meet with JLR about Rule 16 opposition by defense | 0.2 | |
| 418 | JML | 11/28/07 | Draft letter to USM regarding scheduling teleconference | 0.5 | |
| 419 | TSN | 11/28/07 | Review letter to court | 0.1 | |
| 420 | JML | 11/29/07 | Finalize letter to Court regarding scheduling order | 0.4 | |
| 421 | TSN | 12/03/07 | E-mail on Rule 16 conf. | 0.2 | 0.2 |
| 422 | SJN | 12/04/07 | Legal research - grand jury speech protected post-Garcetti | 1.0 | |
| 423 | SJN | 12/04/07 | E-mails and telephone calls from and to TSN re: Garcetti issues | 0.4 | 0.4 |
| 424 | CAS | 12/05/07 | Review e-mails from SJN and TSN | 0.1 | 0.1 |
| 425 | CAS | 12/05/07 | Review e-mail to defense counsel from SJN | 0.1 | 0.1 |
| 426 | SJN | 12/05/07 | Review amended complaint | 0.1 | |
| 427 | SJN | 12/05/07 | E-mail to defense counsel, responding on Garcetti issues | 0.8 | |

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| 0.2 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | 0.5 | | | | | | | | | | |
| | | | | | | | | | | 1.4 | | | |
| | | | | | | | | | | | | | |
| | 0.1 | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | 0.5 | | | | | | | | | | |
| | | | 0.1 | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | 0.1 | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | 0.5 | | | | | | | | |
| | 0.1 | | | | | | | | | | | | |
| | | | | | 0.4 | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | 1.0 | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | 0.1 | | | | | | | | | | | | |
| | | | 0.8 | | | | | | | | | | |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 428 | CAS | 12/06/07 | Locate proposed Rule 16 order | 0.4 | |
| 429 | CAS | 12/06/07 | Meeting with SJN re: Rule 16 order | 0.1 | |
| 430 | SJN | 12/06/07 | Speak with CAH re: Rule 16 order | 0.1 | |
| 431 | SJN | 12/06/07 | Review and prepare for Rule 16 teleconference on briefing | 1.0 | |
| 432 | JML | 12/07/07 | Prepare for teleconference | 1.0 | |
| 433 | JML | 12/07/07 | Rule 16 Teleconference with USM regarding scheduling and consent to USM | 0.7 | |
| 434 | JML | 12/07/07 | Draft Consent to USM jurisdiction and e-mail to TSN regarding the same | 0.8 | |
| 435 | SJN | 12/07/07 | E-mails to co-counsel | 0.1 | 0.1 |
| 436 | SJN | 12/07/07 | Review and prep for teleconference | 0.3 | |
| 437 | SJN | 12/07/07 | Rule 16 teleconference with Court | 0.7 | |
| 438 | SJN | 12/07/07 | Call to TSN re: status update and Rule 16 | 0.4 | |
| 439 | TSN | 12/07/07 | Telepohone with SJN re: conference with the court today | 0.3 | |
| 440 | SJN | 12/08/07 | Review draft stips | 0.1 | 0.1 |
| 441 | SJN | 12/08/07 | E-mails to JLR | 0.1 | 0.1 |
| 442 | SJN | 12/08/07 | Pleadings review | 0.1 | |
| 443 | TSN | 12/08/07 | E-mail to co-counsel | 0.2 | 0.2 |
| 444 | SJN | 12/10/07 | E-mails from and to defense counsel | 0.1 | |
| 445 | SJN | 12/10/07 | Pleadings review | 0.1 | |
| 446 | JML | 12/11/07 | Draft form of order for lifting the stay and e-mail to counsel regarding same | 0.4 | |
| 447 | SJN | 12/12/07 | E-mail from JLR | 0.1 | 0.1 |
| 448 | TSN | 12/12/07 | Telephone with client about further proceedings in his case and discovery and trial | 0.4 | |
| 449 | SJN | 12/30/07 | Legal research - post-Garcetti-whistleblowing - new CofA authority | 0.3 | |
| 450 | JML | 01/08/08 | E-mail to SJN regarding briefing | 0.1 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   | 0.4 |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   | 1.0 |   |   |   |   |   |   |   |   |
|   |   |   |   |   | 1.0 |   |   |   |   |   |   |   |   |
|   |   |   |   |   | 0.7 |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   | 0.8 |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   | 0.3 |   |   |   |   |   |   |   |   |
|   |   |   |   |   | 0.7 |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   | 0.1 |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   | 0.1 |   |   |   |   |   |   |   |   |   |   |
|   | 0.1 |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   | 0.4 |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 0.4 |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   | 0.3 |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.1 |   |   |   |   |

