IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHIEF HENRY V. TOBIN III,      :
                               :
         Plaintiff,            :
                               :
    v.                         :    C.A. No. 04-1211 MPT
                               :
THOMAS P. GORDON, individually:
and in his official capacity; :
SHERRY FREEBERY, individually :
and in her official capacity; :
COLONEL JOHN L. CUNNINGHAM,    :
RETIRED, individually;        :
COLONEL DAVID F. MCALLISTER,   :
individually and in his        :
official capacity; and        :
NEW CASTLE COUNTY,            :
a municipal corporation,       :
                               :
         Defendants.           :

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
MOTION FOR RECONSIDERATION OF THE COURT'S ORDER OF JUNE 18, 2008

Pursuant to Fed.R.Civ.P. 60(b), plaintiff Moves that the Court reconsider its Order of June 18, 2008, deny defendants their belated discovery requests and deny their letter request for a sur-reply. Elementary principles of due process should allow plaintiff to respond to the letter to the Court filed on June 12, 2008, (D.I. 48), before the Court makes a final ruling on defendants' requests for discovery and a sur-reply. Because plaintiff did not have an earlier opportunity to respond because his counsel was preparing the Reply Memorandum to file within the deadline set forth by the Court and stipulated between the

parties, this is plaintiff's Motion for Reconsideration in opposition to defendants' aforementioned requests.

**I.    DEFENDANTS HAVE WAIVED THEIR RIGHT TO DISCOVERY.**

    **A.    No Stipulation as to Defendants' Discovery.** Defendants' request for discovery should be denied because they waived this right first by not stipulating to it.  At the Scheduling Conference on April 16, 2008, plaintiff's counsel informed the Court that because defendants previously had refused to agree to any of their hourly rates, plaintiff would need limited discovery prior to his Reply Memorandum.  Thus, the Jointly Stipulated Scheduling Order for Plaintiff's Fee Petition filed by the parties and issued by the Court on April 17, 2008, provided for discovery by plaintiff but did not provide for discovery by defendants.  Though defendants cite to one word attributed to Attorney Neuberger in the transcript of the teleconference for a binding agreement, the prior teleconference should not govern the parties, especially once they memorialized their agreement in the written stipulation which, unlike the teleconference transcript, was signed by the parties and executed by the Court.  Thus, the stipulation should govern any right of defendants to request discovery.  Because they did not seek to place such a reciprocal discovery deadline in the stipulation, they were not entitled to make such discovery requests thereafter.

2

**B.    Defendants' Untimely Served Discovery Was Not Plaintiff's Fault and Not Useful for Defendants' Answering Brief.**

Even if the Court finds that the parties agreed in the teleconference that defendants were permitted to serve discovery in advance of their Answering Brief, the fact that they belatedly served such discovery is not plaintiff's fault, and he should not be penalized for defendants' delay.  Regarding document requests, Federal Rule 34 provides that

> [t]he party to whom the request is directed must respond in writing within 30 days after being served.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

Fed.R.Civ.P. 34(b)(2)(A).  Rule 29 provides that

> [u]nless the court orders otherwise, the parties may stipulate that: . . . procedures governing or limiting discovery be modified – but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial.

Fed.R.Civ.P. 29.  Defendants now complain that plaintiff waited until "the eleventh hour" to file his discovery responses.  (See Letter from M. DiBianaca to J. Thynge of June 12, 2008 at 2 (D.I. 48)).  But plaintiff never stipulated to a shorter time to respond to defendants' discovery under Rules 29 and 34. Furthermore, such a shorter time was not ordered by the Court. Therefore, to respond to defendants' document requests, plaintiff

had the thirty days provided under Rule 34(b)(2)(A).[1]  Thus, defendants should have served their discovery promptly to allow any timely response to be used in their answering brief at the stipulated and ordered June 2nd deadline.  But instead, plaintiff received defendants' discovery requests in the U.S. mail on Thursday, May 1, 2008.  (See Ex. A).  Though they had the right to do so, defendants did not hand deliver, fax or e-mail a copy of the discovery requests any sooner than that date.  Thirty days from the May 1st date of receipt was Saturday, May 31, 2008.  Therefore, plaintiff's response was due the next business day, Monday, June 2, 2008 – the same day as defendants' Answering Memorandum.  See Fed.R.Civ.P. 6(a)(3).

Unlike defendants, who filed their Answering Brief on June 3rd in violation of the stipulated and court ordered June 2nd deadline, plaintiff timely filed his responses to defendants' discovery on June 2nd: the same day they were due in accordance with Rule 34.  But as a result of defendants' belated service of their discovery, any responsive documents or information would not have been available to defendants, and thus, any responsive documents were neither useful nor necessary for their Answering Memorandum and this litigation.

---

[1] In addition to never agreeing to serve discovery responses in a time frame shorter than the 30 days provided under Rule 34, plaintiff never agreed to delay filing his own opening memorandum until after defendants' belated discovery eventually was served.