Both Firms by Date

|  | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 451 | SJN | 01/08/08 | Pleadings review | 0.1 | |
| 452 | SJN | 01/13/08 | Legal research - grand jury speech and Garcetti | 0.2 | |
| 453 | CAS | 01/17/08 | Handle overbilling of conference call | 0.2 | |
| 454 | CAS | 01/17/08 | Draft memo re: teleconference billing issue | 0.1 | |
| 455 | TSN | 02/01/08 | E-mail to JLR about offer to judgment | 0.2 | |
| 456 | SJN | 02/02/08 | Drafting M to D AB | 0.3 | |
| 457 | TSN | 02/02/08 | Analyze offer of judgment | 0.2 | |
| 458 | TSN | 02/02/08 | Analyze offer of judgment | 0.2 | |
| 459 | SJN | 02/03/08 | Drafting M to D AB | 5.4 | |
| 460 | JML | 02/04/08 | Meeting with TSN regarding offer of judgment | 0.1 | |
| 461 | JML | 02/04/08 | Telephone to client regarding offer of judgment | 0.4 | |
| 462 | JML | 02/04/08 | Memo to TSN regarding conversation with client | 0.4 | |
| 463 | SJN | 02/04/08 | Drafting M to D AB | 7.0 | |
| 464 | TSN | 02/04/08 | Review e-mail on settlement | 0.2 | |
| 465 | CAS | 02/05/08 | E-mail to law clerk re: bluebooking | 0.1 | |
| 466 | JML | 02/05/08 | Review and revise SJN Brief draft 1 | 1.5 | |
| 467 | SJN | 02/05/08 | Drafting M to D AB | 3.1 | |
| 468 | TSN | 02/05/08 | Review current draft of our opposition brief | 0.2 | |
| 469 | JML | 02/06/08 | Revise SJN brief draft 2 | 1.3 | |
| 470 | JML | 02/06/08 | Revise SJN brief draft 3 | 0.5 | |
| 471 | SJN | 02/06/08 | Meeting with TSN re: briefing | 0.3 | |
| 472 | SJN | 02/06/08 | Finalizing M to D AB | 8.3 | |
| 473 | TSN | 02/06/08 | Meeting with SJN re: briefing | 0.3 | |

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   | 0.1 |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.2 |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.2 |
|   |   |   |   |   |   |   |   |   | 0.3 |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.2 |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.2 |
|   |   |   |   |   |   |   |   |   | 5.4 |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.1 |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.4 |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.4 |
|   |   |   |   |   |   |   |   |   | 7.0 |   |   |   |   |
|   |   |   |   |   |   |   |   |   |   |   |   |   | 0.2 |
|   |   |   |   |   |   |   |   |   | 0.1 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 1.5 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 3.1 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.2 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 1.3 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.5 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.3 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 8.3 |   |   |   |   |
|   |   |   |   |   |   |   |   |   | 0.3 |   |   |   |   |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 474 | TSN | 02/06/08 | Draft 4 of brief | 1.3 | |
| 475 | TSN | 02/06/08 | Revise petition clause section of brief | 0.2 | |
| 476 | CAS | 02/07/08 | File brief and serve copy on court | 0.2 | |
| 477 | CAS | 02/08/08 | Review e-mails from TSN | 0.1 | 0.1 |
| 478 | JML | 02/08/08 | Telephone to client regarding offer of judgment | 0.1 | |
| 479 | JML | 02/08/08 | Telephone from client regarding settlement decision | 0.2 | |
| 480 | JML | 02/08/08 | Memo to TSN regarding brief, offer of judgment, and settlement decision | 0.5 | |
| 481 | JML | 02/08/08 | E-mail to TSN regarding client's portion of offer of judgment | 0.1 | |
| 482 | TSN | 02/08/08 | Review clients instructions on settlement and e-mail approval | 0.2 | |
| 483 | CAS | 02/09/08 | Review various e-mails | 0.1 | 0.1 |
| 484 | JML | 02/09/08 | Draft Notice of Acceptance of Offer of Judgment to opposing counsel | 0.1 | |
| 485 | JML | 02/09/08 | Draft letter to Court regarding acceptance of offer of judgment | 0.4 | |
| 486 | TSN | 02/09/08 | Telephone meeting with client about settlement decision | 0.6 | |
| 487 | CAS | 02/10/08 | Review e-mails from TSN | 0.1 | 0.1 |
| 488 | RW | 02/10/08 | E-mail from TSN | 0.1 | 0.1 |
| 489 | JML | 02/11/08 | Teleconference with the Court regarding acceptance of offer of judgment and draft order of judgment to be submitted to the Court | 0.3 | |
| 490 | RW | 02/11/08 | E-mail press release | 0.1 | |
| 491 | TSN | 02/11/08 | Attend telephone conference with the court about resolution of the case and a fee application | 0.2 | |
| 492 | CAS | 02/12/08 | Pleadings review and distribution | 0.1 | |
| 493 | JML | 02/14/08 | Telephone from client regarding pension issue | 0.1 | |
| 494 | JML | 02/15/08 | Telephone to counsel regarding pension issue and draft Order of Judgment | 0.1 | |
| 495 | JML | 02/15/08 | E-mail to counsel regarding pension and Order of Judgment and e-mail to client regarding pension issue | 0.2 | |
| 496 | JML | 02/19/08 | E-mail to TSN regarding defendants' 2d draft proposed form of order of judgment | 0.1 | |