"A waiver is defined as 'the voluntary, intentional relinquishment of a known right.'" <u>Novartis Pharm. Corp. v. EON Labs Mfg., Inc.</u>, 206 F.R.D. 396, 398 (D.Del. 2002)(quoting BLACK'S LAW DICTIONARY 1417 (Special Deluxe 5th ed. 1979)). Here, by voluntarily serving their belated discovery less than thirty days before June 2nd, defendants intentionally relinquished their known right to receive any discovery responses before their answering memorandum was due. Therefore, defendants effectively waived their right to discovery and to use any discovery responses in their answering brief.

## II. DEFENDANTS ARE NOT ENTITLED TO THE DOCUMENTS PROTECTED BY PRIVILEGES THAT WERE NOT WAIVED BY PLAINTIFF.

Even if defendants had done what they assert they had requested permission to do at the April 16th teleconference – timely serve discovery, plaintiff's discovery responses would not change. No responsive documents can be provided because defendants inappropriately requested documents protected by the attorney-client, physician-patient and work product privileges, none of which were waived by plaintiff.[2] Under the circumstances here, the law does not allow discovery of the privileged information defendants improperly sought.

> Although the contours of a fee petition are
> rather well-settled, there is less guidance
> on the proper scope of discovery, if any, in

---

[2] The only exception is document request no. 4. <u>See</u> Part II.C, <u>infra</u>.

> connection with those petitions. Whether
> discovery is warranted depends on
> consideration of the nature of the adversary
> process in determining a reasonable fee after
> hearing the objections which have been
> raised. The legitimate needs of petitioner
> counsel for a prompt adjudication of their
> fee request must be accommodated with the
> needs of the objectors to obtain reasonable
> discovery to probe the requested fees and
> costs and, ultimately, to frame the issues
> for adjudication after a well-focused
> adversary proceeding.
>
> If any discovery is sought from the
> petitioners, it must therefore squarely
> relate to the issues in dispute in this fee
> petition, and it must not launch an excursion
> into the barely relevant or beyond the
> borderline of harassment.

In re First Peoples Bank Shareholders Litig., 121 F.R.D. 219,

223-24 (D.N.J. 1988). "Similarly, according to the *Manual for*

*Complex Litigation, Second* § 24.13 (1985), discovery upon fee

petitions should 'rarely be necessary' when 'the documentation in

support of fee applications is sufficiently detailed and

conclusive.'" Id. at 223. "Any discovery must be limited to

information relevant to the factors which the court will

eventually consider in assessing the fee." Id. Specifically,

"document . . . requests should only be sparingly granted

and narrowly focused on material relevant facts to avoid

harassment of petitioners, undue prolongation of the proceedings,

and undue expense." Id. (citing H. Newberg, *Attorney Fee Awards* §

2.22 (1986)).

Here, among their six belated requests, which have unduly

6

prolonged these proceedings, defendants seek "all 'health status reports'" made by plaintiff to his counsel (Request 6), "all affidavits (in draft and final form)" (Request 2), and "all documents prepared by Expert Witness(es)" (Request 4).  Requests 2 and 6 seek documents protected by privileges which have not been waived.  (See also Pl. Resp. to Defs.' 1st Req. for Prod. of Documents at 4-9.  Ex. B).

A.    **Client's Medical Information is Privileged**.  Defendants request "[a]ny and all "health status report(s)" as that term is used in the time and billing records for this Litigation previously provided by Plaintiff's Counsel to Defendants' Counsel, and specifically, as used in a time entry by John M. LaRosa, Esq., dated November 15, 2004, which states, "E-mail to client regarding health status report." (Defs. First Request for Documents Directed to Pl. Request No. 6.  Ex. A).  This request seeks a document protected by both the attorney-client and the physician-patient privileges, neither of which have been waived.

1.    **Attorney-Client Privilege Protects the Confidential Communication Made by Plaintiff to His Attorney.** First, attorney-client privilege protects plaintiff's confidential communication with his attorney, and this privilege was not waived.  Here, the requested health status report is one e-mail from plaintiff to Attorney LaRosa dated November 15, 2004, detailing confidential communications between plaintiff and his

7

physician made for the purposes of diagnosis and treatment of plaintiff's physical condition.

   **a.  The Basics.**  "The attorney-client privilege is a well-established historic rule which protects confidential communications between client and attorney." <u>U.S. v. Doe</u>, 429 F.3d 450, 452 (3d Cir. 2005).  "The Supreme Court has long emphasized that the central concern of the privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" <u>Id.</u> at 452–53 (ultimately quoting <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 389 (1981)).  Communications are protected by the attorney client privilege when

> (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.

<u>In re Impounded</u>, 241 F.3d 308, 316 n.6 (3d Cir. 2001) (internal punctuation omitted).