2524623_1

Both Firms by Date

| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
|   |   |   |   |   |   |   |    |    | 1.3 |   |   |   |   |
|   |   |   |   |   |   |   |    |    | 0.2 |   |   |   |   |
|   |   |   |   |   |   |   |    |    | 0.2 |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.2 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.5 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.2 |
|   |   |   |   |   |   |   |    |    |    |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.4 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.6 |
|   |   |   |   |   |   |   |    |    |    |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.3 |
|   |   |   |   | 0.1 |   |   |    |    |    |   |   |   |   |
|   |   |   |   |   | 0.2 |   |    |    |    |   |   |   |   |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.2 |
|   |   |   |   |   |   |   |    |    |    |   |   |   | 0.1 |

Both Firms by Date

| | ATTY | Date | Description | Time | 2 |
|---|---|---|---|---|---|
| 497 | JML | 02/19/08 | 2d e-mail to TSN regarding counsel's 2d draft form of Order of Judgment | 0.1 | |
| 498 | JML | 02/20/08 | E-mail from opposing counsel and to opposing counsel regarding her 2d draft order of judgment and our pending filing with the Court | 0.1 | |
| 499 | JML | 02/21/08 | Draft letter to magistrate regarding proposed form of order | 0.1 | |
| 500 | JML | 02/21/08 | E-mail to TSN regarding draft letter to USM regarding draft form of judgment order | 0.1 | |
| 501 | JML | 02/22/08 | E-mail to SJN regarding my letter to the Judge | 0.2 | |
| 502 | SJN | 02/22/08 | Attempts to log into Pacer to see filings | 0.2 | |
| 503 | TSN | 02/22/08 | Review DI 28 | 0.1 | |
| 504 | SJN | 02/25/08 | Pleadings review | 0.1 | |
| 505 | TSN | 02/25/08 | Analyze and create 5 documents to support our fee application.  Create a …. [entry stops] | 2.5 | |
| | | | | | |
| | | | | | |
| | | | | | |

2524623_1

# EXHIBIT

# 4

Both Firms by Date

| ATTY | Date | Description | Time |
|------|------|-------------|------|
| CAS | 07/02/07 | E-mail to JLR regarding affidavits and plea agreement | 0.2 |
| CAS | 07/09/07 | Review e-mail from TSN regarding client's new job | 0.1 |
| CAS | 07/16/07 | E-mail from TSN regarding amended complaint and stay | 0.1 |
| CAS | 08/28/07 | Review e-mail from JLR regarding status | 0.1 |
| CAS | 08/31/07 | E-mails from TSN | 0.1 |
| CAS | 09/05/07 | E-mail from TSN to client regarding settlement | 0.1 |
| CAS | 11/26/07 | Review e-mail from defense counsel | 0.1 |
| CAS | 12/05/07 | Review e-mails from SJN and TSN | 0.1 |
| CAS | 12/05/07 | Review e-mail to defense counsel from SJN | 0.1 |
| CAS | 12/06/07 | Locate proposed Rule 16 order | 0.4 |
| CAS | 12/06/07 | Meeting with SJN re: Rule 16 order | 0.1 |
| CAS | 01/17/08 | Handle overbilling of conference call | 0.2 |
| CAS | 01/17/08 | Draft memo re: teleconference billing issue | 0.1 |
| CAS | 02/05/08 | E-mail to law clerk re: bluebooking | 0.1 |
| CAS | 02/07/08 | File brief and serve copy on court | 0.2 |
| CAS | 02/08/08 | Review e-mails from TSN | 0.1 |
| CAS | 02/09/08 | Review various e-mails | 0.1 |
| CAS | 02/10/08 | Review e-mails from TSN | 0.1 |
| CAS | 02/12/08 | Pleadings review and distribution | 0.1 |
| | | **Cheryl Hertzog Time** | **2.5** |

| ATTY | Date | Description | Time |
|------|------|-------------|------|
| RW | 06/05/07 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.7 |
| RW | 06/06/07 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.5 |
| RW | 06/06/07 | Memo to TSN re: Maloney/Rendina testimony in Wilmington Hospitality case | 0.8 |
| RW | 02/10/08 | E-mail from TSN | 0.1 |
| RW | 02/11/08 | E-mail press release | 0.1 |
| | | **Total Time Warner** | **2.2** |