   **b.  Discussion.**  Despite defendants' bad-faith attempts to reveal two plaintiffs'[3] confidential medical records,

_____

  [3] Defendants Gordon and Freebery are the same defendants who are the subject of another federal lawsuit in this district for leaking plaintiff's lead counsel's privileged medical information

it is clear that the communications between plaintiff and Attorney LaRosa are protected by the attorney-client privilege.

**i. Legal Advice Sought from a Professional Legal Advisor.** Plaintiff contacted Attorney LaRosa for the purpose of consulting and securing legal advice because he feared his health condition and treatment therefor could adversely impact his then pending case against Gordon, Freebery and the County. He wanted to be prepared by talking to his attorney who could protect him if the need arose. Thus, the privilege attached. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 n.16 (3d Cir. 1995) (noting that privilege attaches when "the asserted holder of the privilege is or sought to become a client[]"); see also PRPC 1.6 (Confidentiality of Information).

**ii. The Communications Related to That Purpose.** "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Upjohn, 449 U.S. at 389. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Id. The lawyer-client privilege

---

which they became privy to in defending another civil rights suit brought by County police officers against them. See Exhibit C.

9

rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." <u>Trammel v. U.S.</u>, 445 U.S. 40, 51 (1980).  The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." <u>Upjohn</u>, 449 U.S. at 389 (internal punctuation omitted).

Here, as the e-mail reveals, plaintiff fully disclosed everything to LaRosa to protect his pending case.  His consultation included (1) statements at the beginning and end of the communication that plaintiff "wanted to update [his legal advisor] on a significant issue[,]" about information which he "thought [his legal advisor] would want to have . . . [,]" and (2) in between those statements – the communication relating to that purpose.  (<u>See</u> Ex. D (filed under seal)).  Specifically, the communication relates to the very reason for the representation – the impact of defendants' actions on plaintiff's well-being.  All of the information conveyed was necessary for Attorney LaRosa to gain a full and complete understanding in order to protect him.

### iii.  Made in Confidence By the Client.

There is no evidence that the communication was made in anything but the strictest confidence via e-mail sent only to the attorney by the client.  For example, the e-mail between them was never copied to anyone.  Instead, the communication was solely between plaintiff and Attorney LaRosa.  And, other than plaintiff and his

attorneys, no one else knew what was written in this consultation
with Attorney LaRosa.

### iv.  Are At His Insistence Permanently
### Protected From Disclosure.  Plaintiff's insistence that his e-
mail to his attorney regarding his health be permanently
protected is evidenced by his attorneys' raising of the attorney-
client privilege first in their response to defendants' discovery
requests and again now in this motion for reconsideration.

### v.  Except that the Protection May Be Waived.
Finally, the privilege was not waived.  Without hearing from
plaintiff, the Court in its Order of June 18, 2008, nonetheless
ordered that the document be produced and ruled that attorney-
client and work product privileges had been waived, citing
Novartis Pharm. Corp. v. EON Labs Mfg., Inc., 206 F.R.D. 396
(D.Del. 2002).  That case was a patent action at the fact
discovery stage in which the corporate plaintiff moved to compel
production of documents underlying defendants' advice of counsel
defense to plaintiff's claim of willful infringement.  Novartis
Pharm. Corp., 206 F.R.D. at 396.  There, the defendant lab relied
on a written opinion from its patent counsel as a defense to
plaintiff's claim.  Id.  In response, plaintiff requested "all
written and oral legal advice [defendant] received] from [the
firm of its patent counsel] with respect to the infringement,
invalidity, and unenforceability of [a p]atent, including all

documents underlying that advice." Id. at 396-97.  In compelling
production, the Court ruled that "[w]here, as here, a party
relies on the advice of counsel defense to a charge of willful
infringement, the Court concludes that that party has expressly
waived its privilege with respect to attorney-client
communications . . . ." Id. at 397.

Here, in our civil rights case at the fee petition stage,
defendants seek production of "[a]ny and all 'health status
report(s)[.]'" (See Ex. A at 8).  Unlike the request in Novartis
Pharm. Corp., defendants' request here does not seek any
communication from counsel, but rather, it seeks a status report
from plaintiff himself to his counsel on plaintiff's then current
health condition.[4]  Here, plaintiff does not assert that he
relied on his own written e-mail as a defense to any claim made
by defendants.  Nor does plaintiff here assert a defense that he
relied on the advice of counsel.  Furthermore, defendants'
request is not nearly as thorough as the request in Novartis
Pharm. Corp. for "all written and oral legal advice [objecting
party] received from [the firm of its counsel] with respect to
[possible claims and defenses], including all documents

---

[4] To the extent that defendants' request intended to seek
all documents that relate to plaintiff's November 15, 2004 health
status report, including Attorney LaRosa's e-mail to him
regarding plaintiff's report, no such documents are available
because they were sent when the attorney used EarthLink.net as
his e-mail server which he discontinued in March of 2005, when he
began using his current e-mail server.

underlying that advice." Cf. id. at 396–97.  Therefore, because
plaintiff has not relied on an advice of counsel defense, he has
not waived the attorney-client privilege.