# EXHIBIT

# 5

| Line No. | Time |
|---|---|
| 43 | 0.1 |
| 44 | 0.1 |
| 63 | 0.6 |
| 67 | 0.1 |
| 86 | 0.2 |
| 311 | 0.1 |
| 428 | 0.4 |
| 446 | 0.4 |
| 453 | 0.2 |
| 454 | 0.1 |
| 476 | 0.2 |
| **Total Clerical Time** | **2.5** |
|  |  |
| 292 | 0.4 |
| 309 | 0.1 |
| 377 | 0.1 |
| 410 | 0.1 |
| 442 | 0.1 |
| 445 | 0.1 |
| 451 | 0.1 |
| 492 | 0.1 |
| 502 | 0.2 |
| 503 | 0.1 |
| 505 | 0.1 |
| **Total Review Pleadings Time** | **1.5** |

# EXHIBIT

# 6

| Line No. | Time |  |
|---|---|---|
| 26 | 0.1 | |
| 27 | 0.1 | |
| 28 | 0.1 | |
| 35 | 0.1 | |
| 36 | 0.1 | |
| 40 | 0.3 | |
| 41 | 0.1 | |
| **Total EEOC Time** | | **0.9** |
| | | |
| 75 | 0.1 | |
| 82 | 0.1 | |
| 92 | 0.6 | |
| 94 | 1 | |
| 97 | 0.5 | |
| 103 | 1.4 | |
| 363 | 0.2 | |
| 490 | 0.1 | |
| **Total Press Time** | | **4** |
| | | |
| 505 | 2.5 | |
| **Total Fee Petition Time** | | **2.5** |

# EXHIBIT

# 7

| | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 239 | CAS | 7/2/2007 | E-mail to JLR regarding affidavits and plea agreement | 0.2 |
| 240 | RW | 6/5/2007 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.7 |
| 241 | RW | 6/6/2007 | Attend Wilmington Hospitality v. NCC with Maloney and Rendina/witnesses | 0.5 |
| 242 | RW | 6/6/2007 | Memo to TSN re: Maloney/Rendina testimony in Wilmington Hospitality case | 0.8 |
| 243 | SJN | 9/3/2004 | E-mail to TSN & JLR re: Freebery order via Janet Smith to alter police report. | 0.1 |
| 244 | SJN | 7/5/2006 | Meeting with TSN re: impact of Garcetti | 0.1 |
| 245 | SJN | 6/24/2007 | Legal research - speech to grand jury still protect post-Garcetti cases | 0.2 |
| 246 | TSN | 4/8/2004 | Review JLR letter to EEOC. | 0.1 |
| 247 | TSN | 4/10/2004 | Review memo from JLR. | 0.1 |
| 248 | TSN | 6/10/2004 | Discuss with JLR the EEOC timeliness issue. | 0.1 |
| 249 | TSN | 6/22/2004 | Review SOL resesarch memo. | 0.1 |
| 250 | TSN | 9/8/2004 | Call from M. Allen about the police report claims. | 0.2 |
| 251 | TSN | 1/27/2005 | Telephone with Jeff Goddess. | 0.1 |
| 252 | TSN | 2/2/2005 | E-mail JLR on Coons transition actions. | 0.2 |
| 253 | TSN | 2/4/2005 | Meet with KM about NCCPD promotion process. | 0.6 |
| 254 | TSN | 2/9/2005 | Think about recusal decision by the court. | 0.2 |
| 255 | TSN | 2/11/2005 | File memo on recusal. | 0.2 |
| 256 | TSN | 4/5/2005 | Fact investigation on new public safety director | 0.2 |
| 257 | TSN | 4/5/2005 | Fact investigation on new public safety director | 0.2 |
| 258 | TSN | 7/5/2006 | Meeting with SJN re: impact of Garcetti | 0.1 |
| 259 | TSN | 5/29/2007 | Fact investigation, attend the deposition of Maloney & Rendina on the operation of NCC | 1.4 |
| 260 | TSN | 6/3/2007 | E-mail to Maloney statements | 0.1 |
| 261 | TSN | 6/14/2007 | Meet with Maloney and Rendina about the facts of the case | 1.0 |
| 262 | TSN | 7/9/2007 | Review L. Maloney declaration | 0.2 |
| 263 | TSN | 10/9/2007 | Meet with MH | 0.1 |
| 264 | TSN | 10/25/2007 | Meet with MH re: the case | 0.1 |
| 265 | TSN | 11/15/2007 | Discuss case with MH | 0.2 |
| 266 | | | **Total Unrelated Neuberger** | **8.1** |