**B.    Physician-Patient Privilege Also Protects Confidential
Communication Made by Plaintiff's Physician for the Purpose of
Diagnosis and Treatment and Cannot be Waived by His Attorneys in
Petitioning for their Fees.**  Second, this request seeks
information which is subject to the physician-patient privilege.
The Federal Rules of Evidence provide generally that

> [e]xcept as otherwise required by the
> Constitution of the United States or provided
> by Act of Congress or in rules prescribed by
> the Supreme Court pursuant to statutory
> authority, the privilege of a . . . person
> . . . shall be governed by the principles of
> the common law as they may be interpreted by
> the courts of the United States in the light
> of reason and experience.

F.R.E. 501.  Under Delaware law,

> [a] patient has a privilege to refuse to
> disclose and to prevent any other person from
> disclosing confidential communications made
> for the purpose of diagnosis of the patient's
> physical, mental or emotional condition,
> including alcohol or drug addiction, among
> the patient, the patient's mental health
> provider, physician or psychotherapist and
> persons who are participating in the
> diagnosis or treatment under the direction of
> the mental health provider, physician or
> psychotherapist, including members of the
> patient's family.

D.R.E. 503(b).

The privileges provided for in D.R.E. 503 ordinarily protect

confidential communications between patient and physician, mental health provider, or psychotherapist. However, simply because a patient allows a third person the right to review confidential medical information does not then create a general waiver. See, e.g., Roman Catholic Diocese of Jackson v. Morrison, 905 So.2d 1213, 1244-45 (Miss. 2005)(holding that a priest who participated in therapy pursuant to the church's request and who allowed the psychotherapist to provide updates and treatment summaries to the diocese did not intend to create a general waiver and the production of patient-psychotherapist documents was protected by the privilege). In Morrison, the court stated,

> we have never held that a limited waiver of
> the privilege which allowed specific
> information to be provided to specified
> persons . . . , serves to waive the privilege
> generally, or as to other third persons not
> included in the waiver. Were we to so hold,
> the privilege would be, for all practical
> purposes, emasculated.

Id. at 1244. In finding no waiver, the court noted that

> patients customarily waive . . . privilege to
> the extent their insurance companies require
> privileged information for the payment of
> claims. Such limited waivers, however, have
> never served to waive the privilege
> generally, for those insured patients.

Id. Therefore, "[a] general waiver of the privilege occurs where the patient clearly intends it generally waived, or where the waiver is such that the patient can no longer reasonably expect the communication to remain confidential." Id.

14

Here too, plaintiff allowed a third person, his attorney, the right to review confidential medical information by reporting it in his e-mail to Attorney LaRosa of November 15, 2004. This was a limited waiver. Plaintiff did not intend to generally waive the privilege regarding his confidential communications with his physician made for the purposes of diagnosis and treatment of plaintiff's physical condition. By disclosing such information in an e-mail sent only to his attorney, plaintiff could continue to reasonably expect the communication to remain confidential. Therefore, his health status report is also protected by the physician-patient privilege.

**B.    The Witness Declarations Are Privileged.** Defendants also request "[a]ny and all affidavits (in draft and final form) or other written statements, which were (a) made during the course and in support of this Litigation; (b) obtained or retained for the purpose of this Litigation; (c) and the time expended by Plaintiff's Counsel on obtaining, reviewing or otherwise having to do with such statements is included as compensable time in the Fee Petition." (Defs. First Request for Documents Directed to Pl. Request No. 2. Ex. A). This request seeks documents protected by the work product doctrine, and this privilege has not been waived. See Smith ex. rel. Smith v. U.S., 193 F.R.D. 201, 213 n.39 (D.Del. 2000)(noting that the work product privilege extends protection to "synopses of witnesses'

15

statements . . . prepared by an attorney 'with an eye to litigation,' unless substantial good cause can be shown for its production[]"); Hercules v. Exxon Corp., 434 F.Supp. 136 (D.Del. 1977); Ideal Elec. Co. v. Flowserve Corp., 230 F.R.D. 603, 609-10 (D.Nev. 2005)(holding that drafts of affidavits to be signed by witnesses prepared by counsel protected by work-product privilege since they often contain handwritten notes that are indicative of the attorney's thought processes regarding relevant facts and trial strategy); Bloch v. Smithkline Beckman Corp., 1987 WL 9279, at *1 (E.D.Pa. Apr. 9, 1987)(a final draft of a witness affidavit is protected by the work product privilege even though the affidavit was ultimately signed by the witness); Kyoei Fire & Marine Ins. Co. Ltd. v. M/V Maritime Antalya, 248 F.R.D. 126, 155 (S.D.N.Y. 2007)(a witness affidavit prepared by counsel is protected by the work product privilege because it inherently includes the "mental processes and opinion of counsel."); and A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc., 131 F.R.D. 46, 49 (S.D.N.Y. 1990)(an affidavit prepared by counsel to be signed by a witness is protected under work-product privilege).