|   | ATTY | Date | Description | Time |
|---|------|------|-------------|------|
| 197 | JML | 13-Jul-2007 | Revise MR Declaration | 1.1 |
| 198 | JML | 13-Jul-2007 | Revise Declaration of LM | 1.4 |
| 199 | JML | 23-Jul-2007 | Finalize Declaration of LM | 0.4 |
| 200 | JML | 26-Jul-2007 | E-mail to co-counsel regarding Declarations and other NCC material | 0.1 |
| 201 | JML | 23-Aug-2007 | E-mail to MR regarding her declaration | 0.1 |
| 202 | JML | 27-Aug-2007 | Finalize declaration of MR and e-mail to witness regarding same | 1.0 |
| 203 | | | **Total Unrelated LaRosa** | **27.1** |

# EXHIBIT

# 8

|   | B | C | D | E |
|---|---|---|---|---|
| 1 | ATTY | Date | Description | Time |
| 2 | CAS | 7/16/2007 | E-mail from TSN regarding amended complaint and stay | 0.1 |
| 3 | SJN | 6/18/2007 | Meeting with TSN re: amending complaint | 0.1 |
| 4 | SJN | 7/9/2007 | Review draft declaration and send amended complaint and unstaying letter to JLR | 0.2 |
| 5 | SJN | 7/14/2007 | Review and revise first amended complaint | 0.7 |
| 6 | TSN | 6/18/2007 | Meeting with SJN re: amending complaint | 0.1 |
| 7 | TSN | 7/12/2007 | Review amended complaint | 0.2 |
| 8 | | | **Total Amended Complaint Neuberger** | **1.4** |

| | B | C | D | E |
|---|---|---|---|---|
| 1 | ATTY | Date | Description | Time |
| 30 | SJN | 8/24/2004 | Review and edit draft 2 of complaint | 0.4 |
| 31 | SJN | 8/29/2004 | Review and edit draft 3 of complaint. | 0.6 |
| 32 | SJN | 8/31/2004 | Review latest draft of complaint. | 0.3 |
| 33 | TSN | 8/23/2004 | Work on second draft of complaint. | 1.2 |
| 34 | TSN | 8/23/2004 | Second draft of the complaint. | 2.5 |
| 35 | TSN | 8/25/2004 | Draft 3 of the complaint. | 1.9 |
| 36 | TSN | 8/30/2004 | Final draft of complaint. | 2.5 |
| 37 | TSN | 8/31/2004 | Finalize complaint. | 0.7 |
| 38 | | | **Total Complaint Neuberger** | **10.1** |

2524623_1

# EXHIBIT

# 9

| | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 123 | SJN | 11/10/2004 | Meeting with TSN re: settlement. | 0.2 |
| 124 | SJN | 12/21/2004 | Meeting with TSN re: settlement strategy. | 0.1 |
| 125 | SJN | 1/5/2005 | Review TSN settlement concept e-mail. | 0.1 |
| 126 | SJN | 2/20/2005 | Review and revise settlement proposal. | 0.8 |
| 127 | SJN | 3/15/2005 | Meet with TSN and Greg Wilson about settlement the case. | 0.2 |
| 128 | SJN | 3/18/2005 | Meet with TSN about the settlement package. | 0.3 |
| 129 | SJN | 3/23/2005 | Working on settlement package | 0.5 |
| 130 | SJN | 3/24/2005 | Meet with TSN about settlement proposal | 0.2 |
| 131 | SJN | 3/24/2005 | Revising settlement package | 1.1 |
| 132 | SJN | 4/18/2005 | Meeting with TSN re: settlement package | 0.1 |
| 133 | TSN | 11/10/2004 | Discuss with JLR settlement strategy for the case. | 0.5 |
| 134 | TSN | 11/10/2004 | Meeting with SJN re: settlement. | 0.2 |
| 135 | TSN | 12/21/2004 | Meet with JLR about settlement strategy. | 0.3 |
| 136 | TSN | 12/21/2004 | Meeting with SJN re: settlement strategy. | 0.1 |
| 137 | TSN | 1/16/2005 | E-mail to JLR about settlement and Monell issues. | 0.3 |
| 138 | TSN | 2/7/2005 | E-mail JLR on timing of settlement demand. | 0.1 |
| 139 | TSN | 2/19/2005 | E-mail on settlement. | 0.1 |
| 140 | TSN | 3/15/2005 | Meet with Greg Wison and SNJ about settling the case. | 0.2 |
| 141 | TSN | 3/24/2005 | Meet with SJN re: draft settlement proposal | 0.2 |
| 142 | TSN | 4/6/2005 | Review letter on settlement from client | 0.1 |
| 143 | TSN | 4/15/2005 | Revise draft demand package | 1.1 |
| 144 | TSN | 4/15/2005 | Finish revision of demand package | 1.5 |
| 145 | TSN | 4/18/2005 | Meeting with SJN re: settlement package | 0.1 |
| 146 | TSN | 4/22/2005 | Review and approve settlement documents | 0.4 |
| 147 | TSN | 4/22/2005 | Meet with client to review and obtain approval of demand package and our negotiating strategy | 1.5 |
| 148 | | | **Total Time for 2005 Demand (Neuberger Firm)** | **10.3** |

| | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 164 | | | | |
| 165 | CAS | 8/31/2007 | E-mails from TSN | 0.1 |
| 166 | CAS | 12/5/2007 | Review e-mails from SJN and TSN | 0.1 |
| 167 | CAS | 12/5/2007 | Review e-mail to defense counsel from SJN | 0.1 |
| 168 | CAS | 2/8/2008 | Review e-mails from TSN | 0.1 |
| 169 | CAS | 2/9/2008 | Review various e-mails | 0.1 |
| 170 | CAS | 2/10/2008 | Review e-mails from TSN | 0.1 |
| 171 | RW | 2/10/2008 | E-mail from TSN | 0.1 |
| 172 | SJN | 8/27/2004 | Meeting with TSN. | 0.3 |
| 173 | SJN | 9/2/2004 | Telephone with Hank. | 0.1 |
| 174 | SJN | 9/2/2004 | Telephone calls with Tom. | 0.2 |
| 175 | SJN | 9/2/2004 | Fact investigation. | 0.5 |
| 176 | SJN | 9/3/2004 | Telephone with TSN. | 0.1 |
| 177 | SJN | 9/3/2004 | Call to Hank. | 0.1 |
| 178 | SJN | 9/3/2004 | E-mail to TSN & JLR. | 0.1 |
| 179 | SJN | 9/3/2004 | Calls with Steve. | 0.2 |
| 180 | SJN | 9/8/2004 | Meeting with TSN. | 0.3 |
| 181 | SJN | 9/13/2004 | Review e-mails. | 0.1 |
| 182 | SJN | 10/1/2004 | Meeting with TSN. | 0.1 |
| 183 | SJN | 5/3/2007 | E-mail from JLR | 0.1 |
| 184 | SJN | 7/9/2007 | Call from TSN | 0.2 |
| 185 | SJN | 12/7/2007 | E-mails to co-counsel | 0.1 |
| 186 | SJN | 12/8/2007 | E-mails to JLR | 0.1 |
| 187 | SJN | 12/10/2007 | E-mails from and to defense counsel | 0.1 |
| 188 | SJN | 12/12/2007 | E-mail from JLR | 0.1 |
| 189 | TSN | 8/27/2004 | Meeting with Steve | 0.3 |
| 190 | TSN | 8/27/2004 | Document drafting, copy counsel to review. | 0.3 |

|   | ATTY | Date | Description | Time |
|---|------|------|-------------|------|
| 142 | JML | 20-May-2005 | Telephone to client regarding demand response and e-mail to TSN regarding same | 0.2 |
| 143 | JML | 30-Aug-2006 | Meeting with TSN and client regarding new settlement strategy | 1.1 |
| 144 | JML | 30-Aug-2006 | Draft Memo to TSN regarding today's meeting | 0.6 |
| 145 | JML | 13-Sep-2006 | E-mail to co-counsel regarding settlement initiatives | 0.1 |
| 146 | JML | 14-Sep-2006 | Meeting with co-counsel regarding NCC settlement initiatives | 0.5 |
| 147 | JML | 26-Sep-2006 | E-mail to co-counsel regarding NCC settlement talks | 0.1 |
| 148 | JML | 28-Sep-2006 | Telephone from co-counsel regarding status of settlement talks | 0.1 |
| 149 | JML | 2-Oct-2006 | Draft renewed settlement demand letter | 2.5 |
| 150 | JML | 3-Oct-2006 | Finalize renewed demand letter | 1.8 |
| 151 | JML | 10-Nov-2006 | Telephone to client regarding his case status | 0.1 |
| 152 | JML | 9-Jul-2007 | E-mail to TSN regarding damages | 0.4 |
| 153 | JML | 12-Sep-2007 | Telephone to client regarding case status | 0.4 |
| 154 | JML | 13-Sep-2007 | Meeting with client regarding settlement | 1.3 |
| 155 | JML | 13-Sep-2007 | E-mail to client regarding today's meeting | 0.3 |
| 156 | JML | 24-Sep-2007 | Draft new demand letter to NCC | 1.5 |
| 157 | JML | 24-Sep-2007 | E-mail to TSN regarding draft demand letter | 0.2 |
| 158 | JML | 25-Sep-2007 | Revise demand letter | 0.3 |
| 159 | JML | 26-Sep-2007 | Review and finalize settlement demand 3 | 0.3 |
| 160 | JML | 25-Oct-2007 | Meeting with co-counsel regarding settlement | 1.5 |
| 161 | JML | 25-Oct-2007 | E-mail to client regarding sending settlement letter to the judge | 0.1 |
| 162 | JML | 6-Nov-2007 | Draft letter to USM regarding settlement offer | 0.4 |
| 163 | JML | 9-Nov-2007 | Finalize letter to USM | 0.2 |
| 164 | | | **Total Time 2006 Demand LaRosa Firm** | **14.0** |