Here, plaintiff's counsel has prepared lengthy declarations signed by former County employees Lynda Maloney and Maria Rendina. These signed declarations are synopses of these witnesses' statements prepared by Attorney LaRosa with an eye to the then pending litigation. As such, they clearly are protected

16

by the work-product privilege.

**1.   Defendants Have Not Shown Extraordinary**

**Circumstances.**  Further, defendants have not made the requisite showing to overcome the privilege.  "[U]nder Federal Rule of Civil Procedure 26(b)(3), attorney work product is not discoverable absent a showing of extraordinary circumstances." Novartis Pharm. Corp. v. EON Labs Mfg., Inc., 206 F.R.D. 396, 398 (D.Del. 2002)(citing RCA Corp. v. Data General Corp., 1986 WL 15693, at *2 (D.Del. Jul. 2, 1986)(citing Bogosian v. Gulf Oil Corp., 738 F.2d 587, 593 (3d Cir. 1984); Fed.R.Civ.P. 26(b)(3)(permitting discovery into work product only upon a showing of "substantial need" and "undue hardship" in obtaining the substantial equivalent of the information by other means))).

Here, defendants have not made a showing of substantial need and undue hardship in obtaining the substantial equivalent of the information by other means.  Indeed, now that judgment has been entered in this case, there is no substantial need for defendants to obtain the recorded testimony of these two key witnesses who were secretaries for defendants Gordon and Freebery.  They seek such work product only in an attempt to gain an unfair advantage in preparing for the related police cases still pending against the County, Gordon and Freebery.  They would suffer no undue hardship when discovery commences in those cases simply by deposing these two witnesses to obtain the substantial equivalent

17

of the information contained in counsel's work product.  Thus, defendants have not made the requisite showing to overcome the privilege.

**2.    Plaintiff Has Not Waived the Work Product Privilege.**  Finally, plaintiff also has not waived the work product privilege.  As it held with regard to attorney-client privilege, the Court in Novartis Pharm. Corp. v. EON Labs Mfg., Inc., 206 F.R.D. 396 (D.Del. 2002), held that because the defendant lab there relied on the advice of counsel defense, it also waived the work product privilege.  Id. at 399.  Again, that case was a patent action at the fact discovery stage in which the corporate plaintiff moved to compel production of documents underlying defendants' advice of counsel defense to plaintiff's claim of willful infringement.  Novartis Pharm. Corp., 206 F.R.D. at 396.  There, the defendant lab relied on a written opinion from its patent counsel as a defense to plaintiff's claim.  Id. In response, plaintiff requested "all written and oral legal advice [defendant] received from [the firm of its patent counsel] with respect to the infringement, invalidity, and unenforceability of [a p]atent, including all documents underlying that advice." Id. at 396-97.  In compelling production, the Court ruled that "[w]here, as here, a party relies on the advice of counsel defense to a charge of willful infringement, the Court concludes that that party has expressly

18

waived its privilege with respect to . . . work product documentation." Id. at 397.

Here, in our civil rights case at the fee petition stage, defendants seek production of "[a]ny and all affidavits (in draft and final form) or other written statements, which were (a) made during the course and in support of this Litigation; (b) obtained or retained for the purpose of this Litigation; (c) and the time expended by Plaintiff's Counsel on obtaining, reviewing or otherwise having to do with such statements is included as compensable time in the Fee Petition." (Request No. 2.  Ex. A). Unlike the corporate plaintiff in Novartis Pharm. Corp., plaintiff here does not assert the advice of counsel as an essential element of a defense.  Therefore, because plaintiff has not relied on an advice of counsel defense, he has not waived the work product privilege.

**C.    The Expert Witness Report and Related Correspondence Has Been or Will Be Produced.**  Finally, defendants seek "all documents prepared by Expert Witness(es)" (Request No. 4. Ex. A). Plaintiff does not seek reconsideration of the Court's June 18th ruling regarding this request.  Most of this information was provided in the expert report previously provided to defendants. Nevertheless, these documents will be re-produced along with any related correspondence upon Court's final ruling on all discovery.

### III. DEFENDANTS HAVE CREATED A SECOND MAJOR LITIGATION BY SEEKING USELESS AND UNNECESSARY DISCOVERY SOUGHT IN BAD FAITH.