|  | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 149 | CAS | 9/5/2007 | E-mail from TSN to client regarding settlement | 0.1 |
| 150 | SJN | 8/30/2006 | Meeting with TSN re: settlement issues | 0.2 |
| 151 | SJN | 1/11/2007 | Meeting with Hank re: settlement and case status | 2.0 |
| 152 | TSN | 5/20/2005 | Meet with JLR about failure of settlement efforts | 0.1 |
| 153 | TSN | 1/31/2006 | Reply to clients e-mail on his damages | 0.2 |
| 154 | TSN | 8/30/2006 | Meet with client and JLR about settlement authority | 1.3 |
| 155 | TSN | 8/30/2006 | Meeeting with SJN re: settlement issues | 0.2 |
| 156 | TSN | 10/2/2006 | Edit demand letter | 0.2 |
| 157 | TSN | 10/6/2006 | Meet with JLR on status of the case | 0.1 |
| 158 | TSN | 11/10/2006 | Meet with JLR about status of negotiations | 0.1 |
| 159 | TSN | 12/6/2006 | Meet with JLR about settlement strategy | 0.1 |
| 160 | TSN | 5/2/2007 | E-mail to co-counsel on settlement | 0.1 |
| 161 | TSN | 9/13/2007 | Meet with client about settlement | 1.3 |
| 162 | TSN | 9/25/2007 | Review and edit settlement demand | 0.4 |
| 163 | | | **Total Time 2006 Demand Neuberger Firm** | **6.4** |

# EXHIBIT

# 10

| | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 170 | JML | 10-Oct-2003 | Review deposition of Colonel Cunningham regarding promotions in NCC PD | 0.3 |
| 171 | JML | 10-Oct-2003 | Memo to TSN regarding Cunningham deposition testimony regarding NCC PD promotions | 0.8 |
| 172 | JML | 10-Jun-2004 | Meeting with law clerk regarding statute of limitations issue | 0.1 |
| 173 | JML | 17-Jun-2004 | Review law clerk's legal research memo regarding statute of limitations | 0.3 |
| 174 | JML | 23-Dec-2004 | Review cardiologist medical records and end of year pay stubs for 2001-2004 | 0.5 |
| 175 | JML | 25-Jul-2006 | Meeting with TSN regarding case in light of new SCt case | 0.2 |
| 176 | JML | 14-Aug-2006 | Telephone to client and e-mail to TSN regarding Supreme Court decision | 0.2 |
| 177 | JML | 14-Aug-2006 | Review Garcetti decision and analyze its impact on the case | 1.0 |
| 178 | JML | 14-Aug-2006 | Review TSN brief regarding Garcetti case law affecting this case | 0.5 |
| 179 | JML | 15-Aug-2006 | Telephone to client and e-mail to TSN regarding S.Ct. decision | 0.2 |
| 180 | JML | 18-Jun-2007 | E-mail to RW regarding depositions of LM and MR and to CAH regarding affidavits of LM and MR | 0.2 |
| 181 | JML | 19-Jun-2007 | Review Complaint and deposition testimony of LM in County case | 1.5 |
| 182 | JML | 19-Jun-2007 | Review deposition testimony of MR in County case | 0.1 |
| 183 | JML | 19-Jun-2007 | Review memo from RW regarding trial testimony of LM and MR in NCC case | 0.3 |
| 184 | JML | 19-Jun-2007 | Review deposition of defendant Freeberry in County police case | 2.0 |
| 185 | JML | 19-Jun-2007 | Prepare questions for interviews of witnesses LM and MR | 1.0 |
| 186 | JML | 20-Jun-2007 | Continue preparing interview questions | 0.5 |
| 187 | JML | 20-Jun-2007 | Telephone to LM regarding interview | 0.1 |
| 188 | JML | 20-Jun-2007 | Draft letter to LM and MR regarding interview | 0.3 |
| 189 | JML | 21-Jun-2007 | E-mail to witness regarding interviews | 0.2 |
| 190 | JML | 27-Jun-2007 | Interview MR regarding case | 2.0 |
| 191 | JML | 27-Jun-2007 | Interview LM regarding case | 2.2 |
| 192 | JML | 9-Jul-2007 | Draft Declaration of LM | 3.0 |
| 193 | JML | 10-Jul-2007 | Draft Declaration of MR | 3.0 |
| 194 | JML | 10-Jul-2007 | Telephone to LM regarding additional facts for Declaration | 0.1 |
| 195 | JML | 11-Jul-2007 | Review Riddel original and first amended complaints for our First Amended Complaint | 1.0 |
| 196 | JML | 12-Jul-2007 | Telephone to MR regarding facts | 1.4 |