**A.    Defendants Created a Second Major Litigation with Useless and Unnecessary Discovery Sought in Bad Faith**.  Again, had defendants timely served proper discovery in order to receive responsive documents before their answering memorandum was due, the fee issue would have been fully submitted to the Court after plaintiff's Reply Memorandum on June 18th in accordance with the stipulated Scheduling Order.  However, in an effort to commence a second major litigation with a life of its own, defendants mailed plaintiff belated document requests on April 29, 2008.  But "[a] request for attorneys' fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  "[T]he Supreme Court has . . . admonished that a fee petition should not mushroom into [a] second major litigation with a life of its own." Finch v. Hercules Inc., 941 F.Supp. 1395, 1422 (D.Del. 1996)(citing Hensley, 462 U.S. at 437); accord Board of Pub. Educ. in Wilmington v. DiGiacomo, 1986 WL 9934, at *2 (Del. Super. Sept. 4, 1986)("Court will not reward obstinacy nor encourage a fee application taking on a life of its own[]").  Defendants' belated document requests caused plaintiff's counsel to spend additional time preparing a response.  Tellingly, because the belated document requests were not received until Thursday, May 1, 2008, (see Ex. A), plaintiff's response was not

due until Monday June 2, 2008 – the same day as defendants'
Answering Memorandum.  So any responsive documents or information
were not available to defendants and thus were neither useful nor
necessary for their Answering Memorandum and this litigation.  In
City of Riverside v. Rivera, 477 U.S. 561 (1986), all of the
Supreme Court justices agreed that a § 1988 fee award might
properly exceed the amount of money damages recovered as the sole
relief obtained in the suit, when the litigation was
"unnecessarily prolonged by the bad-faith conduct of the
defendants[.]" Id. at 594 (Rehnquist, J., dissenting).  Here,
defendants have caused the fee issue to mushroom into a second
major litigation with a life of its own by their bad faith
conduct.

    **B.    There has Been No Prejudice to Defendants Since Each
Side Has Exchanged Identical Information: Time and Billing
Records.**  Furthermore, there has been no prejudice to defendants
by virtue of the fact that the privileged communications
requested were not produced.  In his own timely discovery,
plaintiff sought the billing and time records for defendants'
attorneys.  Though the records were not produced by two of the
three law firms defending the case, plaintiff is satisfied with
the responsive information properly produced by defendants.[5]  As

---

[5]  Attorneys Charles Butler and Kathleen Jennings never
complied with plaintiff's proper request for time and billing
records but instead merely supplied Young Conaway Stargatt &

a result, with the exception of the two aforementioned defense attorneys, all counsel have exchanged billing records.

Though defendants argue that plaintiff "demand[ed] information that he now claims is not discoverable[,]" (<u>see</u> D.I. 48 at 2), in reality, plaintiff did not request and defendants did not provide attorney-client privileged communications, physician-patient privileged information, work product or other privileged or improper information.  So defendants have not been prejudiced by plaintiff's lawful objections and proper refusal to produce such information here.

## IV.  EVEN IF DEFENDANTS ARE ENTITLED TO SOME OR ALL OF THE PRIVILEGED DOCUMENTS, THEY SHOULD BE FILED UNDER SEAL FOR IN CAMERA INSPECTION BY THE COURT.

Even if defendants are entitled to some or all of the privileged documents withheld, plaintiff should first submit them under seal for in camera inspection in order to determine which documents must be produced and whether redacted versions of documents containing privileged information should be shared with opposing counsel to balance defendants' need to obtain reasonable discovery to probe the requested fees and costs with plaintiff's need to preserve confidentiality of his privileged information. A trial court has "broad discretion . . . in handling confidential information . . . ." <u>In re First Peoples Bank Shareholders Litig.</u>, 121 F.R.D. 219, 229 (D.N.J. 1988).

---

Taylor with the total fee each received.

Specifically, "[t]he court has authority to require submission of relevant documents for *in camera* inspection, or to make other appropriate orders to preserve the privacy of confidential material." <u>Id.</u> (citing Fed.R.Civ.P. 26(c)(5), (7) and (8); 8.C. Wright & Miller, Federal Practice & Procedure, §§ 2043 and 2214 (1970. ed.)). "In many circumstances a court has little choice but to require *in camera* inspection of sensitive materials which cannot be shared among adverse counsel absent judicial prescreening, such as where . . . privileged documents are reviewed by the judge to ascertain whether they have been accurately withheld from discovery[.]" <u>In re First Peoples Bank Shareholders Litig.</u>, 121 F.R.D. at 229 (citing e.g., <u>Ronson Corp. v. Liquifin Aktiengesellschaft</u>, 370 F.Supp. 597 (D.N.J. 1974), <u>aff'd</u>, 497 F.2d 394 (3d Cir.), <u>cert. denied</u>, 419 U.S. 870 (1974)). Then only *after* such inspection –

> if, in the opinion of the trial judge, it is
> or should become necessary to reveal the
> secrets to others, it will rest in the
> judge's discretion to determine whether, to
> whom, and under what precautions, the
> revelation should be made.

<u>In re First Peoples Bank Shareholders Litig.</u>, 121 F.R.D. at 229 (quoting *E.I. DuPont deNemours Powder Co. v. Masland*, 244 U.S. 100, 103 (1917)). For example, "in reviewing documents in connection with attorney fee requests, the court may . . . determine that submission under seal is the prudent course[.]" <u>In re First Peoples Bank Shareholders Litig.</u>, 121 F.R.D. at 229.