| | ATTY | Date | Description | Time |
|---|---|---|---|---|
| 191 | TSN | 9/8/2004 | Meeting with Steve. | 0.3 |
| 192 | TSN | 9/9/2004 | Review two e-mails from client and reply. | 0.2 |
| 193 | TSN | 10/1/2004 | Meeting with SJN. | 0.1 |
| 194 | TSN | 11/30/2004 | E-mail to JLR. | 0.1 |
| 195 | TSN | 1/27/2005 | E-mail to JLR> | 0.1 |
| 196 | TSN | 1/29/2005 | E-mail to JLR. | 0.1 |
| 197 | TSN | 3/3/2005 | Meet with JLR about the case. | 0.2 |
| 198 | TSN | 3/15/2005 | E-mail to JLR. | 0.1 |
| 199 | TSN | 3/18/2005 | meet with SJN about the settlement package. | 0.3 |
| 200 | TSN | 3/18/2005 | Email to co-counsel | 0.1 |
| 201 | TSN | 3/22/2005 | E-mail to JLR | 0.1 |
| 202 | TSN | 4/18/2005 | E-mails from JLR | 0.1 |
| 203 | TSN | 4/22/2005 | E-mail to co-counsel | 0.1 |
| 204 | TSN | 5/12/2005 | E-mail on witnesses | 0.1 |
| 205 | TSN | 5/19/2005 | Review e-mail from client | 0.1 |
| 206 | TSN | 5/26/2005 | E-mail to client | 0.2 |
| 207 | TSN | 6/7/2005 | E-mail to client | 0.2 |
| 208 | TSN | 6/7/2005 | E-mail from JLR and respond | 0.1 |
| 209 | TSN | 6/8/2005 | Speak with JLR about the facts | 0.1 |
| 210 | TSN | 6/25/2005 | Telephone with client | 0.1 |
| 211 | TSN | 6/28/2005 | Fact investigation | 0.3 |
| 212 | TSN | 7/21/2005 | E-mail from client and respond | 0.2 |
| 213 | TSN | 8/23/2005 | Discuss status of the case with JLR | 0.1 |
| 214 | TSN | 8/25/2005 | Letter to client | 0.2 |
| 215 | TSN | 9/9/2005 | E-mail to co-counsel | 0.1 |
| 216 | TSN | 10/4/2005 | E-mail from client and respond | 0.1 |
| 217 | TSN | 3/18/2006 | E-mail from client and respond | 0.1 |

| | B | C | | E |
|---|---|---|---|---|
| **1** | ATTY | Date | Description | Time |
| 218 | TSN | 6/1/2006 | E-mail from client and respond | 0.1 |
| 219 | TSN | 6/22/2006 | E-mail from client and reply | 0.1 |
| 220 | TSN | 6/22/2006 | E-mail from client and reply | 0.1 |
| 221 | TSN | 8/10/2006 | Call from client | 0.1 |
| 222 | TSN | 8/10/2006 | E-mail to JLR and client | 0.1 |
| 223 | TSN | 1/9/2007 | Try to reach my client | 0.1 |
| 224 | TSN | 1/9/2007 | Telephone with client | 0.1 |
| 225 | TSN | 1/12/2007 | Review e-mail | 0.1 |
| 226 | TSN | 3/8/2007 | E-mail from client and respond | 0.1 |
| 227 | TSN | 6/1/2007 | E-mail from JLR and reply | 0.1 |
| 228 | TSN | 6/7/2007 | E-mail on evidence issue | 0.2 |
| 229 | TSN | 6/18/2007 | E-mail from client and reply | 0.2 |
| 230 | TSN | 6/18/2007 | E-mail on the stay | 0.1 |
| 231 | TSN | 7/9/2007 | Telephone with client | 0.2 |
| 232 | TSN | 8/28/2007 | E-mail on status | 0.1 |
| 233 | TSN | 8/31/2007 | E-mail to client | 0.2 |
| 234 | TSN | 8/31/2007 | E-mail to client | 0.2 |
| 235 | TSN | 9/5/2007 | E-mail from client and respond | 0.2 |
| 236 | TSN | 9/25/2007 | E-mail from JLR | 0.1 |
| 237 | TSN | 12/8/2007 | E-mail to co-counsel | 0.2 |
| 238 | | | **Unspecified Time Neuberger Firm** | **10.7** |

2524623_1