23

Here, plaintiff maintains that the documents sought in response to document requests 2, 4 and 6 are privileged and were accurately withheld from discovery.  Nevertheless, for the reasons described above, plaintiff is filing under seal both a suggested, redacted version and the original, unedited version of each of the documents at issue for the Court to compare via in camera inspection.  To the extent the Court, after such inspection, determines that any of these privileged documents must be produced, plaintiff requests that only the redacted version be shared with defendants in order to balance their asserted need to obtain reasonable discovery to probe the requested fees with plaintiff's need for confidentiality of the privileged information.  Only if a document is ruled discoverable after in camera inspection will plaintiff produce the information protected by privilege(s) which the client has not waived.  (See Exs. D, E and F)(filed under seal).

**V.   DEFENDANTS ARE NOT ENTITLED TO A SUR-REPLY.**

**A.   No Sur-reply Is Permissible Because No New Argument Has Been Raised in Plaintiff's Reply Brief.**  Defendants request to file a sur-reply should be denied.  A sur-reply is allowed only to rebut a new argument raised for the first time in a reply brief.  See, e.g., In re Valley Media, Inc., 338 B.R. 605, 608 n.2 (D.Del. 2006) (denying a request to file a sur-reply brief because new arguments were not raised for the first time in the

reply brief); <u>In re Finova Group, Inc.</u>, 2007 WL 3238764, at *1 n.1 (D.Del. Oct. 31, 2007) (denying motion for leave to file a sur-reply because the sur-reply did not respond to new issues raised in the reply brief); <u>cf.</u> <u>Davis v. Knox</u>, 1997 WL 240972, at *4 n.5 (Del.Ch.) (granting permission for a party to file a sur-reply after finding a new basis of attack included in a reply and concluding that the moving party would otherwise have no opportunity to respond to these arguments). Here, defendants' June 12th request to file a sur-reply was made before plaintiff's Reply Memorandum was filed on June 18th. Thus, defendants could not possibly seek to rebut any argument made in the Reply because their premature request was made before the Reply was even filed. Nevertheless, now that the Reply has been filed, the Court can see that plaintiff has raised no new arguments or issues for the first time in his Reply. Consequently, Defendants had a full and fair opportunity to respond to plaintiff's arguments in their thirty one page Answering Brief. For these reasons, no sur-reply is permissible.

**B.    Given Their Bad Faith Conduct Aimed at Prolonging this Litigation, Defendants Are Not Entitled to a Sur-reply.**

Defendants' argument that they should be entitled to a sur-reply because plaintiff's counsel unfairly filed discovery responses at the 11th hour of its own deadline rings hollow given defendants' untimely filing of their Answering Brief a day late. Here, the

parties stipulated and the Court ordered that defendants would
"file their Answering Memorandum . . . on or before June 2,
2008." (See D.I. 38 at ¶ 2).  Nevertheless, defendants filed an
Answering Brief[6] one day after the stipulated and court ordered
deadline: June 3, 2008.  (See D.I. 45).  Their argument that
plaintiff's service of his discovery responses caused their delay
in filing their Answering Brief is a thinly disguised attempt to
cover their own mistake in belatedly serving their discovery
requests and to commence a second major litigation with a life of
its own.  Again, "[a] request for attorneys' fees should not
result in a second major litigation." Hensley, 462 U.S. at 437.
"[T]he Supreme Court has . . . admonished that a fee petition
should not mushroom into [a] second major litigation with a life
of its own." Finch v. Hercules Inc., 941 F.Supp. 1395, 1422
(D.Del. 1996)(citing Hensley, 462 U.S. at 437); accord Board of
Pub. Educ. in Wilmington v. DiGiacomo, 1986 WL 9934, at *2 (Del.
Super. Sept. 4, 1986)("Court will not reward obstinacy nor
encourage a fee application taking on a life of its own[]").

Here, by their bad faith conduct, defendants are attempting
to prolong the litigation and to cause the fee issue to mushroom
into a second major litigation with a life of its own.  First,

---

[6] In addition to violating the stipulated Scheduling Order,
defendants also violated the Local Rules by filing a brief in
response to a memorandum.  See L.R. 7.1.2(a)(stating that
"[u]nless otherwise ordered, the responsive papers shall be in
the form adopted by the moving party[]").

defendants' belated document requests caused plaintiff's counsel
to spend additional time preparing a response.  Tellingly,
because the belated document requests were not received until
Thursday, May 1, 2008, (see Ex. A), again, plaintiff's response
was not due until Monday June 2, 2008 – the same day as
defendants' Answering Memorandum.  So any responsive documents or
information were not available to defendants and thus were
neither useful nor necessary for their Answering Memorandum and
this litigation.  In City of Riverside v. Rivera, 477 U.S. 561
(1986), all of the Supreme Court justices agreed that a § 1988
fee award might properly exceed the amount of money damages
recovered as the sole relief obtained in the suit, when the
litigation was "unnecessarily prolonged by the bad-faith conduct
of the defendants[.]" Id. at 594 (Rehnquist, J., dissenting).
Here, defendants' bad faith conduct in belatedly serving
discovery, blaming plaintiff for their own late filing of their
Answering Brief and then seeking a sur-reply before even
reviewing the arguments made in plaintiff's Reply Memorandum in
sum constitutes a bad-faith attempt to unnecessarily prolong the
litigation.  For this reason, defendants' request for a sur-reply
should be denied.

   **C.   A Motion to Compel Was the Only Proper Response, and
Defendants Have Not Made Such a Motion Here.** Finally, given the
facts that defendants served belated document requests upon

27

plaintiff and plaintiff served a timely response to those requests, the threshold issue now is not whether defendants are entitled to a sur-reply but rather, whether they are entitled to the documents they requested.  Such a request for the Court to rule on the permissibility of discovery of plaintiff's physician-patient privileged information, work product and other privileged or improper information only could have been made properly by filing a motion to compel.  Yet, defendants have compounded their mistake by not even making such a motion.

Now, they inexplicably have sought a sur-reply to provide additional argument to that which they already have made in their detailed three page letter to the Court.  In essence, they have filed a sur-reply even without leave of the Court.  Such a sur-reply without court approval violates this District's Local Rules.  <u>See</u> L.R. 7.1.2(b)(stating that "[e]xcept for the citation of subsequent authorities, no additional papers [after the reply in support of the motion] shall be filed absent Court approval[]").

In any event, no further argument should be provided defendants, and their letter should be stricken.  If they had a legal basis to receive the improper information they sought on discovery, they could have raised such basis in a motion to compel.  But because no such basis applies under the circumstances here, they seek to further prolong these

proceedings with a sur-reply in a veiled attempt to get the last word.  In reality, they already have been heard in their improper letter to the Court.  So their request for a sur-reply should be summarily denied.[7]

### CONCLUSION

For all of the foregoing reasons, defendants' requests for discovery and a sur-reply should be denied.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A**

/S/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQUIRE (#243)**
**STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
Two East 7th Street, Suite 302
Wilmington, DE 19801-3707
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

**LAW OFFICE OF JOHN M. LaROSA**

/S/ John M. LaRosa
**JOHN M. LaROSA, ESQUIRE (#4275)**
Two East 7th Street, Suite 302
Wilmington, DE 19801-3707
(302) 888-1290
JLR@LaRosaLaw.com

Attorneys for Plaintiff

Dated: June 25, 2008

---

[7] If defendants' sur-reply is allowed, plaintiff is entitled to answer defendants' sur-reply which necessarily will introduce new arguments to which plaintiff could not have fairly responded previously.

29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHIEF HENRY V. TOBIN III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 04–1211 MPT |
| | : | |
| THOMAS P. GORDON, individually | : | |
| and in his official capacity; | : | |
| SHERRY FREEBERY, individually | : | |
| and in her official capacity; | : | |
| COLONEL JOHN L. CUNNINGHAM, | : | |
| RETIRED, individually; | : | |
| COLONEL DAVID F. MCALLISTER, | : | |
| individually and in his | : | |
| official capacity; and | : | |
| NEW CASTLE COUNTY, | : | |
| a municipal corporation, | : | |
| | : | |
| Defendants. | : | |

## ORDER

At Wilmington this ____ day of _____, 2008.

Having reviewed defendants' letter of June 12, 2008, and Plaintiff's Motion for Reconsideration of the Court's Order of June 18, 2008, and Plaintiff's Memorandum in Support of His Motion for Reconsideration of the Court's Order of June 18, 2008,

**IT IS ORDERED that**

1.    Defendants' request for discovery is denied; and

2.    Defendants' request to file a sur–reply is denied.

**ALTERNATIVELY, IT IS ORDERED that**

1.  Plaintiff shall produce responsive documents to defendants' requests nos. 2, 4 and 6 within ten (10) business days of the date of this Order;

2.  Defendants may file a sur-reply limited to ten (10) pages within ten (10) business days after production; and

3.  Plaintiff may file a response to the sur-reply limited to ten (10) pages within ten (10) business days after service of defendants' sur-reply.

/s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE

ii

## <u>CERTIFICATE OF SERVICE</u>

I, John M. LaRosa, being a member of the bar of this Court do hereby certify that on June 25, 2008, I electronically filed this **PLEADING** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

William W. Bowser, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Charles E. Butler, Esq.
1224 North King Street
Wilmington, DE 19801

Kathleen M. Jennings, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899


/s/ John M. LaRosa
**JOHN M. LaROSA, ESQ. (#4275)**